**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**Northern Division**

| | |
|---|---|
| CHARLES SLAUGHTER, | |
| *Plaintiff*, | |
| vs. | Civil Action No.: 3:20-cv-789-CWR-FKB |
| DR. THOMAS E. DOBBS, in his official capacity as the Mississippi State Health Officer, | |
| *Defendant*. | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.      This is a constitutional challenge to Mississippi's certificate-of-need program and to Mississippi's moratorium on the issuance of certificates of need for home health agencies, both of which arbitrarily prevent Plaintiff and other entrepreneurs from offering safe, cost-efficient, specialized home health services.  Specifically, Plaintiff Charles Slaughter wants to offer needed home health services in the Jackson metropolitan area.  However, he is unable to provide simple, safe home health services because of Mississippi's certificate-of-need laws and Mississippi's moratorium on the establishment of new home health agencies.

2.      The need for home health services has been dramatically increased by the exponential spread of the respiratory disease COVID-19, as more patients seek to avoid public healthcare facilities and other businesses, and as more elderly patients seek to delay or prevent the need for institutionalization in nursing homes that have been prone to outbreaks.

3.      Plaintiff is unable to respond to these increased consumer needs and preferences because of Mississippi's certificate-of-need laws and moratorium.

4.      "[F]our decades of academic and government studies say[] Certificate of Need laws accomplish nothing more than protecting monopolies held by incumbent companies.  They also say these laws *worsen* the problems of cost, access, and quality of care that the laws are supposed to help fix." *Tiwari v. Friedlander*, No. 3:19-CV-884-JRW-CHL, 2020 WL 4745772, at *2 (W.D. Ky. Aug. 14, 2020) (emphasis original).

5.      Moreover, "[b]ecause it doesn't cost much to start a home health agency, the government doesn't need to guarantee a home health company a monopoly in order to incentivize someone to make the capital investment for it." *Id*. at *13.  Thus, "regardless of whether [certificate-of-need laws] work[] out well in practice . . . outside the home health context . . . the idea makes little sense [in the home health context], where '[s]tarting a home health agency does not require a large capital investment.'" *Id*. at *9 (citations omitted).

6.      Thus, at the pleading stage there is "every reason to think [a home health certificate-of-need] law increases costs, reduces access, and diminishes quality – for no reason other than to protect the pocket of rent-seeking incumbents at the expense of entrepreneurs who want to innovate and patients who want better home health care." *Id*. at *14.

7.      The Mississippi State Department of Health ("MSDH") administers the certificate-of-need program.  Before opening, expanding, relocating, changing ownership, or acquiring major medical equipment, health care facilities must apply for and receive a certificate of need for a defined service area.

8.      Applying for a certificate of need is a difficult and expensive process, during which existing competitors protest and argue there is no "need" for a new health care facility.

9.      The Mississippi Health Care Commission, the predecessor agency of the Mississippi Department of Health, put an administrative moratorium in effect on July 1, 1981, (the "administrative moratorium") which prohibited the issuance of new certificates of need for the establishment of new home health agencies or the expansion of service areas for existing home health agencies.

10.     The Mississippi Legislature enacted a statutory moratorium that became effective on April 9, 1983, (the "moratorium") which also prohibited the issuance of new certificates of need for the establishment of new home health agencies or the expansion of service areas for existing home health agencies.

11.     These moratoriums have never been lifted.  There has therefore been a complete ban on the establishment or expansion of home health agencies for the past thirty-nine (39) years, since the enactment of the administrative moratorium on July 1, 1981.

12.     For the past thirty-nine (39) years, the only way to enter the home health agency market has been to purchase a previously issued certificate of need from the owner of an existing home health agency who is seeking to sell the agency along with its certificate of need.  If there are no previously issued certificates of need for sale in the desired service area, then healthcare entrepreneurs simply cannot provide home health services.

13.     Upon information and belief, the moratorium has caused significant consolidation in the Mississippi home health agency market, as agencies owning previously issued certificates of need have been continuously purchased by larger businesses.  As a result, there are far fewer home health agencies per capita in Mississippi than in other states.

14.     Upon information and belief, there is only one other state in the United States that imposes a moratorium on the issuance of new certificates of need for the establishment or expansion of home health agencies.

15.     Because – and only because – of the moratorium and the barrier that would be imposed by the certificate-of-need program even in the absence of the moratorium, Plaintiff is unable to expand his business to offer cost-effective, specialized home health services in the Jackson metropolitan area or elsewhere in Mississippi.

16.     The true purpose of Mississippi's certificate-of-need laws is to protect existing health care businesses from competition.  However, mere economic protectionism of a particular industry is not a legitimate governmental purpose.

17.     The original purpose of Mississippi's moratorium on the establishment or expansion of home health agencies was to protect existing home health agencies from competition with hospitals, which were responding to strong incentives to start their own home health agencies.

18.     At the time, Medicare reimbursed home health agencies on a "cost basis," while reimbursing hospitals based on a less lucrative "diagnosis-related group."  This created a strong incentive for hospitals to start home health agencies.

19.     Protecting home health agencies from competition with hospital-owned home health agencies is not a legitimate government purpose.

20.     Moreover, the legislative facts upon which the unconstitutional moratorium was based no longer even exist.  Today, Medicare reimburses home health agencies based on a "home health resource group," which is similar to the "diagnosis-related group" used for hospitals.  Thus, the strong incentive for hospitals to create their own home health agencies no longer exists.

21.    The certificate-of-need requirements and the moratorium violate the due process, equal protection, and privileges or immunities guarantees afforded to Plaintiff by the United States and Mississippi constitutions.

## PARTIES

22.    Plaintiff Charles Slaughter is an adult resident of Pearl, Rankin County, Mississippi.  He is a licensed physical therapist and an entrepreneur.  In 1989, he started his own physical therapy clinic, Rehabilitation Consultants, located in Jackson, Mississippi.  He has dreamed of expanding his business to provide in-home physical therapy to homebound patients, but has been unable to because of the moratorium and the certificate-of-need program.

23.    Dr. Thomas E. Dobbs is the State Health Officer for Mississippi.  He is the executive officer of the Mississippi State Department of Health, and is responsible for administering, supervising, implementing, and enforcing the certificate-of-need program and moratoriums.  He is being sued in his official capacity only.

## JURSIDICTION AND VENUE

24.    Plaintiff brings this civil rights lawsuit pursuant to the Fourteenth Amendment to the United States Constitution, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, for violations of the Fourteenth Amendment to the United States Constitution.

25.    Plaintiff seeks declaratory and injunctive relief against the enforcement of the statutory moratorium on the issuance of new certificates of need for the establishment or expansion of home health agencies – Miss. Code § 41-7-191(9), and the administrative moratorium on the issuance of new certificates of need for the establishment or expansion of home health agencies –

15 Miss. Admin. Code Pt. 9, Subpt. 91, R. 2.2 – as they are applied to restrict persons, including

Plaintiff, from providing simple, safe home health services.

26.     Additionally, Plaintiff seeks declaratory and injunctive relief against the

enforcement of Mississippi's certificate-of-need program – the Mississippi Health Care Certificate

of Need Law of 1979, Miss. Code Ann §§ 41-7-171 *et seq*., its implementing rules and regulations,

15 Miss. Admin. Code Pt. 9, Subpt. 91, R. 1 *et seq*., and the policies and practices of the Mississippi

State Department of Health – as it is applied to restrict persons, including Plaintiff, from providing

simple, safe home health services.

27.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

28.     This Court has supplemental jurisdiction over claims arising under the Mississippi

Constitution pursuant to 28 U.S.C. § 1367(a).

29.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTS

**I.     PLAINTIFF WANTS TO OFFER HIGH QUALITY HOME HEALTH SERVICES, BUT CANNOT BECAUSE OF MISSISSIPPI'S MORATORIUM AND CERTIFICATE-OF-NEED PROGRAM.**

30.     Plaintiff Charles Slaughter is a physical therapist who owns a clinic in Jackson,

Mississippi.   He wants to expand his business to offer home health services in the Jackson

metropolitan area or elsewhere in Mississippi.

31.     The certificate-of-need requirements challenged by Plaintiff are separate from the

requirements for licensure of home health agencies.  *See* Miss. Code § 41-71-1, *et seq*., and 15

Miss. Admin. Code Pt. 16, Subpt. 1, R. 46.7, *et seq*.

32.     Plaintiff does not challenge the applicable licensure requirements and is ready, able,

and prepared to comply with all such applicable laws and regulations, including that he obtain a

license to operate a home health agency.

33.     However, Plaintiff is unable to obtain a license to operate a home health agency. In order to obtain a license an applicant must have a certificate of need.  *See* Miss. Code § 41-71-7 and 15 Miss. Admin. Code Pt. 16, Subpt. 1, R. 46.8.  But Mississippi's certificate-of-need law and regulations prohibit the issuance of new certificates of need for the establishment of new home health agencies.  *See* Miss. Code § 41-7-191(9) and 15 Miss. Admin. Code Pt. 9, Subpt. 91, R. 2.2.

34.     Home health agencies offer personalized services to patients who need ongoing care and want or need to receive it in the privacy of their homes.  Home health agencies may offer a range of non-medical and medical services to their clients, from providing home health aides to assist with personal care and basic household tasks, to providing nurses and therapists to administer medication or offer in-home physical therapy, or even providing medical services from a medical intern or resident-in-training at a hospital.

35.     Starting a home health agency does not require a large capital investment.

36.     Home health care is used most by the elderly population.

37.     There is an unmet need for home health services throughout Mississippi.

38.     The need for home health services has been increased by the outbreak of COVID-19, as patients seek to avoid public healthcare facilities and other businesses, and as more elderly patients seek to delay or prevent the need for institutionalization in nursing homes that have been prone to outbreaks.

39.     Home health care is less expensive than other care options, such as institutional care at nursing homes or hospitals.

40.     Home health care is vital for many patients who need care, but need or prefer to remain in the comfort and privacy of their homes.

41.    Patients that use home health services often have better outcomes, including lower rates of re-institutionalizations.

42.    Home health services play a vital role in helping the elderly maintain some degree of independence and can potentially delay or prevent the need for institutionalization in a nursing home.

43.    The majority of states have no certificate-of-need requirements for home health agencies.

44.    Plaintiff Charles Slaughter believes in spending as much time with his patients as it takes to understand and fully address their needs, a practice that has become less common, especially in Mississippi's home health market that has come to be dominated by larger companies.

45.    Plaintiff also has years of experience treating physical problems that elderly patients tend to experience.

46.    Plaintiff wants to use his personalized approach and extensive experience to help home health patients.   He also wants to respond to the increased need for home health services brought about by the outbreak of COVID-19.

47.    But for the certificate-of-need program and moratorium, Plaintiff would be able to open a home health agency at very minimal expense.  He already owns a physical therapy clinic and would simply be expanding his services to include home health services.

48.    Due solely to the moratorium and the barrier that would be imposed by the certificate-of-need program even in the absence of the moratorium, Plaintiff is unable to open and operate a home health agency in the Jackson metropolitan area or elsewhere in Mississippi.

II.    THE FEDERAL GOVERNMENT HAS ACKNOWLEDGED THE FAILURE OF CERTIFICATE-OF-NEED PROGRAMS.

49.    In the mid-1960s, state and local governments first established certificate-of-need programs to allocate federal funding for the creation of hospitals. Specifically, the government established certificate-of-need laws in a misguided attempt to ensure the financial viability of hospitals paid for by tax dollars.

50.    The first certificate-of-need programs were based on the premise that restricting the supply of health care would somehow lead to greater control over health care costs. Specifically, early certificate-of-need programs involved governments dividing health care services by geographic regions and then constraining the supply of hospital beds in an attempt to control health care costs.

51.    But constraining the supply of hospital beds and dividing the market for health care services only insulated existing hospitals from new competition.

52.    Hospitals were the first to recognize that they would benefit financially from certificate-of-need laws and their inherent restriction on competition.

53.    In In 1968, the American Hospital Association began a nationwide lobbying campaign to create certificate-of-need programs. This campaign included drafting model legislation.

54.    By 1975, twenty seven (27) states had enacted certificate-of-need programs as a result of the American Hospital Association's lobbying efforts.

55.    Congress then noticed the American Hospital Association's lobbying efforts. At the time, Medicare and Medicaid reimbursements were based on a hospital's actual expenditures. This system allowed hospitals receiving federal funding to recoup expenditures even when they

were inefficient. Thus, Congress believed it could hold hospitals accountable for costs by requiring new medical facilities to demonstrate that they were needed in a community.

56.    Congress passed the National Health Planning and Resources Development Act of 1974 ("NHPRDA"), which required states to adopt certificate-of-need programs in order to receive federal health care subsidies.

57.    NHPRDA also guaranteed federal funding for administration of state certificate-of-need programs that met federal guidelines.

58.    As a result of NHPRDA, every state except Louisiana had implemented a certificate-of-need program by 1980.

59.    But the experiment with certificate-of-need programs was short lived. In 1984, Congress restricted the Medicare and Medicaid reimbursement system to the current fee-for-service model. Under this model, hospitals receive a fixed amount for each patient regardless of the hospital's actual expenditures.

60.    In 1986, Congress repealed NHPRDA, eliminating the federal requirement and funding for state certificate-of-need programs.

61.    Congress's repeal of NHPRDA was based on three reasons.

62.    First, restricting the Medicare and Medicaid reimbursement system to a fee-for-service model eliminated the original rationale for encouraging states to adopt certificate-of-need programs.

63.    Second, Congress found there was no evidence that certificate-of-need programs advanced their goal of lowering health care costs or even slowing the growth of health care costs. In fact, the evidence showed that certificate-of-need programs resulted in increased health care costs.

64.     Third, Congress determined that certificate-of-need programs produced detrimental effects as local officials took myopic or parochial views of what medical services a community "needed."

65.     At least four times since 1986, the federal government has reaffirmed its conclusion that certificate-of-need programs raise costs and harm patients.

66.     A 1988 Staff Report of the Bureau of Economics in the Federal Trade Commission concluded that certificate-of-need programs harm consumers and raise health care costs by: (1) barring new health care providers and (2) encouraging hospitals to avoid using more-efficient (but certificate-of-need-restricted) services and equipment in favor of less efficient (but certificate-of-need-exempt) services and equipment.

67.     Then, in 2004, the Federal Trade Commission and United States Department of Justice issued a joint report reaffirming the 1988 study.  Based on hearing testimony, a workshop, and independent research, the federal agencies concluded that:

> States with Certificate of Need [("CON")] programs should reconsider whether these programs best serve their citizens' health care needs.  The [agencies] believe that, on balance, CON programs are not successful in containing health care costs, and that they pose serious anticompetitive risks that usually outweigh their purported economic benefits.  Market incumbents can too easily use CON procedures to forestall competitors from entering an incumbent's market…. [T]he vast majority of single-specialty hospitals – a new form of competition that may benefit consumers – have opened in states that do not have CON programs.  Indeed, there is considerable evidence that CON programs can actually increase prices by fostering anticompetitive barriers to entry.  Other means of cost control appear to be more effective and pose less significant competitive concerns.

68.     Again, in 2016, the Federal Trade Commission and the United States Department of Justice issued a joint statement at the request of South Carolina state officials who were considering repealing that state's certificate-of-need laws.  The federal agencies concluded that:

CON laws, when first enacted, had the laudable goals of reducing health care costs and improving access to care.[]  However, after considerable experience, it is now apparent that CON laws can prevent the efficient functioning of health care markets in several ways that may undermine those goals.  First, CON laws create barriers to entry and expansion, limit consumer choice, and stifle innovation.  Second, incumbent firms seeking to thwart or delay entry or expansion by new or existing competitors may use CON laws to achieve that end.  Third, … CON laws can deny consumers the benefit of an effective remedy following the consummation of an anticompetitive merger.  Finally, the evidence to date does not suggest that CON laws have generally succeeded in controlling costs or improving quality.

69.     Finally, as recently as November 13, 2020, two of the Commissioners on the Federal Trade Commission issued a joint statement in support of the Commission's unanimous vote to challenge a Tennessee hospital's acquisition of two other hospitals, writing specifically to "express concern about the barriers to robust hospital competition that exist in states with Certificate of Need (CON) laws."  The Commissioners noted that:

For decades, the FTC has advocated against CON laws – on the books in 35 states and the District of Columbia – because they prevent health care providers from responding quickly to meet market demand.  Too often, that can mean too little or too expensive medical treatment and insurance payments....  The FTC's competition advocacy is premised on research indicating that displacing free market competition with CONs is associated with fewer hospitals, higher costs, lower quality of service, and increased mortality. Fresh illustrations arose during the COVID-19 pandemic: CONs threatened to stifle efforts to ensure a sufficient supply of hospital beds, prompting authorities in many states (including Tennessee) to repeal, waive, or suspend these restrictions.

70.     There are four decades of academic research supporting the positions of the Federal Trade Commission and the United States Department of Justice.[1]

---

[1] *See, e.g.*, Matthew D. Mitchell, *Do Certificate-of Need Laws Limit Spending?*, (Mercatus Working Paper, Mercatus Center at Geo. Mason Univ., Sept. 2016) (summarizing four decades of studies); Christopher Koopman & Thomas Stratmann, *Certificate-of-Need Laws and North Carolina: Rural Health Care, Medical Imaging, and Access* (May 17, 2016); Vivian Ho, Meei-Hsiang Ku-Goto & James G. Jollis, *Certificate of Need (CON) for Cardiac Care: Controversy over the Contributions of CON*, HSR: Health Services Research 44:2, Part I, Apr. 2009; Ho & Ku-Goto, *State Deregulation and Medicare Costs for Acute Cardiac Care*, Medical Care Research And Review (2013); Molly S. Myers & Kathleen M. Sheehan, *The Impact of Certificate of Need Laws on Emergency Department Wait Times*, 35 J. PRIV. ENTER. 59 (2020); James Bailey, *The Effect of Certificate of Need Laws on All-Cause Mortality*, HSR: Health Services Research 53:1 (Feb. 2018); Maureen Ohlhausen, *Certificate of Need Laws: A Prescription for Higher Costs*, Antitrust Magazine 50, 52 (Dec. 21, 2015); Lauretta Higgins Wolfson, State Regulation of Health Facility Planning: The Economic Theory and Political Realities of Certificate of Need, 4 Depaul Journal of Health

71.     Since 1986, there has been no federal authorization for certificate-of-need programs.

72.     Despite the end of the federal authorization of certificate-of-need programs, lobbying efforts by hospitals and health care providers have kept many certificate-of-need requirements in place in the majority of states, including Mississippi.

73.     At least twelve states have eliminated their certificate-of-need programs altogether. There is no evidence of any negative effects in those states.

74.     Moreover, any potential justification for certificate-of-need programs simply cannot be applied in the home health context.

## III.    MISSISSIPPI'S BURDENSOME CERTIFICATE-OF-NEED REQUIREMENTS PREVENT ENTREPRENEURS FROM OFFERING SPECIALIZED, COST-EFFECTIVE HOME HEALTH SERVICES.

75.     According to the Mississippi State Department of Health, the ostensible, stated purpose of Mississippi's certificate-of-need program is "to prevent unnecessary duplication of health resources; provide cost containment, improve the health of Mississippi residents; and increase the accessibility, acceptability, continuity and quality of health services."  15 Miss. Admin. Code Pt. 9, Subpt. 91, R. 1.1.

---

Care Law 261, 270 (2001); Emily Whalen Parento, *Certificate of Need in the Post-Affordable Care Act Era*, 105 Kentucky Law Journal 201, 228 (2017); Christopher J. Conover & Frank A. Sloan, *Does Removing Certificate-of-Need Regulations Lead to a Surge in Healthcare Spending?*, 23 Journal of Health Policy, Politics, & Law 455, 469 (1998); David C. Grabowski, *The Effects of CON Repeal on Medicaid Nursing Home and Long-Term Care Expenditures*, 40 Inquiry 146, 154 (2003); Patrick A. Rivers, *Does Certificate of Need Really Contain Hospital Costs in the United States?*, 66 Health Education Journal 229, 240-41 (2007); Patrick A. Rivers, *The Effects of Certificate of Need Regulation on Hospital Costs*, Journal of Healthcare Finance, Summer 2010, 1, 10-11; Michael D. Rosko & Ryan L. Mutter, *The Association of Hospital Cost-Efficiency with Certificate-of-Need Regulation*, 71 Medical Care Research and Review 280, 292-94 (2014); Thomas Stratmann & Jake Russ, *Do Certificate-of-Need Laws Increase Indigent Care*? 11-12 (Mercatus Center, George Mason Univ., Working Paper No. 14-20, 2014); Stephen M. Shortell & Edward F.X. Hughes, *The Effects of Regulation, Competition, and Ownership on Mortality Rates Among Hospital Inpatients*, 318 New England Journal of Medicine 1100, 1101, 1102 (1988); Vivian Ho, *Certificate of Need (CON) for Cardiac Care: Controversy Over the Contributions of CON*, 44 Health Services Research, 483, 493-96 (2009).

76.     Mississippi's certificate-of-need program prevents the spread of needed health resources.

77.     Mississippi's certificate-of-need program fails to contain the cost of health services.

78.     Mississippi's certificate-of-need program fails to improve the health of Mississippi residents.

79.     Mississippi's certificate-of-need program fails to increase the accessibility, acceptability, continuity, or quality of health services.

80.     The actual purpose of Mississippi's certificate-of-need program is to offer health care providers a government-backed shield from competition.

81.     Anyone who operates a health care facility, including a home health agency, without a certificate of need may have the facility's license revoked and may be charged with a misdemeanor criminal offense punishable by a fine of up to One Thousand Dollars ($1,000.00) *per day* of continuing violation.  Miss. Code § 41-7-209.

## A.  The Certificate-of-Need Review Criteria Would Irrationally Prevent Plaintiff From Opening A Home Health Agency, Even If The Moratorium Did Not Exist.

82.     Mississippi's certificate-of-need program broadly prohibits anyone from establishing, relocating, expanding, or making key changes to "health care facilities" without first obtaining a certificate of need.  *Id*. at § 41-7-191(1); *see also* 15 Miss. Admin. Code Pt. 9, Subpt. 91, R. 1.1.

83.     The statutory definition of a "health care facility" expressly includes home health agencies.  Miss. Code § 41-7-173(h)(ix).

84.     Notwithstanding the expansive definition of "health facility," many facilities, such as physician private practice offices, personal care residential-living and assisted-living facilities, abortion facilities, veterans homes, and health care facilities owned and/or operated by the State

of Mississippi or it's agencies, are either exempt or not subject to the certificate-of-need program. *See Id.* at §§ 41-7-173(h) and 41-7-191.

85.     All certificate-of-need applications are reviewed against the following sixteen (16) separate, general criteria: (a) consistency with the state health plan; (b) long range plan; (c) availability of alternatives; (d) economic viability; (e) need; (f) accessibility; (g) ability to record and maintain certain information; (h) relationship to existing health care system; (i) availability of resources; (j) relationship to ancillary or support services; (k) effect on health professional training; (l) access by health professional schools; (m) special needs and circumstances of entities providing services or resources to individuals outside their health service area; (n) impact of construction on cost containment, environmental protection, and energy conservation; (o) competing applications; and (p) quality of care provided in the past (only for applications made by existing facilities).  15 Miss. Admin. Code Pt. 9, Subpt. 91, R. 8.1.

86.     The state health plan is a document created by the Defendant and MSDH and updated every two years.

87.     The state health plan contains determinations of "need" for various types of health care services.

88.     If the moratorium did not exist, the Defendant and MSDH would determine the need for home health services in a particular county by estimating the average number of home health care visits per 1,000 elderly individuals in a ten (10)-state region that includes Mississippi and nine (9) other surrounding states (currently based on 2016 Medicare reimbursement data), and comparing that average to the actual number of home health care visits per 1,000 elderly individuals in the county to be served by the new home health agency.  The difference between the ten (10)-state average number of patient visits, and the actual patient visits in a particular

county is considered the "need."  This "need" is then divided by the average number of visits per patient in the ten (10)-state region (currently thirty four (34) visits per patient based on 2016 Medicare reimbursement data) to determine the number of patients in a particular county who currently have an unmet need for home health care services.  Defendant and MSDH use this crude formula to determine the need for home health services in each of Mississippi's eighty-two (82) counties.  *See FY 2020 Mississippi State Health Plan*, pg. 184-88, https://msdh.ms.gov/msdhsite/_static/resources/10034.pdf (last visited December 9, 2020).

89.    If the moratorium did not exist, and the need in a county was fifty (50) people or more, a new home health agency may be allowed.  *Id*. at pg. 187.

90.    Even if the moratorium did not exist, if the need in a county was fewer than fifty (50) people, a new home health agency would not be allowed.  *Id*.

91.    If the moratorium did not exist, the person applying for a certificate of need for a new home health agency would be responsible for documenting that the county proposed to be served has an unmet need equal to fifty (50) patients.  *Id*.

92.    If the moratorium did not exist, the person applying for a certificate of need for a new home health agency would also have to provide:

(a) Letters of intent from physicians who will utilize the proposed services;

(b) Information indicating the types of cases physicians would refer to the proposed agency and the projected number of cases by category expected to be served each month for the initial year of operation;

(c) Information from physicians who will utilize the proposed service indicating the number and type of referrals to existing agencies over the previous twelve (12) months;

(c) Evidence that patients or providers in the area proposed to be served have attempted to find services and have not been able to secure such services;

(d) Projected operating statements for the first three (3) years, including:

     (i)     Total cost per licensed unit;

     (ii)    Average cost per visit by category of visits; and

     (iii)   Average cost per patient based on the average number of visits per patient; and

(e) Information concerning whether the proposed agency would provide services different from those available from existing agencies. *Id.*

93.     The crude formula used by the Defendant and MSDH in the state health plan does not determine the actual "need" for home health services in Mississippi.

94.     Even if a county has a demonstrated "need" for home health care (under the terms of the state health plan), the Defendant can still deny a certificate-of-need application based on the other broad criteria.

95.     Upon information and belief, the Defendant and/or his predecessors in office have denied certificate-of-need applications that demonstrated a "need" for various health services (under the terms of the state health plan) based on his or their review of the other sixteen (16) general review criteria.

96.     MSDH has complete discretion in formulating the certificate of need review criteria.

97.     The Defendant has complete discretion in applying the certificate of need review criteria.

98.     Upon information and belief, regardless of the facts presented in a certificate-of-need application, the Defendant or his successors in office can always find a reason to deny a certificate-of-need application if he or they want to.

99.     Upon information and belief, Defendant and/or his predecessors in office apply or have applied the certificate-of-need program in an anticompetitive manner.

100.    Upon information and belief, Defendant possesses no evidence that preventing home health agencies from opening increases access to safe, quality, affordable home health services in the Jackson metropolitan area or elsewhere in Mississippi, or achieves any other legitimate government interest.

101.    Preventing Plaintiff from operating a home health agency in the Jackson metropolitan area or elsewhere in Mississippi protects incumbent home health providers from competition – which is the true purpose of the certificate-of-need requirement.

102.    The application of the certificate-of-need program harms both entrepreneurs and patients.

103.    The state health plan and certificate-of-need review criteria discourage many entrepreneurs from applying for certificates of need at all.

### B. The Certificate-of-Need Application and Hearing Process Benefit Existing Providers While Keeping New Home Health Agencies Out of Business.

104.    The certificate-of-need application process is both time consuming and expensive.

105.    The fee associated with a certificate-of-need application varies between $500.00 and $25,000.00 depending on the estimated capital expenditure associated with the proposed health facility.  15 Miss. Admin. Code Pt. 9, Subpt. 91, R. 3.11.  And this only accounts for the fee paid to Defendants to have the certificate-of-need application reviewed.  This fee does not include any expenditures of time and money necessary to complete the application.

106.    Upon submission, MSDH staff members review applications for completeness. Once an application is deemed complete, MSDH is required to notify the public about the certificate-of-need application by publishing it on the MSDH website, and provide notice that the public is invited to provide comment on the application.  *Id*. at R. 3.7.

107.    Once an application is deemed complete, MSDH is also required to provide notice to "affected persons."  Such affected persons can request a public hearing to oppose the application.  *Id*. at R. 3.12.

108.    Affected persons are also allowed to file motions to strike or dismiss an application, or motions to compel discovery of information from the applicant, as well as other pretrial motions and evidentiary motions.  *Id*. at R. 4.4.

109.    The affected persons who oppose applications are not the patients or users of the proposed health care facility.  The parties that object to certificate-of-need applications are always (or almost always) existing health care providers and the applicant's future direct competitors.

110.    The process that allows affected persons to oppose certificate-of-need applications works as a competitor's veto, preventing new businesses from opening.

111.    Upon information and belief, some certificate-of-need applications are withdrawn or left to be denied after an affected person files opposition to the application.

112.    Upon information and belief, many medical providers decide not to apply for a certificate of need due to the expensive, arduous, arbitrary, and anticompetitive nature of the application process.

113.    The applicant bears the heavy burden of proving that the proposed project substantially complies with the plans, standards, and criteria prescribed for such projects by the governing legislation, by the state health plan, and the adopted rules and regulations of the Mississippi State Department of Health.  *Id*. at R. 5.2.

114.    The decision of whether to approve or deny an application is made by the Defendant.  However, the parties can request a public hearing, overseen by a hearing officer, to provide a record for the Defendant to review in making his decision.  *Id*.

19

115.    A public hearing often amounts to a full-blown trial.  Persons opposing the application have the right to be represented by counsel, to present oral or written arguments and evidence against the application or to conduct questioning of the applicant, and to otherwise oppose the application through testimony and exhibits.  *Id*. at R. 4.1.

116.    Even applications that comply with the need calculations can be and are denied by the Defendant on other grounds and/or have been so denied by his predecessors in office.

117.    Upon information and belief, when deciding whether to grant a certificate of need, Defendant and/or his predecessors in office consider or have considered whether doing so would cause an existing health care facility to lose business.

118.    The certificate-of-need application and review process, as created by MSDH and carried out by the Defendant and his predecessors and successors in office, prevents entrepreneurs like Plaintiff from offering cost-effective and specialized home health services, despite the fact that actual need for these services exists in the Jackson metropolitan area and throughout Mississippi.

119.    Because the current certificate-of-need application and review process benefits existing health care providers, established health care providers and their trade organizations often lobby to prevent Mississippi from modernizing or eliminating its certificate-of-need program.

IV.    **Mississippi's Moratorium on the Establishment or Expansion of Home Health Agencies Prevents Entrepreneurs From Offering Specialized, Cost-Effective Home Health Services.**

120.    The original purpose of Mississippi's moratorium on the issuance of certificates of need for the establishment or expansion of home health agencies was to protect existing home health agencies from competition with hospitals, which were responding to strong incentives to start their own home health agencies.

121.    According to the Mississippi State Department of Health, in 1985 there were 41,923 home health patients served in Mississippi, and by 2014 that number had grown to 123,291 – a 194 percent increase.    *See* Annual Report on Home Health Agencies, pgs. 83-86, http://www.msdh.state.ms.us/msdhsite/index.cfm/30,8151,83,pdf/HomeHealth2015.pdf    (last visited December 9, 2020).  Despite this, the moratorium was never lifted.

122.    Upon information and belief, as the need for home health services in Mississippi increases, existing home health agencies increase their staffing and capacity, thereby preventing the "need" for home health services (as calculated by the state health plan) from ever becoming acute enough to lead to the repeal of the moratorium.

123.    Due to the moratorium, applications for a certificate of need to open a home health agency will not even be reviewed by the Mississippi State Department of Health.  *See FY 2020 Mississippi State Health Plan*, pg. 186, https://msdh.ms.gov/msdhsite/_static/resources/10034.pdf (last visited December 9, 2020).

124.    Due to the moratorium, it is impossible for entrepreneurs to start a home health agency in Mississippi.

125.    Anyone who opened a new home health agency would be forced to do so without a certificate of need, and be subject to having their license revoked and being charged with a misdemeanor criminal offense punishable by a fine of up to One Thousand Dollars ($1,000.00) *per day* of continuing violation.  Miss. Code § 41-7-209.

126.    Even if there were a legitimate government interest in maintaining Mississippi's certificate-of-need program, which there is not, no legitimate government interest is served by an absolute moratorium on the issuance of new certificates of need for the establishment or expansion of home health agencies.

127.    Even if the moratorium once served a legitimate government interest, which it did not, no legitimate government interest is served by continuing to enforce the nearly forty (40)-year-old moratorium on the issuance of new certificates of need for the establishment or expansion of home health agencies.

128.    Upon information and belief, Defendant possesses no evidence that preventing home health agencies from opening increases access to safe, quality, affordable home health services in the Jackson metropolitan area or elsewhere in Mississippi, or achieves any other legitimate government interest.

**V.    PLAINTIFF CAN AND WOULD COMPLY WITH OTHER REQUIREMENTS.**

129.    Mississippi's certificate-of-need law and moratorium are the *only* things preventing Plaintiff from operating a home health agency.  He is ready, willing, and able to comply with all other legal requirements.

130.    Plaintiff will comply with Mississippi's statutory requirements for home health agencies in accord with Miss. Code § 41-71-1, *et seq.*, and other applicable statutes.

131.    Plaintiff will comply with the minimum standards of operation for home health agencies in accord with 15 Miss. Admin. Code Pt. 16, Subpt. 1, R. 46.1*, et seq.*, and other applicable rules and regulations.

**INJURY TO PLAINTIFF**

132.    Mississippi's moratorium imposes an absolute ban on the establishment of new home health agencies.

133.    Even if the moratorium did not exist, Mississippi's certificate-of-need program would impose a nearly insurmountable barrier to the opening of a home health agency.

134.    Plaintiff Charles Slaughter has long desired to expand his physical therapy practice to offer home health services in the Jackson metropolitan area or elsewhere in Mississippi.

135.    Plaintiff is personally aware of individuals throughout Mississippi who need or would prefer home health services, and who are not currently receiving those services.

136.    Moreover, the need for home health services has been dramatically increased by the outbreak of COVID-19, as patients seek to avoid public healthcare facilities and other businesses, and as more elderly patients seek to delay or prevent the need for institutionalization in nursing homes that have been prone to outbreaks.

137.    Plaintiff cannot offer cost-effective home health services in Mississippi, because of the moratorium on the issuance of new certificates of need for the establishment of home health agencies.  As a result, Plaintiff is suffering real, ongoing economic injury.

138.    Due to the moratorium, it is futile for Plaintiff to submit a certificate-of-need application for the establishment of a home health agency or an application for a home health agency license.

139.    Even if the moratorium did not exist, Plaintiff would not be able to offer cost-effective home health services in Mississippi because he would not be able to obtain a certificate-of-need.  As a result, Plaintiff is suffering real, ongoing economic injury.

140.    Even if the moratorium did not exist, Plaintiff would not be able to offer cost-effective home health services in Mississippi because he would not be able to obtain a certificate-of-need in a cost-effective and time-effective manner.  As a result, Plaintiff is suffering real, ongoing economic injury.

141.    Plaintiff cannot receive a certificate of need, because the certificate-of-need program favors incumbent providers.

142.    Even if the moratorium did not exist, going through the certificate-of-need application process would cost Plaintiff thousands of dollars and involve hundreds of hours of time lost.

143.    Even if the moratorium did not exist, Plaintiff would not want to risk losing thousands of dollars and hundreds of hours on a certificate-of-need application that could be denied for arbitrary or anticompetitive reasons.

144.    Plaintiff is prepared to and has the ability to expand his business to provide home health services in the Jackson metropolitan area or elsewhere in Mississippi in compliance with all other relevant legal requirements, such as those for safety and quality.

145.    But for the existence of Mississippi's moratorium on the issuance of certificates of need for the establishment of new home health agencies, and for the certificate-of-need requirement itself, Plaintiff could legally expand his business to begin providing home health services in the Jackson Metropolitan area or elsewhere in Mississippi.

146.    Plaintiff has no other adequate remedy at law.

## CONSTITUIONAL VIOLATIONS

### Count 1: Equal Protection

147.    Plaintiff incorporates and re-alleges all the allegations set forth above.

148.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

149.    The equal protection guarantees of Article 3, Section 14 of the Mississippi Constitution secure the equal protection of the laws.

150.    Mississippi's moratorium on the issuance of new certificates of need for the establishment of home health agencies irrationally treats new home health agencies differently from materially indistinguishable existing home health agencies.

151.    There is no rational reason to treat home health agencies differently based on whether or not they obtained a certificate-of-need before the moratorium went into effect, or based on who the home health agency's owner is.

152.    Mississippi's moratorium on the issuance of new certificates of need for the establishment of home health agencies irrationally treats new home health agencies differently from other materially indistinguishable health care facilities or providers.

153.    There is no rational reason to treat home health agencies differently than other health care facilities or providers.

154.    There is no rational reason to subject home health agencies to a moratorium while not subjecting similarly situated health care facilities to a moratorium.

155.    Even if the moratorium once served a legitimate government interest, which it did not, changed circumstances since the enactment of the moratorium have rendered it irrational.

156.    Mississippi's certificate-of-need program irrationally discriminates between different kinds of health care providers.  Many health care facilities, such as such as physician private practice offices, personal care residential-living and assisted-living facilities, abortion facilities, veterans homes, and health care facilities owned and/or operated by the State of Mississippi or it's agencies, do not require certificates of need.

157.    There is no rational reason to subject home health agencies to a certificate-of-need requirement while exempting other similarly situated facilities.

158.    Even if Mississippi's certificate-of-need program achieved any of its purported purposes for some types of health care services, which it does not, the certificate-of-need program does not achieve any legitimate state purpose in the home health context.

159.    No purported justification for certificates of need in other contexts, such as control of capital expenditures or cross-subsidization, exists in the home health context.

160.    Artificially limiting the supply of home health services does not lower consumer cost, increase access to care, increase the quality of care, or encourage innovation.

161.    Artificially limiting the supply of home health services increases consumer costs, decreases access to care, decreases the quality of care, and discourages innovation.

162.    The application of the certificate-of-need program to services like those that Plaintiff would like to provide does not advance any conceivable legitimate state interest.

163.    Mississippi's home health agency licensure requirements and minimum standards of operation are intended to advance the state's interest in "promoting the health, safety and welfare of the public." Miss. Code § 41-71-13; see also 15 Miss. Admin. Code Pt. 16, Subpt. 1, R. 46.1, et seq. Mississippi's certificate-of-need program does not advance those interests.

164.    The true purpose of Mississippi's moratorium on the issuance of new certificates of need for the establishment of home health agencies is to protect established health care facilities from competition.

165.    The true purpose of Mississippi's certificate-of-need program is to protect established health care facilities from competition.

166.    Economic protectionism is not a legitimate state interest.

167.    Plaintiff has been and continues to be harmed by enforcement of Mississippi's moratorium and certificate-of-need program requirement for home health agencies.

168.    Unless Mississippi's moratorium and certificate-of-need requirement for home health agencies are declared unconstitutional and permanently enjoined, Plaintiff will continue to suffer great and irreparable harm.

## Count 2:  Substantive Due Process

169.    Plaintiff incorporates and re-alleges all the allegations set forth above.

170.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects the right to earn an honest living in the occupation of one's choice free from unreasonable government interference.

171.    The Due Process of Law Clause of Article 3, Section 14 of the Mississippi Constitution protects the right to earn an honest living in the occupation of one's choice free from arbitrary or capricious government interference.

172.    Mississippi's moratorium on the issuance of new certificates of need for the establishment of home health agencies violates Plaintiff's right to earn a living because it does not advance any conceivable legitimate state interest.

173.    The application of the moratorium to services like those that Plaintiff would like to offer does not advance any conceivable legitimate state interest.

174.    Even if the moratorium once served a legitimate government interest, which it did not, changed circumstances since the enactment of the moratorium have rendered it irrational.

175.    Mississippi's certificate-of-need program violates Plaintiff's right to earn a living because it does not advance any conceivable legitimate state interest.

176.    The application of the certificate-of-need program to services like those that Plaintiff would like to offer does not advance any conceivable legitimate state interest.

177.    Mississippi's home health agency licensure requirements and minimum standards of operation are intended to advance the state's interest in "promoting the health, safety and welfare of the public."  Miss. Code § 41-71-13; *see also* 15 Miss. Admin. Code Pt. 16, Subpt. 1, R. 46.1*, et seq*.  Mississippi's certificate-of-need program does not advance those interests.

178.    Ignoring the Federal Trade Commission and Department of Justice reports that conclude that certificate-of-need programs "pose serious anticompetitive risks" is irrational.

179.    Ignoring four decades of academic and government studies saying certificate of need laws accomplish nothing more than protecting monopolies held by incumbent companies is irrational.

180.    Ignoring the fact that at least twelve states have gotten rid of their certificate-of-need programs entirely, without any negative health or safety consequences, is irrational.

181.    Ignoring the fact that the majority of states do not require certificates of need for home health agencies and have not experienced negative health or safety consequences is irrational.

182.    Ignoring that only one other state in the United States that imposes a moratorium on the issuance of new certificates of need for the establishment or expansion of home health agencies is irrational.

183.    The true purpose of Mississippi's moratorium on the issuance of new certificates of need for the establishment of home health agencies is to protect established health care facilities from competition.

184.    The true purpose of Mississippi's certificate-of-need program is to protect established health care facilities from competition.

185.    Economic protectionism is not a legitimate state interest.

186.    Even if Mississippi's certificate-of-need program achieved any of its purported purposes for some types of health care services, which it does not, the certificate-of-need program does not achieve any legitimate state purpose in the home health context.

187.    No purported justification for certificates of need in other contexts, such as control of capital expenditures or cross-subsidization, exists in the home health context.

188.    Mississippi's protectionist moratorium and certificate-of-need program harms entrepreneurs, like Plaintiff, and further deprives consumers of home health services of additional options when choosing a home health provider.

189.    Plaintiff has been and continues to be harmed by enforcement of Mississippi's moratorium and certificate-of-need program requirement for home health agencies.

190.    Unless Mississippi's moratorium and certificate-of-need requirement for home health agencies are declared unconstitutional and permanently enjoined, Plaintiff will continue to suffer great and irreparable harm.

## REQUEST FOR RELEIF

WHEREFORE, Plaintiffs respectfully request the following relief:

A.    An entry of judgment declaring Mississippi's administrative and statutory moratoriums on the issuance of certificates of need for the establishment of home health agencies are unconstitutional on their face and as applied;

B.    And entry of judgment declaring that Mississippi's certificate-of-need requirement for home health agencies and its implementing rules and regulations are unconstitutional on their face and as applied;

C.    A permanent injunction prohibiting Defendants from enforcing the challenged statutory provisions, administrative rules and regulations, and policies and

practices;

       D.    An award of attorneys' fees, costs, and expenses in this action pursuant to

42 U.S.C. § 1988; and

       E.    Any other relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED, this the 9th day of December, 2020.

                          /s/ *Aaron R. Rice*
                        Aaron R. Rice
                        MS Bar No. 103892
                        MISSISSIPPI JUSTICE INSTITUTE
                        520 George St.
                        Jackson, MS 39202
                        Tel: (601) 969-1300
                        Email: aaron.rice@msjustice.org

                        A. Seth Robbins
                        MS Bar No. 103096
                        WATSON JONES PLLC
                        2829 Lakeland Drive, Suite 1502
                        Flowood, Mississippi 39232
                        Tel: 601.939.8900
                        Fax: 601.932.4400
                        Email: srobbins@wjpllc.com

                        *Attorneys for Plaintiff*

30