IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
Northern Division

| | |
|---|---|
| **CHARLES SLAUGHTER** | **PLAINTIFF** |
| vs. | Civil Action No. 3:20-cv-789-CWR-FKB |
| **DR. THOMAS E. DOBBS, in his Official Capacity as the Mississippi State Health Officer** | **DEFENDANT** |

## MEMORANDUM IN SUPPORT OF INTERVENORS' MOTION TO DISMISS

### INTRODUCTION AND SUMMARY

Charles Slaughter's ("Slaughter") Complaint asks this Court to declare that both the Mississippi Health Care Certificate of Need Law of 1979, Miss. Code Ann. §§ 41-7-171 – 41-7-209 ("CON laws"), generally, and in particular the Mississippi statutory moratorium, Miss. Code Ann. § 41-7-191(9) ("legislative moratorium"), on the issuance of CONs for home health agencies,[1] violate the equal protection and due process clauses of the United States Constitution and the Mississippi Constitution.[2]

Slaughter's complaint should be dismissed for failure to state a claim. To state a claim for violation of equal protection and due process rights, he must, but fails to, negate the existence of

---

[1] The legislative moratorium was first enacted in 1983 for a one-year period. The Legislature extended the moratorium periodically for several years until the time limit was removed to make it a continuing, indefinite legislative moratorium. *See, e.g.,* Laws 1983, Ch. 484, § 5; Laws 1984, Ch. 505, § 1; Laws 1985, Ch. 534, § 8; Laws 1986, Ch. 437, § 40; Laws 1987, Ch. 515, § 6; Laws 1989, Ch. 510, § 2; Laws 1990, Ch. 510, § 2.

[2] Slaughter's Complaint also attacks an alleged administrative moratorium, but this claim is moot because the administrative moratorium ended in 1982.

**EXHIBIT 2**

a reasonably conceivable rational basis for the CON laws and the legislative moratorium. And while inconvenient or costly for Mr. Slaughter, it is reasonably conceivable that the CON laws and legislative moratorium serve rational, legitimate purposes, including ensuring that Medicaid/low-income and rural Mississippians have access to home health care. Equal protection and due process are not licenses for the courts to judge the wisdom, fairness or logic of legislative choices. The Mississippi legislature has chosen repeatedly to retain the CON laws and the legislative moratorium. Whether a reasonably conceivable rational basis exists is a question of law, hence this motion to dismiss.

## FACTUAL BACKGROUND

A Certificate of Need, or CON, is a written order of the Mississippi State Department of Health ("MSDH") finding, *inter alia*, that a proposed health care service provider satisfies the plans, standards and criteria set forth in the CON Laws and MSDH rules and regulations. The CON is Mississippi's regulatory mechanism designed "to prevent unnecessary duplication of health resources; provide cost containment, improve the health of Mississippi residents; and increase the accessibility, acceptability, continuity and quality of health services." 15 Code Miss. R. Pt. 9, Subpt. 91, R. 1.1.

The Mississippi State Board of Health ("MSBH") is charged with various duties, including to formulate public policies regarding public health matters; to adopt MSDH regulations embodying those public policies; and to annually review Mississippi statutes affecting public health to make recommendations to the Legislature to enhance public health services. *See* Miss. Code. Ann. §§ 41-3-5.1, 41-3-6 & 41-3-15.

MSDH regulations ("CON Manual") expressly state as a matter of "public policy" that the CON is the means chosen by the Mississippi Legislature and the MSBH to avoid unneeded

duplication of health care resources, contain costs, improve the health of Mississippi residents, and to make quality health care more accessible, acceptable, and continuous for Mississippians. 15 Code Miss. R. Pt. 9, Subpt. 91, R. 1.1. This regulation further provides in part:

> The Department will disapprove a CON application if the applicant fails to provide or confirm that the applicant shall provide a reasonable amount of indigent care or has admission policies which deny access to care by indigent patients.
>
> The Department will disapprove a CON application if approval of the request would have significant adverse effect on the ability of an existing facility or service to provide Medicaid/indigent care.
>
> The State Health Officer shall determine whether the amount of indigent care provided or to be offered is "reasonable." The Department has determined that a reasonable amount of indigent care is an amount which is comparable to the amount of such care offered by other providers of the requested service within the same, or proximate, geographic area.

*Id.* Thus, it is readily apparent that the MSBH and MSDH intend, in part, that the CON laws serve as a means to increase access to quality health care for Medicaid/low-income/indigent individuals. Moreover, this MSDH regulation recognizes the potential that unfettered competition could impede the ability of existing health care providers to service Medicaid/low-income/indigent individuals.

The MSDH regularly reviews and updates the official State Health Plan to identify state health needs and establishes standards and criteria for health-related activities which require Certificate of Need. *See* Miss. Code Ann. §§ 41-7-185(g) & 41-7-173(t); 15 Code Miss. R. Pt. 9, Subpt. 91, R. 1.14 ee.

Because the legislative moratorium, Miss. Code Ann. § 41-7-191(9), is still in effect, the CON Manual currently recites that the MSDH is "[p]resently" prohibited from issuing a CON for a new home health agency. 15 Code Miss. R. Pt. 9, Subpt. 91, R. 2.2. A similar reference to the

3

legislative moratorium is found in the current, 2020 State Health Plan,[3] which also plainly states that the MSDH would in fact consider new CON applications for home health agencies if the moratorium were to be lifted:

> **If the present moratorium were removed** or partially lifted, MSDH would review applications for a CON for the establishment of a home health agency and/or the offering of home health services . . . . (emphasis added).[4]

*See* Exhibit 1 to Mtn. at p. 186.  The 2020 State Health Plan goes on to list, and explain the reasoning for, the many criteria (referenced in Slaughter's Complaint ¶¶ 85-92) the MSDH will consider in determining whether to issue a CON.  *Id.*  Notwithstanding Slaughter's claims that these criteria are onerous for him personally, these criteria were not created in a vacuum.  The State Health Plan is the product of analysis and input of the 11-member MSBH, the State Health Officer, numerous staff within not just the MSDH but also from a number of other state boards and agencies, "and numerous other organizations" as well.  *See* Ex. 1 to Mtn. at pp. 1-4.

---

[3] The current State Health Plan became effective July 1, 2020, well after the impact of the current pandemic was known.

[4] Slaughter's Complaint misinterprets the Plan by calling this an "administrative moratorium."  There was in fact a short-lived, nine-month administrative moratorium in the 1982-1987 State Health Plan.  *See* Exhibit 2 to Mtn. at p. 282. That Plan explained that at that time "[t]he data available indicate that all counties had more home health agencies authorized to serve the county than were actually doing business in the county."  *Id.*  "Therefore, a policy was adopted that placed a moratorium on the issuance of Certificates of Need for additional home health agencies from April 15, 1982 until December 31, 1982."  *Id.*  The legislative moratorium was enacted in 1983 as Miss. Code Ann. § 41-7-191(9).  Thus, the 1986 State Health Plan plainly states that the moratorium thereafter is due solely to the "Legislative Moratorium."  *See* Exhibit 3 to Mtn. at p. XIII-4.

While the legislative moratorium remains in effect, that does not mean it has been ignored. The Legislature has repeatedly updated the CON laws over the past 30 years.[5] In addition, the MSBH is charged by law with the annual duty "to review the statutes . . . affecting public health" and to recommend needed legislation to the Legislature. Miss. Code Ann. § 41-3-6. The MSBH meeting minutes dating back to 2003 are published on its website and do not include any recommendation to lift the moratorium. Nevertheless, as recently as the year 2020 and again in 2021, the Mississippi Legislature considered, but refused to act on, bills to lift the statutory moratorium on the issuance of CONs for new home health agencies. *See* 2020 H.B. 606; 2020 H.B. 605; 2021 SB 2747; 2021 H.B. 602. Thus, it is clear that the Legislature has intentionally decided that the legislative moratorium should remain in effect.

## ARGUMENT

### I.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule 12(b)(6), a "complaint must allege 'sufficient factual matter, accepted as true, to state a claim that is plausible on its face.'" *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Yet because a 12(b)(6) motion tests the legal sufficiency of the allegations in the complaint, this Court is not required to accept as true legal conclusions or unwarranted factual inferences. *Id.* "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (2007).

Moreover, in deciding a motion to dismiss, the court may consider matters of public record as well as documents attached to the motion that are referred to in the plaintiff's complaint and are

---

[5] The CON laws were amended in 1989, 1990, 1992, 1993, 1994, 1995, 1996, 1998, 1999, 2001, 2002, 2003, 2004, 2006, 2007, 2010, 2011, 2012, 2014, 2015, 2016, 2019 and 2020. *See* Miss. Code §§ 41-7-173, 41-7-191 & 41-7-201.

5

central to his claim. *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Thus, it is appropriate for this Court to consider Mississippi State Health Plan excerpts attached as exhibits to the motion.

## II. SLAUGHTER'S CONSTITUTIONAL CHALLENGES MUST FAIL BECAUSE HE CANNOT NEGATE EVERY CONCEIVABLE RATIONAL BASIS FOR MISSISSIPPI'S CON PROGRAM, INCLUDING THE STATUTORY MORATORIUM

Regarding equal protection, Slaughter argues that the moratorium "irrationally treats new home health agencies differently from materially indistinguishable existing home health agencies" and that the entire CON program "irrationally discriminates between different kinds of healthcare providers." Compl. [Document 1] ¶ 156. Similarly, as for the substantive due process argument, he argues that the United States and Mississippi Constitutions "protect[] the right to earn an honest living in the occupation of one's choice free from unreasonable government interference" and that the moratorium and certificate-of-need program violate his rights because they do not "advance any conceivable legitimate state interest." *Id.* ¶¶ 170-176. He continues that "[t]he true purpose of Mississippi's certificate of need program is to provide established health care facilities protection from competition" and that "[e]conomic protectionism is not a legitimate state interest." *Id.* ¶¶ 165 and 166.

Slaughter admits that "Mississippi's home health licensure requirements and minimum standards of operation are intended to advance the state's interest in 'promoting the health, safety and welfare of the public." *Id.* ¶ 163 (citing Miss. Code Ann. § 41-71-13 and 15 Miss. Admin. Code Pt. 16, Subpt. 1, R. 46.1). Slaughter cannot show that the CON program (along with the statutory moratorium) are not rationally related to this same goal.

### A. Slaughter's Equal Protection Claim Must Fail

A proper analysis of Slaughter's equal protection claim should start with *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–15 (1993), wherein the Supreme Court explained:

6

> **. . . equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification** that neither proceeds along suspect lines nor infringes fundamental constitutional rights **must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.** Where there are "plausible reasons" for [legislative] action, our inquiry is at an end. This standard of review is a paradigm of judicial restraint. The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted.
>
> On rational-basis review, a classification in a statute [] comes to us bearing a strong presumption of validity, and **those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it . . . .** In other words, **a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.**

(quotation marks and citations omitted) (emphasis added).[6] The Fifth Circuit has summarized this way: "The question is only whether a rational relationship exists between the [government action] and a conceivable legitimate objective. If the question is at least debatable, there is no substantive due process violation." *Residents Against Flooding v. Reinvestment Zone No. Seventeen*, 734 F.

---

[6] Slaughter's complaint does not allege that either the Mississippi CON laws or the statutory moratorium on CONs for home health create any suspect classification or interfere with a fundamental right. In fact, his complaint concedes that rational-basis review controls in this analysis. Compl. [Document 1] ¶¶ 150-158.

Slaughter does claim that the CON laws and the statutory moratorium interfere with his right to earn a living. Yet, the right to pursue a calling is not a fundamental right for purposes of the Equal Protection Clause. *See Madarang v. Bermudes*, 889 F.2d 251, 253 (9th Cir. 1989). If Slaughter claims that the CON laws and moratorium violate his privileges and immunities under the Fourteenth Amendment, that claim is foreclosed by the Supreme Court's decision in the *Slaughter–House Cases*, 83 U.S. 36, 79–80 (1872), which confined the reach of that clause to a set of national rights that does not include the right to pursue a particular occupation.

App'x 916, 919 (5th Cir. 2018) (quoting *Simi Inv. Co. v. Harris Cnty., Tex.*, 236 F.3d 240, 251 (5th Cir. 2000)).

Of particular significance to this motion to dismiss, the Fifth Circuit has held that "**[w]hether a governmental action passes rational basis muster is a question of law** that this court reviews de novo." *Gaalla v. Citizens Med. Ctr.*, 407 F. App'x 810, 814 (5th Cir. 2011) (citing *Simi Inv.*, 236 F.3d at 249) (emphasis added). Hence this motion to dismiss.[7]

Mississippi has a duty and vital role to protect the health and welfare of its citizens. Thus, social and economic legislation such as Mississippi's CON laws and statutory moratorium are to be accorded "a strong presumption of validity." *Beach Commc'ns*, 508 U.S. at 314. Accordingly, Slaughter's claims under the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment are subject to the rational basis standard of review, which requires a court to uphold a statute if it is reasonably conceivable that the statute is rationally related to any legitimate governmental interest. Any plaintiff challenging social and economic legislation under the rational basis test has an arduous task as he must "negative every conceivable basis which might support it." *Id.* at 315. This standard of review is "a paradigm of judicial restraint." *Id.*

---

[7] Admittedly, as Slaughter references in his complaint, another federal district court has recently denied a motion to dismiss on a similar constitutional challenge. *See Tiwari v. Friedlander*, 3:19-CV-884-JRW-CHL, 2020 WL 4745772, at *2 (W.D. Ky. Aug. 14, 2020). Unlike *Tiwari*, this Court is bound by the Fifth Circuit precedent in *Gaalla* ("rational basis muster is a question of law.") Moreover, the *Tiwari* court did what the Supreme Court said was improper in *Clover Leaf*: it permitted the plaintiff to offer evidence from which the court could then substitute its judgment for that of the legislature. *Id.* at *8. But the question is not whether empirical evidence demonstrates that a legislature's means do not support its goal. As the Supreme Court has made clear, "it is up to the legislatures, not courts, to decide on the wisdom and utility of legislation," and as a result, those challenging a state law must "convince the court that the legislative facts on which the classification is apparently based *could not reasonably be conceived to be true by the governmental decisionmaker.*" *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 & 469 (1981) (internal citation and quotation marks omitted, emphasis added).

Under the rational basis test a law will not be invalidated merely because a plaintiff can provide evidence that the law does not in fact achieve some of the intended results. For example, in *Minnesota v. Clover Leaf Creamery Co.*, the Supreme Court rejected plaintiffs' argument that was premised on evidence offered to prove that a distinction a statute drew between two types of milk containers did not in fact further the legislature's stated goal. 449 U.S. 456, 463 (1981). The Court acknowledged that the plaintiffs "produced impressive supporting evidence" that the law did not achieve its intended purposes. *Id.* But the Court continued, "States are not required to convince the courts of the correctness of their legislative judgments. Rather, 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.'" *Id.* at 464 (internal citation omitted). Thus, the Court explained, "[w]hether *in fact* the Act will promote more environmentally desirable milk packaging is not the question: the Equal Protection Clause is satisfied by our conclusion that the Minnesota Legislature *could rationally have decided* that its ban on plastic nonreturnable milk jugs might foster greater use of environmentally desirable alternatives." *Id.* at 466 (emphasis in original).

Not surprisingly, federal circuit courts considering challenges to healthcare CON laws under the Fourteenth Amendment have applied this standard and have held the CON laws to be constitutional. *See Colon Health Centers of America, LLC v. Hazel*, 733 F.3d 535 (4th Cir. 2013) (finding CON program was constitutional under the Equal Protection Clause and the Due Process

9

Clause)[8]; *Birchansky v. Clabaugh*, 955 F.3d 751, 758 (8th Cir. 2020) (similar). The same conclusion is warranted here.

This Court applied the principles announced in *Beach Commc'ns, Inc., supra,* in *Clemons v. United States*, No. 4:10-CV-209-CWR-FKB, 2013 WL 3943494 (S.D. Miss. June 13, 2013) in which this Court faced the argument that Mississippi's cap on non-economic damages violated the equal protection clause of the Fourteenth Amendment. It appears to have been a difficult decision for this Court given the clear evidence that the statutory cap on non-economic damages worked a severe detriment to the plaintiffs in that case. Even so, this Court aptly applied a rational basis scrutiny of the statute because the damages cap did not interfere with the exercise of a fundamental right or work to the disadvantage of a suspect class of persons. *Id.* at 9-10. Moreover, this Court observed the United States Supreme Court decision in *Dandridge v. Williams*, 397 U.S. 471, 481 (1970), in which the court stated:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific. A

---

[8] In also rejecting a challenge under the Commerce Clause to Virginia's certificate-of-need program, the Fourth Circuit explained again that it is not for the federals courts to engage in battles over empirical evidence supposedly supporting or refuting the rationality of a state's law:

> To require Virginia to submit expert testimony or provide bulletproof empirical backing for every legislative judgment is a requirement bereft of any limiting principle. Most legislation, after all, relies on assumptions that can be empirically challenged. Were we to engage in an exhaustive empirical battle in, for starters, every dormant Commerce Clause case, there would be no end to judicial interference with legislation touching no end of subject matters. Our federal system would end up as the loser.

*Colon Health Centers of Am., LLC v. Hazel*, 813 F.3d 145, 159 (4th Cir. 2016).

> **statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.**

*Clemons, supra at* \* 11 (internal quotation marks and citations omitted). This Court concluded that the Mississippi cap on non-economic damages did not violate equal protection because "[t]he standard of review requires doubts of a statute's constitutionality to be resolved in favor of upholding the law," and **"it cannot be said that the plaintiff has proven beyond a reasonable doubt that there is *no* possible rational basis for the legislature's action."** *Id.* at \*14 (emphasis added).

Mississippi's certificate-of-need program and statutory moratorium satisfy rational basis review. Other courts have concluded that such programs do not violate the Equal Protection Clause of the Fourteenth Amendment. For example, in *Birchansky*, 955 F.3d at 757–58, the Court observed that "[l]imited competition **conceivably** advances the very areas Appellants are concerned with: reduced patient costs, innovative procedures, and better service," and then held that CON laws designed to protect larger hospitals holding CONs from competition were rationally related to the state's requirements that these hospitals perform various services at a loss - the court found the regulatory scheme was rationally designed to avoid the potential for competitors to "cherry pick more lucrative medical services." (emphasis added). The court concluded:

> Iowa can rationally conclude that protecting hospitals from competition in profitable areas of practice promotes full-service hospital viability. We find that Iowa's CON requirement is rationally related to a legitimate state interest in full-service hospital viability.

*Id.* Similarly, as previously noted, Mississippi's CON Manual and State Health Plan require that holders of CONs for home health agency services commit to providing services to Medicaid/low income/indigent individuals. *See* 15 Code Miss. R. Pt. 9, Subpt. 91, R. 1.1. Moreover, the MSDH will not issue a CON if it determines that the issuance of a new CON could impede the ability of an existing CON holder to provide a reasonable amount of home health care services to

Medicaid/low income/indigent individuals and persons in rural areas. *Id.* Additional competition for patients with private insurance or with Medicare (both of which pay higher reimbursement rates than Medicaid) could threaten an existing CON holder's ability to continue providing Medicaid/low income/indigent care, especially in rural areas, while staying economically viable. Common sense requires the conclusion that the Mississippi Legislature might rationally conclude that a continuing moratorium on the issuance of new CONs for home health agencies at the present time furthers the public interest in ensuring the ability of existing CON holders to provide a reasonable amount of home health care to Medicaid/low income/indigent persons.

Slaughter claims that he should be permitted to compete without regard to any CON law requirements for need for his services. His claim is answered in *Madarang v. Bermudes*, 889 F.2d 251, 253 (9th Cir. 1989), where the court held, with regard to certificate of need laws, that a legislative body "has a legitimate interest in preventing the establishment of unneeded facilities." The court held that a list of fourteen criteria for determining "need" set forth in a CON Manual "are rationally related to preventing 'duplication of facilities and services and to encourage the development of such facilities where they are needed,'" and thus "the CON regulations do[] not violate the equal protection clause of the fourteenth amendment." *Id.*

Slaughter admits, as he must, that Mississippi's State Health Plan contains similar criteria for determining need and that Dr. Dobbs would apply these criteria if the Mississippi legislature were to lift the current moratorium. Compl. ¶¶87-92. Consistent with *Madarang*, this Court should find that it is rational for the MSDH, through its need requirements formulation in the State Health Plan, to determine whether additional home health agencies are needed. This Court should not second guess the wisdom of the need requirements criteria in the Mississippi State Health Plan.

Slaughter's Complaint argues that Mississippi's CON laws, and in particular the legislative moratorium precluding the issuance of new CONs for home health agencies, are outdated statutes that no longer have a rational basis. This argument ignores the fact that the Mississippi Legislature has reviewed and revised the CON laws 23 times over the past 30 years, including amendments in 1989, 1990, 1992, 1993, 1994, 1995, 1996, 1998, 1999, 2001, 2002, 2003, 2004, 2006, 2007, 2010, 2011, 2012, 2014, 2015, 2016, 2019 and 2020. This continued focus on updating and improving the CON program and its requirements further refutes Slaughter's argument that Mississippi's CON requirements are outdated, arbitrary and irrational.

As recently as the year 2020, the Mississippi Legislature considered, but refused to act on, a bill to lift the statutory moratorium on the issuance of CONs for new home health agencies. *See* 2020 H.B. 606; 2020 H.B. 605. Again, in 2021 bills in both the House and the Senate were introduced in the Mississippi Legislature which would have lifted the moratorium. *See* 2021 Mississippi SB 2747; H.B. 602. However, these bills failed again. This Court should not second guess the wisdom of the Mississippi Legislature's decision yet again to keep the moratorium in place. *See F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–15 (1993); *see also Colon Health Centers*, 733 F.3d at 548(rejecting equal protection challenge to a certificate of need statute due to an unwillingness to "pick apart" a "complex medical regulatory scheme").

Slaughter also argues that the fact that twelve states have repealed CON requirements means that Mississippi's CON program, including the moratorium, is irrational. *See* Compl. [Document 1] ¶ 180. But what other states are doing about CONs is irrelevant. The freedom for each state legislature to determine how best to address the needs of its specific state has long been recognized by the Supreme Court. *See New State Ice Co. v Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting) ("It is one of the happy incidents of the federal system that a single

courageous State may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country.")

And as Slaughter admits, Mississippi is far from alone in having a CON program. Slaughter's Complaint states that as of 2020 some 35 states require some form of a CON. *See* Compl. [Document 1] ¶ 69. Further, just in the last two years, Indiana adopted such a CON program despite having repealed its CON laws in prior years. *See* Ind. Code §§ 16-29-7-1 to - 19 (2018). If the status of CON laws in other states were relevant to whether Mississippi's CON requirements satisfied a rational basis analysis, the fact that a strong majority of states still use CONs makes Slaughter's burden "to negative every conceivable [rational] basis" supporting Mississippi's requirements that much more impossible to meet. *See Beach Commc'ns*, 508 U.S. at 315.

Even if Slaughter's alleged empirical factual allegations were taken as true, they cannot negate the legal conclusion that it was at least conceivably rational for the Mississippi Legislature, the MSBH and the MSDH to believe that the CON laws and moratorium might "prevent unnecessary duplication of health resources; provide cost containment, improve the health of Mississippi residents; and increase the accessibility, acceptability, continuity and quality of health services," the public policy as set forth in the CON Manual.

There are additional conceivably rational legislative goals of Mississippi's home health CON program, including the statutory moratorium. For example, Mississippi's prevention of the establishment of unnecessary home health agencies is rationally related to its legitimate interest in insuring Mississippians across the state have access to a cost-efficient healthcare delivery system

14

with minimum disruptions.[9] More specifically, by preventing duplication of home health agencies, the CON program might ensure that Mississippi home health agencies have sufficient patient volume to be financially feasible. And by helping to ensure the patient volume needed for home health agencies to be financially viable, the CON program might limit disruptions in patient care that could result if an agency were to close from financial distress. Further, the CON program might work to promote appropriate geographic distribution of home health agencies, helping to enhance access to services for lower-income individuals.[10] Without the CON requirement, home health agencies could increase services in urban and suburban areas that are more densely populated and where a higher number of patients are covered by private insurance, which often pays a higher percentage of costs than Medicare or Medicaid. This could leave rural and poor areas, like the Mississippi Delta and parts of Hinds County, underserved. Further, the CON program also requires each provider to provide charity care.

Slaughter's claim that the CON program violates equal protection by treating home health agencies differently than other health care facilities, such as "physician private practices, personal care residential-living and assisted living facilities, abortion facilities, veterans homes, and health care facilities owned and/or operated by the State of Mississippi," fares no better. Compl. [Document 1] ¶ 156. The Fifth Circuit has recognized that the government can permissibly use

---

[9] *See* Robert Anderson, *The Judiciary's Inability to Strike Down Healthcare Service Certificate of Need Laws Through Economic Substantive Due Process: A Call for Legislative Action*, 2 CHARLESTON L. REV. 703, 730 (2008) ("[T]he courts have determined that the [CON] law passes rational basis scrutiny because controlling the market supply of health services is reasonably related to the reduction of medical costs.").

[10] The Fourth Circuit gave weight to the State's offered justification for its certificate-of-need program, which it said would ensure "geographically convenient access to healthcare for Virginia residents at a reasonable cost." *See Colon Health Ctrs.*, 733 F.3d at 548.

licensing and permitting procedures as a means to promote certain economic groups where the public would benefit. The court upheld a city ordinance and its "disparate distribution of permits" that favored full-service taxi companies, reasoning that "the larger the taxi company, the more likely it is to offer a broader range of services that better serve consumer needs[.]" *Greater Houston Small Taxicab Co. Owners Ass'n v. City of Houston, Tex.*, 660 F.3d 235, 240 (5th Cir. 2011). Here, as described above, any protection that existing home health agencies receive from the CON program serves the public good as it ensures geographic distribution of the services with minimal interruption.[11]

Under well-established precedent, it is not for a federal court to require a State to convince the court of the correctness of the motivations behind the legislation. Because Slaughter cannot negative every conceivable basis for the certificate-of-need program, including the moratorium, it survives rational basis scrutiny and the Court should dismiss Slaughter's equal protection claims.

## B. Slaughter's Substantive Due Process Claim Fails.

"[S]ubstantive due process may require courts to void certain types of government action that infringe on individual rights and individual freedom of action." *Frazier v. Garrison I.S.D.*,

---

[11] In *Birchansky*, in holding that Iowa's CON program was not unconstitutional, the district court reasoned, "the promotion of full-service hospitals is a legitimate state interest justifying Iowa's CON program. Iowa's CON program, in general, and the capital expenditure exemption, in particular, rationally further that interest by conceivably insulating full-service hospitals from competition and facilitating full-service hospitals collecting greater revenue from profitable outpatient surgery services." *Birchansky v. Clabaugh*, 417CV00209RGERAW, 2018 WL 10110860, at *7 (S.D. Iowa Oct. 17, 2018), aff'd, 955 F.3d 751 (8th Cir. 2020). The court was particularly concerned about the potential disruption to rural hospitals, who had figured out to how stay financially afloat by performing a combination of services, some of which were more lucrative than others. *See id.* The holding from *Birchansky* refutes Slaughter's contention in this case that Mississippi's certificate-of-need laws, including the moratorium, are not rational because they may provide protection to established home health agencies.

980 F.2d 1514, 1528 (5th Cir. 1993). "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 277 (1994). The list of fundamental rights protected by the Fourteenth Amendment's Due Process Clause is short and does not include the right claimed by Slaughter here, *i.e.,* the "right to earn an honest living." Compl. [Document 1] ¶¶170-172 & 175. *See Ford Motor Co. v. Texas Dept. of Transp.*, 264 F.3d 493, 506 (5th Cir. 2001) ("Typically, when an individual or corporation challenges an economic regulation under the Due Process or Equal Protection Clause, a State has the minimal burden of showing that the law has a rational basis.")[12] Thus, the same analysis set forth above about Slaughter's equal protection claims likewise reveals that his due process claims must be dismissed.[13]

---

[12] *See also Perfect Puppy, Inc. v. City of East Providence*, 98 F.Supp.3d 408, 419 (D.R.I. 2015) (noting that no fundamental right to "earn a living" exists); *Nebbia v. People of New York*, 291 U.S. 502, 527 (1934) ("The Constitution does not guarantee the unrestricted privilege to engage in a business or to conduct it as one pleases.").

[13] Slaughter also claims that the Department of Health has in force an administrative moratorium preventing the issuance of CONs for new home health agencies, and that this alleged moratorium is unconstitutional. As explained in the Factual Background, the administrative moratorium was only temporary and ended in 1982. Moreover, the 1986 State Health Plan expressly provided detailed conditions under which CONs could be obtained for new home health agencies and services, but then observed that it could not do so due solely to the then-existing "Legislative Moratorium." The State Department of Health continues today to express its willingness to consider new applications for CONs for home health agencies or services if the Legislative Moratorium were lifted. Because no actual controversy exists with respect to the no-longer-in-effect administrative moratorium, the Court lacks jurisdiction over that claim and it must be dismissed. *See Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998). In the alternative, this claim must also fail for the same reasons that Slaughter's constitutionality claims regarding the statutory moratorium must fail.

### III.  SLAUGHTER'S COMPLAINT FAILS TO STATE A CLAIM UNDER 42 U.S.C. §§1983 & 1988

Paragraph 24 of Slaughter's Complaint avers that he brings this suit in part pursuant to 42 U.S.C. § 1983. This statute provides in pertinent part:

> Every person who, under color of any statute . . . of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Paragraph D of Slaughter's "Request for Relief" seeks attorney fees under 42 U.S.C. § 1988. Other than the conclusory reference to 42 U.S.C. § 1983 in paragraph 24 of the Complaint, there is no other reference to the statute anywhere in the Complaint. Indeed, nowhere in the Complaint is there any reference to any facts that would support the existence of any of the elements of proof necessary to establish a claim under the statute. For instance, the only named defendant is Dr. Dobbs. However, the Complaint does not allege any act on the part of Dr. Dobbs to "subject" or "cause" Slaughter to suffer a deprivation of any rights under the U.S. Constitution or statutes. Instead, Slaughter's claims are founded solely on the mere existence of the Mississippi CON laws and the statutory moratorium, not on anything Dr. Dobbs has done.

42 U.S.C. § 1983 facially does not create a claim or provide relief in an action simply to declare a prohibitory statute unconstitutional. Accordingly, this Court should dismiss Slaughter's conclusory claim under 42 U.S.C. § 1983. Given the absence of a claim under 42 U.S.C. § 1983, this Court should also dismiss Slaughter's request for attorney fees under 42 U.S.C. § 1988.

### CONCLUSION

Intervenors pray that this Court will find that it is reasonably conceivable that Mississippi's CON laws, including the current legislative moratorium on home health agency CONs, are rationally related to legitimate legislative goals to promote the health and welfare of Mississippians as a whole, and Medicaid/low-income/indigent individuals in particular. Although inconvenient

18

to Mr. Slaughter, he has failed to state a valid claim that the CON laws or the legislative moratorium violate the U.S. or Mississippi constitutions. For these reasons and all reasons noted above, Intervenors further pray that this Court will dismiss Slaughter's Complaint.

RESPECTFULLY SUBMITTED, this the ___ day of _____, 2021.

    MISSISSIPPI ASSOCIATION FOR HOME CARE, STA-HOME HEALTH AGENCY OF JACKSON, LLC, KARE-IN-HOME HEALTH SERVICES, INC. and WAYS, LLC d/b/a SUNFLOWER HOME HEALTH AGENCY

By: s/_____
    PAUL N. DAVIS (MB #8638)
    THOMAS L. KIRKLAND, JR. (MB #4181)
    CAROLINE B. SMITH (MB #105501)

    THEIR ATTORNEYS

OF COUNSEL:
BUTLER SNOW LLP
1020 Highland Colony Parkway
Post Office Box 6010
Ridgeland, Mississippi 39158-6010
(P)(601) 948-5711
(F)(601) 985-4500
(E) paul.davis@butlersnow.com
(E) tom.kirkland@butlersnow.com
(E) caroline.smith@butlersnow.com

## CERTIFICATE OF SERVICE

I, Paul N. Davis, do hereby certify that on this ___ day of _____, 2021, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all registered attorneys.

This the ___ day of _____, 2021.

s/_____<br>
Paul N. Davis