**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
Northern Division**

| | |
|---|---|
| CHARLES SLAUGHTER, | |
| *Plaintiff*, | |
| vs. | Civil Action No. 3:20-cv-789-CWR-FKB |
| DR. THOMAS E. DOBBS, in his official capacity as the Mississippi State Health Officer, | |
| *Defendant*. | |

**PLAINTIFF'S RESPONSE TO THE PROPOSED INTERVERNORS'
MOTION FOR LEAVE TO INTERVENE**

COMES NOW the Plaintiff, Charles Slaughter, through his undersigned counsel, and files this Response to Mississippi Association for Home Care ("MAHC"), Sta-Home Health & Hospice, Inc. (Sta-Home), Kare-in-Home Health Services, Inc. ("Kare") and WAYS, LLC d/b/a Sunflower Home Health Agency ("WAYS") (collectively, "Proposed Intervenors") Motion for Leave to Intervene ("Int. Motion") (ECF No. 8). For the reasons set forth, the Proposed Intervenors' motion should be denied.

## INTRODUCTION

The Proposed Intervenors do not have a direct, substantial, legally protectable interest in this litigation. Rather, the Proposed Intervenors have merely an indirect and conjectural economic interest in the outcome of this litigation. Moreover, even if the Proposed Intervenors did have a valid interest, they have failed to prove that intervention is necessary for them to protect that interests from impairment, as they will be able to continue operating their home health agencies

regardless of whether Plaintiff prevails in this case. Finally, the State of Mississippi more than adequately represents the Proposed Intervenors' interest in this constitutional challenge to state laws. Accordingly, the Proposed Intervenors are not entitled to intervention as of right.

The Court should also exercise its broad discretion to deny the Proposed Intervenors' request for permissive intervention. The Proposed Intervenors do not meet the threshold requirement for permissive intervention, as they do not have any claim or defense in this action. Additionally, permissive intervention would prejudice the parties by unnecessarily duplicating the State's legal arguments, creating more discovery, more briefing, more delay, more disputes, and more demands upon the Court's time, all while failing to assist the Court because the State is capable of representing the interests of the Proposed Intervenors. There is no reason to waste the parties' and this Court's resources when the Proposed Intervenors can provide their perspective and legal arguments as *amicus curiae*.

## BACKGROUND

Plaintiff Charles Slaughter is a licensed physical therapist and an entrepreneur. *See* Complaint ("Cplt.") (ECF No. 1) at ¶ 22. In 1989, he started his own physical therapy clinic in Jackson, Mississippi. *Id.* He has dreamed of expanding his business to provide in-home physical therapy to homebound patients. *Id.* Moreover, the need for home health services has been dramatically increased by the exponential spread of the respiratory disease COVID-19, as more patients seek to avoid public healthcare facilities and other businesses, and as more elderly patients seek to delay or prevent the need for institutionalization in nursing homes that have been prone to outbreaks. *Id.* at ¶ 2. However, Plaintiff is unable to realize his dream and respond to these increased patient needs and preferences because of Mississippi's certificate-of-need ("CON")

program for home health agencies ("CON law") and Mississippi's forty (40) year-long moratorium on the issuance of certificates of need for home health agencies ("moratorium").  *Id*. at ¶¶ 2, 11.

Under Mississippi's CON law, before opening, expanding, relocating, changing ownership, or acquiring major medical equipment, health care facilities – including home health agencies – must apply for and receive a certificate of need for a defined service area.  *Id*. at ¶ 7. Applying for a certificate of need is a difficult and expensive process, during which existing competitors protest and argue there is no "need" for a new health care facility.  *Id*. at ¶ 8.  Moreover, since 1981, Mississippi has maintained a moratorium which prohibits the issuance of new certificates of need for the establishment of new home health agencies or the expansion of service areas for existing home health agencies.  *Id*. at ¶¶ 9–12.  Thus, for the past forty (40) years, Plaintiff and other entrepreneurs have been completely banned from opening home health agencies.  *Id*.

On December 9, 2020, Plaintiff filed this lawsuit challenging the constitutionality of the home health CON law and the moratorium.  *Id*. at ¶ 1.  Plaintiff has not challenged the relevant licensing requirements for home health agencies which are designed to protect the health, safety and welfare of the public.  *Id*. at ¶¶ 31–32.  Plaintiff has only challenged the CON law and moratorium, which are designed to restrict the supply of home health care and not to ensure the safety of home health agencies.  *Id*.  Plaintiff seeks a declaration that the home health CON law and moratorium violate his equal protection and substantive due process rights, and an injunction prohibiting the Defendant from enforcing the home health CON law and moratorium.  *Id*. at p. 29.

The Defendant, represented by the Attorney General's office (the "State"), filed his Answer and Defenses ("Answer") (ECF No. 7) to Plaintiff's Complaint on February 5, 2021.  On February 12, 2021, the Proposed Intervenors, large incumbent home health agencies which received CONs before the moratorium went into effect forty (40) years ago, and an association which represents

the interest of its member home health agencies, filed a motion for leave to intervene in this lawsuit to protect the home health CON law and moratorium. *See* Int. Motion. On February 28, 2021, the State filed a response to the motion to intervene ("State Resp.") (ECF No. 10), neither supporting nor opposing the motion, and reaffirmed its commitment to defending the challenged laws by informing the parties and the Court that it intends to file a motion for judgment on the pleadings. Plaintiff opposes intervention and no party affirmatively supports the motion to intervene.

## STANDARD

### I.    INTERVENTION AS OF RIGHT

Tracking the language of Rule 24(a)(2), the Fifth Circuit has found that an applicant is entitled to intervention as of right if: (1) the application for intervention [is] timely;[1] (2) the applicant [has] an interest relating to the property or transaction which is the subject of the action; (3) the applicant [is] so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest [is] inadequately represented by the existing parties to the suit. *Rotstain v. Mendez*, 986 F.3d 931, 936–37 (5th Cir. 2021) (citations omitted) (alterations original). A would-be intervenor bears the burden to prove an entitlement to intervene; failure to prove any of the required elements is fatal. *Id*. at 937.

A valid interest under Rule 24(a)(2) must be "direct, substantial, [and] legally protectable." *Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005) (citations omitted). "This requires a showing of something more than a mere economic interest; rather, the interest must be 'one which the *substantive law* recognizes as belonging to or being owned by the applicant.'" *Id*. (citations omitted) (emphasis original).

---

[1] Plaintiff does not contest the timeliness of Proposed Intervenors' motion to intervene.

## II.   PERMISSIVE INTERVENTION

Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1).  The Fifth Circuit has also instructed that "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be obtained." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (citations omitted).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  Permissive intervention under Rule 24(b) "is wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987).

## ARGUMENT

## I.   THE PROPOSED INTERVENORS CANNOT INTERVENE AS OF RIGHT.

The Proposed Intervenors do not have a direct, substantial, legally protectable interest in this litigation.  Rather, the Proposed Intervenors have merely an indirect and conjectural economic interest in the outcome of this litigation.  Moreover, even if the Proposed Intervenors did have a valid interest, they have failed to prove that intervention is necessary for them to protect that interests from impairment, as they will be able to continue operating their home health agencies regardless of whether Plaintiff prevails in this case.  Finally, the State of Mississippi more than adequately represents the Proposed Intervenors' interest in this constitutional challenge to state laws.  Accordingly, the Proposed Intervenors are not entitled to intervention as of right.

**A. The Proposed Intervenors Do Not Have a Direct, Substantial, Legally Protectable Interest in the Proceedings.**

Contrary to their assertions, the Proposed Intervenors' property right in their CONs do not include a protectable property interest either in the value created by the exclusivity of the CONs or a right to exclude others from competition. Additionally, the Proposed Intervenors do not have an adequate non-property interest to support intervention. Rather, the Proposed Intervenors have merely an indirect and conjectural economic interest in the outcome of this litigation.

  **i.**   **The Proposed Intervenors do not have a protectable property interest in the economic value of their CONS or a right to exclude others from competition.**

The Proposed Intervenors argue that they have a property right in their CONs. *See* Proposed Intervenors' Opening Memorandum at 5. ("Int. Mem.") (ECF No. 9). While this is certainly true, it misses the point. Plaintiff does not ask this court to confiscate or revoke the Proposed Intervenors' CONs. Rather, Plaintiff asks the court to enjoin the enforcement of the moratorium and CON requirement against entrepreneurs who wish to start new home health agencies. If the Plaintiff wins this case and obtains all the relief he seeks, the Proposed Intervenors will suffer no harm. They are currently operating home health agencies and will continue to be able to do so.

The Proposed Intervenors are not actually complaining that their property rights in their CONs are at stake. Rather, they are claiming that their property interests in their CONs extend to the economic value of those CONs derived through the closed nature of Mississippi's home health market. This is incorrect. "There is no doubt that, under Mississippi law, a CON is a valuable property right entitled to protection." *Baptist Mem'l Hosp.-Desoto, Inc. v. Mississippi Health Care Comm'n*, 617 F. Supp. 686, 689 (S.D. Miss. 1985) (citations omitted). But while the Proposed Intervenors have a property right in their CONs, those rights do not include a protected property interest either in the value of the CONs or a right to exclude others from competition.

For example, state-issued certificates of need are similar to taxicab medallions which are often granted by government entities in limited quantities and give their owners a protected property interest in operating a taxicab. Many government entities that have granted these medallions have since allowed Uber and other ridesharing companies to operate within their jurisdiction without owning medallions. Those actions prompted taxicab companies and associations around the nation to file Fifth Amendment takings claims and similar claims concerning the resulting loss of the market value of their medallions. Courts overseeing those lawsuits have universally held that there is no property interest in the economic value created by the exclusivity of taxicab medallions or a right to exclude competition. *See e.g., Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 155 (3d Cir. 2018) ("The plaintiffs do not have a legally cognizable property interest in the value of their taxi medallions or in the right to be the exclusive provider of ride-for-hire services in Newark."); *Minneapolis Taxi Owners Coal., Inc. v. City of Minneapolis*, 572 F.3d 502, 508 (8th Cir. 2009) ("[t]he taxicab licenses themselves do not carry an inherent property interest guaranteeing the economic benefits of using the taxicab license."); *Illinois Transportation Trade Ass'n v. City of Chicago*, 839 F.3d 594, 596-597 (7th Cir. 2016), cert. denied, 37 S.Ct. 1829, 197 L.Ed.2d 761 (2017) ("'Property' does not include a right to be free from competition. . . . Taxi medallions authorize the owners to own and operate taxis, not to exclude competing transportation services."); *Checker Cab Operators, Inc. v. Miami-Dade Cty.*, 899 F.3d 908, 918 (11th Cir. 2018) ("The [taxicab m]edallion [h]olders may exclude others from possessing, using, or disposing of *their* medallions. But the 'right to exclude' does not sanction the creation of a market stranglehold.") (emphasis original); *Bos. Taxi Owners Ass'n, Inc. v. City of Bos.*, 180 F. Supp. 3d 108, 121 (D. Mass. 2016) ("[W]hatever property rights plaintiffs may possess in their medallions,

those rights do not encompass a right to exclude others from the transportation-for-hire marketplace.").

Additionally, any expectation the Proposed Intervenors may have of continued market exclusivity is unreasonable. Indeed, the Supreme Court has acknowledged that "a mere unilateral expectation . . . is not a property interest entitled to protection." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). Moreover, "in the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, [an owner] ought to be aware of the possibility that new regulation might even render his property economically worthless." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027–28, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). By the same logic, the enjoinment of an unconstitutional law or regulation may render property less valuable. This does not create a property interest in the continued enforcement of the challenged law or regulation.

### ii. The Proposed Intervenors mere "economic interest" in suppressing competition is neither "legally protectable" nor "direct".

The Proposed Intervenors also do not have an adequate non-property interest to support intervention. In order to intervene, the would-be intervenor must have a "direct, substantial, legally protectable interest in the proceedings." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (quoting *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996)). "[A]n intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, *economic*, or precedential reasons; that would-be intervenor merely *prefers* one outcome to the other." *Id.* (first emphasis supplied). The interest must be one "of the type the law deems worthy of protection." *Id.* at 659.

The Proposed Intervenors' motion confirms that they have merely an economic interest – and an economic interest of the worst possible sort. The Proposed Intervenors seek to preserve the

regulatory barriers that insulate them and their members from competition. *See* Int. Mem. at 5 ("Intervenors could lose such a substantial portion of their market. . . .").

Mississippi's moratorium on the issuance of CONs for home health agencies prevents the Proposed Intervenors (or their members) from expanding the service areas of their own businesses or establishing new home health agencies. Even if the moratorium did not exist, Mississippi's home health CON law would force them (or their members) to endure an expensive, arduous, and uncertain application process in order to expand their service areas or establish new home health agencies. Why then, would the Proposed Intervenors spend their own money and their members' dues in an effort to sustain a law that imposes those burdens?

The answer, of course, is that the moratorium and the home health CON law give *no* advantage to a party seeking a CON. The advantage to the Proposed Intervenors comes from being able to exploit the CON law and moratorium to prevent or delay competition from health care providers who are *not* members of the Mississippi Association for Home Care because they did not receive a home health CON before the moratorium went into effect forty (40) years ago. The "interests" that the Proposed Intervenors seek to protect by intervening in this case is nothing other than the interest in preserving the effectiveness of the CON law and moratorium as a weapon against competition from "outsiders."

That economic interest is insufficient to support intervention. *See Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005) (interest must be "direct, substantial, [and] legally protectable. This requires a showing of something more than a mere economic interest; rather, the interest must be 'one which the *substantive law* recognizes as belonging to or being owned by the applicant.'") (citations omitted) (emphasis original). Moreover, federal courts have held that CON owners' economic interest in suppressing competition, or the mere fact that they are regulated by the

challenged CON laws,[2] are insufficient to support intervention. *See e.g. Walgreen Co. v. Feliciano de Melecio*, 6 F. App'x 27, 28 (1st Cir. 2001); *Truesdell v. Meier*, No. 3:19-CV-00066-GFVT, 2020 WL 1991402, at *3 (E.D. Ky. Apr. 27, 2020).

In *Walgreen Co.*, the First Circuit was faced with a situation virtually identical to the present case. Puerto Rico had a CON law for pharmacies. *Walgreen Co. v. de Melecio*, 194 F.R.D. 23, 25 (D.P.R. 2000), *aff'd sub nom. Walgreen Co. v. Feliciano de Melecio*, 6 F. App'x 27 (1st Cir. 2001) ("Walgreen I"). Walgreen Co. brought suit alleging that the law violated the commerce clause and its substantive due process rights, and sought an injunction prohibiting Puerto Rico's Secretary of Health from enforcing the law. *Id*. A pharmacy association representing 500 independent Puerto Rico pharmacies sought to intervene, arguing that its members had an interest because regulations to which its members were subject were being challenged. *Id*. The district court denied intervention, finding that "if Walgreens wins and obtains all the relief it seeks, including an injunction prohibiting the enforcement of the law, it is not clear what harm [the association's] members will have suffered. Those members that are currently operating pharmacies will presumably continue to be able to do so." *Id*. at 26. On appeal, the First Circuit affirmed, finding that a CON holders "interest in foreclosing competition falls short of the 'interest relating to the property or transaction' required by Rule 24(a)(2)":

---

[2] While those who are the intended beneficiaries of a regulatory scheme may have a protectable interest in the scheme, this case clearly does not present those circumstances, as both Plaintiff and the Proposed Intervenors have admitted that the intended (and in Plaintiff's view, misguided) purpose of the challenged CON program is not to enrich CON owners, but rather "to prevent unnecessary duplication of health resources; provide cost containment, improve the health of Mississippi residents; and increase the accessibility, acceptability, continuity and quality of health services." *Cf.* Cplt. at ¶ 75 *with* Proposed Intervenors' Memorandum in Support of their Proposed Motion to Dismiss Opening Memorandum ("Proposed Dismissal Mem.") at 2 (ECF No. 8-2).

> [The pharmacy association] misconceives the nature of the rights at stake. No member's right to establish or relocate a pharmacy is affected. Rather, the [CON] administrative proceedings reflect members' attempts to defeat the applications of *other* pharmacies. *Such an interest in foreclosing competition falls short of the 'interest relating to the property or transaction' required by Rule 24(a)(2)*. . . . To the extent that potential economic harm resulting from the proceedings could so qualify, it must be more than 'overly contingent.' The ongoing litigation must 'directly threaten[ ] an economic right or benefit presently enjoyed. . . .' Here, economic harm threatened by the entrance of a competitor on the scene is subject to the actions and capacities of competitors, the nature of the markets, the state of the economy, and other factors. In these circumstances, [the association's] members have no protectable right to the continuation of the regulatory process.

*Walgreen Co. v. Feliciano de Melecio*, 6 F. App'x 27, 28–29 (1st Cir. 2001) ("Walgreen II") (emphasis supplied) (citations omitted).

*Truesdell* involved a constitutional challenge to Kentucky's CON requirement for ambulances. *Id*. A hospital association representing CON holders sought intervention, arguing that "the outcome of this litigation will directly affect the operations of [the association's] members and the patients they serve". *Id*. The court found this interest to be merely "a general interest in the enforcement of the CON program which could easily be shared by all CON holders" and "simply pertain[ing] to the enforceability of the program in general," which was not "cognizable as a substantial legal interest sufficient to require intervention as of right." *Id*.

Federal courts have held that an economic interest in suppressing competition or maintaining market share is insufficient to support intervention in cases involving other industries as well. *See e.g. Russell v. Harris Cty., Texas*, No. CV H-19-226, 2020 WL 6784238, at *3 (S.D. Tex. Nov. 18, 2020) (denying intervention by bail bondsmen and their professional association in lawsuit challenging the constitutionality of county's initial felony bail hearing procedures, finding that the bondsmen's "right to practice their profession [did not] give[] them a proprietary interest in the procedures that govern bail hearings".) (citations omitted); *NBD Bank, N.A. v. Bennett*, 159 F.R.D. 505, 507 (S.D. Ind. 1994) (denying intervention by association of insurance agents in

lawsuit challenging geographic restriction on the selling of insurance by insurance agents, despite argument that plaintiff's success would "subject [their] members to loss of profit in their trade, and [would] dilute, divert, and withdraw a substantial portion of the market for their services"); *Am. Mar. Transp., Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989) (denying intervention to a shipping company in a lawsuit filed by a competing shipping company over a government subsidy dispute despite the proposed intervenor's "fear of future subsidized competition, which may never arise".); *PrimeSource Bldg. Prod., Inc. v. United States*, No. 20-00032, 2021 WL 197090, at *15 (Ct. Int'l Trade Jan. 20, 2021) (Baker, J. concurring) (denying intervention to coalition of domestic nail producers seeking to defend the legality of a tariff on steel imports and explaining that "any competitive injury to the Coalition's members resulting from the invalidation of [the tariff] will be indirect—a result of market forces. That is not enough.").

The Proposed Intervenors' conception of the rule would make intervention as of right available to almost everyone. Under the Proposed Intervenors' argument, it is not only they who have a sufficient interest to intervene, but every home health agency in Mississippi. And indeed, why stop there? Every home health patient in Mississippi has a sufficient interest to intervene under the Proposed Intervenors' logic. In fact, every health care provider that does *not* hold a home health CON and would like to enter the home health market should be allowed to intervene as a plaintiff. Plaintiff is, in fact, aware of both certain non-CON holders who want to establish home health agencies and certain CON holders who are prevented from expanding their home health agencies by the challenged laws, all of whom have expressed interest in filing motions to intervene as plaintiffs in this case. If the Court grants the Proposed Intervenors' motion, it should be prepared to open the floodgates for those plaintiff-intervenors (and perhaps other defendant-

intervenors) as well, should they choose to seek intervention.  Under the Proposed Intervenors' argument, this proceeding could easily become a Donnybrook Fair.

The Proposed Intervenors cite two inapposite cases in support of their supposed interest in this case.  The first case, *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) involved a motion to intervene filed by two forest industry trade associations, seeking intervention in litigation between three environmental organizations and the Secretary of Agriculture.  The Fifth Circuit held that the movants had "legally protectable property interests in existing timber contracts . . . threatened by the potential bar on even-aged management."  *Id*. at 1207.  This is factually distinguishable from the present case.  In *Espy,* a ruling contrary to the position of the timber industry was certain to affect the already-existing contracts.  That is not the case here.  First, as discussed above, the Proposed Intervenors do not have any protectable property interests that are put in jeopardy by this lawsuit, such as the contracts owned by the timber companies in *Espy*.  Second, unlike the contracts at issue in *Espy*, which would have been threatened by an adverse ruling, this litigation will not affect in any way the validity of the Proposed Intervenors' CONs or their licenses to operate home health agencies.  Even if Plaintiff wins all the relief he has requested, the Court's final judgement would not affect the Proposed Intervenors' CONs or licenses, nor require them to alter their current operations.  Their fears of indirect and contingent harm that may or may not occur to them from market forces if new competitors enter the market are simply not comparable to the direct and immediate harm that certainly would have resulted to a protectable property interest of the intervenors in *Espy*.

The second case cited by the Proposed Intervenors, *Texas v. United States*, 805 F.3d 653 (5th Cir. 2015), is no more help to them.  The Proposed Intervenors' cite this case for the proposition that "[a] property interest, for example, is 'the most elementary type of right that Rule 24(a) is

designed to protect,' because it is concrete, specific to the person possessing the right, and legally protectable". *See* Int. Mem. at 4–5.  While true, this fact does not help the Proposed Intervenors because, as discussed above, the Proposed Intervenors do not have any protectable property interest in the economic value created by the exclusivity of CONs, and their CONs are not threatened with confiscation or revocation by this suit.  Moreover, the facts of *Texas* are distinguishable from the present case for the same reason that the facts of *Espy* are.  *Texas* involved a suit to enjoin enforcement of a federal program entitled the Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA) which would have permitted certain aliens to be lawfully present in the United States for a specified period of time.  *Texas*, 805 at 656.  Three eligible aliens sought to intervene as defendants to defend the program.  *Id*.  The Fifth Circuit found that the aliens had a non-property interest sufficient to support intervention because they would or would not be deported based on the outcome of the case.  *Id*. at 660.  Again, this direct and immediate harm that would certainly have been suffered by the intervenors in *Texas* if the plaintiff in that case had prevailed is nowhere comparable to the indirect and contingent harm which may or may not occur from market forces to the Proposed Intervenors in this case.  The Proposed Intervenors will be able to continue to operate their home health agencies even if Plaintiff prevails in this suit.

For that very reason, even if the Proposed Intervenors' interest were legally protectable (it is not), it would still not be insufficient for intervention because it is not "direct." *Texas*, 805 F.3d at 657.  Indeed, rather than being "direct," any effect on the Proposed Intervenors from the relief Plaintiff seeks would be circuitous and speculative.  To hypothesize an effect on the Proposed Intervenors requires several steps of causal supposition: first, the Proposed Intervenors must suppose that, after the challenged laws are struck down as unconstitutional, Plaintiff and other new

14

entrants enter the home health market in Mississippi; second, the Proposed Intervenors must suppose that the new entrants offer superior service or better prices to Mississippi patients; third, the Proposed Intervenors must suppose that some patients may then seek medical care from the new entrants, which may or may not shift market share away from the incumbent home health agencies, which may or may not affect the incumbent home health agencies' profits.  This is not "direct" harm in any sense of the term.  *See Standard Heating & Air Conditioning Co.*, 137 F.3d at 571 (affirming a district court's denial of intervention where a "sequence of events would have to occur for the interests of the associations to be impacted by a successful challenge to the rules" and finding that the proposed intervenors "general reliance on economic forces [was] insufficient to constitute a legally protectable claim."); *Walgreen II*, 6 F. App'x at 28 ("To the extent that potential economic harm resulting from the proceedings could so qualify, it must be more than 'overly contingent.'  The ongoing litigation must 'directly threaten[ ] an economic right or benefit presently enjoyed. . . .'  Here, economic harm threatened by the entrance of a competitor on the scene is subject to the actions and capacities of competitors, the nature of the markets, the state of the economy, and other factors.") (citations omitted); *see also Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005) (A valid interest under Rule 24(a)(2) must be "direct, substantial, [and] legally protectable.") (citations omitted).

**B. The Proposed Intervenors Have Failed to Prove that Intervention is Necessary for Them to Protect Any Valid Interests from Impairment.**

The Proposed Intervenors address this factor only briefly, in two sentences of their opening brief.  First, the Proposed Intervenors posit that if Plaintiff's claims are successful, it will render their CON's "null," and speculate that they could "lose such a substantial portion of their market. . . ."  *See* Int. Mem. at 5.  In other portions of their brief, the Proposed Intervenors claim Plaintiff's success would render their CONs "worthless".  *Id*. at 3. As discussed above, the Proposed

Intervenors do not have a protectable interest in the economic value of their CONs, and any concern they have about potential market forces are not a direct or protectable interest. Moreover, contrary to the Proposed Intervenors' claims, their CONs will not be rendered "worthless" if Plaintiff prevails on his claims. The Proposed Intervenors were allowed to establish their home health agencies pursuant to their CONs, and they will be able to continue operating those agencies regardless of whether Plaintiff prevails in this case. Moreover, the home health CON program and the moratorium on the issuance of home health CONs have given the Proposed Intervenors at least a forty (40) year "head start" to establish market dominance prior to the arrival of any would-be competitors. That competitive advantage is invaluable and can never be taken away from the Proposed Intervenors by any injunction against future enforcement of the CON law or moratorium.

Second, the Proposed Intervenors worry that their loss of market share may in turn make it difficult for them to provide Medicaid/low-income/indigent care (which they are required to provide as a condition of receiving their CONs), which would put Plaintiff and other new entrants at a competitive advantage as they would have no obligation to provide Medicaid/low-income/indigent care. *See* Int. Mem. at 5. This argument ignores the fact that if Plaintiff prevails on his claims, the Defendant will be enjoined from enforcing the CON statute or it's implementing rules and regulations against *any* home health agencies, including the Proposed Intervenors. Moreover, if the CON program is enjoined, it will not prevent the Mississippi State Department of Health from revising the licensure requirements for home health agencies to require all licensed agencies, including Plaintiff's and other new entrants', to provide care to Medicaid/low-income/indigent individuals, if desired. Plaintiff is not challenging the applicable licensure requirements for home health agencies. *See* Cplt. ¶ 32.

**C.   The State of Mississippi More than Adequately Represents the Proposed Intervenors' Interest in this Constitutional Challenge to State Laws.**

"The proposed intervenors have the burden of demonstrating inadequate representation." *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994).  The Proposed Intervenors point out that the Supreme Court held in 1972 that the burden is "minimal" and that the requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate. . . ." *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636, 30 L.Ed.2d 686 (1972).  But they omit the case law that is more relevant to this action: the burden may *ordinarily* be minimal, "[b]ut where the party whose representation is said to be inadequate is a governmental agency, a much stronger showing of inadequacy is required."  *Hopwood*, 21 F.3d at at 605.  "In a suit involving a matter of sovereign interest, the State is presumed to represent the interests of all its citizens."  *Id.*; *see also Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 281 (5th Cir. 1996) ("[T]he only issue before the court is the validity of the School Prayer Statute and the Attorney General, in defending that statute, can assert the rights of all Mississippians affected by the law, including the Free Exercise rights of the Proposed Intervenors."); *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 168 (5th Cir. 1993) (affirming the denial of intervention by a would-be representative of a class of pro-school prayer schoolchildren on the ground that the state adequately represented the children's interests). "Because [Mississippi] is already a party, 'the applicant for intervention must demonstrate that its interest is in fact different from that of the state and that the interest will not be represented by the state.'"  *Hopwood*, 21 F.3d at 605 (quoting *Envt'l Def. Fund, Inc. v. Higginson*, 631 F.2d 738, 740 (D.C. Cir. 1979).

The Proposed Intervenors cannot overcome the presumption of adequate representation merely by alleging, "at a high level of generality, that 'the State's interests are broader' than the intervenors' interests because 'the State must balance competing goals while [the intervenors] are

sharply focused [on preserving the challenged policy].'"  *Texas*, 805 F.3d at 662 (first alteration in original) (quoting *Hopwood*, 21 F.3d at 605).   Rather, the proposed intervenor must "demonstrate how the[] allegedly divergent interests would have an [] impact on the state's defense [of the challenged policy]."  *Id.*   Where the proposed intervenor fails to "connect the allegedly divergent interests with any concrete effects on the litigation," the intervenor fails to carry its burden of rebutting the presumption that the State adequately represents its interests.  *Id.*

Here, the State is more than adequately representing the Proposed Intervenors' interests.  The State thoroughly answered and denied Plaintiff's claims while raising numerous affirmative defenses.  *See* Answer.  When the Proposed Intervenors moved to intervene, the State filed a response that, while taking no position on the Proposed Intervenors' motion, reaffirmed the State's commitment to continue vigorously litigating this case by filing a motion for judgment on the pleadings in the near future.  *See* State Resp.

The Proposed Intervenors have failed to make a "strong showing" that they have overcome the presumption that the State adequately represents their interests.  *Hopwood*, 21 F.3d at at 605.  They assert only one reason why they claim that their interests are not adequately represented by the State: that Defendant Dr. Dobbs' perspective is from the standpoint of the state agency overseeing the CON laws while the Proposed Intervenors' perspective is from the standpoint of home health care providers, and thus, for some unstated reason, Dr. Dobbs' interests "may differ somewhat" from the Proposed Intervenors.  *See* Int. Mem. at 6.  This conclusory statement falls far short of overcoming the presumption of adequate representation.  In fact, this is an even more general argument than the sort that the Fifth Circuit has held *does not* overcome the presumption.  *Texas*, 805 F.3d at 662 (presumption not overcome by alleging "at a high level of generality, that 'the State's interests are broader' than the intervenors' interests because 'the State must balance

18

competing goals while [the intervenors] are sharply focused [on preserving the challenged policy].'") (first alteration in original) (quoting *Hopwood*, 21 F.3d at 605). In fact, the State is more than adequately defending the constitutionality of the challenged laws, and has confirmed its commitment to continue doing so. The Proposed Intervenors have made only cursory allegations of a different perspective between themselves and the State, which is certainly not the "strong showing" necessary to overcome the presumption that the State's representation is adequate.

Courts overseeing similar constitutional challenges to CON laws have routinely found that the interests of existing CON holders were adequately represented by governmental agencies. *See e.g. Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health*, No. CV-09-3032-EFS, 2011 WL 13186149, at *3 (E.D. Wash. Dec. 20, 2011) (finding proposed intervenors failed to "overcome [the adequate representation] presumption with the 'compelling showing' required by case law" because the defendant government agency and the proposed intervenors "clearly share[d] the same ultimate objective: preserving the continuing validity of the state's CON regulations."); *Truesdell*, 2020 WL 1991402, at *4 (finding proposed intervenors failed to overcome the presumption of adequate representation because the proposed intervenors and the defendant government agency "share[d] the same ultimate objective in defending the validity of Kentucky's CON program"); *see also Harrisburg Hosp. v. Thornburgh*, 611 F. Supp. 900, 902 (M.D. Pa. 1985) (denying intervention as a plaintiff to healthcare consumer association seeking to intervene in lawsuit challenging legislation allowing a university medical center to bypass a CON requirement, as the original plaintiffs and the proposed intervenors had the "same goal" to require the medical center "to obtain a certificate of need".)

The cases cited by the Proposed Intervenors to support their claim of inadequate representation are unpersuasive. In *Sierra Club v. Espy*, the plaintiffs obtained a preliminary injunction against

even-aged logging by the Defendant Forest Service, and the Forest Service then chose to send a letter to all prospective timber purchasers (including the intervenors) advising them that as a result of the preliminary injunction, it would refrain from offering not only the planned timber sales challenged by the plaintiffs but also other timber sales as well.  18 F.3d 1202, 1208 (5th Cir. 1994). The intervenors then "demonstrated, through the June 24, 1993, letter applying the district court's preliminary injunction to all future timber sales, that the government's representation of their interest [was] inadequate."  *Id*.  No such showing has been made by the Proposed Intervenors here.

The Proposed Intervenors also cite *Linton by Arnold* v. *Comm'r of Health & Env't, State of Tenn*., 973 F.2d 1311 (6th Cir. 1992), which involved a lawsuit against the Tennessee Department of Health and Environment ("TDHE") and its director challenging the legality of one of its policies concerning nursing homes which allegedly violated federal law.  The district court denied the motion to intervene filed by the nursing homes.  *Id*. at 1313.  On appeal, the Sixth Circuit reversed the denial of the motions to intervene.  *Id*. at 1320.  However, with regard to the movants claim of inadequate representation, the Sixth Circuit based its holding on the fact that "the TDHE acted as both a regulator and a purchaser of movants' services thereby creating *inherent inconsistencies* between movants' interests and those of the State sufficient to warrant a finding that the TDHE representation of movants' interests may have been inadequate."  *Id*. at 1319-20.  Moreover, the TDHE submitted a remedial plan to the district court which was adopted by the court and which "altered the terms of the provider agreement between the State and the movants" by including a new "lock-in" provision which forced the intervening nursing homes to continue indefinitely the care of all Medicaid recipients in residence at their nursing homes, and thus materially impaired their interests.  *Id*. at 1319.  Again, nothing remotely close to this type of showing of inadequate representation has been made by the Proposed Intervenors in this case.

The Proposed Intervenors next cite *McDonough* v. *City of Portland,* No. 2:15-CV-00153-JDL, 2015 WL 3755289 (D. Me. June 16, 2015) in which a trade group representing taxi driver permit holders were allowed to intervene in a non-permit holder's reverse discrimination suit against the city.  However, in that case, the intervenors showed that the Defendant city "face[d] internal and external institutional and political pressure that could influence how it litigate[d] the case, and not necessarily in ways that protect the interests of [the intervenors'] members."  *Id*. at *3.  No such showing has been made in this case.

Finally, the Proposed Intervenors cite *Nat'l Ass'n of Home Builders* v. *San Joaquin Valley Unified Air Pollution Dist.,* No. 1:07CV0820LJODLB, 2007 WL 2757995 (E.D. Cal. Sept. 21, 2007), in which a California district court allowed environmental groups to intervene in an action by a builders' trade group challenging rules promulgated by a city air pollution regulator.  In that case, the intervenors argued that political pressure would likely cause the defendant regulator to avoid advancing certain legally advantageous arguments, and specifically demonstrated that the regulator would likely "avoid admitting or arguing that it has broad statutory authority to regulate the sources because such claims could open it to demands to adopt controls above and beyond those contained in the [challenged regulation]."  *Id*. at *5.  As with the previously discussed cases, no such showing has been made by the Proposed Intervenors.

In truth, the Proposed Intervenors cannot show that they will be in a position to make arguments other than those the government will make in this litigation.  The Plaintiff's claims raise various questions of constitutional law.  Similarly, the Proposed Intervenors' own proposed memorandum supporting dismissal indicates that their arguments would raise questions of constitutional law should they be permitted to intervene.  *See* Proposed Dismissal Mem.  To the extent any questions of fact will be material to a resolution of this action, they necessarily will

pertain to matters of record regarding the adoption and enforcement of the challenged CON law and moratorium and their implementing regulations, rather than to factual issues that the Proposed Intervenors would be in a position to address through their participation.  This fact alone is sufficient to find that the Proposed Intervenors are adequately represented by the State.  *See PrimeSource Bldg. Prod., Inc. v. United States*, No. 20-00032, 2021 WL 197090, at *3 (Ct. Int'l Trade Jan. 20, 2021) (finding adequate representation of trade associations' interests by the United States because the case involved only questions of constitutional law and statutory interpretation, and thus, the proposed intervenors would not be in a position to make any arguments the United States could not make).

In short, the State is more than capable of adequately defending the constitutionality of the challenged laws and has demonstrated an intent to do so vigorously. The Proposed Intervenors have not made the "strong showing" necessary to overcome the presumption that the State's representation is adequate.  *Hopwood*, 21 F.3d at at 605.

## II.   THE PROPOSED INTERVENORS SHOULD BE DENIED PERMISSIVE INTERVENTION.

The Court should also exercise its broad discretion to deny the Proposed Intervenors request for permissive intervention.  The Proposed Intervenors do not meet the threshold requirement for permissive intervention, as they do not have any claim or defense in this action.  Additionally, permissive intervention would prejudice the parties by unnecessarily duplicating the State's legal arguments, creating more discovery, more briefing, more delay, more disputes, and more demands upon the Court's time, all while failing to assist the Court because the State is capable of representing the interests of the Proposed Intervenors.  There is no reason to waste the parties' and this Court's resources when the Proposed Intervenors can provide their perspective and legal arguments as *amicus curiae*.

### A.  The Proposed Intervenors Have No Claim or Defense in this Action.

Rule 24(b)(1)(B) allows permissive intervention if the putative intervenor "has a claim or defense that shares with the main action a common question of law or fact."  The Proposed Intervenors do not even assert that they have a claim or defense in this action.  Rather, without explanation, the Proposed Intervenors simply assert that their "proposed Motion to Dismiss and Memorandum in Support *concern* the same questions of law and fact as *Plaintiff's* claims and *Dr. Dobbs'* defenses regarding whether the Mississippi CON laws and statutory moratorium are constitutional."  *See* Int. Mem. at 7 (emphasis supplied).  That the Proposed Intervenors simply make this assertion in passing without further development is reason alone to reject it out of hand, especially as it does not even meet the threshold requirement of asserting that the Proposed Intervenors *themselves* have a claim or defense.

In truth, the Proposed Intervenors do not assert that they have a claim or defense because they do not have any such thing.  The Proposed Intervenors have asserted no "claim" in this case.  They seek to intervene as defendants and proffered a proposed motion to dismiss Plaintiff's complaint.  However, Plaintiff has asserted no claim against the Proposed Intervenors to which the assertion of any "defense" is warranted.  The "defense" that the Proposed Intervenors seek to assert is a defense of the CON Law and moratorium, not a defense of themselves or their members against any claim.  As demonstrated above, the Proposed Intervenors have not demonstrated the kind of interest that would justify participation *as a party*.

The words "claims or defenses" in Federal Rule of Civil Procedure 24(b)(1)(B) "manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit."  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting *Diamond v. Charles*, 476 U.S. 54, 76–77, 106 S.Ct. 1697, 90 L.Ed.2d

48 (1986) (O'Connor, J., concurring in part and concurring in judgment)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a pleading "that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); Fed. R. Civ. P. 8(b)(1)(A) (requiring a party "responding to a pleading" to "state . . . its defenses *to each claim asserted against it*") (emphasis supplied).

In *Diamond*, the district court allowed a physician to intervene to defend a challenged state abortion law. After the district court declared the law unconstitutional and the Seventh Circuit affirmed, the physician—but not the state—appealed. The Supreme Court dismissed the appeal, reasoning that the physician had no constitutional standing to defend the challenged statute because he had no direct stake in upholding the statute. *See* 476 U.S. at 68, 106 S.Ct. 1697. Justice O'Connor concurred in the judgment on the basis that the district court should never have allowed the physician's intervention in the first instance. *See id.* at 71, 106 S.Ct. 1697.

With respect to permissive intervention, Justice O'Connor explained that Rule 24(b)(1)(B) "plainly *does* require an interest sufficient to support a legal claim or defense which is 'founded upon [that] interest' and which satisfies the Rule's commonality requirement." *Id.* at 77, 106 S.Ct. 1697 (citations omitted) (emphasis and alteration original). The physician had no such interest "because he assert[ed] no actual, present interest that would permit him to sue or be sued by appellees, or the State of Illinois, or anyone else, in an action sharing common questions of law or fact with those at issue in this litigation." *Id.*

A district court in the Texas recently adopted Justice O'Connor's reasoning in *Diamond* and held that the State of Nevada could not intervene in a suit against the federal government asserting a challenge to certain aspects of the Affordable Care Act. *See DeOtte v. Azar*, 332 F.R.D. 173, 186 (N.D. Tex. 2019). The court explained that Nevada did not qualify for permissive intervention

under Rule 24(b)(1)(B) because the plaintiffs had no claim for relief against Nevada. *Id.* ("[A]n outsider cannot use Rule 24(b) to become a party to a case simply because the outsider has a practical stake in the outcome. Instead, the outsider needs to be a proper party to a claim for relief.") (citations omitted).

This court should adopt the reasoning of Justice O'Connor in *Diamond* and the Texas district court in *DeOtte*. Here, for purposes of Rule 24(b)(1)(B), the Proposed Intervenors are not proper parties in any sense in this litigation. Just as the *Diamond* plaintiffs challenging an abortion law had no cognizable claim against the intervening physician, and just as the *DeOtte* plaintiffs had no cognizable claim against Nevada, the Plaintiff here challenging the CON law and moratorium has no cognizable "claim" against the Proposed Intervenors within the meaning of the Federal Rules of Civil Procedure. Because the Plaintiff seeks no relief against the Proposed Intervenors, in this suit or any other, the Proposed Intervenors have no "defense" within the meaning of Rule 24(b)(1)(B). The Proposed Intervenors are therefore ineligible for permissive intervention under Rule 24(b)(1)(B).

### B. Intervention Would Unduly Delay Adjudication of this Proceeding and Prejudice the Original Parties.

Even if the Proposed Intervenors were otherwise *eligible* for permissive intervention under Rule 24(b)(1)(B), the rule also requires the Court to consider "whether [permissive] intervention will unduly delay or prejudice the adjudication of the original parties' rights." This discretion should not be exercised lightly, as a new party has "substantial power to direct the flow of litigation and affect settlement negotiation[s]." *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 195 (D.C. Cir. 2013) (Silberman, J., concurring); *see also Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 508 (7th Cir. 1996) (Posner, J.) ("Increasing the number of parties to a suit can make the suit unwieldy.").

In a constitutional challenge to a Mississippi statute authorizing school prayer, this Court noted the delay and duplication of effort that can result from permissive intervention:

> Permitting [intervention] in this matter would serve no purpose other than delay. [The proposed intervenor's] efforts would but duplicate those of counsel for the Attorney General's Office. . . . 'It is easy enough to see what are the arguments against intervention, where, as here, the intervenor merely underlines issues of law already raised by the primary parties. Additional parties always take additional time. Even if they have no witnesses or their own, they are the sources of additional questions, briefs, arguments, motions and the like which tend to make the proceedings a Donnybrook Fair. Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.'

*Ingebretsen v. Jackson Pub. Sch. Dist.*, 864 F. Supp. 1473, 1485 (S.D. Miss. 1994), *aff'd sub nom.*

*Ingebretsen on Behalf of Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th Cir. 1996) (citations omitted). Here, as was the case in *Ingebretsen*, allowing intervention and thereby granting the Proposed Intervenors full party status would prejudice the parties by unnecessarily duplicating the State's legal arguments, creating more discovery, more briefing, more delay, more disputes, and more demands upon the Court's time. This would especially prejudice the Plaintiff, as he is represented *pro bono* and will also be delayed in obtaining a determination of his rights.

Moreover, as discussed above, the Proposed Intervenors claim, at most, an indirect economic interest in the outcome of this litigation. The Proposed Intervenors, however, are not the only outsiders with such an interest. Granting intervention to the Proposed Intervenors may fling the courthouse doors wide open, "for the effects of a judgment in or a settlement of a lawsuit can ramify throughout the economy, inflicting hurt difficult to prove on countless strangers to the litigation." *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009) (Posner, J.). There would be a long line of potential intervenors for every case in this Court if a mere indirect economic interest is enough to justify permissive intervention.

**C.  Amicus Curiae Participation is "Strongly Preferred" to Intervention.**

There is another mechanism for having outsider views heard that creates no prejudice for the parties and imposes far fewer burdens on the Court than the comparatively drastic step of intervention.  Interested outsiders that wish their views heard can move to participate as *amici curiae*.  "[E]xperienced litigators note that many of those benefits [of intervention] could be achieved simply by . . . outsiders . . . present[ing] their views as *amici*."  Caleb Nelson, *Intervention*, 106 Va. L. Rev. 271, 391 (2020).  In fact, the Fifth Circuit has noted that *amici curiae* participation is "strongly preferred" to intervention, for the exact reasons present in this case:

> 'Trade associations, labor unions, consumers, and many others may be affected by (and hence colloquially 'interested' in) the rules of law established by appellate courts.  To allow them to intervene as of right would turn the court into a forum for competing interest groups, submerging the ability of the original parties to settle their own dispute (or to have the court resolve it expeditiously).  Participation as *amicus curiae* will alert the court to the legal contentions of concerned bystanders, and because it leaves the parties free to run their own case is the *strongly preferred* option.'

*Taylor Commc'ns Grp., Inc. v. Sw. Bell Tel. Co.*, 172 F.3d 385, 389 (5th Cir. 1999) (citations omitted) (emphasis supplied).

## CONCLUSION

Plaintiff respectfully requests that this Court enter an order denying the motion to intervene.

RESPECTFULLY SUBMITTED, this the 12th day of March, 2021.

  /s/ *Aaron R. Rice*
Aaron R. Rice
MS Bar No. 103892
MISSISSIPPI JUSTICE INSTITUTE
520 George St.
Jackson, MS 39202
Tel: (601) 969-1300
Email: aaron.rice@msjustice.org

A. Seth Robbins
MS Bar No. 103096
WATSON JONES PLLC
2829 Lakeland Drive, Suite 1502
Flowood, Mississippi 39232
Tel: 601.939.8900
Fax: 601.932.4400
Email: srobbins@wjpllc.com

*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I, Aaron R. Rice, counsel for Plaintiff, hereby certify that the foregoing document has been filed using the Court's ECF filing system and thereby served on all counsel of record who have entered their appearance in this action to date.

This the 12th day of March, 2021.

  /s/ *Aaron R. Rice*        
Aaron R. Rice