

_____

No. 3:20-CV-789-CWR-FKB

CHARLES SLAUGHTER,

*Plaintiff,*

v.

DR. THOMAS E. DOBBS,
IN HIS OFFICIAL CAPACITY AS
THE MISSISSIPPI STATE HEALTH OFFICER,

*Defendant.*

_____

ORDER

_____

Before CARLTON W. REEVES, *District Judge*.

This case is a constitutional challenge to Mississippi's Certificate of Need ("CON") program. Under consideration are a set of laws that require health care facilities to apply and receive a state-issued CON before opening, expanding, relocating, changing ownership, or even acquiring major medical equipment. Also at stake are 40-year-old moratoria which

bar the issuance of CONs to certain new health care facilities, particularly those that offer at-home health care services.

From 1985, three years after the creation of the moratorium, to 2014, the Mississippi State Department of Health reports that demand for at-home health services tripled. Amidst the COVID-19 pandemic, agencies offering these services have taken on critical importance as many of us seek alternatives to hospitals, nursing homes, and other care facilities that increase the risk of exposure to the virus. To protect ourselves and our loved ones, and in our collective effort to stop the spread, some of us turned to agencies like those at issue in this case.

Plaintiff Charles Slaughter alleges that the CON regime, including the moratoria, violates the equal protection and substantive due process clauses of the United States and Mississippi Constitutions. Specifically, he claims that the regime harms Mississippians, protects monopolies, and worsens the very goals it claims to advance. For support, he relies on 40 years' worth of research finding that CON laws stifle innovation in the health care industry and merely protect established companies from competition.

Defendant Mississippi State Health Officer Dr. Thomas Dobbs has filed a Motion for Judgment on the Pleadings. Intervenor-Defendant Mississippi Association for Home Care has filed a Motion to Dismiss. Defendants stress the deference due to legislative choices and urge judicial restraint. As discussed below, however, defendants misconstrue the standard of review applicable at this juncture. After considering the *Complaint* and *Answer*, relevant pleadings, and applicable law, the Court concludes that for now, plaintiff's claims may proceed to the merits stage.

# I.

## Background and Factual History

Charles Slaughter is a licensed physical therapist who owns a physical therapy clinic in Jackson, Mississippi. In the wake of the COVID-19 pandemic, he hoped to expand his business and offer in-home physical therapy to homebound patients. He cannot. Even if he were able to successfully apply and meet the requirements for approval of a CON, Mississippi has had a moratorium on issuing CONs to new home health care businesses for the past 40 years. Hence, this constitutional challenge.

Defendant Thomas Dobbs is the head officer of the Mississippi State Department of Health (Health Department), as appointed by the Mississippi State Board of Health (The Board). The Board and Health Department implement rules and regulations related to public health, and review and recommend legislation regarding the same. They also administer the CON program.

Intervenor-Defendant Mississippi Association for Home Care (MAHC) is a non-profit whose members are licensed home health agencies that serve Mississippians. Absent intervention, MAHC claims, their long-established economic interests as CON holders, as well as care to indigent patients, would be impaired.

By way of background, CONs were a national phenomenon of the 1970's. The National Health Planning and Resources Development Act of 1974 conditioned federal funding upon states adopting CON programs that met federal guidelines. *See* National Conference of State Legislatures, Certificate of Need (CON) State Laws (2021),

https://www.ncsl.org/research/health/con-certificate-of-need-state-laws.aspx. In 1979 the Mississippi legislature, like many other states, adopted CON laws. *See generally* Miss. Code Ann. § 41-7-171 *et seq*.

By 1982, every state except for Louisiana had implemented some version of a CON program. *See* National Conference of State Legislatures.

In 1987, however, Congress repealed the law. *Id.* Since then, widespread scholarly and government research has admitted that the experiment was misguided. *See Complaint* at 70 n.1 (collecting research). Specifically, CONs are ineffective in achieving the desired outcome: less expensive, more accessible, and better-quality health care. Still, today 35 states retain CON laws. *See* National Conference of State Legislatures.

The Board and Health Department, the agencies that administer the CON program, disagree with the research consensus. Citing the State Health Plan, they claim the CON regime is designed to "prevent unnecessary duplication of health resources; provide cost containment; improve the health of Mississippi residents; and increase the accessibility, acceptability, continuity and quality of health services." They review the CON program annually and have recommended it continue.

To understand the parties' positions, an overview of the CON application and approval process is helpful. It is lengthy and costly, and ultimately the process can result in what is essentially a trial with attorneys, consultants, exhibits, and written motions. Any "affected persons," including current home health providers, can oppose the application. After the proceeding, the Board and Health Department

evaluate whether the applicant has demonstrated need based on several factors, including 16 criteria (*e.g.*, "economic viability," "consistency with the state health plan," and "access by health professional schools") as well as a regional formula to define "need."

Even so, there is a categorical ban on certain new facilities applying for CONs at all. In 1982, the predecessor to the Health Department determined that no new home health care agencies were needed and issued an administrative moratorium on their licensure. Docket No. 7-1, *1982-87 Health Plan*, at 282. During the subsequent legislative session, the administrative moratorium was codified into state statute. It was expanded in 1986. This moratorium, or some version of it, has remained in place for 40 years. Four decades! And, since this moratorium was imposed, the number of home health patients has increased by at least 194 percent. Now, one can only enter the market if a current operator is willing to sell their CON.

The Board of Health annually reviews laws pertaining to public health and can recommend the moratoria be lifted. One moratorium related to adolescent psychiatric beds was lifted in March 2021. Minutes from the Board's quarterly meeting have not revealed any such recommendation as to at-home health facilities, and the CON program has been revisited and amended as recently as 2020.

## II.

## Applicable Law

A motion for judgment on the pleadings, governed by Rule 12(c), is "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be

5

rendered by looking to the substance of the pleadings and any judicially noticed facts." *Higginbotham v. City of Louisville, Mississippi*, No. 1:19-CV-24-GHD-DAS, 2019 U.S. Dist. LEXIS 174715, at *3-4 (N.D. Miss. Oct. 7, 2019) (*citing Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)). The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *See Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). Under this standard,

> [t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. The plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citations and quotation marks omitted).

"This inquiry focuses on the allegations in the complaint, not whether plaintiffs have pleaded sufficient facts to succeed on the merits." *Porter v. Valdez*, 424 F. App'x 382, 385 (5th Cir. 2011).

6

### III.

### Discussion

Plaintiff's federal due process and equal protection claims are subject to rational-basis scrutiny.[1] *See F.C.C. v. Beach Commc'ns*, 508 U.S. 307 (1993). Under this standard, Mississippi is afforded great deference. Those attacking the rationality of a legislative decision have the burden of negating "every conceivable basis which might support it." *Id.* at 315.

That is not to say that rational-basis review is a rubber stamp. "Between 1970 to 2000, applying rational-basis review, the Supreme Court struck down at least a dozen economic laws as violating either the Equal Protection Clause or the Due Process Clause." *Tiwari v. Friedlander*, No. 3:19-CV-884-JRW-CHL, 2020 U.S. Dist. LEXIS 146248, at *13 (W.D. Ky. Aug. 14, 2020) (collecting cases). The Fifth Circuit and district courts in this Circuit have also struck down laws applying the same. *E.g., St. Joseph Abbey v. Castille*, 712 F.3d 215 (5th Cir. 2013).

In a recent application of rational-basis scrutiny, the Fifth Circuit held that courts need not take a state's justifications at face value where they seem implausible or impermissible. *See id.* at 226. "[T]he great deference due state economic regulation does not demand judicial blindness to the history of a challenged rule or the context of its adoption nor does it require courts to accept nonsensical explanations for regulation." *Id.* A state's rationale for economic protection of a fa-

---

[1] The parties have not briefed whether the law applicable to the corresponding state claims is the same or differs from federal law. Accordingly, the Court's Order today will assume arguendo that the applicable law is identical.

7

vored industry is categorically not a legitimate interest. *Id.* at 222 (stating that "neither precedent nor broader principles suggest that mere economic protection of a particular industry is a legitimate governmental purpose[.]"). Accordingly, where seemingly implausible rationales or illegitimate purposes are at play, the Court may delve into evidence of irrationality. *See United States v. Carolene Prods. Co.*, 304 U.S. 144, 153, (1938) (finding that "[w]here the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry[.]").

### A. Due Process

The critical inquiry today is whether the *Complaint*, viewed in the light most favorable to plaintiff, plausibly alleges that CON laws and the moratoria do not rationally relate to any legitimate state interests. To that end, plaintiff claims that the laws do not reduce costs, increase access, or improve the quality of home health care, as the State contends. Plaintiff argues that the laws undermine each of these purported goals and instead, protect incumbent health care facilities from competition.

The *Complaint* is replete with factual support including legislative history, case law, and a substantial body of peer-reviewed studies, publications, and government-backed research. For example, as to costs, the Complaint shows that Congress repealed its CON incentive explicitly because "the evidence showed that certificate-of-need programs resulted in increased health care costs." *Complaint* at ¶ 63. In 1988, 2004, 2016, and 2020, the Federal Trade Commission and the Department of Justice agreed, stating "CON programs are

not successful in containing health care costs, and that they pose serious anticompetitive risks that usually outweigh their purported economic benefits." *Id.* at ¶¶ 66-69 (*citing* Federal Trade Commission and US Department of Justice, *Improving Health Care: A Dose of Competition*, July 2004, 22). The agencies later added that their position is premised on research showing that CON programs are associated with "fewer hospitals, higher costs, lower quality of services, and increased mortality." *Id.* at ¶ 69. The FTC re-urged its concerns considering the COVID-19 pandemic. *Id.* Numerous peer-reviewed articles and journals bolster these claims. *Id.* at ¶ 70 n.1. (collecting research).

Plaintiff refers the Court to a recent decision by the U.S. District Court for the Western District of Kentucky that analyzed whether CON laws encourage or discourage health care accessibility. That court cited a study by George Mason University finding that "while the average state has 362 hospital beds per 100,000 population, this number falls to 263 per 100,000 in states with [CON] programs." *Tiwari*, LEXIS 146248 at *20 (citing Thomas Stratmann & Jake Russ, *Do Certificate-of-Need Laws Increase Indigent Care?* 11-12 (Mercatus Center, George Mason Univ., Working Paper No. 14-20, 2014)). That court credited allegations that CON regimes generally reduce access and denied Kentucky's motion to dismiss the challenge to its CON laws. *See id.*

Finally, regarding quality, plaintiff cites substantial research showing that "stringent Certificate of Need programs decrease the quality of care in many settings." *Complaint* at ¶ 70 n.1; *see also* Docket No. 23 at 29. The *Tiwari* court came to the same conclusion at the pleadings stage. *Tiwari*, LEXIS 146248 at *21-25.

9

Taken as true, as the Court must, the allegations reveal that CON laws result in more costly, less accessible, and worse quality health care. What's more, plaintiff claims that the basis for CON laws and the moratoria is pure economic protectionism—an illegitimate government interest. *See St. Joseph Abbey*, 712 F. 3d at 226-27 (holding that "naked economic preferences are impermissible to the extent that they harm consumers."). "By perpetually shielding the existing home health monopolies from competition and allowing them to continually expand their staffing and capacity within their service areas, Mississippi ensures that the formula it uses will never show a need for a new home health agency," says Slaughter. Docket No. 23 at 24. Startups have no chance. "It is impossible for startups to enter the market, and because nothing prevents incumbents from expanding their staffing and capacity, Mississippi's formula will likewise never show a need." *Id.*

It is no secret that significant financial interests are at stake when it comes to CON laws. The *Tiwari* court refers to the interplay of interests as "rent-seeking"— "rents" referring to monopoly profits.

> Rent-seeking businesses make a sort-of "extra-legal" contract with politicians: money and votes for the politicians, regulations that ensure a monopoly for the interest group. Meanwhile, consumers lose out. Without the market competition that normally regulates businesses' behavior, the monopoly can charge otherwise unsustainably high prices for otherwise unsustainably mediocre products.

10

*Tiwari*, LEXIS 146248 at *9 (citing Fred S. Mcchesney, *Money for Nothing: Politicians, Rent Extraction, and Political Extortion* 21 (1997)). The FTC and DOJ similarly warn that "incumbent firms seeking to thwart or delay entry or expansion by new or existing competitors may use CON laws to achieve that end." *Complaint* ¶ 68. In practice, plaintiff alleges, current operators do exactly that: expand their offerings to absorb any purported "need," and eliminate the opportunity for any new competitors to enter the market.

In sum, plaintiff has set forth allegations negating the State's purported bases for the laws. At this stage, plaintiff's claims are plausible, particularly within the home health care context. The due process claim may proceed.

### B. Equal Protection

Plaintiff also alleges that Mississippi treats some health facilities more favorably than others, in violation of federal and state equal protection clauses. First, he says, Mississippi favors existing providers over new providers, which are essentially banned. Second, some facilities (*e.g.*, physician private practice offices, state-owned health care facilities, and veterans' homes), are exempted from CON laws all together. *See* Miss. Code Ann. §§ 41-7-191 and 41-7-173(h). And while some facilities are subject to CON laws, only five are also subject to the moratoria. *Id.* § 41-7-191.

The question is whether plaintiff has plausibly alleged that there are no rational reasons to account for the distinctions. The Court finds that he has.

In addition to the arguments adduced in the due process claim, plaintiff alleges that there is no rational reason for the

difference in treatment; rather, the regime harms Mississippians and exacerbates an unmet need for home health services, especially considering the COVID-19 pandemic. *Complaint* at ¶¶ 2, 37-38, 121, 135-36. Further, he claims that the incentives that spurred CON laws no longer exists, rendering continued reliance on them irrational. *Complaint* at ¶¶ 20, 35, 49, 155, 159. And applying the regime to home health care does not further public health and safety, as state licensing requirements accomplishes that. *Complaint* at ¶¶ 163, 177.

The State's rebuttal, that "[o]f the many types of facilities covered by CON laws and regulations, a home health agency is but one[,]" does not advance its cause. Docket No. 19 at 3. It does not speak to whether there is a rational reason that Mississippi treats some facilities more favorably than others. Ultimately, the State falls back on the same justifications argued in the due process claim. As discussed above, though, those justifications are subject to discovery and a decision on the merits. The equal protection claim may proceed.

## IV.

## Conclusion

It is worth noting that several courts have evaluated the constitutionality of various CON programs and come to different results. The Eight and Fourth Circuits have determined that they are indeed constitutional. *See Colon Health Centers of America, LLC v. Hazel*, 733 F.3d 535 (4th Cir. 2013); *Birchansky v. Clabaugh*, 955 F.3d 751, 758 (8th Cir. 2020). In contrast, the Ninth Circuit has found that CON programs may be unconstitutional to the extent they burden interstate commerce, *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654

F.3d 919 (9th Cir. 2011), and the Eastern District of Kentucky has found them unconstitutional. *Bruner v. Zawacki*, 997 F. Supp. 2d 691 (E.D. Ky. 2014).

This case is different. First, to this Court's knowledge, none of the previous challenges to CON laws involve categorical bans on start-ups in certain facilities. Mississippi's 40-year-old moratoria is an outlier. Second, this case involves artificial limitations on at-home health care during the height of a global pandemic. This unprecedented context is highly relevant.

That said, today's Order only speaks to the sufficiency of the *Complaint*. How plaintiff's allegations will fare at the merits stage is a separate matter. But at this juncture, like the courts in *Tiwari*, LEXIS 146248, *Birchansky v. Clabaugh*, 421 F. Supp. 3d 658 (S.D. Iowa 2018), and *Bruner*, 997 F. Supp. 2d, this Court will deny the pending motions so that the parties may develop an evidentiary record and proceed to the merits.[2]

The parties are directed to contact the Magistrate Judge within 10 days of this Order to schedule a case management conference and entry of a Case Management Order.

**SO ORDERED**, this the 13th day of January, 2022.

s/ CARLTON W. REEVES
*United States District Judge*

---

[2] Defendants also argue that plaintiff's administrative moratorium challenge is moot because the administrative moratorium ended in 1982, when the statutory moratorium went into effect. Plaintiff rebuts that the Miss. Admin. Code still includes an administrative moratorium, *see id.* at subpt. 91, R. 2.2., on the books. This Court finds that it is unclear whether the administrative moratorium was ever repealed and thus, the challenge against the administrative moratorium may proceed.