**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**CHARLES SLAUGHTER**                                                                **PLAINTIFF**

**vs.**                                                        **Civil Action No. 3:20-cv-789-CWR-FKB**

**DR. DANIEL P. EDNEY, in his Official**
**Capacity as the Mississippi State Health**
**Officer**                                                                                  **DEFENDANT**

**MISSISSIPPI ASSOCIATION FOR**
**HOME CARE**                                                         **INTERVENOR DEFENDANT**

---

**MISSISSIPPI ASSOCIATION FOR HOME CARE, INC.'S FIRST SUPPLEMENTAL**
**RESPONSES TO PLAINTIFF'S COMBINED FIRST SET OF REQUESTS FOR**
**ADMISSIONS, INTERROGATORIES, AND REQUESTS FOR PRODUCTION OF**
**DOCUMENTS**

---

Intervenor Defendant Mississippi Association for Home Care, Inc. supplements its response to Plaintiff's Combined First Set of Requests for Admissions, Interrogatories, and Requests for Production of Documents as follows:

**REQUESTS FOR ADMISSIONS**

**REQUEST NO. 1:** Admit that you have no specific reason to believe that Plaintiff would operate a home health agency improperly.

**RESPONSE:** Based upon Mr. Slaughter's deposition testimony, MAHC denies this request.

**REQUEST NO. 2:** Admit that the affected parties who participate in review of CON applications are always, or almost always, would-be competitors of the applicant and are not patients or users of health care services.

**EXHIBIT**
**6**

**RESPONSE:**  MAHC lacks knowledge of the extent to which patients or users of health care services may review CON applications from time to time and thus cannot admit or deny this request to the extent it refers to patients or users of health care services.  MAHC denies the remainder of this request because (i) the primary reviewers of CON applications are staff of the Mississippi Department of Health and (ii) every public hearing provides the opportunity for members of the public to make comments in support of or in opposition to a CON application so that affected parties can include individuals or organizations that are not competitors or would-be competitors of the applicant.

**REQUEST NO. 3:** Admit that, aside from being a prerequisite for licensure, the application process for a CON in Mississippi is unrelated to the application process for licensure as a home health agency in Mississippi.

**RESPONSE:** MAHC objects to this request because it would be necessary to analyze every term of the numerous minimum standards for licensing a home health agency and making a comparison with the requirements for acquiring a CON.  Upon information and belief, MAHC would deny this request because, for example, both the licensure requirements and CON requirements include periodic reports to the Department of Health.

**REQUEST NO. 4:** Admit that the application process for a CON in Mississippi is unrelated to the process for licensure for a doctor, nurse, home health aide, physical therapist, or other individual health care provider in Mississippi.

**RESPONSE:** MAHC denies this request because, at a minimum, a home health agency is required to employ a nurse and thus the licensing of a home health agency necessarily requires the licensing of a nurse.

2

**REQUEST NO. 5:** Admit that any health and safety concerns that could be posed to the public by the operation of a home health agency are adequately addressed by the separate statutory and regulatory requirements for home health agency licensure.

**RESPONSE:** MAHC denies this request. One of the purposes of Mississippi's CON program is to ensure that there is a sufficient need for a new home health agency such that the expected financial performance of all CON holders, including the applicant, will be sufficient to provide the ability to sustain the provision of quality care, and access to care, to indigent persons and persons in rural areas. These matters concern health and safety of these patients. Licensure requirements do not address these concerns.

**FIRST SUPPLEMENTAL RESPONSE:** MAHC supplements the foregoing response by adding that additional purposes of Mississippi's CON program are to ensure that there is a sufficient need for a new home health agency such that the expected financial performance of all CON holders, including the applicant, will be sufficient to sustain the ability to provide the general public access to both a wider range of healthcare services and the latest innovations in services and technology. These matters also concern health and safety of the general population. Licensure requirements do not address these concerns.

**REQUEST NO. 6:** Admit that the State Health Plan does not account for increased quality of care that could be provided by new providers in determining the need for home health agencies.

**RESPONSE:** MAHC objects to this request because the premise is invalid. Accordingly, MAHC denies this request. Moreover, in evaluating the need for a project, the State Health Plan as well as other CON review criteria do in fact consider the extent to which a new provider would enhance quality of care.

**REQUEST NO. 7:** Admit that you have no basis to know whether Plaintiff would provide better quality home health services than is currently being provided by existing home health agencies.

**RESPONSE:** Based on Mr. Slaughter's deposition testimony, MAHC denies this request.

**REQUEST NO. 8:** Admit that the CON program and home health moratorium decrease the number of home health agencies in Mississippi.

**RESPONSE:** MAHC admits that the moratorium has kept the number of home health care agencies from increasing. MAHC admits that during the moratorium, the number of home health care agencies in Mississippi has decreased. MAHC lacks knowledge of the specific cause(s) for a home health agency in Mississippi to no longer do business.

**REQUEST NO. 9:** Admit that there has been consolidation in the home health agency market in Mississippi since 1981.

**RESPONSE:** MAHC admits that there has been some "consolidation" in the physical operation of home health agencies in Mississippi and across all other states for reasons not related to CON regulation. MAHC lacks knowledge as to whether any such "consolidation" has resulted in fewer home health agency licenses in Mississippi.

**REQUEST NO. 10:** Admit that Mississippi is the only state in the United States that has imposed a continuous moratorium on new home health agencies since 1981.

**RESPONSE:** On information and belief, admitted.

**REQUEST NO. 11:** Admit that in the late 1970s and/or early 1980s the Mississippi Association for Home Care (then the Mississippi Home Health Association), through its officers, employees, members, agents, attorneys, or lobbyists, publicly or privately advocated for the Mississippi State Department of Health (then the Mississippi Health Care Commission) and/or the

Mississippi legislature to prohibit hospitals from owning home health agencies and/or to enact a moratorium on the issuance of CONs for home health agencies and/or to impose other restrictions on the creation of new home health agencies.

      **RESPONSE:** At this time MAHC lacks knowledge of activities in the 1970s and early 1980s that are the subject of this request.  Accordingly, MAHC can neither admit nor deny this request.

      **REQUEST NO. 12:** Admit that in the late 1970s and/or early 1980s, there was an increase in the utilization of home health services in Mississippi.

      **RESPONSE:** MAHC lacks knowledge of the subject of this request.  On information and belief of MAHC's designated expert, MAHC admits this request.

      **REQUEST NO. 13:** Admit that in the late 1970s and/or early 1980s, the Mississippi Hospital Association encouraged hospitals in Mississippi to develop their own home health agencies.

      **RESPONSE:** MAHC lacks knowledge of the subject of this request.  Accordingly, MAHC can neither admit nor deny this request.

      **REQUEST NO. 14:** Admit that officers of the Mississippi Association for Home Care (then the Mississippi Home Health Association) believed that an increase in the number of home health agencies in Mississippi in the late 1970s and/or early 1980s, including but not limited to hospital-based home health agencies, was having or would have a negative impact on the cost, quality, and/or accessibility of home health services in Mississippi.

      **RESPONSE:** MAHC lacks knowledge of what former officers believed in the 1970s and early 1980s.  Accordingly, MAHC can neither admit nor deny this request.  However, MAHC does

believe today that an increase in the number of home health agencies in Mississippi is not warranted and would have a negative impact on costs, quality and access to home health care.

**REQUEST NO. 15:** Admit that officers of the Mississippi Association for Home Care (then the Mississippi Home Health Association) believed that, in addition to other negative effects, an increase in the number of home health agencies in Mississippi in the late 1970s and/or early 1980s, including but not limited to hospital-based home health agencies, was causing or would cause existing, free-standing home health agencies to lose their referral sources or otherwise lose business.

**RESPONSE:** MAHC lacks knowledge of what former officers believed in the 1970s and early 1980s. Accordingly, MAHC can neither admit nor deny this request. However, MAHC does believe today that if Mississippi's CON program for home health care were to be eliminated, then an unregulated market would likely result in a significant increase in the number of home health agencies in Mississippi which would have a significant negative impact on costs, quality and the ability of home health agencies to offer services to indigent persons and persons in rural communities.

**FIRST SUPPLEMENTAL RESPONSE:** MAHC supplements the foregoing response by adding that MAHC also believes today that if Mississippi's CON program for home health care were to be eliminated, then an unregulated market would likely result in a significant increase in the number of home health agencies in Mississippi which would have a significant negative impact on the ability of home health agencies to provide the general public access to both a wider range of healthcare services and the latest innovations in services and technology.

**REQUEST NO. 16:** Admit that the increase in the utilization of home health services in Mississippi in the late 1970s and/or early 1980s was caused or contributed to, in whole or in part,

6

by the enactment of a new diagnosis-related group (DRG)-based Medicare prospective payment system, which provided an incentive for early hospital discharge.

**RESPONSE:** MAHC lacks knowledge of the subject of this request. On information and belief of MAHC's designated expert, MAHC admits this request in part. It is his opinion that (i) the Medicare Prospective Payment System was only one factor that contributed to the increase in home health utilization after its implementation in October 1983 and (ii) the growth in home health utilization since 1983 has also resulted from the growth and aging of the population, the expansion of in-home services offered by home health providers, and federal and state efforts to reduce reliance on nursing homes for post-acute care.

**REQUEST NO. 17:** Admit that the advocacy by the Mississippi Association for Home Care (then the Mississippi Home Health Association) for a prohibition on new hospital-based home health agencies and/or a moratorium on the issuance of CONs for new home health agencies and/or other restrictions on the creation of new home health agencies was motivated, in whole or in part, by the renewed interest in the development of hospital-based home health agencies in the late 1970s and/or early 1980s, and the perceived harms that were caused or would be caused by an increase in the number of home health agencies.

**RESPONSE:** MAHC lacks knowledge of both the underlying premise and the subject of this request. Accordingly, MAHC can neither admit nor deny this request. However, MAHC admits that elimination of Mississippi's CON program for home health agencies would result in significant harms to indigent persons and persons living in rural areas.

**FIRST SUPPLEMENTAL RESPONSE:** MAHC supplements the foregoing response by adding that MAHC admits that elimination of Mississippi's CON program for home health agencies would result in significant harms to the general public with respect to the ability of home

health agencies to provide the general public access to both a wider range of healthcare services and the latest innovations in services and technology.

**REQUEST NO. 18:** Admit that the Mississippi Association for Home Care (including the Mississippi Home Health Association) through its officers, employees, members, agents, attorneys, or lobbyists, has publicly or privately advocated against numerous bills introduced in the Mississippi legislature which would have repealed the moratorium on the issuance of CONs for new home health agencies.

**RESPONSE:** MAHC objects to this request because the phrase "publicly or privately advocated" is overly broad and ambiguous. MAHC lacks knowledge of statements that may have been made by former officers, employees, members, agents or attorneys. MAHC admits that it has routinely retained a lobbyist who has identified and monitored legislative bills of interest to MAHC, including bills relating to the moratorium. MAHC admits that its lobbyist has from time to time advocated against lifting the moratorium because the members of MAHC believe the lifting of the moratorium would be detrimental to the goals set forth in the State Health Plan as they relate to the provision of home health services.

**REQUEST NO. 19:** Admit that no officer, agent, or employee of the Mississippi Association for Home Care (including the Mississippi Home Health Association) has ever stated or suggested in writing that elimination of the home health CON law or home health moratorium would increase the regulatory burden on the Mississippi State Department of Health or its predecessor agency, the Mississippi Health Care Commission, or that the home health CON law or home health moratorium should be preserved in order to avoid increasing the regulatory burden to the agency.

**RESPONSE:** MAHC lacks knowledge of what current or former officers may have stated in their personal writings relating to the subject matter of this request.  Accordingly, MAHC can neither admit nor deny this request.

**REQUEST NO. 20:** Admit that you have no evidence to support the contention that elimination of the home health CON law or home health moratorium would increase the Mississippi State Department of Health's regulatory burden.

**RESPONSE:** MAHC lacks knowledge of the subject of this request.  On information and belief of MAHC's designated expert, MAHC denies this request.  It is his opinion that (i) the experience of other states that have eliminated CON regulation of home health services indicates that the number of agencies would increase significantly in Mississippi if CON regulation were eliminated, and (ii) an increasing number of agencies would result in a significantly greater number of initial applications for licensure, ongoing review of annual licensure renewal applications, and investigation into complaints regarding the operations of a large number of agencies.

**REQUEST NO. 21:** Admit that any current methods used by the Mississippi State Department of Health to require or encourage home health agencies applying for or receiving a CON to provide care to Medicaid, underinsured, or indigent patients could also be used to require or encourage all home health agencies applying for or receiving licensure to provide care to Medicaid, underinsured, or indigent patients.

**RESPONSE:** MAHC lacks knowledge of the subject of this request.  On information and belief of MAHC's designated expert, MAHC denies this request.  It is his opinion that the licensure process collects information regarding the utilization of home health services by payor, but it has no authority to encourage or sanction providers regarding the types of patients the agencies choose to serve.

9

**REQUEST NO. 22:** Admit that home health agencies can delay or prevent the need for elderly patients to be placed in nursing homes, assisted-living facilities, and other long-term care facilities.

**RESPONSE:** Admitted.

**REQUEST NO. 23:** Admit that existing home health agencies are not legally prohibited from increasing the number of staff members they employ or contract with and are not legally prohibited from increasing the number of patients they serve within the geographic borders authorized by their CON.

**RESPONSE:** Admitted.

**REQUEST NO. 24:** Admit that you do not know the exact number of people in Mississippi, if any, who need home health services but are not receiving them, or the exact number of people in Mississippi, if any, who are receiving inadequate home health services or who need home health services not provided by their current home health agency.

**RESPONSE:** MAHC objects to this request because it is actually three separate requests for which there is no one simple response. MAHC objects to this request because it improperly assumes that there exists an objective basis for anyone in the position of either the plaintiff or the defendants in this action or any of their respective witnesses, or the Court for that matter, to determine the "needs" of individual members of the public. MAHC further objects to this request because "need" alone is not the determining factor for a home health agency to be permitted to provide services. The patient must have a written directive from a physician authorizing the care. Subject to these objections and without waiving the same, (i) MAHC is not aware of evidence that anyone in Mississippi who is eligible to receive home health services has sought such services but has been denied such services, (ii) MAHC is not aware of patients who are receiving inadequate

home health services in Mississippi and (iii) MAHC is not aware of patients in Mississippi who need home health services not provided by their current home health agency. MAHC would state affirmatively that the only available objective data of which it is aware is published by the Centers for Medicare and Medicaid Services which shows in its Star Rating System that Mississippi ranks higher than all non-CON states with respect to quality of care and access to care provided by its home health agencies.

## **INTERROGATORIES**

**INTERROGATORY NO. 1:** Identify each government interest you contend is advanced by Mississippi's CON program.

**RESPONSE:** MAHC objects to this request to the extent it seeks expert testimony. MAHC objects to the extent this interrogatory seeks information about CON regulations beyond those regulating the home health agencies of the State of Mississippi. Subject to these objections, MAHC responds that controlling costs, improving the health of Mississippians, increasing acceptability of healthcare, preventing unnecessary duplication, maintaining proper quality of healthcare, increasing access to care for indigent persons and persons in rural areas, enabling home health agencies to employ modern technology and to provide new available services, minimizing the burden on those providing regulatory oversight, ensuring continuity of care, and minimizing fraud and abuse are all governmental interests served by the CON program regulating home health agencies.

**FIRST SUPPLEMENTAL RESPONSE:** MAHC supplements the foregoing response by adding that it incorporates by reference Dan Sullivan's expert report served in this action as well as his deposition testimony and the deposition testimony of Becky Knight and Dr. Lucius

Lampton which provide additional insight regarding governmental interests served by Mississippi's CON program.

**INTERROGATORY NO. 2:** Identify each government interest you contend is advanced by applying Mississippi's CON program specifically to home health agencies.

**RESPONSE:** MAHC objects to this request to the extent it seeks expert testimony. Subject to this objection, MAHC responds that controlling costs, improving the health of Mississippians, increasing acceptability of healthcare, preventing unnecessary duplication, maintaining proper quality of healthcare, increasing access to care for indigent persons and persons in rural areas, enabling home health agencies to employ modern technology and to provide new available services, minimizing the burden on those providing regulatory oversight, ensuring continuity of care, and minimizing fraud and abuse are all governmental interests served by the CON program regulating home health agencies.

**FIRST SUPPLEMENTAL RESPONSE:** MAHC supplements the foregoing response by adding that it incorporates by reference Dan Sullivan's expert report served in this action as well as his deposition testimony and the deposition testimony of Becky Knight and Dr. Lucius Lampton which provide additional insight regarding governmental interests served by Mississippi's CON program regulating home health agencies.

**INTERROGATORY NO. 3:** Identify each government interest you contend is advanced by the moratorium on the issuance of CONs to home health agencies.

**RESPONSE:** MAHC objects to this request to the extent it seeks expert testimony. Subject to this objection, MAHC responds that controlling costs, improving the health of Mississippians, increasing acceptability of healthcare, preventing unnecessary duplication, maintaining proper quality of healthcare, increasing access to care for indigent persons and persons

in rural areas, enabling home health agencies to employ modern technology and to provide new available services, minimizing the burden on those providing regulatory oversight, ensuring continuity of care, and minimizing fraud and abuse are all governmental interests served by the CON program regulating home health agencies, including the moratorium.

**FIRST SUPPLEMENTAL RESPONSE:**  MAHC supplements the foregoing response by adding that it incorporates by reference Dan Sullivan's expert report served in this action as well as his deposition testimony and the deposition testimony of Becky Knight and Dr. Lucius Lampton which provide additional insight regarding governmental interests served by Mississippi's CON program regulating home health agencies, including the moratorium.

**INTERROGATORY NO. 4:** Identify the facts or documents, if any, that support the contention that applying Mississippi's CON program specifically to home health agencies:

(a)        Prevents unnecessary duplication of health resources;

(b)        Provides cost containment;

(c)        Improves the health of Mississippi residents;

(d)        Increases the accessibility of health services;

(e)        Increases the acceptability of health services;

(f)        Increases the continuity of health services;

(g)        Increases the quality of health services;

(h)        Promotes health services in rural areas;

(i)        Increases health services for the indigent;

(j)        Reduces the prevalence of fraud or abuse in the provision of health services;

(k)        Reduces regulatory burden to the State;

(l)        Advances any other government interest identified by you in response to Interrogatory No. 2.

**RESPONSE:**  See the Expert Report of Daniel Sullivan, the deposition testimony of Daniel Sullivan and the documents and exhibits referred to in both.  See also the exhibits introduced at Dr. Thomas Stratmann's deposition. MAHC also identifies the personal experiences and observations of its designated potential witnesses who have observed increased incidents of fraud and abuse in home health in states without certificate-of-need regulation and in industries (such as hospice) in Mississippi that do not have certificate-of-need requirements.   MAHC reserves the right to supplement its answer to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE:**  MAHC supplements the foregoing response by adding that it incorporates by reference the deposition testimony of Becky Knight, Warren Thornton and Dr. Lucius Lampton which provide additional insight regarding many of the subparts of this interrogatory.

**INTERROGATORY NO. 5:** Identify the facts or documents, if any, that support the contention that Mississippi's moratorium on the issuance of CONs to new home health agencies:

(a)        Prevents unnecessary duplication of health resources;

(b)        Provides cost containment;

(c)        Improves the health of Mississippi residents;

(d)        Increases the accessibility of health services;

(e)        Increases the acceptability of health services;

(f)        Increases the continuity of health services;

(g)        Increases the quality of health services;

(h)        Promotes health services in rural areas;

(i)            Increases health services for the indigent;

(j)            Reduces the prevalence of fraud or abuse in the provision of health services;

(k)            Reduces regulatory burden to the State;

(l)            Advances any other government interest identified by you in response to Interrogatory No. 3.

**RESPONSE:**  See the Expert Report of Daniel Sullivan, the deposition testimony of Daniel Sullivan and the documents and exhibits referred to in both.  See also the exhibits introduced at Dr. Thomas Stratmann's deposition. MAHC also identifies the personal experiences and observations of its designated potential witnesses who can generally testify regarding their own experience regarding some or all of these factors (a) through (l).  For example, MAHC believes its designated potential witnesses have observed increased incidents of fraud and abuse in home health in states without certificate-of-need regulation and in industries (such as hospice) in Mississippi that do not have certificate-of-need requirements.  MAHC reserves the right to supplement its answer to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE:**  MAHC supplements the foregoing response by adding that it incorporates by reference the deposition testimony of Becky Knight, Warren Thornton and Dr. Lucius Lampton which provide additional insight regarding many of the subparts of this interrogatory.

**INTERROGATORY NO. 6:** Identify the facts or documents, if any, that support the contention that the government interest identified in Interrogatory No. 2 would actually be advanced by permitting affected parties to participate in or appeal CON determinations for other home health agencies if the moratorium were removed.

**RESPONSE:**   MAHC objects to this Interrogatory because its underlying premise is invalid in that it wrongly presumes that interested members of the public must first pass an unidentified factual test before being afforded the right to petition their government.   The Constitution guarantees the right of citizens to petition the government.  MAHC further objects to this Interrogatory as premature.  Notwithstanding its objections, MAHC would refer to the Expert Report of Daniel Sullivan, the deposition testimony of Daniel Sullivan and the documents and exhibits referred to in both.  MAHC also identifies the professional experiences of its designated potential witnesses who have experiences in states where such a process is permitted.  MAHC reserves the right to supplement its answer to this Interrogatory.

**FIRST SUPPLENTAL RESPONSE:**   MAHC supplements the foregoing response by adding that it further objects to this interrogatory because its underlying premise is invalid in that it wrongly presumes that the moratorium precludes any member of the public from petitioning the MSDH or the Mississippi Legislature regarding a CON for a home health agency or the lifting of the moratorium.

**INTERROGATORY NO. 7:** Identify the differences (if any) between home health agencies and the health care providers exempt from Mississippi's CON program by Mississippi statutes that justify requiring CONs for home health agencies but not the exempt providers.

**RESPONSE:**   MAHC objects to this interrogatory because its underlying premise is invalid in that it wrongly assumes that a CON program for home health agencies can only be justified by comparing home health agencies with other health care providers generally.  MAHC also objects to this interrogatory to the extent it seeks expert testimony.  Notwithstanding its objections, MAHC would refer to the Expert Report of Daniel Sullivan, the deposition testimony of Daniel Sullivan and the documents and exhibits referred to in both.  MAHC also identifies the

professional experiences of its designated potential witnesses. MAHC further states that differences include breadth and type of services home health agencies provide and the nature of the patient population served. For example, other health care providers offer their specialized services in their own offices where the patients come to them. In contrast, a home health agency offers a variety of services, all of which require travel to the patient's home. Home health agencies need to have and maintain a sufficient client base so that the agency can afford to provide some needed services at a loss. Home health agencies are not reimbursed for travel time contrasted with other health care providers whose patients come to their office. Home health agencies need to have and maintain a sufficient client base to afford to provide service to rural areas. Home health agencies are required to provide indigent care contrasted with other health care providers who have no such requirement. Home health agencies need to have and maintain a sufficient client base to afford to provide indigent care. Home health agencies serve homebound patients, which makes providing care across the state in a cost-efficient manner very important. In addition, the majority of home health patients are Medicare patients, which makes cost containment, quality of care, access to care, continuity of care, and reducing fraud and abuse even more important for the government than if it were primarily private insurance. MAHC reserves the right to supplement this interrogatory.

**FIRST SUPPLEMENTAL RESPONSE:** MAHC supplements the foregoing response by adding that it incorporates by reference the deposition testimony of Becky Knight and Dr. Lucius Lampton to the extent their testimony addresses the subject matter of this interrogatory.

**INTERROGATORY NO. 8:** Identify the differences (if any) between home health agencies and the health care providers subject to Mississippi's CON program but not subject to a

17

moratorium on the issuance of CONs by Mississippi statutes that justify imposing a moratorium on CONs for new home health agencies but not on the providers not subject to a moratorium.

**RESPONSE:**  MAHC objects to this interrogatory because its underlying premise is invalid in that it wrongly assumes that it is proper to compare the CON program for home health agencies with other CON programs.  MAHC also objects to this request to the extent it seeks expert testimony.  Subject to these objections, MAHC would refer to the Expert Report of Daniel Sullivan, the deposition testimony of Daniel Sullivan and the documents and exhibits referred to in both.  MAHC also identifies the professional experiences of its designated potential witnesses. MAHC further states that differences include breadth and type of services home health agencies provide and the nature of the patient population served.  For example, other health care providers offer their specialized services in their own offices where the patients come to them.  In contrast, a home health agency offers a variety of services, all of which require travel to the patient's home. Home health agencies need to have and maintain a sufficient client base so that the agency can afford to provide some needed services at a loss.   Home health agencies are not reimbursed for travel time contrasted with other health care providers whose patients come to their office.  Home health agencies need to have and maintain a sufficient client base to afford to provide service to rural areas.  Home health agencies are required to provide indigent care contrasted with other health care providers who have no such requirement.  Home health agencies need to have and maintain a sufficient client base to afford to provide indigent care.  Home health agencies serve homebound patients, which makes providing care across the state in a cost-efficient manner very important.  In addition, the majority of home health patients are Medicare patients, which makes cost containment, quality of care, access to care, continuity of care, and reducing fraud and abuse

even more important for the government than if it were primarily private insurance. MAHC reserves the right to supplement this interrogatory.

**FIRST SUPPLEMENTAL RESPONSE:** MAHC supplements the foregoing response by adding that it incorporates by reference the deposition testimony of Becky Knight and Dr. Lucius Lampton to the extent their testimony addresses the subject matter of this interrogatory.

**INTERROGATORY NO. 9:** Identify any facts or documents that support your expert's contention that, even in the absence of a cost-plus reimbursement method, "when it comes to health care services, 'supply creates its own demand' . . . even if there is not a clinical need for them."

**RESPONSE:** See the Expert Report of Daniel Sullivan, the deposition testimony of Daniel Sullivan and the documents and exhibits referred to in both. See also the exhibits introduced at Dr. Thomas Stratmann's deposition. MAHC would also state that the personal experiences of its designated potential witnesses support this. MAHC reserves the right to supplement its answer to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE:** MAHC supplements the foregoing response by adding that it incorporates by reference the deposition testimony of Becky Knight and Dr. Lucius Lampton to the extent their testimony addresses the subject matter of this interrogatory.

**INTERROGATORY NO. 10:** Identify any facts or documents that support your expert's contention that, even in the absence of a cost-plus reimbursement method, for home health agencies in particular, 'supply creates its own demand' . . . even if there is not a clinical need for them."

**RESPONSE:** See the Expert Report of Daniel Sullivan, the deposition testimony of Daniel Sullivan and the documents and exhibits referred to in both. See also the exhibits introduced at Dr. Thomas Stratmann's deposition. MAHC would also state that the personal

experiences of its designated potential witnesses support this. MAHC reserves the right to supplement its answer to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE:** MAHC supplements the foregoing response by adding that it incorporates by reference the deposition testimony of Becky Knight and Dr. Lucius Lampton to the extent their testimony addresses the subject matter of this interrogatory.

**INTERROGATORY NO. 11:** Identify any facts or documents that support the contention that the formula used to determine the need for home health agencies in the State Health Plan correctly assesses the actual need for home health agencies.

**RESPONSE:** MAHC would refer to the annual home health reports published by the State of Mississippi as well as the response of MSDH to this interrogatory.

**FIRST SUPPLEMENTAL RESPONSE:** MAHC supplements the foregoing response by adding that it incorporates by reference the deposition testimony of Dr. Lucius Lampton to the extent his testimony addresses the subject matter of this interrogatory.

**INTERROGATORY NO. 12:** Identify any legal requirements placed on your member home health agencies to ensure that they serve Medicaid, underinsured, or indigent patients, or provide charity care.

**RESPONSE:** The State Health Plan requires home health agency CON holders to provide services to Medicaid, underinsured and indigent patients. Home health agencies are required to submit to the MSDH annual reports that include statistical information regarding the patients served. MAHC cannot speak for the MSDH regarding its policies for enforcing the State Health Plan.

**INTERROGATORY NO. 13:** Identify any consulting, lobbying, or government affairs firms you have retained to consider or create studies, reports, or proposals concerning study,

analysis, costs, benefits, harms, repeal, preservation, or amendment of Mississippi's CON laws, CON regulations, home health CON requirement, or home health moratorium.

**RESPONSE:**  Buddy Medlin & Associates, Daniel Sullivan, and Arent Fox.

**INTERROGATORY NO. 14:** Identify all documents referred to or examined in preparing the responses to these interrogatories and Plaintiff's First Set of Requests for Admissions, including identifying for which interrogatory or request a document was referred to or examined.

**RESPONSE:**  MAHC objects to this request to the extent it seeks information protected by the attorney-client privilege or work-product.  MAHC objects to this request to the extent that it asks for an index of documents being produced.  MAHC will produce responsive documents as described in its responses to Plaintiff's requests for production.

**INTERROGATORY NO. 15:** Identify all individuals you consulted in preparing responses to these interrogatories, Plaintiff's First Set of Requests for Admissions, and Plaintiff's First Set of Requests for Production. For each individual, include their employer and job title and indicate the interrogatories, requests, or admission for which the person was consulted.

**RESPONSE:**  To the extent Paul Davis and Caroline Smith assisted in investigating this matter, MAHC objects on the grounds of attorney-client privilege and attorney work product, mental impressions, conclusions, opinions, or legal theories of an attorney.  Becky Knight (President South Region, Kindred at Home); Richard MacMillan (Senior Vice President and Senior Counsel, LHC Group, Inc.); Danny Mullins (Division Vice President of Sales-Alabama and Mississippi, Kindred at Home); Chad Blalack (Kare-in-Home), reviewed each of the written discovery requests and were given the opportunity to provide insight. Daniel Sullivan reviewed and commented on the requests for admission.

**INTERROGATORY NO. 16:** Identify every person you intend to have offer testimony in this case, including any expert witness, and describe the substance of the anticipated testimony.

**RESPONSE:**  MAHC objects to this interrogatory because it is not practicable to state the substance of testimony of fact witnesses because that testimony will be in rebuttal to the plaintiff's testimony and arguments made at trial.  MAHC also objects to this request as it is premature and MAHC is still developing its trial strategy, if there is a trial.  Subject to these objections, MAHC responds that it may call Charles Slaughter, Becky Knight, Richard MacMillan, Danny Mullins, and/or Chad Blalack as fact witnesses about the allegations contained in the Complaint and the averments in MAHC's Answer to the Complaint.  MAHC is considering calling Daniel Sullivan about the benefits and effects of certificate of need regulation as set forth in his report heretofore produced to plaintiff and in his deposition heretofore taken by plaintiff.  MAHC may also have one or more of the foregoing fact witnesses testify concerning their experiences relating to the matters set forth in Dan Sullivan's report and Dr. Stratmann's report and deposition taken by MAHC in this action.

**FIRST SUPPLEMENTAL RESPONSE:**  MAHC supplements the foregoing response by deleting Richard MacMillan, Danny Mullins and Chad Blalack as potential fact witnesses and adding as potential fact witnesses Warren Thornton and the MSDH Rule 30(b)(6) witnesses who were deposed in this action.

**INTERROGATORY NO. 17:** Identify each and every person from whom you or anyone acting on your behalf (including, without limitation, your attorneys, any investigator working for your attorneys, or you, or any other person) have obtained a statement (e.g. written, recorded or otherwise) or affidavit concerning any fact, matter or event having any connections or relevance to the claims or defenses in this lawsuit.

**RESPONSE:**  None.

**INTERROGATORY NO. 18:** Identify each document, electronic or otherwise, and thing in your possession, custody, or control that you may use to support your claims or defenses in this matter.

**RESPONSE:**  See documents that have been and will be produced.  See the Expert Report of Daniel Sullivan, the deposition testimony of Daniel Sullivan and the documents and exhibits referred to in both.  See also the exhibits introduced at Dr. Thomas Stratmann's deposition. MAHC reserves the right to supplement its answer to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE:**  MAHC supplements the foregoing response by adding that the reference to "documents that have been and will be produced" in the foregoing response is intended to include those documents produced by any party in this action as well as exhibits to any and all depositions taken in this action.

**INTERROGATORY NO. 19:** Identify all persons whom you will call, or may call, as witnesses in the trial of this action, and for each person state whether you will call, or only may call, the person to testify at trial.

**RESPONSE:**   MAHC objects to this request as it is premature and MAHC is still developing its trial strategy, if there is a trial.  Subject to these objections, MAHC responds that it is considering calling Charles Slaughter, Becky Knight, Richard MacMillan, Danny Mullins, Chad Blalack, and Daniel Sullivan.

**FIRST SUPPLEMENTAL RESPONSE:**  MAHC supplements the foregoing response by deleting Richard MacMillan, Danny Mullins and Chad Blalack as potential "may call" witnesses and adding Warren Thornton as well as each of the MSDH Rule 30(b)(6) witnesses as "may call" witnesses.

**INTERROGATORY NO. 20:** If your response to Request for Admission No. 20 was anything other than an unqualified admission, describe the facts that support your response.

**RESPONSE:**  See answer to Request for Admission No. 20.

**FIRST SUPPLEMENTAL RESPONSE:**  MAHC supplements the foregoing response by adding that it also relies on the Expert Report of Daniel Sullivan, the deposition testimony of Daniel Sullivan and the documents and exhibits referred to in both.  See also the exhibits introduced at Dr. Thomas Stratmann's deposition. MAHC also identifies the personal experiences and observations of its designated potential witnesses who can generally testify regarding their own experience regarding the subject matter of this interrogatory.  For example, MAHC believes its designated potential witnesses have observed increased incidents of fraud and abuse in home health in states without certificate-of-need regulation and in industries (such as hospice) in Mississippi that do not have certificate-of-need requirements.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:** Identify and produce all documents relevant to any claims or defenses in this action.

**RESPONSE:**  MAHC objects to this request to the extent it calls for the production of any privileged documents, including but not limited to documents subject to the attorney-client privilege, joint defense, or common interest privilege between counsel for the Mississippi State Department of Health and MAHC.  MAHC objects to any request for a privilege log for documents created after the date Plaintiff's complaint was filed as it would be overly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  MAHC will produce any responsive, non-privileged documents in its possession, custody, and control.

**REQUEST NO. 2:** Identify and produce all documents and communications concerning your relationship with the Mississippi State Department of Health (including the Mississippi Health Care Commission).

**RESPONSE:**  MAHC objects to this request to the extent it calls for the production of any privileged documents, including but not limited to documents subject to the attorney-client privilege, joint defense, or common interest privilege between counsel for the Mississippi State Department of Health and MAHC.  MAHC objects to any request for a privilege log for documents created after the date Plaintiff's complaint was filed as it would be overly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control unrelated to the joint defense of this action.

**REQUEST NO. 3:** Identify and produce all documents, including drafts, concerning study, analysis, costs, benefits, harms, repeal, preservation, or amendment of: a prohibition on new hospital-based home health agencies, a CON requirement for home health agencies, a moratorium on the issuance of CONs for new home health agencies, or other restrictions on the creation of new home health agencies.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control.

**REQUEST NO. 4:** Identify and produce all documents concerning your lobbying for enactment or preservation of: a prohibition on new hospital-based home health agencies, a CON requirement for home health agencies, a moratorium on the issuance of CONs for new home health agencies, or other restrictions on the creation of new home health agencies.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control.

**REQUEST NO. 5:** Identify and produce all documents concerning testimony by your officers, employees, or agents before any government body regarding enactment or preservation of: a prohibition on new hospital-based home health agencies, a CON requirement for home health agencies, a moratorium on the issuance of CONs for new home health agencies, or other restrictions on the creation of new home health agencies.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control.

**REQUEST NO. 6:** Identify and produce all documents concerning public comments submitted by your officers, employees, or agents to any government body regarding enactment or preservation of: a prohibition on new hospital-based home health agencies, a CON requirement for home health agencies, a moratorium on the issuance of CONs for new home health agencies, or other restrictions on the creation of new home health agencies.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control.

**REQUEST NO. 7:** Identify and produce all documents concerning correspondence from your officers, employees, or agents to your members regarding enactment or preservation of: a prohibition on new hospital-based home health agencies, a CON requirement for home health agencies, a moratorium on the issuance of CONs for new home health agencies, or other restrictions on the creation of new home health agencies.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control.

**REQUEST NO. 8:** Identify and produce all of your official minutes concerning enactment or preservation of: a prohibition on new hospital-based home health agencies, a CON requirement for home health agencies, a moratorium on the issuance of CONs for new home health agencies, or other restrictions on the creation of new home health agencies.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control.

**REQUEST NO. 9:** Identify and produce all documents reflecting funds expended for lobbying for enactment or preservation of: a prohibition on new hospital-based home health agencies, a CON requirement for home health agencies, a moratorium on the issuance of CONs for new home health agencies, or other restrictions on the creation of new home health agencies.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control.

**REQUEST NO. 10:** Identify and produce all documents concerning correspondence from or to your officers, employees, or agents to or from the Mississippi Hospital Association or its officers, employees, or agents regarding enactment or preservation of: a prohibition on new hospital-based home health agencies, a CON requirement for home health agencies, a moratorium on the issuance of CONs for new home health agencies, or other restrictions on the creation of new home health agencies.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control.

**REQUEST NO. 11:** Identify and produce all documents concerning correspondence from or to your officers, employees, or agents to or from any government official regarding enactment or preservation of: a prohibition on new hospital-based home health agencies, a CON requirement

for home health agencies, a moratorium on the issuance of CONs for new home health agencies, or other restrictions on the creation of new home health agencies.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control.

**REQUEST NO. 12:** Identify and produce all documents authored by Elaine Burchfield, former president of the Mississippi Home Health Association (now Mississippi Association for Home Care) regarding enactment or preservation of: a prohibition on new hospital-based home health agencies, a CON requirement for home health agencies, a moratorium on the issuance of CONs for new home health agencies, or other restrictions on the creation of new home health agencies.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control.

**REQUEST NO. 13:** Identify and produce all documents concerning correspondence to or from your officers, employees, or agents to or from the National Association for Home Care & Hospice (including the National Association of Home Care and any other previous organization names) or its officers, employees, or agents regarding enactment or preservation of: a prohibition on new hospital-based home health agencies, a CON requirement for home health agencies, a moratorium on the issuance of CONs for new home health agencies, or other restrictions on the creation of new home health agencies.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control.

**REQUEST NO. 14:** Identify and produce all documents concerning any actual or potential effect on your members made by the enactment of the diagnosis-related group (DRG)-based Medicare prospective payment system for hospitals.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control to the extent any such documents have not already been produced.

**REQUEST NO. 15:** Identify and produce all documents concerning any actual or potential effect on your members from new hospital-based home health agencies.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control to the extent any such documents have not already been produced.

**REQUEST NO. 16:** Identify and produce any further documents not already requested but otherwise reviewed or relied upon in response to any of Plaintiffs' other discovery requests.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control to the extent any such documents have not already been produced.

**REQUEST NO. 17:** Identify and produce all reports, statements, drawings, photographs, or other documents provided to, created by, reviewed by, or relied upon by any expert retained or consulted in this matter.

**RESPONSE:**  MAHC will produce documents not protected from discovery pursuant to Fed. R.Civ. P. 26 to the extent any such documents have not already been produced.

**REQUEST NO. 18:** Identify and produce all documents or reports provided to, reviewed by, or relied upon by any witness expected to be called at trial, including factual observations,

tests, supporting data, calculations, photographs, treatises, articles, periodicals, or pamphlets and opinions prepared in connection with this lawsuit by or for all expert witnesses.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents not protected from discovery pursuant to Fed. R.Civ. P. 26 to the extent any such documents have not already been produced.

**REQUEST NO. 19:** Identify and produce a copy of all documents you may use as an exhibit or demonstrative aide during the trial of this matter.

**RESPONSE:**  MAHC has not yet decided which documents it may use as an exhibit or demonstrative aide during the trial of this matter.  MAHC will supplement, if necessary, in accordance with any applicable deadlines, if and when it determines that it may use any exhibits or demonstrative aides during trial, to the extent any such documents have not already been produced.

**REQUEST NO. 20:** Identify and produce each document and thing in your possession, custody, or control that you may use to support your defenses in this matter.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents in its possession, custody, and control to the extent any such documents have not already been produced.

**REQUEST NO. 21:** Produce any documents identified in response to Plaintiff's First Set of Interrogatories.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents in its possession, custody, and control to the extent any such documents have not already been produced.

**REQUEST NO. 22:** Identify and produce any documents regarding potential suspension, waiver, modification, repeal, or non-enforcement of the home health CON laws or home health moratorium during the COVID-19 pandemic.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control.

**REQUEST NO. 23:** Identify and produce drafts of and documents related to the report dated August 19, 2004, prepared on your behalf entitled "Certificate of Need in the Home Health Industry: A Study of Continued Viability for Mississippi."

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control.

**REQUEST NO. 24:** Identify and produce any documents stating or suggesting that elimination of the home health CON law or home health moratorium would increase, decrease, or have no effect upon the agency's regulatory burden.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control to the extent any such documents have not already been produced.

**REQUEST NO. 25:** Identify and produce all documents concerning the need, importance, or role of home health providers during the COVID-19 pandemic.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control to the extent any such documents have not already been produced.

**REQUEST NO. 26:** Identify and produce any documents in which the Mississippi Association for Home Care (including the Mississippi Home Health Association) or any of its officers, employees, or agents, has stated that there is or may be an unmet need for home health services in Mississippi.

**RESPONSE:**  MAHC will produce any responsive, non-privileged documents, if any, in its possession, custody, and control.

Dated:  December 30, 2023

MISSISSIPPI ASSOCIATION FOR HOME CARE

By:  */s/ Caroline B. Smith*
      PAUL N. DAVIS (MB #8638)
      THOMAS L. KIRKLAND, JR. (MB #4181)
      CAROLINE B. SMITH (MB #105501)

      ITS ATTORNEYS

## <u>CERTIFICATE OF SERVICE</u>

I, Paul N. Davis, do hereby certify that on this day I caused to be served a true and correct copy of the foregoing pleading by electronic mail to all counsel of record.

This the 30th day of December, 2023.

/s/ Paul N. Davis
Paul N. Davis

85118514.v1