# Minutes

# June 1980



MISSISSIPPI HEALTH CARE COMMISSION

MEETING

MINUTES OF JUNE 19, 1980                                    REGULAR MEETING NO. 13

A regular meeting of the Mississippi Health Care Commission was held on Thursday, June 19, 1980, in the Executive Conference Room of the Mississippi Health Care Commission building at 2688 Insurance Center Drive, Jackson, Mississippi.

The following were in attendance:

**Commission Members**

Mr. Dan S. Wilford, Chairman
Patrick Pierce, M.D., Vice Chairman
Mrs. Sara F. Gallaspy, Secretary
Alton B. Cobb, M.D.
Mr. John Allen Darnell
Most Reverend Joseph L. Howze
Mr. Charles Penson

**Commission Staff Members**

Mr. Thomas J. Brooks, III
Ms. Victoria Pickering
Ms. Jacqueline Thames
Mr. Robert Pugh
Mr. Ron McAnally
Mr. Don Gill
Mr. Mendal Kemp
Dr. Bill Moore
Mrs. Nita Gunter
Mr. T. J. Rance
Mrs. Bonnie Griffith

Representative from
Attorney General's Office

Mr. W. D. Coleman, Attorney
    at Law

Representative from
DOHHR, Atlanta

Mr. Thomas Goninion, Project
    Officer

The meeting was called to order by Chairman Dan Wilford.

The invocation was given by Mr. Charles Penson.

The Legal Notice of the public meeting, as it appeared in the Jackson Daily News and Clarion Ledger newspapers, June 7, 1980, was read by the Secretary, Mrs. Sara F. Gallaspy.

The minutes of the regular meeting on May 15, 1980 and the special meeting on May 30, 1980 were approved on a motion by Dr. Cobb, seconded by Mrs. Gallaspy. There was no opposition and the motion carried.

MINUTES OF MEETING
Mississippi Health Care Commission
June 19, 1980
Page 2

The Chairman, Mr. Wilford, indicated that the agenda as mailed to the Commissioners would be changed since Mr. Thomas J. Brooks, III, Executive Director, had been asked to appear before the Eleemosynary Board at its meeting at 10:00 A.M. that day.

OLD BUSINESS

1. a. Mid-Delta Home Health Agency, Belzoni

Mr. Wilford indicated that the proposal had been discussed at the May regular meeting and had been deferred to the June meeting. Mr. Ron McAnally reported that the differences in data presented at the previous meeting proved to be a result of different reporting periods. Mr. McAnally indicated that contacts with other home health agencies certified for the area produced the following information: Hollandale Home Health Agency (Cleveland sub-unit) - no business in Tallahatchie County and no plans at present to serve the area; Magnolia (located in Oxford) - two patients in county; Sta-Home (in Grenada) - a relatively new agency with no work presently in the county, but plan at some later date to provide services in the county. The Health Department did make services available in the area, but had limited participation.

There was discussion by Commission members regarding the 50-mile radius the home base was authorized to encompass upon approval of any such application and the duplication of services resulting from this provision. It was further recognized by Commission members that though there was some overlapping of service areas, it was evident that in some cases the services were not being made available.

A motion was made by Mr. Penson, seconded by Dr. Cobb, to approve the proposal for the Mid-Delta Home Health Agency to establish an office in Glendora. Dr. Pierce indicated that he was abstaining from voting since he had not been present at the May meeting when the proposal was discussed in greater detail. The vote was taken and the motion carried with no opposition and one abstention (Dr. Pierce).

There was discussion regarding the need for standards and criteria to be used in determining needs for home health agencies as are available for determining needs for hospitals, nursing homes, etc. It was also recognized that some thought should be given to a means of withdrawing approvals when services are not provided as proposed, thus reducing duplication of service areas.

PLAINTIFFS002237

MINUTES OF MEETING
Mississippi Health Care Commission
June 19, 1980
Page 3

Dr. Cobb presented and moved for the adoption of the following resolution regarding home health agencies: "Whereas the Mississippi Health Care Commission has the authority under the state enabling act for CON review on home health agencies, and whereas such review should rest on development of plans, standards, and criteria which would provide a basis for rational decision making for the Health Care Commission on CON requests for new or expanded home health agencies; Whereas the additional cost for new or expanded services under Medicaid represent a critical problem for the future financing of this vital program, be it resolved that the Mississippi Health Care Commission declare a moratorium on review of any additional CON requests for home health agencies until such time as the Commission staff can develop a satisfactory plan for such services in Mississippi to provide the Health Care Commission with the basis for a fair and impartial review of all such requests." Dr. Pierce seconded the motion. Mr. Coleman suggested that the word "moratorium" be changed since that might exceed the authority of the Commission. After further discussion, the motion was amended to request that the staff within 60 days develop at least interim guidelines and criteria for the Commission to use as the basis for its evaluation of such applications. Mr. Pugh commented that there were no home health agency applications coming up in the next cycle. There was no opposition and the motion carried.

<u>NEW BUSINESS</u>

Mr. Wilford informed the Commission that the first five items on the agenda under New Business would be presented together since they all were equipment items.

1. a. <u>Forrest General Hospital, Hattiesburg</u> (Replacement of x-ray equipment.)

   b. <u>Ivy Memorial Hospital, West Point</u> (Replacement of x-ray equipment.)

   c. <u>Jeff Anderson Memorial Hospital</u>, Meridian (Replacement of radiology equipment.)

   d. <u>St. Dominic Hospital, Jackson</u> (Replacement of radiology equipment.)

   e. <u>Greenwood-Leflore Hospital, Greenwood</u> (Replacement of laboratory equipment.)
   Ms. Victoria Pickering presented the staff report, indicating that all the proposals were non-substantive and that all equipment had surpassed the expected life span as measured by guidelines for such equipment. She further stated that all the hospitals had experienced costs associated with down time and repair work. Ms. Pickering indicated that each hospital had evidenced adequate financial resources to cover replacement costs without undue cost to the patients and that health manpower changes were not involved in any of the proposals.
   The Commission commended Ms. Pickering for her concise but adequate presentation of the five proposals.

PLAINTIFFS002238

MINUTES OF MEETING
Mississippi Health Care Commission
June 19, 1980
Page 12

    b. Form 45's

       Mr. Brooks presented a list of the nine Form 45's to be ratified by the Commission.

    c. Cost overrun

       Mr. Brooks presented a cost overrun of $100,000 in connection with the Ellisville State School's renovation of 68 ICF/MR beds.

       Dr. Pierce made a motion, seconded by Bishop Howze, to approve the Form 45's presented and the cost overrun. There was no opposition and the motion carried.

<u>Request for "good cause" hearing - Billdora Nursing Home</u>

Mr. Wilford indicated that this was a request for the addition of 12 beds to an existing 48-bed nursing home.

Mr. Brooks stated that the hearing had been requested on the grounds that the proponent felt the Commission's decision had been based primarily on data in the Preliminary Health Plan which had not been adopted as the official plan. Mr. Brooks commented that he thought it was the feeling of the Commission members that the upcoming moratorium as well as guidelines in the soon to be adopted Plan were grounds for denial.

Senator Gresham was recognized by Mr. Wilford and indicated his request that if a hearing was granted, that it be held prior to July 1.

After further discussion by Commission members regarding the facts presented in the case, a motion was made by Mr. Penson, seconded by Dr. Pierce, to deny the motion. There was no opposition and the motion carried.

<u>1122 Review</u>

Mr. Wilford recommended that the Commission participate in the 1122 Review for at least another year. A motion was made by Dr. Cobb, seconded by Bishop Howze, to authorize the chair to sign such an agreement. There was no opposition and the motion carried.

<u>Statewide Health Needs Identification</u>

Mrs. Gunter indicated that the change in the law in October made it the responsibility of the Health Care Commission to identify statewide health needs to send to the Health Systems Agency for use in developing the state Plan. She stated that the Governor had designated six other agencies to make written recommendations. Mrs. Gunter

MINUTES OF MEETING
Mississippi Health Care Commission
June 19, 1980
Page 13

requested that a sub-committee from the Commission be appointed to work with a
sub-committee of the Statewide Health Coordinating Council to develop concise
statements regarding health needs.

There was discussion among Commission members regarding the fact that it seemed
that such needs had already been developed several times and it was a duplication
of effort to keep identifying the same needs. Mr. Brooks suggested that he work
with the other agencies involved and report back to the Commission. A motion was
made by Dr. Cobb, seconded by Dr. Pierce, to delegate this responsibility to the
Director. There was no opposition and the motion carried.

District 2 Hospital in Durant

Mr. Kemp discussed with the Commission some of the deficiencies at the hospital
and described efforts made in the past to have the deficiencies corrected. He
indicated that basically their problems involved lack of adequate nurse staffing,
inadequate medical records and inappropriate procedures being used in the lab.
Mr. Kemp requested guidance from the Commission as to whether or not they wished
to receive such information though the deficiencies might not always require official
action. It was the consensus of the Commission members that such information was
needed by the Commission in making their decisions.

Forms for Full Designation

Mr. Wilford stated that Mr. Goninion had forms to be signed by the Chairman to
have ready if full designation were received. A motion was made by Mrs. Gallaspy,
seconded by Dr. Cobb, to authorize the Chairman, Mr. Wilford, to sign the necessary
forms regarding full designation. There was no opposition and the motion carried.

Personnel

A motion was made by Dr. Pierce, seconded by Mr. Penson, that the Commission discuss
going into Executive Session. There was no opposition and the motion carried.

A motion was made by Mr. Darnell, seconded by Mrs. Gallaspy, that the Commission
go into Executive Session. There was no opposition and the motion carried.

Next Meeting

The next meeting of the Commission will be at 10:00 A.M. on Thursday, July 17, 1980.

Dan S. Wilford, Chairman                     Mrs. Sara F. Gallaspy, Secretary

PLAINTIFFS002248

# Minutes

## September 1980

MISSISSIPPI HEALTH CARE COMMISSION

MEETING

MINUTES OF SEPTEMBER 18, 1980                REGULAR MEETING NO. 17

A regular meeting of the Mississippi Health Care Commission was held on Thursday, August 21, 1980, in the Executive Conference Room of the Mississippi Health Care Commission building at 2688 Insurance Center Drive, Jackson, Mississippi.

The following were in attendance:

| Commission Members | Commission Staff Members |
|---|---|
| Mr. Dan Wilford, Chairman | Mr. Thomas J. Brooks, III |
| Patrick Pierce, M.D., Vice Chairman | Mr. Mendal Kemp |
| Mrs. Sara Gallaspy, Secretary | Mr. Robert Pugh |
| Mr. John Allen Darnell | Mr. Gene Hammett |
| Mr. Charles Penson | Ms. Victoria Pickering |
| Alton Cobb, M.D. | Ms. Jacqueline Thames |
| | Ms. Jean Lavine |
| | Mr. Festus Simkins |
| | Ms. Elizabeth Rice |

| Representative from Attorney General's Office | Representative from DHHS, Atlanta Office of Standards & Certification |
|---|---|
| Mr. W. D. Coleman, Attorney at Law | Mr. Hugh Miller |

The following Commission member was absent:  Most Reverend Joseph L. Howze.

The meeting was called to order by the Chairman, Dan Wilford.  The invocation was given by Mr. Darnell.

The Legal Notice of the public meeting, as it appeared in the Jackson Daily News and Clarion Ledger newspapers, September 6, 1980, was read by the Secretary, Mrs. Sara Gallaspy.

The minutes of the regular meeting on August 21, 1980, were approved on a motion by Mr. Darnell and second by Mrs. Gallaspy.  Mr. Wilford noted that a correction in terminology should be made when referencing "Joint Commission on Accreditation of Hospitals."  There was no opposition to the motion, and it carried.

PLAINTIFFS002279

MINUTES OF MEETING
Mississippi Health Care Commission
September 18, 1980
Page 10

noted was that stations drawing patients from out-of-state would be counting the population of all counties served, including out-of-state. There was discussion among Commission members that this would promote additional stations since certain portions of the population, nation-wide, would be counted more than once.

Mr. Brooks noted that the draft document contained only "Formula 3" and it would be his suggestion that the other two formulas be included prior to making it available for public comment.

Dr. Moore indicated that the federal regulations only require "12 months experience" whereas the Commission had recommended "a formal residency in nephrology for a year." Since it was determined that state regulations could be stricter than federal regulations, it was the consensus of the Commission members to retain this standard.

A motion was made by Mrs. Gallaspy, seconded by Dr. Pierce, to approve presenting the draft document for public and expert review. There was no opposition, and the motion carried.

b. <u>Home Health Care Services (proposed Standards for Certificate of Need)</u>

Mr. Festus Simkins discussed the procedures used in the development of this document. He indicated that an extensive study had been made of literature available on the subject and contacts had been made with planning agencies in other states. Mr. Simkins went through the steps in the formula as follows:

1. Determine need rate for home health care in the area (state).
2. Determine number of people in need (multiply need rate by population of area being served).
3. Determine average case load (divide number in need by turnover rate).
4. Determine number of agencies needed (divide average case load by adjusted optimum agency size).

Mr. Simkins discussed several of the variables in such a formula and indicated that the formula was based on the assumption that the number of people going into a home health agency from a community was equal to the number of hospital discharges.

After a discussion period by Commission members, it was recommended that additional research be done in the area of cost when the agency is attached to an existing agency or autonomous.

PLAINTIFFS002288

MINUTES OF MEETING
Mississippi Health Care Commission
September 18, 1980
Page 11

Mr. Pugh informed the Commission members that a meeting had been set for October 9, 1980 with the home health care task force to review the document and receive recommendations. He stated that representatives of this task force included home health care providers, private and public agencies, hospital based agencies, Blue-Cross personnel, Medicaid personnel, and PSRO.

A motion was made by Dr. Pierce, seconded by Mr. Penson, to approve presenting the draft document for public and expert review. There was no opposition, and the motion carried.

c.  Therapeutic Radiation (Standards and Criteria for Appropriateness Review

Dr. Bill Moore presented the document and indicated that it was anticipated that 3 out of every 1,000 people will need radiation treatment. Through a study of the various methodologies available to determine need in this area, the standard recommended was that a cobalt 60 machine should be able to do 7,998 treatments per year (1 treatment/20 minutes; 48 hours/week; 52 weeks/year).

Dr. Cobb mentioned that such highly sophisticated treatment services could be more regionalized that diagnostic services such as CT scanning; however, Dr. Pierce made the observation that many of the people receiving radiation treatment were very sick and travel time should be considered.

Dr. Moore stated that there were 15 facilities in the state providing therapeutic radiation services and, based on present standards and criteria, probably half of the facilities would be found inappropriate on the basis of utilization.

Dr. Pierce recommended that a statement regarding the rural areas of the state be included as a point of consideration when determining need.

A motion was made by Mrs. Gallaspy, seconded by Dr. Cobb, to approve presenting this document for public and expert review. There was no opposition, and the motion carried.

PLAINTIFFS002289

# Minutes

## November 1980

MISSISSIPPI HEALTH CARE COMMISSION
MEETING

MINUTES OF NOVEMBER 20, 1980                    REGULAR MEETING NO. 18

A regular meeting of the Mississippi Health Care Commission was held on Thursday, November 20, 1980, in the Topaz Room of the Hilton Hotel in Biloxi, Mississippi.

The following were in attendance:

Commission Members                      Commission Staff Members

Mr. Dan Wilford, Chairman               Mr. Thomas J. Brooks, III
Patrick Pierce, M.D., Vice Chairman     Mr. Gene Hammett
Mrs. Sara Gallaspy, Secretary           Mr. Mendal Kemp
Alton Cobb, M.D.                        Mr. Lary Daniels
Mr. John Allen Darnell                  Mr. George Jobe
Bishop Joseph L. Howze                  Mr. Don Gill
Mr. Charles Penson                      Dr. Bill Moore
                                        Mr. T. J. Rance

Representatives from DHHS, Region IV

Mr. George Williams
Mr. Tom Goninion

The meeting was called to order by the Chairman, Dan Wilford.  The invocation was given by Bishop Howze.

The Legal Notice of the public meeting, as it appeared in the Jackson Daily News and Clarion Ledger newspapers, November 8, 1980, was read by the Secretary, Mrs. Sara Gallaspy.

The minutes of the regular meeting on October 16, 1980, were approved on a motion by Bishop Howze, seconded by Mr. Darnell.  There was no opposition, and the motion carried.

MINUTES OF MEETING
Mississippi Health Care Commission
November 20, 1980
Page 15

6.   Proposed Legislation

   a.   Consideration of dropping 1122 provision.

   Mr. Brooks discussed the pros and cons of dropping the 1122 provision
   and indicated that the 1122 provision carried with it some usable
   penalties not included in the State Certificate of Need statute.
   Mr. Brooks stated that one of the major reasons to consider dropping
   1122 was the workload imposed on agency staff.

   Mr. George Williams of the Atlanta staff was asked to comment and he
   informed the Commission that the 1122 statute placed the option with
   the state regarding participation in the program.  He indicated that
   in his contacts with other states, it seemed that many liked the

   idea of having the federal sanction in case of violations.

   Mr. Brooks noted that the penalties available under the state law
   did not provide practical provisions with the necessary flexibility.

   After further discussion on this topic, it was the consensus of
   opinion among Commission members for the staff to proceed to work on
   recommending legislation to provide flexible penalties, and after
   such legislation was adopted, further consideration would be given
   to dropping 1122.

   b.   Moratorium on nursing home beds

   Mr. Brooks reviewed the current moratorium language and indicated
   that if the moratorium was continued, the staff recommended that it
   be amended to make provision for approval of certificates of need
   for repair or renovation of existing facilities.

   Mr. George Jobe discussed the possible need for recommending con-
   tinuation of the moratorium based on the fact that the results of
   the 1980 census had not been released; therefore, it would be
   difficult to accurately project bed need since it was tied so closely
   to population.  Mr. Jobe further stated that there were enough
   approved CON's that sufficient beds should be available to take care
   of the need for the next several years.

   It was agreed by the Commission that the staff should proceed with
   having repairs and renovations excluded from the moratorium law,
   should it be extended.

MINUTES OF MEETING
Mississippi Health Care Commission
November 20, 1980
Page 16

    c.   Home Health Agency Licensing Law

Mr. Brooks indicated that the staff needed to know the wishes of the
Commission relative to development of a licensing law for home health
agencies.

A motion was made by Mrs. Gallaspy, seconded by Bishop Howze, that
the staff develop licensing laws for home health agencies. There was
no opposition, and the motion carried.

7.  Natchez Charity Hospital

Mr. Brooks informed the Commission that a request had been received for a
hearing to be held on the decision to revoke the license of Natchez Charity
Hospital. There was a brief discussion regarding a date for such a hearing,
and it was decided that February seemed the most logical time for such a
hearing as it would be during the deliberations of the Legislative appro-
priations committee. A decision was made to hold the hearing in conjunction
with the regularly scheduled meeting on February 19, 1981.

8.  "Memorandum of Understanding with Mississippi Hospital Association"

Mr. Brooks indicated that this document had been sent to Commission members
for their review, and the staff recommended approval.

A motion was made by Mrs. Gallaspy, seconded by Mr. Penson, to approve the
document. There was no opposition, and the motion carried.

9.  Tunica County Rural Health Initiative Program

Mr. Brooks informed the Commission that the federal authorities had reversed
the decision of the Health Systems Agency and the grant had been approved;
therefore, no action was needed by the Commission.

10.  Methodist Rehabilitation Center

Mr. Kemp indicated that a review of the preliminary drawings for the
approved addition indicated a capacity for 57 new beds, while the approval
was only for 44. An explanation was requested and the staff had been told
that the rooms would be redesignated as single bed rooms. Mr. Kemp noted
that this could be controlled through the licensing process, but under the
regulations, the facility could increase bed number by 10 beds or 10% over
a two year period.

# Minutes

# December 1980

MISSISSIPPI HEALTH CARE COMMISSION
MEETING

MINUTES OF DECEMBER 18, 1980                    REGULAR MEETING NO.19

A regular meeting of the Mississippi Health Care Commission was held on Thursday, December 18, 1980, in the MultiPurpose Room of the Health Care Commission offices, 2688 Insurance Center Drive, Jackson, Mississippi.

The following were in attendance:

**Commission Members**

Mr. Dan Wilford, Chairman
Patrick Pierce, M.D., Vice Chairman
Mrs. Sara Gallaspy, Secretary
Alton Cobb, M.D.
Mr. John Allen Darnell
Bishop Joseph L. Howze
Mr. Charles Penson

**Commission Staff Members**

Mr. Thomas J. Brooks, III
Mr. Mendal Kemp
Mr. Robert Pugh
Ms. Jacqueline Thames
Dr. Victoria Pickering
Mr. Don Gill
Mr. Gene Hammett
Mr. Ernest Moss
Mr. Lary Daniels
Ms. Maybelle Gorringe
Mr. George Jobe

**Representative from
Attorney General's Office**

Mr. W. D. Coleman,
    attorney at law

**Representative from
DHHS, Region IV**

Mr. Tom Goninion
Mr. Ulysses Vidal

The meeting was called to order by the Chairman, Dan Wilford. The invocation was given by Mr. Charles Penson.

The Legal Notice of the public meeting, as it appeared in the Clarion Ledger on December 8, 1980, was read by the Secretary, Mrs. Sara Gallaspy.

The minutes of the regular meeting on November 20, 1980, were approved on a motion by Bishop Howze, seconded by Dr. Cobb. There was no opposition, and the motion carried.

PLAINTIFFS002382

MINUTES OF MEETING
Mississippi Health Care Commission
December 18, 1980
Page 14

3.  Home Health Agencies  Draft of Proposed Licensing Law

   Mr. Kemp stated that the staff had been requested by the Commission to
   draft a licensure law for Home Health Agencies.  He indicated that the
   draft included sections on the definition of a Home Health Agency, a
   description of the license itself, procedures regarding the issuance and
   renewal of licenses, and information on denial or revocation of license,
   confidentiality of information, inspections, and penalty and injunction
   processes.  Mr. Kemp stated that it was anticipated that present staff of
   the Licensure and Certification Division would be able to handle the
   additional workload  in its initial stages, but this would have to be
   evaluated periodically.  Mr. Kemp also informed the Commission that repre-
   sentatives of Home Health Agencies would be requested to have input into
   the licensing law.  He also noted that it might be advisable to incorporate
   into the law that a private committee be established in an advisory capacity.

   Mr. Brooks suggested that the staff pre-file this legislation, recognizing
   the scrutiny such a proposal would have when introduced into committee.
   Mr. Gill informed the Commission that the bill could be withdrawn at any
   time the Commission so desired.

   A motion was made by Mrs. Gallaspy, seconded by Mr. Darnell, to pre-file
   the Home Health Agency Licensing Law.  There was no opposition, and the
   motion carried.

4.  Commission Response to Letter from Office for Civil Rights

   Mr. Wilford indicated that copies of the response had been mailed to
   Commission members, and noted that the response had been mailed prior to
   the meeting to comply with the 30-day time period allowed.  Mr. Wilford
   stated that he and Mr. Brooks had discussed the possible need for additional
   documentation of the Commission's position that could be sent to the
   Office for Civil Rights, if the Commission thought this idea had merit.
   Some of the items Mr. Wilford mentioned were a copy of the rules on open
   meetings established by the Commission, a record of public notices of
   meetings since the Commission had been in existence, and a copy of the
   laws under which the Commission exists and with which it must comply.
   Mr. Wilford informed the other Commission members that he and Mr. Brooks
   had met with Governor Winter to discuss the civil rights complaint and
   Commission response, and the governor had been very supportive of the
   Commission.

PLAINTIFFS002395

MINUTES OF MEETING
Mississippi Health Care Commission
December 18, 1980
Page 16

Mr. Jobe stated that one of the recommendations the staff would like for the Commission to make to the Legislature would be for the State of Mississippi to be designated as a single service area for nursing home beds. Mr. Jobe gave the rationale behind this recommendation, indicating that sufficient beds were available for several years although it was recognized that optimum distribution was not realized.

There was discussion among Commission members regarding this recommendation and a motion was made by Bishop Howze, seconded by Mr. Darnell, that the draft be accepted with the stipulation that additional study would be made of the service area concept and presented at the next Commission meeting. There was no opposition, and the motion carried.

Mrs. Nita Gunter addressed the Commission and indicated that the service area designation was part of the responsibility of the Statewide Health Coordinating Council in consultation with the Health Systems Agency and Health Care Commission. She stated that it was anticipated that by the SHCC meeting on January 8, 1981, a tentative draft would be ready for presentation to the Council and then to the Commission at its January 15 meeting, with a final decision possibly being made in February.

6.  Home Health Agencies

Mr. Pugh indicated that the issue regarding appropriateness review for home health agencies had become a very controversial one, and because of this, the Health Systems Agency had been requested to delay their review period until February 12, 1981. He noted that the HSA had agreed to this request, and the extension of time would allow an opportunity to work more closely with the Home Health Agency Task Force, consisting of providers of that service primarily. Mr. Pugh stated that the staff would provide the Commission members with a side-by-side working draft of the differences between the position of the Task Force and the staff.

Mrs. Gallaspy indicated her displeasure with the staff that she had not been notified of the outcome of the lawsuit involving the Commission and the DeSoto Medical Center. Mr. Coleman brought the Commission up to date, indicating that the action filed by Mr. John Sullivan, Jr., had been found to be without foundation.

NEXT MEETING:  January 15, 1981

PLAINTIFFS002397

# Joint Staff Comparison Program

## Comparison of Proposed Criteria and Standards
## for Home Health Care Services

The process of developing the service specific criteria and standards for home health care services has been a difficult one. The Joint Staff is faced with the problem of developing criteria and standards for an industry which is relatively new and for the most part has gone unnoticed until recently.

In 1978, home health care agencies in Mississippi received almost 10 million dollars in Medicare funds for the delivery of home health services. While this amount is small compared to the 205 million dollars medicare paid for medical services during 1978 in Mississippi, it does represent a substantial sum of money.

Last December, Congress passed and the President signed the Omnibus Reconciliation Act of 1980. With the signing of this act, it can be anticipated that the expenditure of medicare funds for home health services will increase even more dramatically than they have in the last few years. The Home Health Line, a publication of a national organization representing the industry, reacted to the signing by stating that "Home Health and home care are on the verge of enormous growth and major change!" This statement will certainly be proven true in the future.

The Act deletes the prior-hospitalization requirement and 100 visits per year limits under Medicare. Proprietary agencies may now participate in Medicare without being licensed as a home health by the State. Finally, the proposed cost caps, which were intended to limit spiralling costs, on home health services died in conference committee. It is quite apparent that these changes in the Medicare law are going to impact heavily on the delivery of home health care services in our state.

While developing the Joint Staff document, input from the Task Force was solicited and received. The Joint Staff incorporated the recommendations of the Task Force where it appeared to be appropriate. For the most part, the Joint Staff concluded that the Task Force recommendations were not specific enough in nature. With potentially so much at stake, it is understandable that the representatives of the home health industry question the stated purposes of appropriateness review and are reluctant to recommend or support any criteria and/or standard which would restrict, monitor or hold an agency accountable for its actions.

This reluctance is reflected in the Task Force's recommendation that no standard incorporate the use of the word "SHALL". The Task Force recommended the use of the word "SHOULD" instead. The Joint Staff interprets the word "should" as meaning "desirable but not mandatory". For instance, if a standard stated that an agency "should" do something it is in fact an expression of what is desired of the agency but the agency is not required to do it. On the other hand, the word "shall" denotes a mandatory requirement that the agency must fulfill.

The recommended standards which utilize the word "shall" are based on the premise that an agency should deliver the highest quality of service possible and that some minimum standards of care and administration are essential in order that this goal be approached.

PLAINTIFFS002367

The rational set forth in the following pages speak to those definitions, criteria and standards on which the Joint Staff and the Task Force could not reach agreement.

## Definitions

1.  Home Health Agency

    The definition recommended by the Joint Staff is the definition which is presently in the CON law passed by the Mississippi Legislature in 1979. Since we have a definition which is supported statute, it is unnecessary to adopt a new definition. The recommended definition is worded so it includes all home health agencies presently operating in the state whether they be private nonprofit, public or proprietary.

2.  Home Health Agency Catchment Area

    The definition of a home health agency's catchment area is the one presently used by the Health Care Commission's Division of Licensure and Certification. The Joint Staff has again elected to recommend a definition that is presently in use in our state. This definition is presently being uniformly applied to all agencies in the state except the three proprietary agencies. Presently, proprietary agencies, since they do not receive Medicare funds, do not come under the 50 mile catchment area limit. Should the proprietary agencies elect to participate in the Medicare program, they will be required to meet the 50 mile regulation. There was a question raised by the Task Force as to whether the 50 mile catchment area was fair or workable. The Division of Licensure and Certification has made an inquiry to the Department of Health and Human Services regarding its use and was assured that it was an acceptable and reasonable regulation.

PLAINTIFFS002368

4

3.  <u>Home Health Agency Subunit and Home Health Agency Branch Office</u>

These two definitions were derived directly from the <u>Federal</u> <u>Conditions of Participation</u> use in the Medicare reimbursement program. Again, these definitions apply to all agencies in the state except proprietaries.  Should the proprietary agencies wish to participate in the Medicare program, they will be required to meet these definitions.

4.  <u>Criteria and Standards</u>

The Task Force recommended that no criteria and standards which speak to CON be included in the document.  The paragraph defining the terms of "appropriateness" and "existing" were added for clarification as to why the document speaks to CON as well as AR.  Federal regulations require that AR include those services "currently offered (at time of review), during the preceding 12 months, or to be initiated during the following 12 months."  Only two standards apply solely to CON and therefore do not constitute a major barrier to using the document to review those agencies which propose to come into being.  The dual format has been used in previous appropriateness review documents and has not caused any problems.

PLAINTIFFS002369

Criteria and Standards

Availability

1.  Scope of Services

    a.  Section a., is a statement of what type services a home health
        agency in Mississippi must provide.  It is a direct quote from
        Section 41-7-191; Mississippi Code 1972 as amended.

    b.  The only difference the standard recommended by the Joint
        Staff and the standard recommended by the Task Force is the
        use of the words "upon request."  The Joint Staff recommended
        that the words "upon request" be deleted from the standard.
        Information and referral should be an integral part of a
        service oriented agency's program. Information regarding other
        agencies which could help alleviate suffering should be given
        freely by an agency and not have to be specifically requested.

2.  The degree to which the proposed Home Health Service project is
    consistant with applicable health plans.

        The Task Force recommended the deletion of this criteria and
        standard because it referred to CON.  The reason for its
        inclusion in the document was discussed earlier in the section
        related to definitions of standards and criteria.

3.  Service Capacity of Agency

    The difference in the Joint Staff standard and the Task Force
    standard is the use of the term "shall" instead of "should".  A
    home health agency should not have the option of whether they will
    maintain adequate staff to provide services to patients. Adequate
    staffing should be mandatory.  If an agency is chronically under-
    staffed it may lead to poor quality of care and staff dissatisfaction
    which

could reflect on the industry as a whole.  It is recognized that an agency may have a difficult time maintaining adequate staff to serve its patients but if they document the measures taken to alleviate the problem, it would not reflect poorly on the agency.

4.  Service Capacity in Catchment Area (Need Determination Methodology)

An extensive review of the methods recommended and used by various state, federal and industry entities to determine the "need" for home health care services has been and will continue to be made.  While it was found that there is no universal method now in use and all the methods reviewed had weaknesses, the Joint Staff was in full agreement that some methodology should be adopted.  The major weakness of all methodologies reviewed was that they may under estimate or over estimate "need". The Task Force recommended that no methodology be adopted but instead each home health agency should analyze and determine "need" in the area they serve.  Unfortunately, this type of "self-determination" may lead to an overly protective attitude regarding an agencies catchment area and restrict the addition of other agencies or the expansion of existing services in a given area.  Conversely, it could lead to the over utilization of services because an agency generates a greater "need" for services than actually exists.

Also, and maybe more importantly, we have very little data regarding the use of home health services in our state.  The use of the suggested methodology plus additional demographic information will be a first step in establishing a reliable data base from which statistically valid determinations and

decisions can be made.

In working with the Task Force, the Joint Staff found that
they were reluctant to release any data which would give
insight to an agency's operations.  Planning for health
related services is an inexact science at best and without a
good data base turns into an exercise in futility.

The suggested methodology was developed by Mr. Herbert Traxler
and is used by many Health Systems Agencies for determining
the "need" for home health services.  Additionally, several
HSAs and SHPDAs have used parts of the methodology in determining
"need". The Traxler methodology is flexible and can be used in
large or small catchment areas and in urban or rural areas.
The methodology encourages the use of localized data if
possible.

As was stated earlier, the Joint Staff could not find a
universally accepted methodology and the Task Force is reluctant
to endorse any methodology.  For these reasons, it is recommended
that Traxler's methodology be field tested during this review
cycle.  No agency will be deemed inappropriate under this
methodology at the present time. However, the use of the
methodology will help establish a data base from which valid
conclusions can be drawn in the future.  The Joint Staff will
continue to research and test other methods to determine the
"need" for services in order that the most appropriate methodology
which meets the needs of Mississippians can be found and
utilized.

PLAINTIFFS002372

## Accessibility

1.  **Area to be Served**

    The rational for section a., of this standard is discussed in the justification of the definition of a Home Health Catchment Area.

2.  **Availability of a plan which promotes accessibility to care regardless of ability to pay.**

    Access to quality medical care is a right to which every individual is entitled. These four standards are an effort to insure that patients have access to that care. While there are no laws which mandate that a home health agency must deliver services regardless of the patient's ability to pay, a service oriented agency should help patients in need find agencies which can deliver the services or render financial assistance.

    It is recognized that an agency may not be able to appropriately serve all patients referred to them. However, when an agency denies services to a patient the reasons for denial should be duly documented. In this way, weaknesses in the service delivery system can be found and steps taken to correct them. The major function of AR is to provide a basis for long term planning.

    Each agency, except proprietaries, which was at the Task Force meetings, indicated that they had at one time or another delivered services even though they knew they would not receive compensation. These agencies also indicated that this would probably happen again in the future. If an agency is going to deliver services without charge, the procedure should be supported by specific written policies. With such policies there is less chance of indescriminate selection of patients who will receive uncompensated care. Documentation of charity care will help us develop a data base from which we can identify gaps in service.

PLAINTIFFS002373

3.    Client Mix

      Again, the difference between the recommended standard of the Task Force and Joint Staff is the preferred use of the term "shall" as opposed to "should".  No agency should have the privilege of discriminating against a patient on the grounds of race, color, creed, age, sex, or ethnicity.



### Acceptability

1.  Availability of Client's "Bill of Rights"

All patients served by an agency should have the right to be treated with dignity and respect. While a written "Bill of Rights" for patients in and of itself will not assure the proper treatment of patients, it does indicate that an agency is concerned and is making some positive effort to insure that patients are treated appropriately. The patient's "Bill of Rights" can be used as a standard in that it can be used to measure to some degree the treatment a patient receives. There are several "Bill of Rights" existing within the health agency and they could be adapted to the home health industry with very little effort. The Task Force recommended that the standards regarding a patient's "Bill of Rights" be deleted from the document.

2.  Availability of a Grievance Procedure

There should be some formal mechanism for a patient or a patient's representative to inform an agency of a complaint and a formal process by which the grievance can be resolved. The documentation of a patient's complaint and how it was handled can give some indication of the quality of care being delivered by the agency. It can also help the agency define problem areas in its delivery system so they can be quickly corrected. It may be useful in identifying gaps in the delivery system and help in planning to improve the system.



## Cost Effectiveness

1.  Total Cost Per Unit of Service

    It is not unreasonable to believe that similar services delivered by similar agencies in similar areas should cost about the same. While there will probably be some variation in costs of similar services delivered by different agencies, the variation should not be great. The cost of a nursing visit delivered in a predominately rural area should be comparable no matter which type of agency (private nonprofit, public or proprietary) delivers it. Excessive unit cost is often times an indication of inefficiency and waste. If the higher costs cannot be justified, a closer look at the structure of the delivery system or administrative branch may be indicated.

2.  Administrative Costs

    This recommended standard was developed by the Council of Home Health Agencies and Community Services; the National League for Nursing and the American Public Health Association as a result of their direct involvement in developing standards for the accreditation of home health agencies. Excessive administrative costs are one indicator that an agency may not be effectively and efficiently implementing their programs. A recent report indicated that some agencies in our state may have excessive administrative salaries which vary from 41% to 56% of an agency's total personnel salaries. The use of the recommended standard will help locate potential problem areas.

PLAINTIFFS002376

Financial Viability

1.  Source of Funding

    By documenting the source of all funding, gaps in the reimbursement process can be located.  This standard relates to the acceptance of a wide varity of reimbursement sources, not just Medicare.  A patient can be selectively discriminated against because of their source of payment for services.  For example, an agency may not want to take third party insurance payments from a private company because it would require to much paper work.  By knowing what types of funding sources agencies utilize, gaps in the system can be located and plans to correct them can be made and implemented.

Quality

1.  Availability of an adequate program for controlling infection.

    This standard is aimed at not just having an infection control program, but having an effective program.  In order to determine whether a program is effective or not it must be constantly monitored, reviewed and updated.  If an agency strives for an effective system, it will lead to the discovery of both weak and strong areas of a program so changes and corrections can be made.  There are state laws which require the reporting of certain illnesses to the Department of Public Health and any prgram in full compliance with these regulations would be actively moving toward an effective infection control program.

2.  Existance, availability and implementation of a continuing education program for staff members.

    The only differences in the recommended standards of the Joint Staff and the Task Force are the uses of the terms "shall" or "should" and the number of hours of inservice training required.  Inservice

PLAINTIFFS002377

training is an essential ingredient in the delivery of quality services. The Division of Licensure and Certification requires that a minimum of 12 hours per year of inservice training be given all direct service staff. This standard is presently used in the Division's review process and is considered reasonable as a minimum standard.

3. Coordination of Services

The interdisciplinary team approach to the delivery of health related services has proven to be both efficient and effective. With a varied range of input from staff, family, and patient, new and innovative methods of patient care can be developed. The interdisciplinary team approach helps promote treatment programs which are designed to meet the individual needs of the patient.

4. Staffing requirements by type

The average number of visits which should be made per working day was derived from information obtained in the review of the literature and through discussion with knowledgable individuals that deliver or monitor home health services. For example: The average skilled nursing visit takes between 35-45 minutes to complete. The average visit typically consists of the following procedure:

a. The nurse enters the patients place of residence;

b. The nurse establishes some report with family members;

c. Discusses any problems regarding problems or progress they may have encountered since the last visit;

e. The nurse prepares the instruments for the delivery of prescribed services;

f. delivers the services;

PLAINTIFFS002378

14

g.  Cleans up afterwards;

h.  Teaches the patient or family a new technique if necessary;

i.  Make clinical notes;

j.  The nurse discusses any new physician's orders with the responsible persons of the residence;

k.  Returns to their vehicle and prepares for the next visit.

There will usually be travel time involved in getting to the next patient. The average is based on a full time equivalency staff member working a normal 40 hour week. In addition to the delivery of direct services, a nurse will spend some time reviewing and updating records, conferring with other staff members involved with serving the patient and with the patient's attending physician. The Joint Staff recognizes that some visits will take less than 45 minutes to complete, but others will take considerably more than 45 minutes. This is why the number of visits is based on an average. The time a nurse spends with a patient providing needed services is a good indication of the quality of care the agency delivers. A recent report indicated that one agency in our state had a nurse that spent approximately 6 minutes per visit with her patients. Although, this is an extreme example, it does indicate possible problem areas do exist.

5.  Training and/or certification requirements for professional and non-professional staff.

Again, the only difference between the two recommended standards was the use of the term "shall" or "should". It is essential that an agency maintain written job descriptions and training requirements in order to help insure quality staffing.

PLAINTIFFS002379

6.    Utilization Review Procedures

       The Division of Licensure and Certification requires that home health agencies review quarterly 10% or 10 (which ever is greater) of its patients records.  The Joint Staff did not realize this requirement was already in existence when the recommended standard was developed.  Therefore, since there is an established regulation covering this area, the Joint Staff recommends the adoption of the standard used by the Division of Licensure and Certification, i.e., each home health agency shall review at least quarterly 10% or 10 (which ever is greater) of its patients records for completeness and appropriateness.

PLAINTIFFS002380

Continuity

The Task Force had requested that the Joint staff delete the characteristics of continuity from the Home Health Appropriateness Review Document because its inclusion was optional and not mandatory. The Joint Staff considers the characteristic of continuity sufficiently important to recommend it to be retained in the final document.

1. Availability of and accessibility to patient records without violation of client confidentiality.

    In order for a patient to receive a continuum of care, all individuals and/or organizations should, with consent of the patient or responsible person, have access to any records which may be helpful in the delivery of their services. This type of policy helps to prevent gaps in and duplication of services.

2. Availability of adequate discharge planning procedures and follow-up care.

    There should be some established policy regarding how an agency will plan for the discharge of a patient. This policy should include participation of the family, patient, attending physician and other staff. An integral part of any discharge plan would be a statement of what aftercare services, if appropriate, the patient will require. If an agency provides any follow-up services after discharge, it should be documented so the patient's records will be complete.

3. Locus of responsibility for services delivered.
    The patient's attending physician is the person that will ultimately be held responsible for the care the patient receives. It is his orders that the agency carries out and he should be directly involved in any plans that are made. The establishment of or changes in a treatment plan should not be undertaken without the input of the patient's attending physician.

Minutes


April 1981

MISSISSIPPI HEALTH CARE COMMISSION
MEETING

MINUTES OF APRIL 30, 1981                    REGULAR MEETING NO. 23

A regular meeting of the Mississippi Health Care Commission and a joint meeting
with certain Statewide Health Coordinating Council members to discuss the State
Health Plan were held on Thursday, April 30, 1981, in the Multi-Purpose Room of
the Health Care Commission, 2688 Insurance Center Drive, Jackson, Mississippi.

The meeting was called to order by the Chairman, Dan Wilford.  The invocation was
given by Bishop Howze.

The Legal Notice of the public meeting, as it appeared in the Clarion-Ledger on
April 2, 1981, was read by the Commission Secretary, Mrs. Sara Gallaspy.

A motion was made by Mr. Darnell, seconded by Mrs. Gallaspy, to approve the
minutes of the March 19, 1981 meeting.  There was no opposition, and the motion
carried.

Mr. Wilford indicated that the first item on the agenda would be the joint meeting
between the Commission and SHCC to discuss the State Health Plan.

| Commission Members: | Mr. Dan Wilford, Chairman |
| | Mrs. Sara Gallasy, Secretary |
| | Mr. John Allen Darnell |
| | Bishop Joseph L. Howze |
| | Mr. Charles Penson |

SHCC Members:
Helen Barnes, M.D., Chairman
Malcolm Taylor, M.D.
William Sistrunk, M.D.
Mr. W. D. Simpson
Mrs. Ona Willingham
A. Albert Azordegan, M.D.

Commission Staff:
Mr. Thomas J. Brooks, III
Mrs. Nita Gunter
Mr. Robert Pugh
Mr. George Jobe
Mr. Gene Hammett
Mr. Don Gill
Mr. Mendal Kemp

MINUTES OF MEETING
Mississippi Health Care Commission
April 30, 1981
Page 11

Mr. Pugh commented that the Guidelines were consistent with the State Health Plan.

A motion was made by Mrs. Gallaspy, seconded by Mr. Darnell, to adopt the draft Perinatal Guidelines and make them available for public review. There was no opposition, and the motion carried.

7.  Joint Meeting with Medicaid Commission

Mr. Brooks noted that on several previous occasions the Commission had indicated a desire to have a joint meeting with the Medicaid Commission for an exchange of ideas. He stated that one of the issues suggested for discussion had been the effect of Commission actions on expenses incurred by the Medicaid Commission. There was a brief discussion regarding other items for discussion at the joint meeting. By consensus, the Commission agreed to the joint meeting and directed Mr. Brooks to make the necessary arrangements.

8.  Authorized Signatures on Travel Vouchers

Mr. Brooks noted that as a procedural matter, he wanted the Commission to be aware that Mr. Ed Triplett, Director of Business Services, was being authorized to sign travel vouchers submitted by staff members. Mr. Brooks stated that since he approved travel requests and the amounts to be incurred, it was not necessary that he see the voucher when it was submitted. He indicated that the State Auditor's Office had approved the procedure.

A motion was made by Bishop Howze, seconded by Mr. Darnell, to approve the recommendation. There was no opposition, and the motion carried.

9.  Home Health Agency Resolution

Mr. Brooks noted that the home health licensing law would become effective July 1, 1981. He stated that the staff recommended a moratorium on issuing Certificates of Need for new or expanding home health agencies for a 12 month period beginning July 1, 1981, in order to give the staff an opportunity to compile information on home health agencies. Mr. Brooks informed the Commission that the Licensure and Certification Division had assured him that each county was covered by at least two home health agencies.

PLAINTIFFS002535

MINUTES OF MEETING
Mississippi Health Care Commission
April 30, 1981
Page 12

Mr. Kemp noted that the law provided one year for the home health agencies to comply with the standards; therefore, each agency in existence would be licensed for the first year.

There was discussion by Commission and staff regarding the possibility of the moratorium eliminating the development of agencies capable of providing superior care to that being provided by some existing agencies.

Mr. Darnell made a motion, seconded by Mrs. Gallaspy, to approve the resolution regarding a moratorium on home health agencies so that the resolution could be made available for public review.  There was no opposition, and the motion carried.

10.  Rules, Regulations and Minimum Standards for the Aged or Infirm

Mr. Brooks noted that the rules, regulations and standards had been adopted with the intent to approve at a previous meeting, and it was time for final adoption of the document.

A motion was made by Mr. Penson, seconded by Mr. Darnell, to adopt the Rules, Regulations and Minimum Standards for the Aged or Infirm.  There was no opposition, and the motion carried.

11.  Appropriateness Review: Long Term Care

Mr. Pugh noted that the staff recommended draft approval of the Long Term Care Appropriateness Review Standards so that they could be made available for public review.  He indicated that the Long Term Care Task Force had requested from the Health Systems Agency a delay in the initiation of the review schedule, but the HSA Board declined to grant the delay.

A motion was made by Mrs. Gallaspy, seconded by Mr. Penson, to approve the draft for public review.  There was no opposition, and the motion carried.

PLAINTIFFS002536

# Minutes

# May 1981

MISSISSIPPI HEALTH CARE COMMISSION
MEETING

MINUTES OF MAY 21, 1981                              REGULAR MEETING NO. 24

A regular meeting of the Mississippi Health Care Commission was held on Thursday,
May 21, 1981, in the Multi-Purpose Room of the Health Care Commission, 2688
Insurance Center Drive, Jackson, Mississippi.

Commission Members Present                  Commission Staff Present

Mr. Dan Wilford, Chairman                   Mr. Thomas J. Brooks, III
Mrs. Sara Gallaspy, Secretary               Mr. Robert Pugh
Mr. Charles Penson                          Mr. Mendal Kemp
Alton Cobb, M.D.                            Mr. Don Gill
                                            Mrs. Nita Gunter
Commission Members Absent                   Mr. Gene Hammett

Bishop Joseph L. Howze
Patrick Pierce, M.D.
Mr. John Allen Darnell

The meeting was called to order by the Chairman, Dan Wilford. The invocation
was given by Mr. Charles Penson.

The Legal Notice of the public meeting, as it appeared in the Clarion-Ledger on
May 11, 1981, was read by the Commission Secretary, Mrs. Sara Gallaspy.

A motion was made by Mrs. Gallaspy, seconded by Dr. Cobb, to approve the minutes
of the April 30, 1981 meeting. There was no opposition, and the motion carried.

OLD BUSINESS

1.  Clarification of Commission Action on ESRD Plan

    Mr. Brooks stated that at the April meeting it had been the staff's
    recommendation that the Commission adopt the ESRD Plan under both the
    Emergency Provision and the regular Intent to Adopt Provision, but the
    motion regarding this item had not clearly stated this intent. He further
    noted that by adopting the ESRD Plan under the Emergency Provision, the
    Plan could be used immediately as the basis for project review.

PLAINTIFFS002553

MINUTES OF MEETING
Mississippi Health Care Commission
May 21, 1981
Page 5

head scanner.  Mr. Hammett indicated that the extension would be for
approximately 30 days.

A motion was made by Dr. Cobb, seconded by Mr. Penson, to grant a delay
until such time as the Commission had an opportunity to act on the
request to continue use of the head scanner.  There was no opposition,
and the motion carried.

3.  Change in Home Health Agency Moratorium

Mr. Brooks indicated that after further evaluation of the one-year mora-
torium on new or expanding home health agencies, the staff recommended
that the moratorium be reduced to a six-month period.  He stated that
the six months should be sufficient time for the development of pertinent
analyses needed to provide a basis for Certificate of Need reviews.

Several representatives of established and proposed home health agencies
spoke in support of the development of standards and criteria for deter-
mining the need for such services; however, there was some opposition to
the inclusion in the moratorium of those applications either already sub-
mitted or for which letters of intent had been received by the Commission.
Mr. Hammett indicated that 16 letters of intent were on file, with two
applications having reached the Commission office the day before the
meeting.

After a discussion of all factors presented, a motion was made by Mr.
Penson, seconded by Mrs. Gallaspy, to approve a six-month moratorium on
Certificates of Need for home health agencies.  There was no opposition,
and the motion carried.

4.  "Hold" Resolution on Appropriateness Review

Mr. Brooks stated that the staff had discussed with the Atlanta Regional
Office of DHHS the proposed resolution and the latter's suggested revisions
had been incorporated into the resolution, so that it would be clear that
the action being taken was not a cancellation of the Appropriateness Review
Program.  Mr. Brooks indicated that the delay would provide the time
needed to receive a clear indication of what the new Congress and

# Minutes

# June 1981

MISSISSIPPI HEALTH CARE COMMISSION
MEETING

MINUTES OF JUNE 18, 1981                                    REGULAR MEETING NO. 25

A regular meeting of the Mississippi Health Care Commission was held on Thurs-
day, June 18, 1981, in the Multi-Purpose Room of the Health Care Commission,
2688 Insurance Center Drive, Jackson, Mississippi.

Commission Members Present                    Commission Staff Present

Mr. Dan Wilford, Chairman                     Mr. Thomas J. Brooks, III
Mr. Charles Penson                            Mr. Robert Pugh
Mr. John Allen Darnell                        Mr. Mendal Kemp
Bishop Joseph L. Howze                        Mr. Don Gill
Alton B. Cobb, M.D.                           Mr. Gene Hammett
                                              Mr. Lary Daniels
                                              Dr. Victoria Pickering
Commission Members Absent                     Mrs. Nita Gunter

Patrick Pierce, M.D., Vice-Chairman
Mrs. Sara Gallaspy, Secretary


Representative from
Attorney General's Office

Mr. W. D. Coleman, Attorney
   at Law


The meeting was called to order by the Chairman, Dan Wilford.  The invocation
was given by Bishop Howze.

The Legal Notice of the public meeting, as it appeared in the Clarion-Ledger on
June 9, 1981 was read by Mr. Thomas J. Brooks, III, as requested by the Chairman,
Mr. Wilford.

Mr. Wilford informed the Commission that Mrs. Gallaspy was attending a meeting on
the Coast which was necessary that she attend due to her position with the
Mississippi Municipal Association, and Dr. Pierce had a patient situation
arise that prevented his being at the Commission meeting.  Mr. Wilford stated
that it would be appropriate to elect an Acting Secretary for that meeting in
order to have official signatures on the documents resulting from the meeting.
A motion was made by Dr. Cobb, seconded by Mr. Darnell, to elect Mr. Charles

MINUTES OF MEETING
Mississippi Health Care Commission
June 18, 1981
Page 11

and welfare of the general public. The Commission also announces its
intent to adopt this manual for permanent use as per the provision of
subsection (1) of that statute. It is noted that the schematic drawing
required with the letter of intent shall be struck from the manual.

Mr. Brooks stated that Items 5, 6, 7, and 8 could be grouped together with one
motion covering the four items.

5.    Final Adoption of Six-Month Moratorium on Home Health Certificates of Need

Mr. Gill presented the following motion for Commission consideration:  That
the Order of May 21, 1981 which amended the Order of April 30, 1981 by
fixing a period of only six (6) months from and after July 1, 1981, that
the Commission would not process or make a final determination on any
application for a new or expanded Home Health Agency be adopted for per-
manent use effective from and after June 22, 1981.

6.    Final Adoption of Hospital Licensure Regulations

Mr. Gill presented the following motion for Commission consideration: That
the manual entitled "Minimum Standards for the Operation of Mississippi
Hospitals" that the Commission voted on May 21, 1981 to adopt by the pro-
visions of subsection (2) of Section 25-43-7 of the Mississippi Code of
1972 and voted an intent to adopt for permanent use by subsection (1) of
that said section, officially be adopted for permanent use effective
June 22, 1981.

7.    Final Adoption of One-Year Delay in Appropriateness Review Program

Mr. Gill presented the following motion for Commission consideration: That
the Order of May 21, 1981 determining that the schedule for the Appro-
priateness Review Program shall be delayed for a period of one year from
date --and that the Commission exercise its option to cancel any agreement
entered into with the Mississippi Health Systems Agency, Inc. pertaining to
this subject -- is adopted for permanent use effective from and after
June 22, 1981.

PLAINTIFFS002594

MINUTES OF MEETING
Mississippi Health Care Commission
June 18, 1981
Page 12

8. Supplement to End Stage Renal Disease Plan

Mr. Gill presented the following motion for Commission consideration:  That
the supplement to the "End Stage Renal Disease Plan" that the Commission
voted on April 30, 1981 to adopt by the provision of subsection (2) of
Section 25-43-7 of the Mississippi Code of 1972 and voted an intent to
adopt for permanent use by subsection (1) of the said statute, officially
be adopted for permanent use immediately.

A motion was made by Bishop Howze, seconded by Mr. Penson, to approve the action
recommended by Mr. Gill on the Six-Month Moratorium on Home Health Certificates
of Need, Hospital Licensure Regulations, One-Year Delay in Appropriateness
Review Program and Supplement to End Stage Renal Disease Plan.  There was no
opposition, and the motion carried.

9. Quarterly Report on Licensure and Certification Division Activities

Mr. Mendal Kemp reported that the Division had licensed four new health
care facilities during the quarter: (1) 12-bed personal care home in
Jackson, (2) Grandview Health Care Center in Grenada, 120-bed dually
certified facility, (3) Kemper County Nursing Home in DeKalb, 60-bed
dual facility, and (4) Lincoln County Residential Center in Brookhaven,
120-bed ICF/MR facility.

Mr. Kemp stated that the following facilities had additions under con-
struction, most of which should be licensed by mid-summer: (1) Calhoun
County Nursing Home, 60-bed addition, (2) Jasper County Nursing home,
20-bed addition, (3) Pecan Grove ICF/MR at Ellisville, 132-bed addition,
and Jacquith Nursing Home at Whitfield, 152-bed addition.  Mr. Kemp noted
that Pinecrest Nursing Home at Hazlehurst and Angelus at Clarksdale would
be inspected in early July to determine if they met commencement of
construction requirements.  He stated that some work had been done at
the two sites, but it was doubtful that either would meet construction
requirements by the July 1 deadline.

Mr. Kemp informed the Commission that at present there were 48 hospitals
in the state undergoing some type of renovation.  He also stated that three
new rural health clinics had been licensed during the reporting quarter:
Byhalia, Lena and Goodman.

# Minutes

# December 1981

MISSISSIPPI HEALTH CARE COMMISSION
MEETING

MINUTES OF DECEMBER 17, 1981                    REGULAR MEETING NO. 31

A regular meeting of the Mississippi Health Care Commission was held on Thursday,
December 17, 1981, in the Multi-Purpose Room of the Health Care Commission, 2688
Insurance Center Drive, Jackson, Mississippi.

Commission Members Present                  Commission Staff Present

Mr. Dan Wilford, Chairman                   Mr. Thomas J. Brooks, III
Patrick Pierce, M.D., Vice Chairman         Mr. Don Gill
Mrs. Sara Gallaspy, Secretary               Mr. Robert Pugh
Mr. John Allen Darnell                       Mr. Lary Daniels
Alton B. Cobb, M.D.                          Mr. Mendal Kemp
Mr. Charles Penson                           Mrs. Nita Gunter
Bishop Joseph L. Howze                       Mr. George Jobe

The meeting was called to order by the Chairman, Mr. Dan Wilford.  The Legal
Notice of the public meeting, as it appeared in the Clarion-Ledger on December 7,
1981, was read by Mrs. Gallaspy.

Mr. Wilford asked for corrections or addition to the Minutes of the November 19,
1981 meeting; there were none.  A motion was made by Mr. Darnell, seconded by
Mrs. Gallaspy, to approve the Minutes as written.  There was no opposition and
the motion carried.

NEW BUSINESS

1.  Doctors Hospital, Jackson

2.  Lifemark Recovery Center, Jackson

    Mr. Pugh presented the staff report and stated that both proponents proposed
    to establish chemical dependency units and though the setting for the
    service in each case was different, the staff determined the services were
    sufficiently similar to treat the proposals as competing applications.  Mr.
    Pugh indicated that Doctors Hospital proposed the conversion of 25 medical/
    surgical beds to alcohol and drug beds.  The Lifemark Recovery Center pro-

independent statutory Maternal Health Council with the hope that the
Commission would look to strengthening the committee's relationship
to the Commission, in lieu of an independent Council.

There was agreement by all Commission members that the policy statement
would be considered at the next meeting.

2.    Home Health

a .    Extension of Moratorium

Mr. Brooks stated that the six-month moratorium on new or expanding
home health agencies would end soon and the staff recommended a 90-day
extension of the moratorium for the purpose of enabling the staff to
send out and process the newly developed licensure forms. Mr. Brooks
indicated that information retrieved from the forms would enable the
staff to give proper evaluation to applications regarding home health
agencies.

Mr. Paul Majors, administrator, Simpson General Hospital, stated that
the moratorium prevented his hospital from providing a service that
should be provided. He said that home health agencies in the area
could not offer the variety of services his hospital could, and providing
home health care would fill the gap of health care between treating
patients as inpatients and outpatients.

Ms. Margaret Muse, administrator, Laird Hospital, stated opposition to
the extension of the moratorium since it would delay again application
for home health services through Laird Hospital.

Mr. Wilford stated that the purpose for the moratorium was to allow
the staff an opportunity to develop criteria and standards for home
health agencies and to complete an inventory of home health services
available. He noted that the standards and criteria had been developed
but the staff needed additional time to complete the inventory.

Mr. Don Baxter, South West Mississippi Home Health Agency, stated his
opinion that hospitals could not necessarily provide better quality
home health care than could individual agencies. He also stated that
he did not accept the proposition that all health care delivery needed
to be controlled by hospitals.

PLAINTIFFS002713

MINUTES OF MEETING
Mississippi Health Care Commission
December 17, 1981
Page 9

Ms. Marilyn Williams, Mississippi Hospital Association, stated that she was addressing the Commission as a representative of the Society for Home Health Agencies of the MHA. She indicated that the position of the Hospital Association was that such a moratorium was contrary to the intent of the planning law and the idea of Certificate of Need. Ms. Williams stated that a moratorium denied applicants the review process for determining need. She further commented that if the reason for the moratorium was because sufficient information was not available on the service, then the same action should have been taken for all other proposals which were not addressed in the State Health Plan and for which criteria and standards had not been developed.

After discussion by Commission members, a motion was made by Dr. Pierce, seconded by Mrs. Gallaspy, to extend the moratorium on home health agencies for 90 days. There was no opposition, and the motion carried.

b.   Mr. Brooks stated that the staff requested Commission approval to make the home health criteria and standards available for a 30-day public comment period. A motion was made by Mrs. Gallaspy, seconded by Dr. Pierce, to approve the staff recommendation. There was no opposition, and the motion carried.

3.   Discussion and Adoption of Long Term Care Study

Mr. Jobe gave a brief background regarding the study which had been requested by the 1980 Legislature to determine the need for nursing home beds in the State and the request by the 1981 Legislature for the continuation of the study, mainly to explore alternatives to nursing home care.

Mr. Jobe stated that information provided by the study indicated that significant numbers of persons go into nursing homes needlessly because other adequate services were either unavailable in the community or available but unknown to the potential nursing home resident. Mr. Jobe noted that a major problem encountered in receiving community services was the much lower income eligibility requirement for nursing home eligibility through Medicaid than for other Medicaid services.

Mr. Jobe briefly discussed four options that could be recommended to the Legislature:

# Minutes

# February 1982

MISSISSIPPI HEALTH CARE COMMISSION

MEETING



MINUTES OF FEBRUARY 18, 1982                    REGULAR MEETING NO. 33

A regular meeting of the Mississippi Health Care Commission was held on Thursday, February 18, 1982, in the Multi-Purpose Room of the Health Care Commission, 2688 Insurance Center Drive, Jackson, Mississippi.

| Commission Members Present | Commission Staff Present |
|---|---|
| Mr. Dan Wilford, Chairman | Mr. Thomas J. Brooks, III |
| Patrick Pierce, M.D., Vice Chairman | Mr. Robert Pugh |
| Mrs. Sara Gallaspy, Secretary | Mr. Mendal Kemp |
| Alton B. Cobb, M.D. | Mrs. Nita Gunter |
| Mr. John Allen Darnell | Mr. Don Gill |
| Bishop Joseph L. Howze | Mr. Festus Simkins |
| Mr. Charles Penson | Mr. Lary Daniels |
| | Ms. Jacqueline Thames |

Representative from
Attorney General's Office

Mr. W. D. Coleman, Attorney at Law

The meeting was called to order by the Chairman, Mr. Dan Wilford. The invocation was given by Bishop Howze.

The Legal Notice of the public meeting, as it appeared in the Clarion-Ledger on February 8, 1982, was read by Mrs. Sara Gallaspy.

Mr. Wilford asked for corrections or additions to the Minutes of the January 21, 1982, meeting; there were none. A motion was made by Bishop Howze, seconded by Mrs. Gallaspy, to approve the Minutes as written. There was no opposition, and the motion carried.

Mr. Wilford stated that in order to move through the lengthy agenda as quickly as possible, all persons wishing to address the Commission should give their names to Mrs. Nita Gunter, of the Commission staff, and indicate the agenda item they wanted to address.

907260

PLAINTIFFS002745

OF MEETING
ssippi Health Care Commission
ruary 18, 1982
Page 10

2.  Licensure of Beds by Categories

Mr. Brooks stated that the staff recommended the adoption of the following
four licensure categories for hospital beds:  general hospital beds, chemical
dependency unit beds, psychiatric unit beds and rehabilitation beds.  Mr.
Brooks emphasized that the specialty category designation would include
only those hospitals with permanent, dedicated beds intended for these
services and would not prevent (general) hospitals from treating episodic
illnesses in the other three categories.

Mr. Fletcher Crawford, Grenada County Hospital, stated that the medical staff
at Grenada County Hospital were concerned that licensure by the bed cate-
gories proposed would limit a hospital from admitting drug overdoses, patients
with alcohol problems or psychiatric cases.  He stated the further concern
that treatment of such cases in a general hospital would be a factor in
malpractice suits or reimbursement determination.

Mr. Kemp responded that by definition the proposal permitted the treatment
of acute episodes of illnesses related to chemical dependency, rehabilitation
or psychiatry.

There was a general discussion regarding the 30-day average length of stay
definition with regard to specialty units.  Mr. Wilford stated that an
"Intent to Approve" decision by the Commission would permit the staff to
make the policy available for public comment.  A motion was made by Mrs.
Gallaspy, seconded by Mr. Darnell, to issue an "Intent to Approve" in regard
to the proposed bed licensure categories.  There was no opposition, and the
motion carried.

3.  Criteria for Determining Need for Home Health Agencies

Mr. Pugh stated that the standards and criteria on which to base Certificate
of Need decisions with regard to home health agencies had received "Intent
to Adopt" approval at the January Commission meeting and had been made
available for public comment.  He noted that the greatest point of conten-
tion had been the formula for determining need.  Mr. Pugh demonstrated the
application of the formula to several hypothetical county situations and
briefly discussed the following options:  (1) Need to be determined on the
basis of counties not being served, five patients or fewer in a 12-month
period, and not on the basis of counties authorized to be served by an

907269

PLAINTIFFS002754

 OF MEETING
Mississippi Health Care Commission
February 18, 1982
Page 11

existing agency. (2A) Delicensure of counties in which agencies had not
rendered service in the past year though the agencies could continue to
serve patients already enrolled. (2B) Existing agencies would continue to
be licensed for all counties within their respective 50-mile radius with
new agencies being licensed only for those counties where a need was indicated.
(3B) Existing agencies would be licensed for all counties within their 50-
mile radius and new agencies would be licensed for all counties within
their 50-mile radius.

Mr. Fletcher Crawford, director, Grenada County Hospital, stated that his
hospital had submitted an application for a home health agency 45 days
before the moratorium had been implemented and he requested that the applica-
tion be reviewed under the rules and regulations in effect at the time the
application was submitted. Mr. Crawford stated that if it were not possible
to grant his request, that the Commission consider exempting public hospitals
from the criteria and standards.

Mr. Don Baxter, administrator, South Mississippi Home Health Agency, stated
that since Mississippi had more home health agencies than any other state,
he did not feel that additional agencies were needed and asked if the
formula would indicate a need for more agencies.

Mr. Pugh responded that application of the formula had not produced a need
for agencies per se, but some need could exist when the formula was applied
to a particular county.

Dr. Cobb stated that the State Board of Health had elected to have each of
their county home health agencies certified separately and this had inflated
the total number of agencies in the State.

Mr. J. T. Gilbert, Central Mississippi Home Health Agency, stated opposition
to the factor that would allow delicensure of a county in an agency's
service area with five or fewer patients in a 12-month period. Mr. Gilbert
stated that since Federal regulations did not permit advertising or solici-
tation, demonstrated need of patients not being served would be a better
indicator of adequate coverage in a given area than would an arbitrary
minimum number of patients.

907270

PLAINTIFFS002755

OF MEETING
ssissippi Health Care Commission
February 18, 1982
Page 12

A motion was made by Dr. Cobb, seconded by Mr. Darnell, for the final
adoption of Criteria for Determining Need for Home Health Agencies in the
State to include Option 2B as presented by the staff. There was no opposi-
tion, and the motion carried.

4.  Amendment to Home Health Agency Licensing Regulations

Mr. Kemp stated that a review of some of the wording in the new regulations
had indicated a need for revision and the committee that assisted in the
promulgation of the regulations was consulted and in certain places the
word "shall" was recommended to be changed to "preferably." Mr. Kemp stated
that the requested changes would make the regulations workable.

A motion was made by Dr. Cobb, seconded by Mrs. Gallaspy, to adopt the
licensing regulation word changes as recommended by staff under both the
emergency and regular provisions. There was no opposition, and the motion
carried.

5.  Perinatal Policy Statement

Mrs. Jeanne Luckett, chairperson of the MHCC Perinatal Committee, stated that
the committee was most anxious that the Commission reaffirm its interest in
the work of the committee and strengthen the relationship between the
Commission and the Perinatal Committee. Mrs. Luckett discussed several of
the recommendations made by the Perinatal Committee to the Commission and
indicated that most of the recommendations had already been implemented.

Mrs. Luckett stated that the committee was particularly concerned that
adequate staff be made available to them. She indicated that reductions in
Federal funding for maternal and child health programs would necessitate
greater involvement by the Perinatal Committee in seeking ways to meet these
health needs. Mr. Brooks noted that the Commission staff was also being
affected by budget reductions but the staff would provide as much support
as possible.                                              907271

Mr. Wilford stated that one of the Perinatal Committee recommendations had
been that a member of the Commission participate in their meetings. He
indicated his willingness to attend Perinatal Committee meetings as often
as possible. Mr. Wilford stated that it was his understanding that the
Perinatal Committee wanted the Commission to accept the Policy Statement and
endorse it as a general guideline for the relationship of the two groups.

PLAINTIFFS002756

# Minutes

# April 1982

MISSISSIPPI HEALTH CARE COMMISSION
MEETING

MINUTES OF APRIL 15, 1982                    REGULAR MEETING NO. 35

A regular meeting of the Mississippi Health Care Commission was held on Thursday,
April 15, 1982, in the Multi-Purpose Room of the Health Care Commission, 2688
Insurance Center Drive, Jackson, Mississippi.

Commission Members Present          Commission Staff Present

Mr. Dan Wilford, Chairman           Mr. Thomas J. Brooks, III
Patrick Pierce, M.D., Vice Chairman Mr. Robert Pugh
Mrs. Sara Gallaspy, Secretary       Mr. Don Gill
Alton B. Cobb, M.D.                 Mr. Mendal Kemp
Mr. John Allen Darnell              Mrs. Nita Gunter
Bishop Joseph L. Howze              Ms. Pam Caffey
Mr. Charles Penson                  Mr. Lary Daniels
                                    Ms. Jacqueline Thames

Following a "hearing during the course of review", requested by the Biloxi Regional
Medical Center on its Certificate of Need application for a 48-bed chemical
dependency unit, the business meeting was called to order by the Chairman, Mr. Dan
Wilford.

The Legal Notice of the public meeting, as it appeared in the Clarion-Ledger on
April 5, 1982, was read by Mrs. Sara Gallaspy, Commission Secretary.

Mr. Wilford asked for corrections or additions to the Minutes of the March 15,
1982 meeting; there were none. A motion was made by Bishop Howze, seconded by
Mrs. Gallaspy, for approval of the Minutes as written. There was no opposition,
and the motion carried.

OLD BUSINESS

Mr. Wilford stated that there were no items of Old Business on the agenda.

PLAINTIFFS002819

MINUTES OF MEETING
Mississippi Health Care Commission
April 15, 1982
Page 11

Dr. Pierce recommended that the Commission Chairman correspond with Dr. Helen Barnes, Chairman, Statewide Health Coordinating Council, to request that the occupancy rate for hospitals with more than 200 beds be lowered to 80% and that the method of computing bed need be reconsidered.    There was general agreement by all Commission members.  Mr. Wilford asked the Director to follow through on the recommendation.

2.    Home Health Agency Certificate of Need Criteria

Mr. Brooks gave a brief background of the two options regarding home health agencies that had been released for a 30-day public comment period, the first being to declare a moratorium on the issuance of Certificates of Need for 12 months and the second being to not declare a moratorium but to consider applications on the basis of general criteria in the State Health Plan.  He stated that as a result of the 30-day public comment period, the overwhelming majority of responses had been in favor of the moratorium.

Mr. Brooks discussed the following statistics with reference to home health agencies:  (1) an average of 5.6 agencies was currently authorized to serve each county in the State; (2) an average of 3.7 agencies per county served 5 or more patients during calendar year 1981; (3) an average of 3.1 agencies per county served 10 or more patients during calendar year 1981; and (4) an average of 2.2 agencies per county served 25 or more patients during calendar year 1981.

Mr. Brooks stated that because of the number of home health agencies currently authorized in the State, the following recommendation was made:

A moratorium on the issuance of Certificates of Need for additional home health agencies shall hereby be in effect from April 15, 1982, until December 31, 1982.  For the licensure year beginning January 1, 1983, existing home health agencies shall be licensed for only those counties in which they served ten or more patients during the previous twelve-month reporting period.

Prior to the date of January 1, 1983, the Commission shall determine the need for additional home health agencies, based upon the results stated above, it being the intent of the Commission that after January 1, 1983, existing home health agencies shall be licensed for only those counties which they are actually serving.

PLAINTIFFS002829

NOTES OF MEETING
Mississippi Health Care Commission
April 15, 1982
Page 12

Mr. Brooks stated that the only exception to the recommendation would be the consideration of the two applications received prior to the imposition of the moratorium on home health agencies.

A motion was made by Dr. Pierce, seconded by Mr. Darnell, to accept the recommendation regarding home health agencies and for the Commission to consider the two applications cut off by the moratorium as soon as they could be properly scheduled for review.

Mr. Wilford commented that it should be understood that the moratorium had been initially established to provide an opportunity for the Commission to gather the data necessary to evaluate the availability of home health services in the State and that the continuation of the moratorium would be for the purpose of not adding additional agencies until the number of patients served in each county by each agency could be determined.

Mr. Bill Nelson, President, Hospital Based Home Health Agencies, stated that his hospital was licensed to provide home health services in surrounding counties because the hospital drew patients from those areas. He also noted that Methodist Rehab was licensed in many counties where they would serve fewer than 10 patients during a 12-month period, but specialized services were offered by Methodist Rehab that could not be provided by the other home health agencies.

Dr. Pierce stated his agreement that an exception should be made for the specialized services porvided by Methodist Rehab.

Mr. Archie Lancaster with the Methodist Rehabilitation center, stated that it would not be in the best interest of patients needing the specialized care their facility could provide to include Methodist Rehab in the recommendation.

Dr. Donald Booth, President, Mississippi Home Health Association, stated that the MHHA supported the staff recommendation. He noted that there had been many changes recently in regulations and administrative requirements for home health agencies and the moratorium would provide an opportunity for the compilation of data needed to determine need by geographic area.

PLAINTIFFS002830

MINUTES OF MEETING
Mississippi Health Care Commission
April 15, 1982
Page 13

After further discussion regarding the intent of the proposed moratorium, the vote on Dr. Pierce's motion was taken and there was no opposition with two abstentions, Mr. Wilford and Dr. Cobb.

3.   Greenwood-Leflore Hospital: Request for CON Extension Beyond 18 Months

Mr. Brooks stated that the Greenwood-Leflore Hospital had requested an extension beyond the 12-month authorization on the Certificate of Need and the 6-month extension allowable by law.   Mr. Brooks indicated that the reason for the delay with the construction of a surgical suite had been the inability of the facility to sell the bonds needed for financing.  He stated that even though the scope and intent of the project had not changed, the only alternative was for an updated application to be submitted through the usual review process.

Mr. Tom Askew, Director, Greenwood-Leflore Hospital, stated that the outline to be followed for updating an application involved what he considered an excessive amount of time by his staff and requested that the application be reconsidered in the original format.

Mr. Pugh discussed some of the potential problems that could develop if the application were not updated to conform to current criteria.  He suggested that an alternative would be for the Commission to adopt on an emergency basis a new procedure and format for resubmission of applications.

A motion was made by Dr. Cobb, seconded by Dr. Pierce, that a simplified format for the resubmission of applications, where the scope and intent had not changed from the original submission, be developed for Commission consideration and adoption.  There was no opposition, and the motion carried.

4.   Discussion of Request by Primary Medical Management, Inc. for Reconsideration of 1122 Penalty.

Mr. Brooks gave a brief background of the events leading up to the request by PMMI for reconsideration of a penalty imposed under Section 1122 review. He stated that the transfer of ownership of Tom Bailey Memorial Hospital in Maben had occurred prior to issuance of a Certificate of Need.  Mr. Brooks stated that Mr. Bradley had appealed the imposition of the federal penalty, but the decision had not been overturned by the Department of Health and Human Services.

PLAINTIFFS002831

# HCC Newsletter

# April 1982



# Mississippi Health Care Commission

# Newsletter

No. 20                    **Published Monthly**                    April 29, 1982

---

## SUMMARY OF MAJOR CHANGES IN CERTIFICATE OF NEED LAW
### (Senate Bills 2336 and 3015)

A summary of major amendments to Mississippi's Health Planning and Certificate of Need Statute follows. All amendments, Senate Bills 3015 and 2336, became law April 23, 1982 (from and after passage), with the exception of 41-7-191, the section dealing with the moratorium, which is effective July 1, 1982.

1. *ELEVATION OF THRESHOLDS FOR CERTIFICATE OF NEED REVIEW:* Projects will require Certificate of Need review only if they pass the following thresholds: (a) Capital Expenditures excluding equipment, increased from $150,000 to $600,000. (b) Major Equipment Capital Outlay increased from $150,000 to $400,000. (c) Institution of a New Service with an annual operating cost increased from $75,000 to $150,000.

2. Review of *Pre-Development Activities* no longer required.

3. Section 41-7-193(2) exempting *Health Maintenance Organizations* (HMOs) deleted (HMOs now subject to review).

4. Commission given *clear authority to use selected statistical data* and information obtained by the Commission in performing the duties prescribed by Mississippi Licensure and Certificate of Need laws and regulations. The provision that names of individual patients shall not be revealed except in a hearing or judicial proceeding regarding licensure is retained.

5. Language added to Section 41-7-191(1)(c) which would not allow use of the *10-bed or 10%* increase for more than $150,000. (In all other instances, the new increased thresholds are in effect. With reference to this provision, however, capital expenditure limits will remain at $150,000.)

6. *Moratorium* of issuance of Certificates of Need for *nursing home beds extended* for an additional 12-month period, from July 1, 1982 to June 30, 1983. The reason for extension of the moratorium being that, at this time, the State Health Plan indicates no need for additional nursing home beds. The next edition of the State Health Plan is now being prepared and the future need for nursing home beds is being evaluated.

7. Provision added in Section 41-7-191 allowing for use of the so-called *"swing bed"* concept. Under this provision, the Commission may, during the period July 1, 1982 to June 30, 1983, issue Certificate of Need approval for a total of five general acute care hospitals in the State, each having fewer than 50 beds, so that they may participate in a long-term care "swing bed demonstration project" as provided by a four-year grant from the Robert Wood Johnson Foundation. Each of the five hospitals selected may not designate more than 50 percent of their beds to be used under the swing-bed plan.

PLAINTIFFS002834

8.  Provision added (Section 41-7-193) requiring that Certificate of Need *specify time*, within the time allowed, that such *project shall be functional and operation* according to a time schedule submitted with the application. Each Certificate of Need shall specify the maximum amount of capital expenditure that may be obligated and the Commission shall periodically review progress of the time schedule of any party to whom a Certificate of Need has been issued.

9.  Review provision added (Section 41-7-195)(5) allowing the Commission to *approve or disapprove* a Certificate of Need application *in its entirety or in part*, by reduction only, if the proponent agrees to such modification.

10. Pertaining to request for a *"good cause" hearing*, the Commission has 45, increased from 30, days from receipt of the request to actually stage the hearing. Further, the Commission shall render its decision and make written findings following the good cause hearing within 30 days, reduced from 45, after the hearing, by written order and in its Minutes.

11. Thresholds for *"Non-Substantive Reviews"* (Section 41-7-205) increased for major medical equipment from $300,000 to $460,000 and for any other proposed capital expenditure from $300,000 to $700,000.

12. New section added which will *allow the Commission to levy fees* for review of Certificate of Need applications in the event that federal funding for Health Planning is terminated or reduced by 25% or more for the coming year.

## N O T E

Henceforth, Commission review of End Stage Renal Disease (ESRD) Stations will extend only to instances in which an applicant desires to initiate a "new service," relocate a facility, or in which a threshold for review is crossed. Expansion of an existing facility (not relocating and not offering of a "new service") without passing one of the new elevated expenditure thresholds, will <u>not</u> be subject to Certificate of Need review.

## PUBLIC HEARING SCHEDULED FOR STATE HEALTH PLAN

Notice to the general public has been given that the preliminary State Health Plan is available for review and comment and that a public hearing has been scheduled for 9:00 A.M., May 27, 1982, at the MHCC offices. A copy of the Plan can be reviewed on site during the normal business hours or parts copied for a fee.

Comments can be given orally at the public hearing or written and submitted at any time prior to May 28. All comments will be considered by the Statewide Health Coordinating Council before final approval of the Plan.

## NEW REGULATIONS FOR CHEMICAL DEPENDENCY UNITS

MHCC voted at its April meeting to distribute a preliminary draft set of standards for Chemical Dependency Units to the public and providers of health care and solicit comments.

CDUs may be Distinct Parts of hospitals or free-standing. The standards will be amendments to the current <u>Minimum Standards of Operation for Mississippi Hospitals</u>. Your constructive criticism and comments will be greatly appreciated. Please send these comments to Mendal Kemp, Chief, Division of Licensure and Certification, MHCC, 2688 Insurance Center Drive, Jackson, Mississippi   39216.

```
NEXT COMMISSION MEETING
       MAY 20, 1982
        10:00 A.M.
```

PLAINTIFFS002835



NOTE:  THIS SERVES TO NOTIFY ALL AFFECTED PERSONS.

## HEALTH CARE COMMISSION ACTION
## ON
## HOME HEALTH

> For a period of 30 days, beginning the day after the
> March Commission meeting, the Commission considered
> various options regarding the need or lack of need
> for additional home health agencies in the State. At
> the meeting on April 15, 1982 the Commission adopted
> the following:

WHEREAS, an average of 5.6 home health agencies is authorized to serve each Mississippi county, indicating ample coverage; and

WHEREAS, there presently exists in most areas of the State adequate competition for home health patients, and

WHEREAS, there presently exists in Mississippi significant competition for staff, especially registered nurse staff, to serve home health agencies and other health facilities, and WHEREAS additional agencies would further increase competition for staff, thereby further increasing costs; and

WHEREAS, there is presently in Mississippi significant unused capacity for expansion of existing home health agencies; and

WHEREAS, duplication of administrative overhead and expenses necessitated by an over-supply of home health agencies increases health care costs.

NOW, THEREFORE, be it resolved by the Mississippi Health Care Commission that sufficient home health agencies presently exist in Mississippi.

THE COMMISSION, for the reasons stated above, hereby adopts the following policy:

> A moratorium on the issuance of Certificates of Need for
> additional home health agencies shall hereby be in
> effect from April 15, 1982 until December 31, 1982. For
> the licensure year beginning January 1, 1983, existing
> home health agencies shall be licensed for only those
> counties in which they served ten or more patients
> during the previous twelve-month reporting period.
>
> Prior to the date of January 1, 1983 the Commission shall
> determine the need for additional home health agencies,
> based upon the results stated above, it being the intent
> of the Commission that after January 1, 1983 existing
> home health agencies shall be licensed for only those
> counties which they are actually serving.

---------------------------------------------------------------------------------

*Page 2 of MHCC Newsletter No. 20, issued April 29, 1982.*

PLAINTIFFS002836

## PERINATAL COMMITTEE
## MEETING RE-SCHEDULED

The meeting of the Commission's Perinatal Committee scheduled for May 4, 1982 has been canceled.

The next meeting of the Committee will be at 12:00 noon or June 1, 1982 in the MHCC office.

## APPEAL OF COMMISSION'S ORDER

Humana, Inc. of Kentucky, parent organization of Humana of Mississippi, Inc., owner of "Doctors Hospital of Jackson," has appealed the Commission's order of March 18, 1982 in which it approved a Certificate of Need for Lifemark Recovery Centers of Jackson, Inc. to establish a 40-bed free-standing treatment facility for persons addicted to alcohol.

This appeal was properly made to the Commission for the Administrative Appeals Judge and the "record" developed regarding the "Lifemark" application is now being certified to the Judge.

## MISS PAM CAFFEY JOINS PLANNING STAFF

Miss Pam Caffey has recently joined the Commission staff in the Division of Planning and Resource Development. She is serving as Section Leader for the Certificate of Need function.

Miss Caffey is a registered pharmacist and received the Master of Health Care Administration degree from the University of Mississippi in 1980. Jackson has been the location of her experience in hospital and health care administration for the past two years.

Effective immediately, all inquiries by telephone or in person regarding Certificates of Need should be directed to Miss Caffey or to Mr. Robert Pugh, Division Chief.

## APRIL COMMISSION ACTION

The following applications received Intent to Approve action:

Northeast Mississippi Hospital, Booneville: Lease to Baptist Memorial Hospital, Booneville ($743,904).

St. Dominic Dialysis Center, Inc., Jackson: Change of ownership ($300,000).

## PROJECTS TO BE REVIEWED AT MAY 20 MEETING
## (INCLUDING FOUR PROJECTS DEFERRED IN APRIL

Biloxi Regional Medical Center (DEFERRED)
    48-bed CDU ($2,500,000).
Biloxi Psychiatric Hospital (DEFERRED)
    60-bed psyc. and subs. abuse facility ($4,709,940).
Gulf Coast Community Hospital, Biloxi (DEFERRED)
    66-bed psyc. and subs. abuse facility ($3,567,000).
Sand Hill, Gulfport (DEFERRED)
    60-bed psyc. hospital ($3,410,000).

Singing River Hospital, Pascagoula: Replace air conditioning unit ($275,000).
Vicksburg Hospital, Inc.: New service - CT scanner ($1,313,914)
Oxford-Lafayette County Hospital, Oxford: New service - CT Scanner ($859,400)
Mercy Regional Medical Center, Vicksburg:
    (1) New service: CT Scanner ($864,400)
    (2) New service: 40-bed CDU ($1,730,241)
    (3) Renovation/expansion - no beds ($8,561,945)
Biloxi Regional Medical Center: Renovation and construction - no beds ($3,693,331)
Humphreys County Memorial Hospital: Acquisition of Belzoni Hospital and Belzoni Nursing Home ($2,000,000)

**MISSISSIPPI HEALTH CARE COMMISSION**
**2688 Insurance Center Dr.**
**Jackson, MS 39216**

Bulk Rate
U.S. Postage
**PAID**
Jackson, MS
Permit #367

# Minutes

# May 1982

MISSISSIPPI HEALTH CARE COMMISSION

MEETING



MINUTES OF MAY 20, 1982                          REGULAR MEETING NO. 36

A regular meeting of the Mississippi Health Care Commission was held on Thursday, May 20, 1982, in the Multi-Purpose Room of the Health Care Commission, 2688 Insurance Center Drive, Jackson, Mississippi.

Commission Members Present          Commission Staff Present

Mr. Dan Wilford, Chairman            Mr. Thomas J. Brooks, III
Patrick Pierce, M.D., Vice Chairman  Mr. Robert Pugh
Mrs. Sara Gallaspy, Secretary        Mr. Don Gill
Alton B. Cobb, M.D.                  Mr. Mendal Kemp
Mr. John Allen Darnell               Mrs. Nita Gunter
Bishop Joseph L. Howze               Ms. Pam Caffey
                                     Mr. Lary Daniels
Commission Member Absent             Ms. Jacqueline Thames

Mr. Charles Penson

Representative from Attorney General's Office

      Mr. W. D. Coleman, Attorney at Law

The meeting was called to order by the Chairman, Mr. Dan Wilford.  The invocation was given by Bishop Howze.

The Legal Notice of the public meeting, as it appeared in the Clarion-Ledger on May 7, 1982, was read by Mrs. Sara Gallaspy, Commission Secretary.

Mr. Wilford asked for corrections or additions to the Minutes of the April 15, 1982, meeting; there were none.  A motion was made by Bishop Howze, seconded by Mrs. Gallaspy, to approve the Minutes as written.  There was no opposition, and the motion carried.

OLD BUSINESS

1.  Biloxi Regional Medical Center.  New service:  48-bed chemical dependency unit.

2.  Biloxi Psychiatric Hospital.  Construction of 60-bed psychiatric and substance abuse facility.

3.  Sand Hill, Gulfport.  Construction of 60-bed adolescent psychiatric hospital.

PLAINTIFFS002867

MINUTES OF MEETING
Mississippi Health Care Commission
May 20, 1982
Page 15

4.  Standards for Operation of "Swing Beds" in Mississippi Hospitals

Mr. Brooks stated that Standards for licensing "swing beds" had been drafted
and the staff recommended that the Standards be released for a 30-day public
comment period.

Mr. Kemp stated that the object of the Standards was not to place an obstacle
in front of the experimental "swing bed" project, but to ensure that
patients remaining in a hospital for an extended stay received adequate
care. He noted that this included the provision of a day room, dining room
and activity programs suited to the interests of the patients.

A motion was made by Dr. Pierce, seconded by Mrs. Gallaspy, to release the
Standards for a 30-day public comment period as recommended by staff. There
was no opposition, and the motion carried.

5.  Preliminary State Health Plan

Mrs. Nita Gunter stated that on the basis of the discussion of the Plan at
the April Commission meeting, the formula for determining bed need was re-
viewed and a Work Group of the Statewide Health Coordinating Council agreed
to the following:

a.  Use 80% occupancy rate for all hospitals, with close monitoring to
    determine the reliability of this percentage for continued use in the
    formula.

b.  Set 6.2 days as the average length of stay (ALOS) with certain exceptions
    that could be considered, such as the age of the patient population,
    the education and income status of clientele, and the nature of the
    treatment received.

Mrs. Gunter indicated that there were three other factors that could be
considered in determining the growth needs of hospitals:

a.  Population projections over the next 10 years.

b.  Indigent care provided that was equal to or greater than the amount
    required in the Hill-Burton formula for indigent care.

c.  Conformity with licensure standards.

There was a discussion regarding the need to include an indigent care
formula for hospitals not covered in the Hill-Burton category. Mrs. Gunter
stated that the Hill-Burton formula was an amount equal to 3% of the operating
budget of the facility, less Medicare and Medicaid reimbursement, or 10% of
the federal construction aid.

PLAINTIFFS002881

MINUTES OF MEETING
Mississippi Health Care Commission
May 20, 1982
Page 16

Dr. Pierce suggested that the 3% formula should be applied to all hospitals. After further discussion of the bed need formula, a motion was made by Mrs. Gallaspy, seconded by Dr. Pierce, to approve the Preliminary State Health Plan. There was no opposition, and the motion carried.

6. Moratorium on Issuance of Certificates of Need for Home Health Agencies

Mr. Brooks stated that the Commission at the April meeting had taken "Intent to Adopt" action on the moratorium which was to be in effect from April 15, 1982 through December 31, 1982. He indicated that final action of the Commission was recommended.

A motion was made by Dr. Pierce, seconded by Mr. Darnell, to take final adoption action on the moratorium regarding home health agencies. There was no opposition, and the motion carried.

7. June Commission Meeting

Three of the six Commission members present stated that they would not be able to attend the June meeting if it were held on the third Thursday, June 17. After discussion of other possible dates, it was agreed that the June meeting of the Health Care Commission would be on June 24, 1982.

8. Release by Staff of Addresses and Telephone Numbers of Commissioners

Mr. Brooks stated that due to the increasing number of requests for addresses and telephone numbers of Commission members, the staff would like the Commission to provide some guidance in this regard. There was general agreement by all Commission members that it was satisfactory for the staff to continue to provide such information upon request.

NEXT MEETING:  June 24, 1982


ATTEST:


_____          _____
Dan Wilford, Chairman                    Mrs. Sara Gallaspy, Commission Secretary


PLAINTIFFS002882

Minutes


November 1982

MISSISSIPPI HEALTH CARE COMMISSION
MEETING

MINUTES OF NOVEMBER 18, 1982                    REGULAR MEETING NO. 41

A regular meeting of the Mississippi Health Care Commission was held on Thursday,
November 18, 1982, in the Multi-Purpose Room of the Health Care Commission, 2688
Insurance Center Drive, Jackson, Mississippi.

Commission Members Present              Commission Staff Present

Mr. Dan Wilford, Chairman               Mr. Thomas J. Brooks, III
Patrick Pierce, M.D., Vice Chairman     Mr. Robert Pugh
Mrs. Sara Gallaspy, Secretary           Mr. Mendal Kemp
Mr. John Allen Darnell                  Mr. Lary Daniels
Alton B. Cobb, M.D.                     Mrs. Pam Ashley
Mr. Charles Penson                      Mrs. Nita Gunter
                                        Ms. Jacqueline Thames
                                        Mrs. Martha Yeager
Commission Member Absent

Bishop Joseph L. Howze

Representative from
Attorney General's Office

Mr. W. D. Coleman, Attorney at Law

The meeting was called to order by the Chairman, Mr. Dan Wilford.  The invocation
was given by Mr. Charles Penson.

The Legal Notice of the public meeting, as it appeared in the Clarion-Ledger on
November 6, 1982, was read by the Commission Secretary, Mrs. Sara Gallaspy.

Mr. Wilford asked for corrections or additions to the Minutes of the October 21,
1982, meeting; there were none.  A motion was made by Mr. Darnell, seconded by
Mrs. Gallaspy, to approve the Minutes as written.  There was no opposition, and
the motion carried.

PLAINTIFFS003021

MINUTES OF MEETING
Mississippi Health Care Commission
November 18, 1982
Page 12

3.  Home Health Policy

   Mr. Brooks stated that a moratorium on the issuance of Certificates of Need
   for home health agencies had been imposed to give the staff an opportunity
   to study the needs in this area and to bring to the Commission a recommendation
   to be effective January 1, 1983.   He indicated that after review of methods
   used in other states to deal with the matter, staff had concluded that a pure
   formula approach would not be feasible.  Mr. Brooks stated that the staff
   recommended a policy where, with certain guidelines and criteria, each
   application would be evaluated on its own merits.  He indicated that the
   staff recommended that provider preference alone would not constitute sufficient
   reason for for an additional agency in any area.

   Mr. Brooks briefly discussed the following proposed recommendations regarding
   home health agencies:

   1.  It shall be the policy of the Mississippi Health Care Commission that,
       as of January 1, 1983, home health agencies shall be licensed to do
       business in only those counties in which 10 or more patients were
       served during the period January 1, 1982 - December 31, 1982.  As of
       January 1, 1984, home health agencies shall be licensed to do business
       in only those counties in which 25 or more patients were served during
       the period January 1, 1983 - December 31, 1983.  Newly approved agencies
       or subunits shall be required to meet the 25 volume standard, in each
       county served, after completion of the initial full 12-month licensure
       period.

   2.  Optional:
       Certificate of Need approvals shall be limited to only those counties
       in which (2 or fewer) (3 or fewer) (4 or fewer) licensed agencies exist.

   3.  As of January 1, 1984, only those home health agencies or subunits in
       which a total caseload of 100 patients or more was maintained during
       the period January 1, 1983 - December 31, 1983 shall be licensed.

   4.  Because of the importance of accessibility to care for indigent patients,
       county health departments are exempt from compliance with items 1 and 3
       above.  (It is expected that very few health departments will be
       affected by this provision in any event.)

   Mr. Brooks stated that currently an average of 5.6 home health agencies were
   licensed in each county and to avoid permanently franchasing existing agencies,
   minimum caseloads per county should be established to assure that the agencies
   were serving an adequate volume of patients.  Mr. Brooks recommended that
   there be only two Certificate of Need review cycles per year for home health
   agency applications since it was anticipated that there would be competing
   applications in some areas of the state and the two cycles would make review
   of the applications more efficient.

PLAINTIFFS003032



MINUTES OF MEETING
Mississippi Health Care Commission
November 18, 1982
Page 13

The following individuals addressed the Commission with regard to the pro-
posed home health policy:

Ms. Elaine Burchfield, president of the Home Health Association, made the
following comments: (1) Lack of patient census in a county did not accurately
reflect the need for delicensing of an established agency. (2) Review of
Certificate of Need applications be limited to only those counties in which
two or fewer licensed agencies exist, with consideration to the aged popu-
lation. (3) Any agency that met licensure and certification standards,
rendered quality service and was cost effective should not be judged according
to caseload. (4) All agencies providing indigent care should be given the
same consideration as the staff recommended for the State Board of Health.
Ms. Burchfield requested that the Commission defer action on the home health
policy until the December meeting to give members of the Home Health Associa-
tion an opportunity to formulate and present to the Planning staff recommenda-
tions to better enable the policy to guide home health delivery in the future.

Ms. Cathey P. Stitt, executive director, The Visiting Nurse Association of
Memphis, requested that the Commission revise the proposed home health policy
to consider the Visiting Nurse Association in the same category with the State
Board of Health because of accessibility of care to the indigent. She stated
that the VNA would lose its license in four Mississippi counties under the
proposed policy. Ms. Stitt stated that the Visiting Nurse Association of
Memphis had been approved to receive $149,000 in United Way funds for Fiscal
Year 1983 and it was anticipated that an increased number of indigent patients
would be visited in those four Mississippi counties in the near future.

Ms. Marilyn Williams, Mississippi Hospital Association, stated that the
MHA supported the lifting of the moratorium on issuance of Certificates of
Need for home health agencies. She indicated that to state that no agency
would be approved on the basis of provider preference was too firm a state-
ment. Ms. Williams stated that different types of providers and competition
between providers was needed in the health services industry.

Mr. Tim Crowley, Crosby Memorial Hospital, stated that he was representing
the Mississippi Hospital Association which recommended that hospital-based
home health agencies have the same service area as the hospital had. He
stated that the consumer of health care should be given a preference and
though provider preference should not be the sole basis for approving or

PLAINTIFFS003033

MINUTES OF MEETING
Mississippi Health Care Commission
November 18, 1982
Page 14

disapproving an application, it should be taken into consideration.  Mr.
Crowley stated that better  continuity of care was possible through a
hospital-based home health agency rather than a free-standing agency.

Mr. Don Baxter, South Mississippi Home Health Agency, stated that there were
sufficient home health agencies serving the State at the present time.  He
suggested that a formula be developed to show the percentage of a home health
agency's budget expended for indigent care and all agencies with an indigent
care percentage equal to or more than that of the State Board of Health be
exempted from the caseload minimums, as had been recommended for the Board
of Health.  Mr. Baxter suggested that the policy be written to include a pro-
vision that in any county where an agency had been delicensed that another
agency would not be considered in that county for a period of one or two years.
Mr. Baxter indicated that with the cost limitations built into the reimburse-
ment system it was his opinion that any agency that could maintain a viable
operation should be allowed to do so.

Mable T. Garner, M.D., Camden.  Dr. Garner spoke in favor of the Commission
receiving applications for new home health agencies.  She stated that there
were rural areas in which home health services were needed.

Dr. Cobb commented that the State Board of Health would have public health
nurses in all counties who would be making home health visits in connection
with ongoing programs of the Board of Health whether or not they were exempt
from the proposed home health policy.  He stated that reimbursement for such
visits allowed the Board of Health to expand services, but he would not ask
for special consideration.

Mr. Brooks recommended initial adoption of the home health agency policy so
that it could be made available for public comment.  After a discussion between
Commission and staff, it was agreed that the optional recommendation be
included in the policy to read: "Certificate of Need approvals shall be
limited to only those counties in which 3 or fewer licensed agencies exist."

After further discussion of the policy, a motion was made by Mr. Penson,
seconded by Dr. Cobb, to adopt the home health agency policy and release
it for public review and comment.  There was no opposition, and the motion
carried.

PLAINTIFFS003034

# Minutes

# December 1982



**DRAFT**

MISSISSIPPI HEALTH CARE COMMISSION

MEETING

MINUTES OF DECEMBER 16, 1982                     REGULAR MEETING NO. 42

A regular meeting of the Mississippi Health Care Commission was held on Thursday, December 16, 1982, in the Multi-Purpose Room of the Health Care Commission, 2688 Insurance Center Drive, Jackson, Mississippi.

Commission Members Present                  Commission Staff Present

Mr. Dan Wilford, Chairman                   Mr. Thomas J. Brooks, III
Patrick Pierce, M.D., Vice Chairman         Mr. Robert Pugh
Mrs. Sara Gallaspy, Secretary               Mr. Mendal Kemp
Alton B. Cobb, M.D.                         Mr. Festus Simkins
Mr. John Allen Darnell                      Mrs. Pam Ashley
Bishop Joseph L. Howze                      Mr. Lary Daniels
Mr. Charles Penson                          Mrs. Nita Gunter
                                            Mrs. Martha Yeager

The meeting was called to order by the Chairman, Mr. Dan Wilford.  The invocation was given by Bishop Howze.

The Legal Notice of the public meeting, as it appeared in the Clarion-Ledger on December 4, 1982, was read by the Commission Secretary, Mrs. Sara Gallaspy.

Mr. Wilford asked for corrections or additions to the Minutes of the November 18, 1982, meeting; there were none.  A motion was made by Mrs. Gallaspy, seconded by Mr. Penson, to approve the Minutes as written.  There was no opposition, and the motion carried.

OLD BUSINESS

    Mr. Wilford stated that there were no items of Old Business for Commission consideration.

.INUTES OF MEETING
Mississippi Health Care Commission
December 16, 1982
Page 11

5.   Home Health:  Certificate of Need Policy

Mr. Brooks discussed the following modifications to the home health policy
proposal and commented that the changes had received favorable comment by
the Statewide Health Coordinating Council: . .

a.   A Profile of every county in the state would be developed, with two
     key factors being (1) the number of patients served per 1,000 popula-
     tion aged 65 and over and (2) the number of home health agencies,
     actually serving 10 patients or more in Calendar Year 1982, per 1,000
     population aged 65 and over.

b.   No delicensure of agencies serving fewer than 10 patients in a given
     county, but the inclusion of such agencies when determining need, thus
     creating an incentive for all agencies to become active in all authorized
     counties.

Mr. Brooks stated that the other criteria for determination of need basically
were the same as recommended at the November meeting.  He commented that
suggestions from the Mississippi Hospital Association had not been received
in time for a thorough review, but there appeared to be a couple of points
that would bear further study.

Mr. Brooks recommended that the proposed home health policy be adopted by
the Commission with the intent of implementing it after receipt of licensure
information required for the development of the county profiles.  He stated
that the licensure information was due by February 1, 1983 and the county
profiles should be available for presentation to the Commission at the
February meeting.  Mr. Brooks further noted that the MHA proposal could be
reviewed prior to the January Commission meeting and any modifications
resulting from that review could be presented in January.  Mr. Brooks
stated that it was also recommended that no home health agency applications
be considered by the Commission until the policy had been adopted.

Ms. Marilyn Williams, Mississippi Hospital Association, stated that in the
past MHA had been criticized for only commenting on proposals and not
presenting alternatives for consideration.  She stated that in this case,
MHA alternatives had been proferred.  Ms. Williams indicated that MHA had
only received a copy of the proposed policy a few days before the Com-
mission meeting and had responded in as timely a manner as was possible.

PLAINTIFFS003051



Discussion of CON Policy

Utilization

Another 60-Day Extenstion


February 17, 1983



**DRAFT**

MISSISSIPPI HEALTH CARE COMMISSION
MEETING

<u>MINUTES OF FEBRUARY 17, 1983</u>                    <u>REGULAR MEETING NO. 44</u>

A regular meeting of the Mississippi Health Care Commission was held on Thursday, February 17, 1983, in the Multi-Purpose Room of the Health Care Commission, 2688 Insurance Center Drive, Jackson, Mississippi.

<u>Commission Members Present</u>          <u>Commission Staff Present</u>

Mr. Dan Wilford, Chairman              Mr. Thomas J. Brooks, III
Alton B. Cobb, M.D.                    Mr. Robert Pugh
Mr. John Allen Darnell                 Mr. Don Gill
Bishop Joseph L. Howze                 Mr. Mendal Kemp
                                       Mrs. Nita Gunter
<u>Commission Members Absent</u>            Mrs. Martha Yeager

Patrick Pierce, M.D., Vice Chairman
Mrs. Sara Gallaspy, Secretary
Mr. Charles Penson

The meeting was called to order by the Chairman, Mr. Dan Wilford.

Mr. Wilford announced that Mrs. Gallaspy was not present due to the death of her husband earlier in the week. He requested that a moment of silence be observed in memory of Mr. Gallaspy, after which Bishop Howze gave the invocation.

The Legal Notice of the public meeting, as it appeared in the Clarion-Ledger on February 4, 1983, was read by Chairman Wilford.

Mr. Wilford asked for corrections or additions to the Minutes of the January 20, 1983 meeting; there were none. A motion was made by Dr. Cobb, seconded by Bishop Howze, to approve the Minutes as written. There was no opposition, and the motion carried.

<u>OLD BUSINESS</u>

1.  <u>Tupelo General Hospital</u> (previously disapproved application)

    Mr. Wilford, Commission Chairman, stated that due to his affiliation with a Tupelo hospital in opposition to the proposed project, he would recuse himself from both the discussion and vote on the request for reconsideration of the Commission's previous disapproval of the project.

PLAINTIFFS003108

MINUTES OF MEETING
Mississippi Health Care Commission
February 17, 1983
Page 7

money spent on it in order to maintain compliance with Licensure standards. To a question by Dr. Cobb, Mr. Tomkins stated that the approximate increase in cost of care per day under alternative four as opposed to the original proposal was $3.00.

Mr. Brooks stated that of major concern to the staff were the overbedding already existing in the area and the sustained low occupancy rate of the hospital. He indicated that alternative four would create a situation where even additional overbedding could result due to the shelled-in space. To that comment, Mr. Tomkins stated that under the 10 bed/10% rule, the hospital could continue to add to its bed complement even without the shelled-in space.

There was a discussion among Commission members and staff regarding the two proposals. A motion was made by Dr. Cobb, seconded by Bishop Howze, to approve the alternative proposal as preferred by the proponent rather than the original proposal recommended by staff. There was no opposition, and the motion carried.

COMMISSION BUSINESS

1.  Home Health: Certificate of Need Policy

Mr. Brooks noted that staff had further studied the Home Health Policy proposal considered at the January meeting and after further review of the recommendations from the Mississippi Hospital Association had included the following criteria:

Item 2e(3): Average cost per patient based on the average number of visits per patient.

Item 2f: Information concerning whether or not proposed agencies would provide services different from those available from existing agencies.

Mr. Brooks discussed the two options proposed for Commission consideration. Under the first option, only those counties below the state average of number of patients per 1,000 population 65 and over and counties in which the number of home health agencies serving 10 patients or more per 1,000 population 65 and over was less than the state average would be considered as having a possible need for new or expanded home health agencies. Mr. Brooks stated that under the first option, only 25 counties might be shown to have need at the present time.

PLAINTIFFS003114

MINUTES OF MEETING
Mississippi Health Care Commission
February 17, 1983
Page 8

Mr. Brooks stated that under the second option, the average number of patients per 1,000 population 65 and over and the number of home health agencies serving 10 patients or more per 1,000 population would simply be considered along with the other criteria. Mr. Brooks stated that under the second option, no county in the state would be prohibited from consideration for new or expanded home health agencies.

Mr. Brooks distributed a chart depicting "Medicare Enrollees as of July 1, 1979 and Medicare Visits by Home Health Care for Calendar Year 1978 for the United States and Selected Areas" and noted the much higher number of visits for Mississippi Medicare enrollees than in the other states listed on the chart (Alabama, Arkansas, Georgia, Kentucky, Louisiana and Tennessee). Mr. Brooks noted that the statistics presented in the chart supported the staff's position that Mississippi had extensive utilization of home health services.

Dr. Cobb stated that when the utilization of home health services in Mississippi was considered, the state average might be higher than the desired level of utilization.

The following individuals addressed the Commission:

Mr. Don Baxter, member of the National Association of Home Care Board of Directors and administrator, South Mississippi Home Health and Rehabilitation Center, stated that the statistics indicated an over-saturation of home health providers and no additional agencies were needed in the State at the present time. Mr. Baxter noted that according to reports submitted by all home health agencies in the state, only 11 people had not been able to receive home health care last year from the first agency contacted.

Ms. Marilyn Williams, Mississippi Hospital Association, stated that MHC preferred the option where all the criteria would be weighed against each individual application and no proponent would be eliminated from consideration simply on the basis of two "cut off" criteria.

Dr. Ed Thompson, Deputy Chief of Personal Services, State Department of Health, stated support for the staff's position that, basically, adequate home health services were available in Mississippi and there was a need for establishing criteria that would prevent the unnecessary proliferation of such services. Dr. Thompson expressed disagreement with the proposed

PLAINTIFFS003115

MINUTES OF MEETING
Mississippi Health Care Commission
February 17, 1983
Page 9

threshold of using a state average for determining need.  He noted that there
would always be counties falling below the average and as agencies were added
to those counties, resulting in a changed average, other counties would show a
need.  Dr. Thompson stated that previously a concrete threshold of .5 agencies
per 1,000 population 65 and over had been considered and he urged that the
Commission use that or some other appropriate threshold rather than a state
average.

Dr. Bill Moore, representing the Mississippi Home Health Association, stated
that increasing the number of home health agencies would increase the cost to
taxpayers.  He noted that existing home health agencies had the capability of
increasing the number of patients served by at least 25% which meant, in his
opinion, that there was no need for additional home health agencies in the
State.  On behalf of the Home Health Association, Dr. Moore urged that the
Commission either continue the moratorium on new or expanded agencies for
another year or use a more realistic threshold than a state average of visits
or agencies to determine need.

Dr. Cobb suggested that a norm based on utilization in the Southeastern Region
be used as a threshold.

Ms. Elaine Burchfield, president, Mississippi Home Health Association, stated
surprise that the "pockets of need" referred to in the proposed policy had
actually turned out to be 25 or 30% of the State.  She requested that the
Commission review the information received from home health agencies to
determine if the "pockets of need" were really as extensive as depicted.

Mr. Mark Alexander, Alexander's Home Health Agency, stated that in his
opinion the ideal set of data for determining need would be the number of
patients in a county who had not been able to receive home health services.
Mr. Alexander stated that this information was available from the annual
reports submitted by all home health agencies and if more frequent data were
desirable, reports could be submitted on a quarterly or semi-annual basis.

Mr. Pugh stated that previously a formula had been suggested whereby no
need for additional agencies would be shown in counties with .5 or more
licensed agencies per 1,000 population 65 and over.  He noted that the
problem encountered with such a formula was that only existing licensed
agencies were being measured  and that measurement did not reflect the

PLAINTIFFS003116

MINUTES OF MEETING
Mississippi Health Care Commission
February 17, 1983
Page 10

need for services, but only reflected the number of agencies. Mr. Pugh noted that the staff had attempted to develop a policy which was more in line with actual utilization of agencies rather than just the number of agencies in a county.

Mr. Brooks stated that due to the large variation in the size of agencies, it would probably not be possible to ever develop a formula that would as closely define the need for home health agencies as could be projected for hospital beds. He noted that should there be 1,000 patients to be served in a particular county, it would be difficult to recommend whether two agencies serving 500 patients each or ten agencies serving 100 patients each would be the better solution to meet the needs in the county.

There was further discussion regarding the data needed from which an appropriate threshold could be set. Mr. Brooks summarized the suggestions and stated that the staff would research methods to give consideration to comparing Mississippi home health visits per 1,000 population 65 and over, by county, with the Southeastern norm for Medicare enrollees. There was consensus among Commission members that Mr. Brooks had accurately stated the information desired by the Commission.

Mr. Pugh stated that data on home health visits provided on the annual report was by agency and not by county and such information would be needed before the established norm could be applied to each county. There was discussion regarding the collection of such data and it was agreed that the home health agencies would be requested to provide the needed information.

Mr. Pugh stated that the Commission had adopted a policy at the December 16, 1982 meeting whereby home health applications would not be considered until implementation of a Certificate of Need policy regarding the review of such applications. Mr. Pugh noted that at the December 1982 meeting, it had been assumed that such a policy would be adopted at the February 1983 meeting. Mr. Pugh requested guidance from the Commission on this issue.

A motion was made by Dr. Cobb, seconded by Mr. Darnell, to continue for 60 days the policy of not receiving applications for new or expanded home health agencies. There was no opposition, and the motion carried.

PLAINTIFFS003117

Minutes


March 1983

MISSISSIPPI HEALTH CARE COMMISSION

MEETING

MINUTES OF MARCH 17, 1983                                    REGULAR MEETING NO. 45

A regular meeting of the Mississippi Health Care Commission was held on Thursday,
March 17, 1983, in the Multi-Purpose Room of the Health Care Commission, 2688
Insurance Center Drive, Jackson, Mississippi.

Commission Members Present                    Commission Staff Present

Patrick Pierce, M.D., Vice Chairman           Mr. Thomas J. Brooks, III
Mrs. Sara Gallaspy, Secretary                 Mr. Robert Pugh
Alton B. Cobb, M.D.                           Mr. Mendal Kemp
Mr. John Allen Darnell                        Mr. Don Gill
Bishop Joseph L. Howze                        Mrs. Martha Yeager
Mr. Charles Penson *

*Mr. Penson arrived at the beginning of the discussion of the Beverly Enterprises
 agenda item.

Commission Member Absent

Mr. Dan Wilford, Chairman

The meeting was called to order by the Vice Chairman, Dr. Patrick Pierce.  Dr. Pierce
noted that the absence of the Commission Chairman, Mr. Dan Wilford, was due to Mr.
Wilford's being in Washington, D. C.

The Legal Notice of the public meeting, as it appeared in the Clarion-Ledger on
March 5, 1983, was read by Mrs. Gallaspy, Commission Secretary.

Dr. Pierce asked for corrections or additions to the Minutes of the February 17, 1983
meeting; there were none.  A motion was made by Mr. Darnell, seconded by Bishop
Howze, to approve the Minutes as written.  There was no opposition, and the motion
carried.

CERTIFICATE OF NEED APPLICATIONS

1.  Rush Hospital, Newton

    Mr. Brooks stated that the proposal was for the addition of physical therapy
    services for a capital expenditure of $19,011.  He indicated that the staff
    recommended approval of the project.

MINUTES OF MEETING
Mississippi Health Care Commission
March 17, 1983
Page 7

part of the cost of the JCAH survey during the experiment.  Mr. Kemp noted
that the survey would consist of one nurse surveyor spending one day in a
facility every two years.  He indicated that the MHCC Licensure Division would
still have to investigate all complaints, review and approve renovation plans
and respond to state officials and the public on the care given in all nursing
homes.

There was a consensus of Commissioners that the staff should further explore
the proposal and make a recommendation at the April meeting.

3.  <u>Home Health</u>

Mr. Brooks stated that at a joint meeting of representatives of the Statewide
Health Coordinating Council, Health Systems Agency, and Health Care Commission
held on March 16, 1983, the recommendation was made that the following criterion
be used in the <u>State Health Plan</u> as an initial screen for determining the need
for additional or expanded home health agencies:

"The first criterion of need for additional or expanded home health agencies
will be a determination of Mississippi counties having fewer (actual) home
health visits per 1,000 persons 65 and over than the average number of Medicare
(projected) paid home health visits per 1,000 persons 65 and over for the
ten-state Southeastern Region in 1982."

Mr. Brooks stated that after applying the recommended screen criterion, 17
counties in the State were shown to have statistical need for additional or
expanded home health agencies.  He indicated that applicants meeting the
screen criterion would still have to satisfy the other need criteria as
previously discussed.

Mr. Brooks recommended that the proposed screen criterion be adopted under
the "intent to adopt" and emergency provisions so that the staff would be in
a position to review Certificate of Need applications for this service.

A motion was made by Bishop Howze, seconded by Mr. Darnell, to approve the
proposal under both the "intent to adopt" and emergency provisions.  There
was no opposition, and the motion carried.

PLAINTIFFS003179

MINUTES OF MEETING
Mississippi Health Care Commission
March 17, 1983
Page 8

Mr. Pugh asked if the action taken by the Commission meant that applications could be received even though pending legislation included a moratorium on issuance of Certificates of Need for new health care facilities.

Dr. Pierce stated that he would recommend for inclusion in the Minutes a statement that even though the Commission would receive applications for new or expanded home health agencies in a county meeting the initial screen criterion, action would not be taken on the application in the event that the Legislature passed a bill extending the moratorium. There was no opposition to the recommendation.

Later in the meeting, Dr. Bill Moore, representing the Mississippi Home Health Association, stated that it had been the understanding of the Association that the number of persons served per 1,000 persons 65 and over would also be used as a screen criterion.

Mr. Brooks stated that he would recommend that the single screen criterion adopted earlier in the meeting not be changed and that after a period of evaluation, a second screen criterion could be added if the Commission chose to be more restrictive with regard to accepting applications for review.

The Commission members agreed that the policy should remain as earlier adopted.

4.   Certificate of Need Quarterly Review Cycles

Mr. Brooks discussed the advantages of the quarterly review cycle concept as opposed to the 90-day review cycle presently in effect. He stated that not being able to inform a provider as to when a particular project would be put on the agenda had, understandably, caused some confusion. Mr. Brooks noted that an increasing number of projects were being opposed and hearings were being requested, making it impossible for the staff to always anticipate the date an application would be on the Commission agenda. He indicated that the quarterly review cycles would apply only to substantive applications.

Mr. Brooks stated that the quarterly review cycles would allow more timely consideration of competing applications and would provide a clearer timetable for applicants wishing to submit applications.

# Minutes

## April 1983

MISSISSIPPI HEALTH CARE COMMISSION
MEETING

MINUTES OF APRIL 21, 1983                          REGULAR MEETING NO. 46

A regular meeting of the Mississippi Health Care Commission was held on Thursday, April 21, 1983, in the Multi-Purpose Room of the Health Care Commission, 2688 Insurance Center Drive, Jackson, Mississippi.

Commission Members Present                Commission Staff Present

Mr. Dan Wilford, Chairman                 Mr. Don Gill
Patrick Pierce, M.D., Vice Chairman       Mr. Robert Pugh
Mrs. Sara Gallaspy, Secretary             Mr. Mendal Kemp
Alton B. Cobb, M.D.                       Mr. Bruce Ridgway
Mr. John Allen Darnell                    Mrs. Nita Gunter
Bishop Joseph L. Howze                    Mrs. Martha Yeager
Mr. Charles Penson

The meeting was called to order by the Chairman, Mr. Dan Wilford.  The invocation was given by Bishop Howze.

The Legal Notice of the public meeting, as it appeared in the Clarion-Ledger on April 9, 1983, was read by Mrs. Gallaspy, Commission Secretary.

Mr. Wilford asked for corrections or additions to the Minutes of the March 17, 1983, meeting; there were none.  A motion was made by Bishop Howze, seconded by Dr. Pierce, to approve the Minutes as written.  There was no opposition, and the motion carried.

COMMISSION DIRECTOR NAMED

Chairman Wilford stated that after Mr. Brooks had announced his resignation to be effective April 3, 1983, the Commission had decided to first interview applicants for the position of Executive Director from the Commission staff.  Mr. Wilford noted that the six individuals who had applied for the position had been interviewed by the Commission and had all been found to be extremely capable individuals and all worthy of consideration for the position of Executive Director.  The following staff members were interviewed:  Don Gill, Nita Gunter, George Jobe, Mendal Kemp, Robert Pugh and Bruce Ridgway.

PLAINTIFFS003188

the Medicaid budget, but the increased quality of care would justify the expenditure.

A motion was made by Dr. Cobb, seconded by Mr. Darnell, to accept the staff recommendation and approve the proposal. There was no opposition, one abstention (Mr. Wilford) and the motion carried.

COMMISSION BUSINESS

1. Changes in the Health Care Commission Law

Mr. Gill, staff attorney, gave a brief review of House Bill 927, the Health Care Commission Law, which was signed by the Governor on April 9, 1983.

Section 41-7-175(2): Mr. Gill stated that the phrase "as prescribed by the Legislature" had been added since the bill did not in all cases follow the Federal requirements.

Section 41-7-185(a): Mr. Gill noted that language had been added which would "with the approval of the Statewide Health Coordinating Council . . . to accept funds to administer planning activities on the community or regional basis." He stated that all of the Commission's planning was now done on a statewide basis, but the language would provide some leeway in case changes were made during the year.

Section 41-7-191(e): Mr. Gill stated that the "elimination of a service" had been removed as a review item.

Section 41-7-191(2): Mr. Gill noted that the moratorium on nursing home addition, expansion or construction was brought forth again "for a period of twelve months from and after July 1, 1983." He stated that an exemption was made "for the construction of a combination skilled nursing and intermediate care facility...where such applicant had an approved application...under Section 1122...on file with the commission on or before July 1, 1979 but had not commenced construction of such facility on or before July 1, 1983." Mr. Gill stated that the exception would involve only one or two applicants and those applications would have to receive Commission review in the usual manner.

Section 41-7-191(3): Mr. Gill stated that a moratorium on the "establishment of, or expansion of the currently approved territory of" a home health agency was effective from passage of the bill through July 1, 1984.

PLAINTIFFS003196

MINUTES OF MEETING
Mississippi Health Care Commission
April 21, 1983
Page 10

Section 41-7-193(1):  Mr. Gill stated that the language added merely strengthened existing law.  "A CON shall not be granted or issued...unless the proposal has been reviewed for consistency with the specifications and the criteria established by the commission and substantially complies with the projection of need as reported in the most current state health plan."

Section 41-7-197(1):  Mr. Gill stated that this section changed the hearing process whereby "hearings during the course of review" would be conducted by a hearing officer (staff member) designated by the Director with the record being certified to the Commission for review and action.

There was a discussion regarding this change and Mr. Gill noted that several complaints had been received by members of the Legislature regarding the number of hearings brought before the Commission.  Mr. Gill pointed out that according to the new law, if an application were involved in a "hearing during the course of review," the proponents would not be permitted to personally address the Commission at the time the project was reviewed.  Commission members discussed the advantages and disadvantages of the new method, with no consensus of opinion agreed upon.

Section 41-7-191(2): Mr. Gill noted that this section allowed a shortened review period in cases where the Health Systems Agency elected not to review a proposal.

Section 41-7-191(3):  Mr. Gill stated that one of the major changes in this section was that the Director was to determine whether or not a reconsideration hearing was justified, based upon the following three criteria:

"a.  Presents significant, relevant newly discovered information not previously available and not considered by the commission;

b.  Demonstrates that there have been significant changes in factors or circumstances since the original hearing relied upon by the commission in reaching its decision; or

c.  Demonstrates that the commission has materially failed to follow its adopted procedures in reaching a decision."

Mr. Gill stated that the staff had recommended to the Legislature that the decision to grant or not grant a reconsideration hearing should be made jointly by the Commission Chairman and the Director, but the Legislature chose not to accept the staff recommendation.

# April 1983

April 17, 1983

Invocation - Bishop Howze

Notice of meeting - Mrs. Gallaspy - (April 9)

Minutes of March 17 - no corrections/addition.  Motion to approve by Bishop Howze, second by Dr. Pierce.  No oppostion.

Mr. Wilford: Mtg on  Wed to interview candidates for position of Ex. Dir.  Tom Brooks who has served as Dir almost from the beginning of the MHCC resigned; we acceptd his resignation with regret; he did an excellent job; we would like to ask Mr. Gill to preare a resolution from this Comm expressing our appreciation to Tom for his service as Ex Dir of the HCC and we will present that to himat an appropriate time.


Yesterday we had met to interview candidates; we had decided at our March meeting to first interview candidates from within the HCC staff.  We received 6 appli; we were very impressed with those applicants; we have some extremely capable people in this agency and we are fortunatate to have such people on staff.  We interviewed all 6 of the candidates; we felt that we respect all of them and felt that they had all done an excellent job in teir respective positions and they were all worthy of or consideration as a Director.  Is there a motion regarding this matter?

Dr. Pierce:  I move that we confirm the action taken in executive sessn yesterday in selecting RP as Dir of the HCC.  Seconded by Mrs. Gallaspy.  No opposition. Unanimously

Mr. W:  Don  gll has served as Interim Dir for the past month and has done an excellent job.  Appreciate his serving in that capacity.

1.   Beverly Enterprises

Mr. W. - for the purchase of 7 nursing homes in our state; there was some question about whether or not we would have legal problems with this; we wanted to get some feedback from the Medicaid Comm re their feelings on the financial impact of this. Evidently the MC feels that the financial impact is minimal.  We have made appropriate reviews with various organizations and agencies regarding any potential legal problems and apparently thre are none.

Mr. Gill:  That's right.  We checked with Hyattsville, Maryland, regional office of the Public Health Service Dept and various states and they find no flaw in it anywhere.  We could find no reason we would have to deny this transfer.

Dr. Cobb:  On the bottm of the first page, there is a comment on the minimal impact on Med; however, the material reads on, costs could be shifted to the private pay patient in the three facilities operating above the cap.  What is Beverly's projections ofr the private pay patient?

Lori Costa, Assistant Counself, Beverly Enterprises:  Our projects right now are one to 2 dollars over the current private rate.

Dr. Cobb:  What are your long term plans for further acquisitions in MS?

PLAINTIFFS003151

Page 8

COMMISSION BUSINESS

1.   Changes in HCC Law

Mr. Gill:  This bill is rather a hybrid of several proposals submitted to the Leg and quite a bit of it is their own language.

The Bill is House Bill 927 and was signed by the Governor on April 9, 1983.

Section 41-7-175(2) phrase "as prescribed by the Legislature" added because this bill does not exactly track the Federal requirements but tracks them to the extent that the Leg tells us to track them.  We wanted that in there in case ther was any deviation due to their action, we wanted them to say "as prescribed by them." the Leg.

Section 41-7-185(a) SHCC asked for this language "and with the approval of the SHCC to contract with the Secretary to accept funds to administer planning activities on the community or regional level".  All of our planning now is on a statewide basis, but SHCC requested the language.

Section 41-7-191(e) - We have eliminted one review item, which is the elimination of a service, that is required in the Fed regulations.  It still requires a review when moving from one physical site or facility to another site or facility; any service or relocation of the institution itself.  (Dr. Cobb asked who suggested this elimination?  Mr. Gill stated that the Leg did not tell him; they indicated that there had been complaints about this review item - House Public Health Committee)

Section 41-7-191(2) - same moratorium on nursing home addition, expansion, or construction - brought forth again "for a period of twelve  months from and after July 1, 1983".

There was added an exemption to the moratorium law: Provided further, that nothing contained herein shall prohibit the granting of a certificate of need for which an application has been made within 180 days after July 1, 1983, for the construction of a combination skilled nursing and intermediate care facility as defined in subparagraphs (iv) and (vi) of Section 41-7-173(g), where such applicant had an approved application for such facility under Section 1122 of Public Law 92-603 on file with he commission on or before July 1, 1979, but had not commenced construction of such facility on or before July 1, 1983.  (which applicant was it written for --- discussion; commission wants list of applicants this pertains to) (Don:  This does not mean that the commission will approve the application -- it just means that if it is approvable, you can approve it) (one for certain is Angelus - another may be East Harrison on the coast)

Section 41-7-191(3) - moratorium on home health agencies.  "the HCC shall not, . . .  grant approval for . . . the establishment of, or expansion of the currently approved territory of, a health care facility as defined in sub- paragraph (ix) of Sectin 41-7-173(g) (home health).  (we did not ask for this and took no stand, for or against)

Section 41-7-193(1) "A CON shall not be granted or issued to any persons for any proposal, cause or reason, unless the proposal has been reviewed for consistency with the specifications and the criteria established by the commission and ubstantially complies with the projetion of need as reported in the most current state health plan.  (This merely strengthens existing language in the law.)

# Minutes

## May 1983

MISSISSIPPI HEALTH CARE COMMISSION
MEETING

MINUTES OF MAY 19, 1983                                          REGULAR MEETING NO. 47

A regular meeting of the Mississippi Health Care Commission was held on Thursday,
May 19, 1983, in the Multi-Purpose Room of the Health Care Commission, 2688
Insurance Center Drive, Jackson, Mississippi.

Commission Members Present                  Commission Staff Present

Patrick Pierce, M.D., Vice Chairman         Mr. Robert Pugh
Mrs. Sara Gallaspy, Secretary               Mr. Mendal Kemp
Mr. John Allen Darnell                      Mr. Don Gill
Bishop Joseph L. Howze                      Mr. George Jobe
                                            Mrs. Pam Ashley
Commission Members Absent                   Mrs. Nita Gunter
                                            Mrs. Jacqueline Thames
Mr. Dan Wilford, Chairman                   Mrs. Martha Yeager
Alton Cobb, M.D.
Mr. Charles Penson

The meeting was called to order by the Vice Chairman, Dr. Patrick Pierce. The
invocation was given by Bishop Howze. Dr. Pierce informed the Commissioners that
Mr. Wilford had undergone surgery earlier in the week and was reported to be
recuperating satisfactorily.

The Legal Notice of the public meeting, as it appeared in the Clarion-Ledger on May 9,
1983, was read by Mrs. Gallaspy, Commission Secretary.

Dr. Pierce asked for corrections or additions to the Minutes of the April 21, 1983,
meeting; there were none. A motion was made by Mrs. Gallaspy, seconded by Mr.
Darnell, to approve the Minutes as written. There was no opposition, and the motion
carried.

Dr. Pierce welcomed Col. Lawrence Roberts and introduced him to the Commission
members and stated that Col. Roberts would serve as a member of the Health Care
Commission beginning on July 1, 1983. Dr. Pierce expressed the appreciation of
the Commission for Bishop Howze's contribution to the work of the Commission during
his tenure and noted that Bishop Howze had chosen not to be re-appointed.

Mississippi Health Care Commission
May 19, 1983
Page 9

b. Statutory Law Superseding Commission Rules and Regulations

Mr. Pugh stated that the policy merely formally recognized that statutory law would supersede rules and regulations adopted by the Commission when the two were in conflict.

A motion was made by Mrs. Gallaspy, seconded by Mr. Darnell, to take final adoption action; there was no opposition, and the motion carried.

c. Certificate of Need Review Cycles

Mr. Pugh noted that the policy, initially adopted at the April Commission meeting, would establish strict quarterly review cycles for all substantive applications. He stated that under the new policy, all substantive applications would have to be submitted to the Commission no later than the first day of the month preceding the beginning of any quarter to be considered that quarter and if the application was deemed complete no later than the first day of the month beginning the quarter, the Commission decision would be rendered in the third month of that quarter.

A motion was made by Mrs. Gallaspy, seconded by Bishop Howze, to take final adoption action on the policy; there was no opposition, and the motion carried.

3. CDU Beds: Mississippi Baptist Medical Center, Jackson

Dr. Pierce stated that it was his understanding that the Baptist Medical Center intended to request a reconsideration hearing with regard to a previously approved project involving chemical dependency beds and that such written request would have to be received before the Commission would be in a position to take any action.

Mr. Kent Strum, Mississippi Baptist Medical Center, stated that he understood the procedure to be followed and would waive his request to address the Commission on the matter that day.

4. Draft Policy Regarding Monopolistic Activity

Mr. Pugh stated that the staff had been directed to review the ownership of health care facilities in the State and draft a policy that would delineate the Commission's authority and intent with regard to limiting monopolistic activity in the ownership and/or control of such facilities.

PLAINTIFFS003223