**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| **CHARLES SLAUGHTER** | **PLAINTIFF** |
| **vs.** | **Civil Action No. 3:20-cv-789-CWR-FKB** |
| **DR. DANIEL P. EDNEY, in his Official Capacity as the Mississippi State Health Officer** | **DEFENDANT** |
| **MISSISSIPPI ASSOCIATION FOR HOME CARE** | **INTERVENOR DEFENDANT** |

---

**MISSISSIPPI ASSOCIATION FOR HOME CARE, INC.'S**
**MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE**
**PLAINTIFF'S EXPERT DR. THOMAS STRATMANN**

---

### INTRODUCTION AND SUMMARY

Plaintiff's expert witness, Thomas Stratmann, Ph.D. ("Stratmann"), is an economist serving as a Senior Research Fellow at the Mercatus Center, a free-market think tank in Virginia. Mercatus Center proudly claims the status of the "world's premier university source [i.e., advocate] for market-oriented ideas." Exhibit 1, Mercatus Center, https://www.mercatus.org/about (last visited January 27, 2024). Stratmann's only expertise is his education and experience as an economist. *See* Exhibit 2 at p.1. He is not a health care expert, and he has no knowledge, skill, experience, training or education regarding the operation of home health agencies. *See* Exhibit 3 at p. 13. In fact, he has never worked with any type of healthcare agency. *Id.* Instead, his entire professional career has been in academia. *Id.* at p. 11. Further, Stratmann has never been qualified by any court to offer expert opinions in any healthcare related case, only in a campaign finance reform case. *Id.* at p. 226.

First and foremost, Stratmann's opinions should be excluded because they are not relevant to the issue presented by this case.  Stratmann's opinions relate solely to his belief that evidence gathered subsequent to the enactment of Mississippi's home health care CON laws show that the laws are not effective in accomplishing Mississippi's stated goals.  His opinions do not relate to whether there was a rational basis for the legislature to adopt the CON laws.  For this reason alone, all of his opinions should be excluded because they are not helpful.

Moreover, his admission that Mississippi's CON laws were "well-intentioned forty years ago" when they were adopted is likewise dispositive.  *See* Ex. 2 at p. 2; *see also* Ex. 3 at pp. 34 & 142-146.  That is, he admits that in the 1970s-1980s legislatures had a rational basis, or at least in his words a "scientific basis," for applying Roemer's Law in adopting CON laws.  *Id.*  Other than this admission, Stratmann's report does not contain any analysis at all regarding the matter to be resolved in this action – whether there existed a rational basis for the Mississippi legislature to adopt the CON laws either in general or specific to home health agencies.

Even if the Court were to find a reason to desire to consider Stratmann's proffered evidence of alleged facts created subsequent to the enactment of Mississippi's home health care CON laws, there are a number of additional reasons his opinions should be excluded.

Predictably, Stratmann's report is a one-sided advocacy for free markets that mostly regurgitates opinions from literature regarding nationwide studies making broad generalizations regarding hospitals, other medical specialties and medical equipment instead of home health care.  Moreover, the literature is not specific to Mississippi.  These opinions are not relevant.

Further, Stratmann's opinions are unreliable.

While Stratmann does discuss a few literature articles specific to home health care, most of these articles discuss only costs, and even those discussions are not specific to Mississippi.

Stratmann significantly misquotes the only article he cites that relates to quality.  His opinions based on this literature are unreliable.

Stratmann's report wholly ignores, and he does not even acknowledge the existence of, key evidence readily available to the public provided by Centers for Medicare and Medicaid Services ("CMS") plainly demonstrating the efficacy of Mississippi's CON program for home health agencies relating to quality of care, access to care, acceptability of care and continuity of care as compared with states that do not have such CON laws.[1]  Stratmann's opinions are unreliable because he failed to consider the available *data* specific to Mississippi's home health CON program.

When confronted in his deposition with key CMS data regarding the efficacy of Mississippi's CON program for home health agencies, Stratmann revealed an even more fundamental problem with his role as an expert in this action. Stratmann laughed and scoffed at the CMS data, claiming that the data is not relevant to the primary services provided by home health agencies, thereby demonstrating that he lacks fundamental knowledge of, and experience with, the services provided by home health agencies.

Even if this Court were to accept Stratmann's apparent theory that the constitutionality of CON laws can be attacked based on post-adoption factual evidence, Stratmann's opinions should still be excluded because there is ongoing legitimate debate among home health care experts regarding the efficacy of home health care CON laws.

## STRATMANN'S OPINIONS

Stratmann correctly acknowledges that the stated goals for Mississippi's CON laws are "to prevent unnecessary duplication of health resources; provide cost containment, improve the health

---

[1] CMS, by far the largest stakeholder payor of home health care costs, publishes extensive data showing that Mississippi's home health agencies provide better quality of care, access to care, acceptability of care and continuity of care than states that do not have CON laws. *See* Exhibit 4, Exhibit 5, Exhibit 6 and Exhibit 7.

of Mississippi residents; and increase the accessibility, acceptability, continuity and quality of health services." *See* Ex. 2 at p. 2. The opinionated attack on Mississippi's CON laws expressed in Stratmann's report can be summarized as follows:

1.   "Medical CON laws are an abject failure;"

2.   "CON laws do not reduce the cost of healthcare, and they may in fact increase it;"

3.   "[CON laws] do not increase the quality of healthcare services;"

4.   "[CON laws] do not increase indigent care;"

5.   "[CON laws] do not increase healthcare access in rural communities or elsewhere;"

6.   "Basic economic theory predicts that a CON restriction for home health agencies makes home health care lower quality;" and

7.   "***available data*** indicate that Mississippi's home health CON law and moratorium have undermined their purported goals." (emphasis is added here because his report does not in fact cite any Mississippi-specific data at all regarding improvement of health or improvement of quality, accessibility, acceptability and continuity of care).

## STANDARDS GOVERNING THE ADMISSIBILITY OF EXPERT TESTIMONY

Under the 2023 amendments to Federal Rule of Evidence 702, the admissibility of expert testimony is determined as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Lest there was ever any doubt, the amendments to the rule clearly place the burden on the proponent of an expert to demonstrate that the expert's opinions are admissible.

In its gate-keeping role, before admitting expert opinions "the court must ... gauge whether the 'witness's qualifying training or experience, and resultant specialized knowledge, are sufficiently related to the issues and evidence before the trier of fact that the witness's proposed testimony will help the trier of fact.' " *United States v. Wen Chyu Liu,* 716 F.3d 159, 167 (5th Cir.2013) (quoting 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.04(1)(b) (Joseph M. McLaughlin ed., 2d ed.1997)); *see also Harris v. Stryker Spine*, 39 F. Supp. 3d 846, 851 (S.D. Miss. 2014).

## **ARGUMENT**

MAHC challenges all of Stratmann's opinions because they are purportedly based on alleged facts created subsequent to the adoption of the Mississippi home health care CON laws.  As such, his opinions are not relevant given that they merely express "Monday morning quarterback" views that second guess the wisdom of admittedly rational decisions made by the Mississippi legislature in the 1970s and 1980s to adopt the home health care CON laws and moratorium.  Thus, his opinions are not relevant to the issue to be decided in this action: whether there was a rational basis for the adoption of Mississippi's home health care CON laws, including the moratorium.  The trial court has an obligation to exclude expert testimony that is not relevant.  *Conwood Co., L.P. v. U.S. Tobacco Co*., 290 F.3d 768, 792 (6th Cir. 2002).  The trial court must determine whether the expert testimony in question "is relevant to the task at hand."  *Daubert v. Merrell Dow Pharmaceutical, Inc*., 509 U.S. 579, 597 (1993).

Even if this Court were to give further consideration to Stratmann, there are additional important reasons his opinions should be excluded.

MAHC challenges all of Stratmann's opinions because they are not based on sufficient facts and data. Stratmann failed to apply any metrics and comparisons by which Mississippi home health agencies are judged regarding costs, quality of care, access to care, acceptability of care and continuity of care, much less the well-established metrics and comparisons published by CMS, the payor of the vast majority of home health care claims.  The trial court has an obligation to exclude expert testimony that is unreliable.  *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002).  The trial court must also determine whether the expert testimony in question "rests on a reliable foundation." *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579, 597 (1993). When the proposed testimony of an expert witness is challenged on the basis that it is predicated on insufficient facts, the court must consider whether the proposed testimony has a reliable basis in the knowledge and experience of the expert's discipline. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).

Stratmann's opinions must be excluded because they: (A) are not helpful in determining any material issues in this case; (B) are not the product of reliable principles and methods; and (C) do not rely on sufficient facts and data.

**A.     Stratmann's opinions are not helpful in determining any material issue.**

Federal Rule of Evidence 702 permits expert testimony only when it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Easterwood v. Racetrac Petroleum, Inc.*, 45 F.3d 430 (6th Cir. 1994).  Stratmann's opinions are not helpful to the trier of fact because his opinions are not relevant to the rational basis review the Court must undertake in this case, and because the vast majority of his opinions are merely summaries (*i.e.*, regurgitations) of prior research concerning CON laws generally, not Mississippi CON laws that relate to home health providers specifically.

1.      **Stratmann's opinions regarding the effectiveness of CON laws are not relevant.**

MAHC challenges all of Stratmann's opinions because they are purportedly based on alleged facts created subsequent to the adoption of the Mississippi home health care CON laws.  As such, his opinions are not relevant given that they merely express "Monday morning quarterback" views that second guess the wisdom of admittedly rational decisions made by the Mississippi legislature in the 1970s and 1980s to adopt the home health care CON laws and moratorium.  Thus, his opinions are not relevant to the issue to be decided in this action: whether there was a rational basis for the adoption of Mississippi's home health care CON laws, including the moratorium.  The trial court has an obligation to exclude expert testimony that is not relevant.  *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002).  The trial court must determine whether the expert testimony in question "is relevant to the task at hand."  *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579, 597 (1993).

Under the rational basis test (which Plaintiff cannot not dispute is the applicable test in this case), "litigants may not procure invalidation of the legislation merely by tendering evidence that the legislature was mistaken."  *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981).  Relatedly, the issue in this case is not whether Mississippi's CON program is in fact effective; rather, the issues are (i) whether Mississippi's stated goals for its home health care CON laws are legitimate public purposes[2] and (ii) whether the Mississippi legislature could rationally have decided that Mississippi's CON program might further those purposes.  *See generally, id.* at 466; *see also generally F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) ("a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.");  *and see Harris v. Hahn*, 827 F.3d 359, 365 (5th Cir. 2016)("'The burden is on the

---

[2] Stratmann claims that continuity of care is not a legitimate public purpose (Ex. 3 at pp. 88-89), although he does not dispute that all of Mississippi's other stated goals are legitimate public purposes.

one attacking the legislative arrangement to negative every conceivable basis which might support it' *whether or not the basis has a foundation in the record*," citing *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993))(emphasis added).

Stratmann's opinions in this case—opinions which are, in essence, that CON programs are ineffective—are precisely the kind of evidence that our Supreme Court has stated is insufficient to invalidate legislation under the rational basis test.[3] *See Clover Leaf Creamery*, 449 U.S. at 464. The irrelevance of Stratmann's opinions regarding the effectiveness of CON laws, including Mississippi's CON program, is clear from the Fifth Circuit Court of Appeals' statement that: "The statute withstood rational basis review, even without any scientific evidence." *Hatten v. Rains*, 854 F.2d 687, 691 (5th Cir. 1988); *see also Sheffield v. City of Fort Thomas, Ky.*, 620 F.3d 596, 614 (6th Cir. 2010)("to pass rational-basis scrutiny, ordinances need not be supported by scientific studies or empirical data; nor need they be effective in practice"). A statute passes rational basis scrutiny where "there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical of Oklahoma Inc.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Moreover, Mississippi's home health care CON laws do not lack a rational basis merely because they are "out of harmony with a particular school of thought" such as the opinions presented by Stratmann and other scholars on whom he relies. *Id.* "The fact that other means are better suited to the achievement of governmental ends therefore is of no moment under rational basis review." *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 77, 121 S. Ct. 2053, 2068, 150 L. Ed. 2d 115 (2001).

---

[3] In his Rebuttal Report, Stratmann repeatedly characterizes the opinions of Defendant's expert, Daniel Sullivan, that Mississippi's CON program is effective as "speculation." *See* Exhibit 8 *passim*. Stratmann's characterization of Sullivan's opinions as speculation actually demonstrates that Mississippi's CON program passes rational basis muster. This is because the Supreme Court has held that "rational speculation unsupported by evidence or empirical data" is sufficient to sustain a law under the rational basis test. *See F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993).

Because Stratmann's opinions are nothing more than a commentary on the effectiveness of CON laws generally, i.e. not specific to Mississippi's home health care CON program, they are irrelevant and therefore inadmissible.  This Court should exclude these opinions because "[t]he Court must weed out unreliable and irrelevant expert testimony." *Pettway v. Asian Tire Factory Ltd.*, No. 3:20-CV-10-CWR-LGI, 2021 WL 5074658, at *1 (S.D. Miss. Oct. 15, 2021); s*ee also Taylor v. Detroit Diesel Realty, Inc.*, No. 3:12-CV-506-CWR-LRA, 2014 WL 2013348, at *3 (S.D. Miss. May 16, 2014)(excluding irrelevant expert opinion testimony on the grounds that it was irrelevant).

> **2.**     **Part 1 of Stratmann's report, expressing opinions founded on research papers regarding "Con laws generally," hospitals, other medical specialties and medical equipment unrelated to home health care, is irrelevant and not helpful to the trier of fact.[4]**

This case concerns the rational basis for the adoption of Mississippi's home health care CON laws, not nationwide CON laws and not CON laws for hospitals, medical equipment and other medical specialties.  Stratmann relies on materials that discuss CON laws generally on a national scale, and then attempts to apply his summaries of those materials to fit Mississippi's home health CON program.  This approach is flawed because CON laws vary significantly from state to state.  *See Bluegrass Orthopaedics Surgical Div., LLC v. Centers for Medicare & Medicaid Servs.*, DAB 2206 (2008) (H.H.S. Oct. 31, 2008), Med & Med GD (CCH) P 121576, 2008 WL 4914858, *5 (H.H.S. Dept. App. Bd. 2008) (noting that "State licensure and Certificate-of- Need (CON) requirements vary a great deal from State-to-State").  Slaughter likewise improperly relies on materials analyzing the effects of CON laws regarding hospitals, other medical specialties and medical equipment that have nothing to do with Mississippi's home health care CON laws.

---

[4] *See* Ex. 2 at pp. 3-15.

In forming his opinions regarding the effectiveness[5] of CON laws, Stratmann purports to summarize "the literature on medical CON laws generally." *See* Ex. 2 at pp. 3-15.  This literature relates to effectiveness of CON laws concerning urban hospitals, rural hospitals, nursing homes, surgical centers, surgical procedures, hospice care, rehabilitation centers, dialysis clinics, and MRI and other medical imaging technology. *Id., passim.*  While this information is perhaps interesting background information regarding the history and effectiveness of CON laws unrelated to home health care specifically, it is not appropriate to use this information as the basis to conclude that there is no rational basis to support Mississippi's home health care CON law program.  Nevertheless, throughout the discussion on pages 3 through 15 of his report Stratmann expresses blanket opinions about CON laws, none of which are relevant to *home* health care in general, much less Mississippi's home health care CON law program.[6]

In light of the authorities set forth previously, Stratmann's discussion and opinions stated on pages 3 to 15 of his report should be excluded as they are not helpful to the finder of fact in this case.

**B.   Stratmann does not base his Mississippi home health care CON program opinions on reliable principles; and his methodology ignores the facts of this case.**

Expert opinions and testimony are properly excluded where they are based on unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology

---

[5] Again, the sole purpose for this discussion, as well as the additional sections below, is to address Stratmann's opinions in the event the Court decides to examine them further instead of excluding Stratmann for the very reason that his opinions relate only to the "effectiveness" of Mississippi's home health care CON laws, not the rational basis for these laws.

[6] In his rebuttal report, Stratmann criticized MAHC's expert, Daniel Sullivan, for citing and discussing a report that related to hospitals and not home health care agencies.  Stratmann stated his criticism, "More important, however, is that this is a study about hospitals."  *See* Ex. 8 at pp. 5-6 (unnumbered).  Thus, Stratmann inadvertently admitted that opinions based on hospital articles and data are not relevant in this case.  MAHC and Sullivan agree that such opinions based on hospital articles and data are not relevant.  Sullivan discussed articles and data relating to hospitals in his report on Mississippi's home health care CON law program because he was simply responding to Stratmann's use of such irrelevant articles and data.

is not sufficiently tied to the facts of the case.  *See Kumho Tire*, 526 U.S. at 149.  To be admissible, an expert's opinions and testimony must "fit" the facts of the case; that is, there must be a connection between the expert's opinions and testimony and the disputed factual issues in the case in which the expert will testify.  *See Pride v. BIC Corp*., 218 F.3d 566, 578 (6th Cir. 2000).

### 1.    Part 2 of Stratmann's report states mere theories that are neither reliable nor relevant.[7]

Stratmann opines that Mississippi's home health care CON program does not lower healthcare costs, does not improve the health of Mississippians, does not improve the quality of healthcare, does not improve accessibility of healthcare, does not improve acceptability of healthcare and does not improve continuity of care.  However, he expresses these opinions without attempting to fit his opinions to any empirical evidence or statistical data at all specific to Mississippi regarding whether the state's program is meeting these goals.

Instead, Part 2 of Stratmann's report discusses what he admits are his own beliefs regarding a "*theoretical* effect of a CON restriction for home health agencies." *See* Ex. 2 at p. 15.  But this case is not about Stratmann's "theories."  It is ironic that the underpinning for Stratmann's report is his belief that Mississippi's legislature adopted its CON laws based on a theory, yet he now argues that Mississippi's laws should be declared unconstitutional because they do not jive with his own "theories."

Stratmann's theoretical opinions found in Part 2 of his report to the effect that Mississippi's home health care CON law is not decreasing healthcare costs and is not improving health care quality should all be excluded as they are mere theories, his own *ipse dixit*, and are thus unreliable.  In addition, his opinions do not satisfy the Federal Rule of Evidence 702 "fit" requirement because he made no effort to apply his theories to empirical evidence and statistical data readily available from CMS regarding quality, accessibility, acceptability and continuity, as discussed below.

---

[7] *See* Ex. 2 at pp. 15-20.

**2.     Part 3 of Stratmann's report expresses opinions based on literature regarding home health care in general, but he failed to relate the literature generalized conclusions to either the Mississippi home health care CON program goals or to Mississippi-specific data, and thus are not reliable[8]**

Stratmann self-describes Part 3 of his report as a "Survey of Home Health CON Literature." *See* Ex. 2 at p. 20.  While Stratmann finally begins a discussion regarding home health care CON laws in Part 3, all of his opinions in this entire discussion are unreliable because he merely regurgitates abstract findings in eight published articles and fails to make them "fit" with either Mississippi's goals for its home health care CON program or "fit" with readily available Mississippi-specific data regarding the effectiveness of its home health CON  program.  The latter three of these articles merit separate discussion in separate sections below.  However, the first five of these articles are mostly unremarkable and are addressed as follows using the same bullet point headings as did Stratmann:

- Anderson and Kass (1986), *Certificate of Need Regulation of Entry into Home Health Care*, Exhibit 9.  While Stratmann calls this writing "literature," in fact it is an internal Federal Trade Commission paper.  The sub-heading of this article, "An Economic Policy Analysis," makes clear that the article has nothing to do with home health care quality, accessibility, acceptability and continuity, much less these goals as they apply to Mississippi.  Instead, the paper addresses only costs.  Moreover, the paper only predicts costs generally will be higher in states with home health care CON programs.  The paper does not contain any information specific to Mississippi's CON program.

- Kass (1987), *Economies of Scale and Scope in the Provision of Home Health Services*, Exhibit 10. This article likewise discusses only costs, not quality,

---

accessibility, acceptability and continuity of care.  While this article uses cost data reported by CMS, the data is not discussed on a state by state level, making it inappropriate to attempt to make its findings fit with Mississippi's CON program for home health care.

- Miller et al. (2002), *Access to Community-Based Long-Term Care: Medicaid's Role*, Exhibit 11.  This article states as its objective to "explore state variation in expenditures for Medicaid community-based care services for the period 1990 to 1997.  Thus, this article not only failed to address home health care quality, accessibility, acceptability and continuity, but it was also based on a time period that Stratmann argues is not relevant because home health agency reimbursements were still made on a cost-basis.  In addition, it does not present cost information specific to Mississippi.

- Jung and Polsky (2014), *Competition and Quality in Home Health Care Markets*, Exhibit 12.  This article states at the outset that as of 2014 "evidence on the role of competition in quality in non-hospital settings [was] sparse."  While this article does address quality, but only quality and not Mississippi's other goals, the article again did not address Mississippi-specific quality.  The authors of this article do apparently agree with MAHC that Mississippi-specific data must be analyzed before drawing conclusions, stating as follows:

> Competition has a negative effect on discharges without hospitalization that is strongest in the most competitive markets. *This finding* is different from prior research on *hospital* markets and *suggests that* **market-specific environments should be considered** in developing polices to promote competition.

*Id*. at p.1. This is a good example why an expert both cannot properly apply hospital data to home health agencies and cannot properly use a one-size-fits-all approach

to all state home health care CON programs.  That is precisely one of the key failings of Stratmann - he failed to consider facts regarding Mississippi's "market-specific environment."

- Polsky et al. (2014), *The Effect of Entry Regulation in the Health Care Sector: the Case of Home Health*, Exhibit 13.  This study states that the authors drew conclusions about the effect of home health care CON programs on quality based solely on  "hospital discharges during 2006 . . . and subsequent home health admissions to determine whether there is a significant difference in home health utilization, hospital readmission rates, and health care expenditures in states with and without Certificate of Need."  The study used only a small subset of the types of data now available from CMS discussed below.  The study also used only a small subset of patients receiving home health care.  More importantly, the study did not separately analyze data specific to Mississippi.

   3.    **Stratmann misstated a key finding of the Rahman study and ignored other key findings**

The sixth home health care-related study discussed by Stratmann is by Rahman et al. (2016), *The Impact of Certificate-of-Need Laws on Nursing Home and Home Health Care Expenditures* (the "Rahman study"), Exhibit 14.  This study analyzed home health care costs data for the period from 1992 to 2009.  Again, this study adds nothing to Stratmann's opinions regarding Mississippi's home health care quality, accessibility, acceptability and continuity.  Moreover, it does not analyze Mississippi-specific cost data.

However, Stratmann's discussion of this study is noteworthy because he claims that "[t]he authors find that states with CON laws . . . experienced *faster* growth of spending in home health." (emphasis added).  *See* Ex. 2 at p. 24.  In fact, the Rahman study came to the opposite conclusion that

Medicare and Medicaid spending on home health care in CON states grew *slower* than non-CON states.

*See* Ex. 14 at pp. 8-9:

> Both Medicare and Medicaid spending per enrollee on home health care in states **without** CON laws was . . . **higher in 2009 than states with** CON laws (Table 1). Another key finding is that growth in home health spending is the **lowest** in states with home health CON . . . . (emphasis added)
>
> . . . .
>
> Spending on home health care by both Medicare and Medicaid **increased at a much faster rate in states without CON**.

Squarely contradicting Stratmann, the Rahman study also states "Our findings demonstrate how a supply-based policy [i.e., non-CON] can offset and *even reverse* some of the effects of a payment-based policy." *Id*. at p. 10.  In contrast Stratmann argues that Medicare's adoption of its payment-based system did away with any "theory" that justified the enactment of CON laws.

Another important observation here is the following Rahman study finding which Stratmann failed to mention:

> Finally, our findings contribute to the *longstanding debate among health policy researchers* about the intended and unintended consequences of CON laws.

*Id*. at p. 2 (emphasis added).  This finding plainly confirms that there still exists legitimate debate among reasonable researchers regarding the effectiveness of CON program goals regarding reducing costs.  As discussed further below, this should be dispositive against any suggestion that no rational basis existed, or even no longer exists for that matter, for the adoption of Mississippi's home health care CON program.

### 4. Stratmann misstated a key finding of the Ettner study and ignored other key findings

The  eighth[9] home health care-related study discussed by Stratmann is by Ettner et al (2020), *Certificate of Need and the Cost of Competition in Home Healthcare Markets* (the "Ettner study"),

---

[9] The seventh study that Stratmann addressed is intentionally discussed in the next section.

Exhibit 15.  This is yet another study that discusses only costs, not health improvement, quality, accessibility, acceptability and continuity.  Even regarding costs, this study does not analyze Mississippi-specific cost data.  It appears that Stratmann cited the Ettner study primarily for the proposition that "home health CON is associated with almost two times the aggregate spending on home health care *per agency*."  *See* Ex. 2 at p. 25.  However, upon careful reflection, one realizes that the real issue is whether CON laws increase or decrease home health care costs "per patient," not per "agency."  Of course, CON laws limit the number of agencies and thus increase costs "per agency."  It should not take a formal study, or even an expert for that matter, to draw this conclusion.

Stratmann makes only a passing reference to "per patient" costs, and in doing so he flatly contradicted the Ettner study findings in making Stratmann's claim that "[t]he study also finds . . . a *slight* reduction of home-health per patient costs . . . ." (emphasis added).  *See* Ex. 2 at p. 26.  In fact, the Ettner study expressly found a "*significant* association of HH CON laws with lower per-patient costs." (emphasis added).  *See* Ex. 15 at p. 60.

To be sure, the Ettner study did also find that *total* home health care costs in CON law states is higher than in non-CON law states. *Id.* at p. 51.  This obviously means that more patients per capita are receiving care in CON law states than in non-CON law states, since costs per patient are less.  One can thus readily conclude that there is greater access to care in the CON law states.

CMS data shows that Mississippi ranks highest in the nation in age 65+ patients per capita receiving home health care. *See* Exhibit 16.  This is a strong showing of effectiveness of Mississippi's goal of improving access to care.  In contrast, the Ettner study recommended that, in order to reduce costs, *states should limit access to care* instead of limiting the number of home health agencies:

> Thus CON laws provide an important policy lever for HH care. State policymakers deciding whether to impose (or rescind) CON regulations should carefully consider the impact relative to alternative methods of HHA cost containment, such as limiting the number of HH patients rather than agencies.

This recommendation, which Stratmann apparently approves given that he relies on this study, runs directly counter to the Mississippi public policy of improving access to care.

      **C.**    **Stratmann failed to use sufficient facts and data; moreover, he got wrong the little Mississippi-specific data that he did use.**

MAHC challenges all of Stratmann's opinions because they are not based on sufficient facts and data. Stratmann failed to apply any metrics and comparisons by which Mississippi home health agencies are judged regarding costs, quality of care, access to care, acceptability of care and continuity of care, much less the well-established metrics and comparisons published by CMS, the payor of the vast majority of home health care claims.  The trial court has an obligation to exclude expert testimony that is unreliable.  *Conwood Co., L.P. v. U.S. Tobacco Co*., 290 F.3d 768, 792 (6th Cir. 2002).  The trial court must also determine whether the expert testimony in question "rests on a reliable foundation." *Daubert v. Merrell Dow Pharmaceutical, Inc*., 509 U.S. 579, 597 (1993). When the proposed testimony of an expert witness is challenged on the basis that it is predicated on insufficient facts, the court must consider whether the proposed testimony has a reliable basis in the knowledge and experience of the expert's discipline. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).

Where an expert fails to investigate the relevant facts and data, his opinion testimony is properly excluded under Federal Rule of Evidence 702(d) as the expert cannot reliably apply the principles and methods of his discipline to the facts of the case.  *See United States v. Vela-Salinas*, 677 F. App'x. 224, 229 (6th Cir. 2017) (affirming rejection of expert testimony under Rule 702(d) where the expert failed to investigate the relevant facts and data).  Stratmann failed to consider or address the relevant Mississippi-specific facts and data in forming his opinions regarding improvement of health, quality, accessibility, acceptability and continuity of care.

1.     **In his few mentions of Mississippi-specific data, Stratmann got it wrong.**

Part 4 of Stratmann's report is his final section, wherein he begins by stating "[f]inally, I discuss what the available data shows about the effect of Mississippi's home health CON requirement and moratorium."   Upon experiencing the anticipation created by Stratmann's opening remark after reading 26 pages of irrelevant argument, one is left perplexed by the fact that his only reference to Mississippi-specific data in Part 4, or elsewhere for that matter, is a brief reference to the 2015 Mississippi Annual Report on Home Health Agencies.[10]  *See* Ex. 2 at p. 27. However, even then Stratmann did not use this document to assist in drawing any conclusions regarding the effectiveness of Mississippi's CON program for improving health or improving quality, accessibility, acceptability or continuity of care.  Instead, he only used the report data to observe a "significant increase" in physical therapy services from 1985 to 2014 and to then state the irrelevant, but erroneous, opinion that "Mississippi's moratorium on the issuance of CONs for home health agencies has made it illegal for potentially interested providers to assist in meeting this [i.e., physical therapy services] increased demand." *Id*.  Stratmann got it wrong.  It is not illegal for Mr. Slaughter to perform physical therapy services in the home without obtaining a CON.[11]

Not to overlook Stratmann's rebuttal report, he did make two additional references comparing Mississippi data to another state for analyzing costs, not Mississippi's other goals. *See* Ex. 8.  But here again, he got it wrong again both times.  First, Stratmann argues that, in using CMS cost data, Mississippi should not be compared with California, Texas and Nevada because Mississippi is a state whose population of home health care patients is "older and have more health problems."   *See* Ex. 8 at unnumbered p. 6.   Nevertheless, he then proceeded to opine that Mississippi is comparable to Louisiana and Oklahoma, ignoring the fact that CMS data shows that

---

[10] *See* Ex. 17 for this annual report.
[11]  *See, e.g.,* the Mississippi in-home physical therapy services advertised at https://www.in-homept.com/about-us (last accessed February 1, 2024), Exhibit 18.  This is not a home health agency, that is, it does not hold a CON.

Mississippi has 44% more age 65+ home health care patients per 1000 than Louisiana and 10% more age 65+ patients per 1000 than even Oklahoma.  *See* Ex. 16.

Then, Stratman argues that the best way to compare Mississippi costs with other states' costs is to compare "costs per HHA visit."  *See* Ex. 8 at unnumbered p. 7.  However, it should be obvious to anyone who knows anything about home health care visits and costs per visit that these costs depend on the type of service provided.  The cost for physical therapy is much greater than the cost of home health aide services.  Thus, a general comparison of "costs per HHA visit" is meaningless.

### 2.      The Ohsfeldt study.

As mentioned in the discussion above regarding Part 3 of Stratmann's report, there were eight literature articles that he discussed.  The one remaining study not yet addressed herein is a study by Ohsfeldt and Li (2018), *State Entry Regulation and Home Health Agency Quality Ratings* (the "Ohsfeldt study"), Exhibit 19.  Stratmann cited the Ohsfeldt study for the proposition that "home health quality is statistically significantly worse in states with a CON or a moratorium restricting home health entry."  *See* Ex. 2 at p. 25.  The Ohsfeldt study did generally conclude that "HHAs in states with CON for HHAs were less likely to have High quality ratings, and more likely to have Medium quality ratings, compared to agencies in states without CON for home health."  *See* Ex. 19 at p. 1.  But that is only the beginning of the analysis that Stratmann should have made, but failed to make.

The Ohsfeldt study actually reveals how little Stratmann understands the proper measurements of home health care quality and the rating for quality in Mississippi.  The Ohsfeldt study used a detailed dataset readily available to the public published on the CMS website, including data from the period 2010-2013.  Stratmann ignored this data.

The Ohsfeldt study correctly looked to CMS as the sole source for the data regarding quality:

The home health agency quality ratings used in our analysis are from the Centers for Medicare and Medicaid Services (CMS) "Home Health Compare" database.

> CMS uses nine performance metrics to calculate quarterly "Star" ratings for each home health agency [including] . . . six outcome measures: (1) improvement in ambulation; (2) improvement in bed transferring; (3) improvement in bathing; (4) improvement in pain interfering with activity . . . .

Ex. 19 at p. 4.  More recent CMS data is now available.  *See* Ex. 6 and Ex. 7.  As this study recognized, CMS sets the standards for measuring quality.  After all, CMS is by far the primary stakeholder payor of home health care costs in the United States.

The Ohsfeldt study conclusion that HHAs in CON states are less likely to have a high star rating is actually a good example showing that the CON law programs in the various states are very different – one size does not fit all.  The CMS Star Ratings for the Mississippi home health CON program consistently rank Mississippi as having rating of 4, the highest star rating given to any state and higher than every non-CON state.  *See* Ex. 6 and Ex. 7.[12]  That is, Mississippi does not fit the norm portrayed in the Ohsfeldt study conclusion quoted above.  Stratmann chose to cite the Ohsfeldt study generalized conclusion regarding home health agencies instead of doing his homework to analyze the data specific to Mississippi.

Notwithstanding his own reliance on the Ohsfeldt study, when confronted with the CMS data in his deposition, Stratmann went to great lengths to argue that CMS data has no relevance to determining quality: Ex. 3 at pp. 154-158:

> Q. Okay. And what -- do you agree that every state that has a four star rating has a Certificate of Need regulation of home health agencies?
>
> A. In this table, yes.
>
> Q. And do you believe that this data is one indicator of quality?
>
> A. No.
>
> Q. Why not?
>
> A. I think this measure is deeply flawed. So the -- first of all -- not first of all. I'm just going to list some reasons in no particular order.

---

[12] CMS periodically updates its website and in doing so CMS deletes old data.  The exhibits at Ex. 6 and Ex. 7 reflect data published in 2022 and 2024 currently available on its website.  As stated, Mississippi and some other CON states all have the highest overall quality rating given.  All non-CON states are rated lower.  In addition to this overall rating, the data rates Mississippi high regarding important specific criteria such as improvement in walking, improvement with getting out of bed, improvement in the ability to bathe, etc.

Q. Okay.

A. For example, the response rate in Mississippi, when I looked at this, was about 60 or 70 percent, so this is not as it says necessarily representative of -- and actually overall in all states, the response rates are relatively low. So they're missing – about 30 percent of all HHAs do not respond as I recall from CMS. So this is one source of unreliability. Another source of unreliability is that the criteria CMS uses -- I don't know how to phrase it -- not plausible, not sensical because they're using -- they have roughly six criteria which are inputs to this rating. One of them is more regular -- managing medication, another one is bathing, better dealing with bathing, another is better breathing functions or something like that. So -- and if I look at the services provided by HHAs, for example, as shown in Mr. Sullivan's report where he breaks down occupational therapy, physical therapy, what CMS measures is not the majority of services provided by the home health agencies. So I think these don't tell you very much, these things. . . .

Stratman obviously now argues against the Ohsfeldt study as an authoritative source for understanding the relevant data, but he cannot have it both ways. The Ohsfeldt study was a peer-reviewed and published study evaluating quality of home health care agencies based solely on CMS Star Rating data.  Stratmann's opinions, now contradicting a study on which he heavily relied, are clearly mere *ipse dixit*.

What cannot be seen in his written testimony is that Stratmann scoffed and laughed at the CMS criteria regarding better bathing, etc.  Stratmann's disregard for these criteria reveal that he knows nothing about key purposes of physical therapy such as improving routine activities of daily living including the ability to bathe, improve ability to cook meals, improve ability to move around one's home, improve the ability to travel from one's home, etc.

Stratmann trashes the CMS data because the data trashes his opinion that Mississippi's home health care CON program has not improved quality of care, access to care, acceptability of care and continuity of care.  Ohsfeldt and Li and their peer reviewers and publisher recognized the importance of the CMS Star Rating system data.  This Court should likewise reject Stratmann's opinions.

**D.     The fact that reasonable minds can differ requires that Stratmann's opinions be excluded**

As discussed above, the peer-reviewed Rahman study on which Stratmann relied expressly concluded:

> Finally, our findings contribute to the *longstanding debate among health policy researchers* about the intended and unintended consequences of CON laws.

Ex. 14 at p. 2 (emphasis added).  This finding plainly confirms that there still exists debate among reasonable expert researchers regarding the effectiveness of CON program goals regarding reducing costs.  This should be dispositive against any suggestion that no rational basis existed, or even no longer exists for that matter, for the adoption of Mississippi's home health care CON program based on the goal of reducing costs alone.  *See Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 748 F.3d 583, 594 (5th Cir. 2014) ("The fact that reasonable minds can disagree on legislation, moreover, suffices to prove that the law has a rational basis . . . .  This rule of restraint is particularly important in the realm of constitutional adjudication for a simple reason. If legislators' predictions about a law fail to serve their purpose, the law can be changed").

Moreover, nothing in Stratmann's report or rebuttal support cast any doubt on the CMS data showing that Mississippi's home health CON program is achieving goals of improving health, and improving quality, accessibility, acceptability and continuity of care.

## <u>CONCLUSION</u>

In its role as gatekeeper, this Court must guard against the admission of unreliable expert testimony.  Even assuming Stratmann's opinions were relevant, Stratmann's opinions should be excluded because: (i) they are based primarily on his analysis of data related to hospitals, medical equipment and other medical fields unrelated to home health care and (ii) to the extent he does cite peer-reviewed studies related to home health care, his report misstates the relevant key findings of those studies.

Further, Stratmann's opinions are unreliable given that he lacks fundamental knowledge of the services provided by home health agencies, and thus also lacks fundamental knowledge of the metrics and comparisons by which home health agencies are judged regarding costs, quality of care, access to care, acceptability of care and continuity of care.

But perhaps most importantly, Stratmann's report wholly failed to consider or address the ongoing debate among legitimate home health care experts regarding the efficacy of home health care CON laws. The existence of that debate among legitimate experts alone confirms that even today the Mississippi CON laws, including the moratorium, pass rational basis muster.

For all the reasons set forth above, MAHC respectfully requests an order excluding the opinions of Thomas Stratmann, Ph.D.

This the 2nd day of February, 2024.

MISSISSIPPI ASSOCIATION FOR HOME CARE

By:  */s/ Paul N. Davis*
PAUL N. DAVIS (MB #8638)
THOMAS L. KIRKLAND, JR. (MB #4181)
CAROLINE B. SMITH (MB #105501)

ITS ATTORNEYS

OF COUNSEL:

BUTLER SNOW LLP
1020 Highland Colony Parkway
Post Office Box 6010
Ridgeland, Mississippi 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) paul.davis@butlersnow.com
(E) tom.kirkland@butlersnow.com
(E) caroline.smith@butlersnow.com

## **CERTIFICATE OF SERVICE**

I, Paul N. Davis, do hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

This the 2nd day of February, 2024.

/s/ Paul N. Davis
Paul N. Davis
