**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

CHARLES SLAUGHTER,

*Plaintiff,*

*v.*

NO. 3:20-CV-789-CWR-ASH
ORAL ARGUMENT REQUESTED

DR. DANIEL P. EDNEY,
IN HIS OFFICIAL CAPACITY AS THE
MISSISSIPPI STATE HEALTH OFFICER, ET AL.,

*Defendants.*

**PLAINTIFF'S RESPONSE TO INTERVENOR-DEFENDANT'S**
**MOTION TO EXCLUDE DR. THOMAS STRATMANN**

**INTRODUCTION**

Plaintiff Charles Slaughter is challenging two Mississippi laws – one that prohibits new businesses and another that allows only those that are needed. One of Plaintiff's allegations is that the real-world evidence proves laws like this do not work. The Court accepted that allegation when it held that Plaintiff had stated a claim. "[A] substantial body of peer-reviewed studies" appeared to be on Plaintiff's side, so it was plausible that the laws were irrational. MJP Op. (Doc. 32) at 8.

Now, to prove his case, Plaintiff has offered one of the leading experts on the topic. His opinion, based on academic research and theory, is that the premise that would entitle Plaintiff to relief – that these laws clearly fail in the real world – is true. The question on this *Daubert* motion is whether that opinion is admissible.

It is. The only question under *Daubert* is whether Plaintiff's expert's methods are reliable. And the Court already held that these methods are reliable when it denied the motions to dismiss. Even if it had not, testimony like this is routinely admitted in federal court. The motion should be denied.

**BACKGROUND**

Plaintiff wants to provide home health services to homebound patients. Pl's. MSJ (Doc. 89) at 1. But he cannot do that because of Mississippi's moratorium on home health agencies. If the moratorium were removed, he would be faced with Mississippi's Certificate of Need or "CON" law. The law bans new home health agencies if a crude demographic formula calculates that they are not needed. *Id.* at 3, 8.

While no Mississippi law provides a statement of the purpose of the moratorium, the Mississippi Administrative Code does say that Mississippi adopted the CON law to decrease costs, increase access, and improve quality. 15 Miss. Admin. Code Pt. 9, Subpt. 91, R. 1.1. But that is plainly false in reality. In reality, incumbent agencies have hijacked the CON process and use it to legally keep their potential competitors out of business. Pl's. MSJ 9–11. Because that violates the right to earn a living, Plaintiff sued under the Fourteenth Amendment. He alleged that "[a]rtificially limiting the supply of home health services does not lower consumer costs, increase access to care, or increase the quality of care." Compl. (Doc. 1) ¶ 160.

To buttress this claim, Plaintiff sought the expert opinions of Thomas Stratmann, Ph.D., one of the leading authorities on the real-world efficacy of CON laws. *See generally* Stratmann Rep. (Pl.'s MSJ Ex. 1). Dr. Stratmann is principally affiliated with George Mason University, where he has worked since 1999, first as a professor of economics and then, since 2010, as University Professor of Economics and Law. *Id.* at App'x B. Refereed journals have published him some 70 times. *Id.* And, specifically on CON laws, in the last decade, he has written nine peer-reviewed articles and testified before two state legislatures. *Id.* at 1.

Dr. Stratmann's opinions came in four parts. In part one of his report, he explained medical CON laws generally—their history, the federal government's view, and the broader literature. *Id.*

at 3–15. In part two, he explained how home health CON laws work in economic theory. *Id.* at 15–20. In part three, he surveyed all the research about home health CON laws. *Id.* at 20–26. *Id.* at 22–23. In part four, he offered expert opinions on the effect of Mississippi's CON law and moratorium based on the available data. Dr. Stratmann summarized his conclusions like this:

- "the main justification for CON laws … no longer exists";

- "the federal government has expressly disavowed CON laws for 30 years";

- "decades of research show that CON laws do not work";

- "no plausible economic theory supports CON laws for home healthcare";

- "the literature specific to home health shows that CONs at best fail to improve the system, and more likely make healthcare worse;" and

- "the available data indicates that Mississippi's home health CON law and moratorium have undermined their purported goals and instead, have protected incumbent home health agencies from competition."

*Id.* at 30.[1] Dr. Stratmann's opinions support Plaintiff's allegation that "[a]rtificially limiting the supply of home health services does not lower consumer costs, increase access to care, or increase the quality of care." Compl. (Doc. 1) ¶ 160.

---

[1] Separately, in a rebuttal to MAHC's expert, Dr. Stratmann explained that MAHC's expert's views are "speculation." MAHC claims that this one word ends the case. MAHC's Br. 8 n.2 ("Stratmann's characterization of Sullivan's opinions as speculation actually demonstrates that Mississippi's CON program passes rational basis muster. This is because the Supreme Court has held that "rational speculation unsupported by evidence or empirical data" is sufficient to sustain a law under the rational basis test."). But the rational-basis test demands *rational* speculation. That is what Dr. Stratmann disputes:

> Using little to none of the studies available, [Mr. Sullivan] speculates that Mississippi's home health CON has various benefits. This speculation does not square with 40 years of academic research. *Put simply, it is not rational to believe Mr. Sullivan's speculations given the actual evidence.*

Stratmann Rebuttal 1 (emphasis added).

Because this allegation was plausible, the Court rejected Intervenor-Defendant Mississippi Association for Home Care's (MAHC) motion to dismiss. MTD Op. 8–12. In doing so, the Court relied on just the sort of research that Dr. Stratmann did. As the Court put it: "widespread scholarly and government research has admitted that the experiment [in CON laws] was misguided." *Id.* at 4. In other words, the Court held that "scholarly and government research" are relevant to Plaintiff's claims. To be clear, this was not the only reason Plaintiff had stated a claim—the Court also relied on the context of dramatically increased "demand for at-home health services" throughout the moratorium, *id.* at 2, that significant financial interests were at stake, increasing the likelihood of rent-seeking, *id.* at 10; incumbents' control of the process, *id.* at 11; the low startup costs for home health, *id.* at 11; unexplained exceptions for certain providers, *id.* at 11; the fact that the incentives that spurred CON laws no longer exist, *id.* at 12; that state licensing requirements are already aimed at improving quality, *id.* at 12; the artificial limitations on at-home health care during the height of a global pandemic. *id.* at 13; and the unprecedent context of 40-year-old moratoria, *id.* Still, academic research and economic theory were two bases for the Court's opinion. It observed that:

- "widespread scholarly and government research has admitted that the experiment [in CON laws] was misguided[,]" *id.* at 4;

- "Congress repealed its CON incentive explicitly because "the evidence showed that certificate-of-need programs resulted in increased health care costs[,]" *id.* at 8;

- "Federal Trade Commission and the Department of Justice" reports "premised on research showing that CON programs are associated with 'fewer hospitals, higher costs, lower quality of services, and increased mortality[,]'" *id.* at 9;

- "Numerous peer-reviewed articles and journals bolster [Plaintiff's] claims[,]" *id.*;

- "a study by [Dr. Thomas Stratmann at] George Mason University finding that 'while the average state has 362 hospital beds per 100,000 population, this number falls to 263 per 100,000 in states with [CON] programs[,]'" (citing Stratmann) *id.*; and

- "substantial research showing that 'stringent Certificate of Need programs decrease the quality of care in many settings[,]'" *id.*

In a word, this Court *held* that the academic research and theory on CONs might prove Plaintiff's claims. *Id.* at 8–11.

Now, MAHC has moved to exclude Dr. Stratmann's expert opinions about the research and theory on CONs. MAHC argues that his opinions "are not helpful in determining any material issues in this case." MAHC's Br. 6.

## LEGAL STANDARD

This Court has "considerable discretion" to admit or exclude expert testimony. *Collins v. Benton*, 470 F. Supp. 3d 596, 601 (E.D. La. 2020) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000)). "[M]otions in limine are disfavored," and should only be granted if the evidence "is clearly inadmissible on all potential grounds." *Auenson v. Lewis*, No. CIV. A. 94-2734, 1996 WL 457258, at *1 (E.D. La. Aug. 12, 1996) (citation omitted). As with the liberal admission of evidence generally, "rejection of expert testimony is the exception, rather than the rule." *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (quoting Fed. R. Evid. 702 advisory committee's notes, 2000 amend). Moreover, "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury." *Weinhoffer as Tr. of Offshore Specialty Fabricators LLC v. Davie Shoring, Inc.*, 479 F. Supp. 3d 330, 334 (E.D. La. 2020). In

5

such cases, "the [c]ourt is well-suited to give the evidence the weight it deems appropriate." *Weinhoffer as Tr. of Offshore Specialty Fabricators LLC v. Davie Shoring, Inc.*, 479 F. Supp. 3d 330, 334 (E.D. La. 2020).

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

b) the testimony is based on sufficient facts or data;

c) the testimony is the product of reliable principles and methods; and

d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Relevant factors include "methodology, testing, peer review and publication, error rates, and 'acceptability' in the relevant scientific community." *Ovella v. B & C Const. and Equipment, LLC*, 2011 WL 3665120, at *3 (S.D. Miss., 2011) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-95 (U.S. 1993).

### ARGUMENT

MAHC does not dispute that Dr. Stratmann is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Nor could it, as Dr. Stratmann's credentials match those that the Supreme Court described as "impressive" in *Daubert* itself. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 583 (1993). Rather, MAHC argues that Dr. Stratmann's economics opinions are (1) irrelevant under the rational-basis test, (2) not based on reliable

principles and methodology; (3) not based on sufficient facts and data; and (4) precluded because one sentence of a study referenced a "debate." All of this is wrong.

## I.     EVIDENCE CAN PROVE THAT A LAW IS IRRATIONAL.

Most importantly, empirical evidence matters in rational-basis cases. Contra MAHC's Br. 5–6. The Court has already decided this issue. *See* MJP Order (Doc. 32) at 8 ("[T]he Court may delve into evidence of irrationality.") (citing *United States v. Carolene Prods. Co.*, 304 U.S. 144, 153, (1938)). And the Court's holding was correct: "[A]lthough rational basis review places no affirmative evidentiary burden on the government, plaintiffs may nonetheless negate a seemingly plausible basis for the law by adducing evidence of irrationality." *St. Joseph Abbey v. Castille*, 712 F.3d 215, 221 (5th Cir. 2013) (relying on "FTC findings. . . [that] shed[] much light on the disconnect between" law and its asserted basis). "When a plaintiff provides a court with undisputed context that betrays the otherwise rational basis the state has offered, the state can no longer expect the court's deference." *Lucid Group USA, Inc.*, 2023 WL 5688153, at *3 (citing *Harris Cty. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 323 (5th Cir. 1999)).

## II.     DR. STRATMANN'S OPINIONS ARE RELEVANT TO THESE CON LAWS.

MAHC next argues that Dr. Stratmann's opinions contained in Part 1 of his report should be excluded because he relied on studies of CON laws from other states and CON laws that are not specific to home health, and thus "are not helpful to the trier of fact in this case." MAHC's Br. 9–10. But, while the details of CON laws may vary by state, the general dynamics of the approval process are fairly consistent with only minor differences. *See, e.g., Certificate of Need (CON) State Laws,* National Conference of State Legislatures, (December 20, 2021) https://www.ncsl.org/research/health/con-certificate-of-need-state-laws.aspx. ("The structure of CON review and approval varies state to state, but generally a health care facility must seek state

approval-through a state health planning agency, department of health or a CON council appointed by the governor or legislature-based on a set of criteria and community need."). And MAHC does not mention a single difference about Mississippi's home health CON program that would make the broader literature less applicable, let alone irrelevant.

Contrary to MAHC's suggestion otherwise, experts routinely rely on literature about CON laws from different states and different industries, including in challenges to a state CON law for a specific industry. *See e.g. Truesdell v. Friedlander*, 80 F.4th 762, 776 (6th Cir. 2023) (expert opinion about Kentucky CON law relied on "many empirical papers studying certificate-of-need laws" around the country); *Tiwari v. Friedlander*, 26 F.4th 355, 364 (6th Cir. 2022) (expert opinion about home health CON law relied on "economic scholarship" showing that CON laws are ineffective "whether with respect to healthcare in general or home healthcare in particular.").

In any event, the Court has already held that studies of CON laws generally bear on the rationality of *Mississippi's* home health CON law and moratorium. When the Court denied MAHC's motion to dismiss, it relied on research showing that CON laws are a failed experiment generally. Dr. Stratmann relies on the same research, as well as home-health-specific literature. *See* Background, *supra*. And, given that the Court has already found meaningful studies exactly like the ones Dr. Stratmann relies on, there is zero chance that his opinions would not "help the trier of fact" – this Court.

### III.  DR. STRATMANN USED RELIABLE PRINCIPLES AND METHODOLOGY.

Next, MAHC seeks to exclude the opinions contained in Part 2 and 3 of Dr. Stratmann's report, claiming they are not based on reliable principles and methodology because they are mere economic theory, do not use Mississippi-specific data, and misstate findings of two studies. All of these claims are wrong.

1. ***Economic Theory:*** MAHC contends that the opinions contained Part 2 of Dr. Stratmann's report are not based on reliable principles, criticizing them as merely statements that the CON laws "do not jive with his own 'theories.'" MAHC's Br. 11. Despite MAHC's pejorative characterization, that is not what Dr. Stratmann does in Part 2 of his report. Rather, after reviewing dozens of studies, Dr. Stratmann applies his training as an economist to explain how the results of those studies (need review provides no benefits) are consistent with general principles of economic theory, which predicts that the anticompetitive effects of need review will lead to fewer providers, higher prices, and reduced quality. *See* Stratmann Rep. (MAHC's Ex. 2) at 15–20. Contrary to MAHC's suggestion, courts do not bar experts from explaining or applying standard economic theory. *See e.g. Truesdell*, 80 F.4th 762, 776 (6th Cir. 2023) ("Under the standard economic model, this expert noted, a government-imposed limit on supply (like a cartel-imposed limit) will allow the quasi-monopolistic producers to raise their prices above competitive levels, reducing both the available services and consumer welfare."). Dr. Stratmann's explanation of these principles of economic theory, and how they support the findings from the academic literature, is clearly helpful to the trier of fact, and MAHC does not point to any evidence that Dr. Stratmann has misstated or misapplied any of those principles. MAHC's Br. 11.

2. ***Mississippi-Specific Data:*** MAHC argues that, in Part 3 of his report, Dr. Stratmann simply "regurgitates" the conclusions of home health studies and "fails to make them 'fit'" with Mississippi's CON law or state-specific information about the effectiveness of the CON law. *Id*. at 12. But, again, this Court has already found relevant the findings from studies about CON laws *outside* of the home health context. *See* Background, *supra*. In Part 3 of his report, Dr. Stratmann relies on home-health-*specific* literature. *See* Background, *supra*. Moreover, Dr. Stratmann does not simply "regurgitate" the findings of these studies. He provides his summary and analysis of the literature. *See* Stratmann Rep. (MAHC's Ex. 2) at 20–26. And, more importantly, it is commonplace for experts to summarize and explain existing literature from around the country, including in challenges to a state

CON law. *See e.g. Truesdell*, 80 F.4th at 776 (expert opinion about Kentucky CON law relied on "many empirical papers studying certificate-of-need laws" around the country).

3. ***Misstating Findings of Two Studies:*** MAHC argues that Stratmann "misstated" the findings of two studies, Rahman et al. (2016), and Ettner et al. (2020). MAHC Br. 14-16. He did not. As for the Rahman study, MAHC is simply seizing on a sentence of Dr. Stratmann's report that, while misworded, clearly conveys the findings of the study. His report states that the Rahman study found that CON states "experienced faster growth of spending in home health and slower growth of the expenditure in nursing homes." *See* Stratmann Rep. (MAHC's Ex. 2) at 24. As MAHC points out, this is what the Rahman study found for non-CON states, not CON states. MAHC Br. 14–15. But this was a simple miswording in Dr. Stratmann's report, which is made clear by his discussion of the study. He goes on to say: "This study does not provide evidence that a home health CON causes an increase in spending on home health services. Instead, it shows that CON regimes for long-term care do not affect spending overall. They divert it away from home health agencies and toward nursing homes." Stratmann Rep. (MAHC's Ex. 2) at 24. There would have been no reason for Dr. Stratmann to include this explanation if the Rahman study found slower growth in home health spending for CON states. He provided it because the previous sentence in his report was simply inadvertently misworded. In short, MAHC is making a mountain out of a molehill.

MAHC's allegation that Dr. Stratmann misstated the findings of the Ettner study is equally trifling. MAHC does not dispute that Dr. Stratmann is correct when he says the Ettner study found CON laws increase both total home health spending and spending per home health agency. MAHC Br. 16. Instead, MAHC points out that Dr. Stratmann says the study found a "slight" reduction in per patient costs. MAHC Br. at 16. MAHC says this is not true because the study says it found a "*significant* association" with lower per-patient costs. MAHC Br. 16 (emphasis original). To state the obvious, the *association* with lower per-patient costs can be significant, while the *magnitude of the effect* is slight. Nothing in Dr. Stratmann's statement "misstates" the findings of the Ettner study.

10

IV.     **DR. STRATMANN USED SUFFICIENT FACTS AND DATA.**

MAHC argues that all of Dr. Stratmann's opinions should be excluded because he failed to use sufficient facts and data. MAHC also claims he was incorrect about some of the data. Again, both claims are wrong.

*1.  Lack of Original Study:* MAHC first argues that this Court should disregard all of Dr. Stratmann's opinions based on legitimate academic research that isolates the effects of CON laws because Dr. Stratmann did not conduct an original study using "Mississippi-specific facts and data." MAHC Br. 17. But "*Daubert* does not 'require all experts in every case to back his or her opinion with independent tests that unequivocally support his or her conclusions.'" *Johnson v. Samsung Electronics America, Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (quotation omitted). And, as discussed above, it is common for experts in challenges to CON laws to rely on the same academic literature Dr. Stratmann relies on. The Court has already treated academic research as relevant, and any differences about Mississippi – differences that MAHC has not identified – would go to the weight of the evidence, not its admissibility.

*2.  "Stratmann Got it Wrong":* Next, MAHC argues that the Court should exclude the opinions in Part 4 of Dr. Stratmann's report because "in the few mentions of Mississippi-specific data, Stratmann got it wrong." Aside from being incorrect, MAHC's argument is completely irrelevant. "The proponent of an expert's testimony need not prove the testimony is factually correct, but rather need only prove by a preponderance of the evidence the testimony is reliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) (citation omitted). Regardless, MAHC simply quibbles about the fact that, while new home health agencies are banned, physical therapists can still perform physical therapy in the home outside of a home health agency. MAHC's Br. at 18. To begin with, Dr. Stratmann never said otherwise. And separately,

11

MAHC ignores the fact that a home health agency is the only economically viable way to provide physical therapy in the home. MAHC likewise says Dr. Stratmann's report is "wrong" about the best comparisons to use when evaluating the performance of Mississippi's home health sector. *Id.* But, again, the question is not whether MAHC thinks Dr. Stratmann is "wrong." While MAHC may think other comparisons are better, it does not claim that using comparisons is inherently unreliable (indeed, their own expert used the same data and types of comparisons). MAHC's argument goes to weight, not admissibility.

*3. **The Ohsfeldt Study:*** Finally, MAHC argues that, while Dr. Stratmann's summary of Ohsfeldt and Li (2019) is correct: "HHAs in states with CON were less likely to have High [CMS] quality ratings." MAHC Br. 19. However, MAHC insists that Dr. Stratmann "should" rely on the fact that CMS ranks Mississippi ranks well using that same underlying data. MAHC Br. 20. MAHC misses the point. The uncontrolled CMS data says nothing at all about CON laws. Ohsfeldt and Li (2019) did implement statistical controls and methods in order to isolate the effect of CON laws. By arguing that Dr. Stratmann's opinion – based on a controlled study – is unreliable because he "failed" to rely on the uncontrolled data instead, MAHC gets it exactly backward.

## V.   ONE SENTENCE ABOUT A "DEBATE" DOES NOT PRECLUDE REVIEW.

Finally, MAHC makes an argument it made in its summary judgment motion, which has nothing to do with whether Dr. Stratmann's opinions are admissible. According to MAHC, Dr. Stratmann's opinions should be excluded because Rahman et al. 2019 mentioned "a longstanding debate" about CON laws. But it is unsurprising that a "debate" exists. *Id.* at 22. As this Court has observed: "It is no secret that significant financial interests are at stake when it comes to CON laws." The beneficiaries of CONs expend enormous resources attempting to justify the existence of those laws. Thus, the question is not whether there is a *debate*, but whether there is a *rational*

*debate*. The fact that there is no such rational debate is demonstrated by the fact that, rather than citing studies that support CON laws, MAHC is forced to seize on one sentence in a study that merely references a "debate."

## CONCLUSION

Under Rule 702, Courts ensure that experts' methods are reliable; they do not exclude opinions because of nitpicking with the conclusions. Here, the Court has already held that methods like Dr. Stratmann's are reliable. It used those methods itself.

The Court should deny the motion to exclude Dr. Stratmann's opinions.

RESPECTFULLY SUBMITTED, this the 3rd day of March, 2024.

| | |
|---|---|
|   /s/ *Aaron R. Rice* | A. Seth Robbins |
| Aaron R. Rice | MS Bar No. 103096 |
| MS Bar No. 103892 | WATSON JONES PLLC |
| MISSISSIPPI JUSTICE INSTITUTE | 2829 Lakeland Drive, |
| 520 George St. | Suite 1502 |
| Jackson, MS 39202 | Flowood, Mississippi 39232 |
| Tel: (601) 969-1300 | Tel: 601.939.8900 |
| aaron.rice@msjustice.org | srobbins@wjpllc.com        *Attorneys for Plaintiff* |

## CERTIFICATE OF SERVICE

I, Aaron R. Rice, counsel for Plaintiff, hereby certify that the foregoing document has been filed using the Court's ECF filing system and thereby served on all counsel of record who have entered their appearance in this action to date.

This the 3rd day of March, 2024.

                              /s/ *Aaron R. Rice*
                              Aaron R. Rice