IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CHARLES SLAUGHTER**                                                       **PLAINTIFF**

VS.                         CIVIL ACTION NO.: 3:20-CV-789-CWR-ASH

**DR. DANIEL P. EDNEY**, in his official Capacity
as the Mississippi State Health Officer,                             **DEFENDANT**

**MISSISSIPPI ASSOCIATION OF HOME CARE**              **INTERVENOR**

---

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

      Defendant Dr. Daniel P. Edney, in his official capacity as the Mississippi State Health Officer ("Dr. Edney"), is entitled to summary judgment because Plaintiff Charles Slaughter cannot meet his heavy burden to negate every conceivable rational basis for Mississippi's Certificate of Need ("CON") statutes challenged in this lawsuit. *See* Doc. Nos. 84, 85, 92, and 82, 83, 93 which are incorporated by reference.

      Plaintiff's Response to Dr. Edney's motion [Doc. 95] urges this Court to do something that is understood to be improper: *weigh evidence* on both sides of a rational basis argument and unilaterally *resolve a policy debate* that properly should be fixed not by this Court, but by the Mississippi Legislature. Plaintiff has attempted to use mischaracterization of partial testimony and inapplicable cases to coerce this Court into doing what no other court has done: strike down a CON law applicable to healthcare facilities based on either due process or equal protection violations of the protections in the 14th Amendment. *Tiwari v. Friedlander*, 26 F.4th 355, 364 (6th Cir. 2022), *cert. denied,* 143 S. Ct. 444 (2022)("No court to our knowledge has invalidated a healthcare certificate-of-need law under the rational-basis requirements of the

Fourteenth Amendment.")

Plaintiff contends that "the question here is whether the moratorium and CON laws are a rational way to improve the healthcare system." Doc 95 p.1. This is a misstatement. "That's because the question is not whether a law in fact is rational. *It's whether a legislator could plausibly think so.*" Tiwari , 26 F. 4th at 369. Hence, the State is not required to provide evidence that CON laws or the Moratorium actually do accomplish the State's purported interests. It has nevertheless done so in its motions and filings. MSDH only must demonstrate (via whatever means available including rational speculation) that a legislator, at the time of adoption (1975 & 1983), could reasonably and rationally believe that the adoption of these laws *might* further one or more of the state's interests. If the State has one plausible explanation as to the CON laws and the Moratorium on HHA—based on nothing more than common sense—this case must be decided in its favor. The expert opinions of Sullivan, based on scientific evidence and his own first-hand experience, support the State's rational basis arguments. Doc. 84-4.

Contrary to Plaintiff's claim, this is not an opportunity for the Court to decide whether the laws should remain or be eliminated based on this Court's *weighing* of the allegedly contrary evidence cited by Plaintiff. Instead, Courts must defer to the legislature with the understanding that even seemingly imprudent laws will be corrected by the legislature, not by a federal court's consideration and weighing of the two opposing policy positions. This is the whole purpose of the rational basis standard of review. It is not a "license" for courts "to judge the wisdom, fairness, or logic of legislative choices." *Hines v. Quillivan*, 982 F.3d 266, 273 (5th Cir. 2020). "Rational-basis review gives broad discretion to legislatures," and "the Constitution presumes

that even improvident decisions will eventually be rectified by the democratic processes." *Id.* (citation omitted).

Further, this is not an opportunity to for this Court to look at two experts reports and then decide that Plaintiff's expert should be given more credence and therefore override the expert opinions of Dan Sullivan. Again, that is not the purpose of this exercise. In conducting rational basis review, courts are not permitted to strike down laws by resolving disputed issues of fact or weighing competing evidence. *See Beach Commc'ns, Inc.*, 508 U.S. at 315 ("[A] legislative choice is not subject to courtroom fact-finding"); *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 748 F.3d 583, 594 (5th Cir. 2014). ("[T]here is 'never a role for evidentiary proceedings' under rational basis review.") (quoting *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1127 (7th Cir. 1995)); *Tiwari*, 26 F. 4th at 365-366 (Fourteenth Amendment does not even impose a cost-benefit analysis or requirement.). Thus, all evidence on both sides must be considered, but not weighed or judged.[1] Where there is competing evidence on both sides, the analysis should come to an end in favor of the State. *See id.; Planned Parenthood of Greater Texas*, 748 F.3d at 594 ("The fact that reasonable minds can disagree on legislation, moreover, suffices to prove that the law has a rational basis.").

---

[1] The real problem, and the most potent explanation for criticizing [CON laws], is that the costs of these laws—needless barriers to entry, protectionism for incumbents, the improbability of lowering prices by decreasing supply—outweigh their modest regulatory benefits. Yet it is precisely such weighing of costs and benefits that is so beyond judicial capacity. Who among us can identify a principled basis for concluding that some laws involve an irrational weighing of costs and benefits while others do not? Once we identify a plausible rational benefit of a law, the policymaking calculation of whether to adopt the law in the face of competing costs is eminently a legislative task, not a judicial one. Any other approach would require us not just to decide whether a plausible rational basis exists but then to balance out the totality of costs and benefits, a value-laden task that no two judges could ever do in the same way—and that even the same judge might do differently at different times during his tenure. It is one thing when legislatures enact laws on an ad hoc and inconsistent basis. It is quite another when judges remove them from the democratic process on an ad hoc and inconsistent basis.
*Tiwari*, 26 F. 4th at 365-366.

3

Plaintiff's Response routinely says there is "uncontested" evidence that proves definitively that the laws in question are irrational. While his evidence might show glimpses of irrationality as to one of the State's varied interests, there is no "uncontested evidence" here. All the evidence that Plaintiff cites is directly refuted by the evidence supporting MSDH's position that the laws are valid and should remain so. *See* Doc. Nos. 84, 85, 92, and 82, 83, 93. MSDH and MAHC have both filed motions and memoranda for summary judgment, demonstrating overwhelmingly that the laws are rational and have obvious state interests that a legislator could rationally believe would be served by their enactment. *Id.*

Additionally, whether the State has chosen the least restrictive means of achieving its interests is irrelevant under the rational basis test. *Planned Parenthood of Greater Texas*, 748 F.3d at 594 ("[T]here is no least restrictive means component to rational basis review."). In fact, "courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Heller v. Doe*, 509 U.S. 312, 321 (1993) (cleaned up). Likewise, "[a] classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Id.* (cleaned up). The fact that Plaintiff can plausibly suggest alternative means of accomplishing the State's posited interests *via a less restrictive means* is wholly irrelevant. *Id.* Economic statutes are routinely upheld because there is no requirement that the laws be perfect and not cause any inequality.

Plaintiff has again string-cited cases that are completely inapposite. None of them have to do with healthcare or CON laws. *See* Doc 95 at FNs 1-5. On the other hand, the Fifth Circuit has already affirmed that in healthcare, limiting the number of

4

providers improves consumer benefits/protections and is a valid state interest. *Newell-Davis v. Phillips, No. 22-30166*, 2023 WL 1880000, at *1 (5th Cir. Feb. 10, 2023), cert. denied, 144 S. Ct. 98 (2023). The district court applied rational basis review and found that the program was rationally related to the legitimate interest of protecting consumer welfare. *Id.* The Fifth Circuit affirmed, reasoning that, in "the highly-regulated healthcare sector, . . . limiting the number of regulated providers can increase the quality of services for consumers[.]" *Id.* at *4. It is undisputed that both the CON laws *and the Moratorium,* limit the number of HHA providers. Sullivan's Report further confirms the quality of home healthcare in Mississippi is better than the vast majority of the Country. Doc. 84-4 at pp. 9, 19-23. Plaintiff's Response has chosen to virtually ignore (or twist) the *Newell-Davis* ruling—opting instead to rely (once again) upon a district court's interim denial of a 12(b)(6) motion in a case concerning EV car dealerships and franchise disputes. *See* Doc. 95 *passim citing Lucid Group USA, Inc., v. Johnston* No. 1:22-CV-1116-RP, 2023 WL 5688153, at *6 (W.D. Tex. June 21, 2023) (Slip Copy). Healthcare is different from most other industries as confirmed by the Fifth Circuit. At this juncture, it is not even disputable that the federal and state governments pay much of the costs incurred for healthcare covered by Medicaid, Medicare or other governmental programs or subsidies.[2] CON laws and related moratoria have been used in a majority of states to control supply in

---

[2]   The Mississippi Department of Medicaid had a 2023 budget of around $7.2 Billion—greater than all $6.3 Billion in authorized general funds of the State government combined. *cf.* Statement IV and Statement III at https://www.lbo.ms.gov/PublicReports/BudgetRequest/2024.

The recent 2024 GAO Audit of the federal government revealed that in 2023 there were $101.5 billion of reported "improper payments" by Medicaid and Medicare alone. The two largest contributors among the 71 federal programs or activities audited. https://www.gao.gov/products/gao-24-106660. Full Feb. 15, 2024 Report at pp. 244-245. ("Fourteen agencies reported improper payment estimates totaling about $236 billion for fiscal year 2023…. Most of the estimate was concentrated in the following areas: Department of Health and Human Services' (HHS) Medicare, consisting of three programs ($51.2 billion); HHS's Medicaid ($50.3 billion); and Department of Labor's Unemployment Insurance – Federal Pandemic Unemployment Assistance ($43.6 billion)").

healthcare. Doc. 84-4 at 9. These laws are uniformly upheld.

Further, "patient access" is not the only interest of the State, despite Plaintiff's attempt to argue that it is the lone purpose of the CON law. Doc 95 at 22-23. MSDH has explained *ad nauseum* that it must assure access to all Mississippians. Not just one section or segment. The planning functions of CON are how MSDH assures access to all. *See* Doc. 84-4 at 18-23; Doc. 85. Sullivan has opined based on experience that if Plaintiff is successful, the rural areas of the State are most likely to lose access. Doc. 84-4. MSDH and MAHC have also affirmatively shown that cost containment, availability, continuity of care, acceptability and effective regulatory oversight—all benefit the State and its consumers. Doc. 83, 85. Even if "access" is harmed by the Moratorium (ignoring that Sullivan proves it is not), there must only be one other rational state interest served for the CON laws and Moratorium to be upheld. Plaintiff has at best, won a battle only to lose the war. He cannot disprove *all* the various interests detailed by MSDH and MAHC.

Plaintiff claims to be acting for the people of the State—asserting a libertarian, free-market approach—but at the same time—is asking this Court to strike down long-standing laws enacted by the people's representatives that have guided the healthcare planning and delivery in this State for nearly 50 years, because the Legislature has yet to be convinced that Plaintiff's position is correct. For a federal court to strike down a duly enacted state law there must be something more than one party's asserted policy positions. There must also be a complete lack of any plausible reason for the state's adoption of the laws. And that is simply not the case here.

If there was truly a great need for more HHA providers, the populus would have no problem convincing their legislator to vote for removal of the Moratorium or CON

6

laws in general. But to date the only evidence of any need is self-serving testimony from the Plaintiff based on nothing more than anecdotal evidence. That cannot possibly be enough to negate all the State's interests and strike down the laws simply because the Plaintiff believes they are "unnecessary." If the "evidence" was as undisputed as Plaintiff now claims, there would be an attainable legislative remedy.

In fact, the Legislature has revisited the CON laws many times over 50 years and has made numerous changes to the CON laws and moratoria statute. *See* Doc.85 This is not some stagnant situation where there's been no consideration or amendments. Neither has there been a change in circumstances that completely invalidates these laws. *Id.* The fact that the Moratorium on HHA remains codified, despite numerous occasions to amend, must mean that the majority of the Legislature has not been convinced of the need to amend/repeal. The refusal to adopt Plaintiff's policy position touted by think-tank economists does not make a duly enacted law unconstitutional. There is no periodic requirement that the State revisit its laws. *Id.*

### Plaintiff Has Not Been Deprived his Chosen Occupation—Quite the Contrary.

Plaintiff for the first time in his Response attempts to pivot his position to now argue that the CON laws and Moratorium on HHA CONs violate his right to earn a living or practice his occupation. Doc. 95 pp. 2-5. This argument is without merit. Plaintiff has practiced his profession as a Mississippi-licensed Physical Therapist for nearly 50 years! *See* Depo. Doc. 88-3 at p. 92. He currently has two offices in the Jackson-Metro area. *Id.* at 70. At the time of filing of this lawsuit and this Reply, there is *nothing* that Plaintiff is prevented from doing (either in a patient's home or in Plaintiff's offices) because of the CON laws or the Moratorium. *Id.* at 70-71. So long as his patient has a prescription for home health PT, Plaintiff is free to perform physical

7

therapy in his patient's homes. Just not as a "Home Health Agency." *Id.* Plaintiff's real grievance in this lawsuit is that because he is unable to obtain an HHA CON, he is unable to bill Medicaid or Medicare as a Home Health Agency and is therefore not able to make as much profit as possible. *Id.* He likewise complains that he is unable to bill Medicare for a yet-to-be-hired and less-qualified Physical Therapy *Assistant* (PTA) to go to the home of his patient and perform the work for Plaintiff—thus further increasing Plaintiff's theoretical profit margin. Doc. 88-3 at pp. 26, 90. This alleged "harm" is not evidence that Plaintiff is prevented from earning a living.

Contrary to Plaintiff's latest assertion, the right to practice one's profession or "common occupation" must be completely prohibited. Not being able to practice in exactly the manner or form that Plaintiff would now prefer to maximize profits is not enough to even state a valid claim for deprivation. The Fifth Circuit has repeatedly held that to state a claim, Plaintiff "must plead facts showing that Defendants "effectively foreclosed" him from practicing his chosen profession to show a deprivation." *Ghedi v. Mayorkas*, 16 F.4th 456, 467 (5th Cir. 2021); *Martin v. Mem'l Hosp. at Gulfport*, 130 F.3d 1143, 1148–49 (5th Cir. 1997)(discussion of this claim in a CON case; finding CON laws are "valid anti-competitive activity"). Plaintiff Slaughter has, on the other hand, admitted repeatedly in his Complaint and other filings that he has *not* been "effectively foreclosed" from earning a living. It is honestly hard to imagine a professional who operates multiple offices and is one of the longest practicing PTs in this State arguing that he is being deprived of his ability to earn a living because of the CON laws and HHA Moratorium.

The *Martin* court also considered the three ways to show deprivation. *Id.* It held that alleged injury of reputation is not enough. 130 F.3d at 1148. There must be a

8

near-total loss of ability to earn. *Id.* Mr. Slaughter clearly still earns a good living. The Court further analyzed that if Plaintiff here was at risk of losing his PT License because of the CON laws, then perhaps the deprivation claim exists. *Id.* ("If he were *de jure* or *de facto* denied a license for practicing." *citing Phillips v. Vandygriff,* 711 F.2d 1217 (5th Cir.1983). Again, this is not the case as Plaintiff clearly still practices PT. Lastly, *Martin* considered that if the "foreclosure is the natural consequence of 'denying [plaintiff] collateral credentials necessary for pursuing [his] occupation …'" it might be deprivation. *Id. citing Phillips v. Vandygriff,* 711 F.2d at 1223. There is no question that Plaintiff is still practicing PT. As such, there is no deprivation, and this argument is a meritless distraction at this stage. Plaintiff never had an HHA CON to begin and cannot qualify for a CON now under either state or CMS guidelines. He has no "right" to make a career change—especially into a highly-regulated and hyper-intrusive healthcare field such as HHA simply so he can achieve more profits for himself. All told, Plaintiff has failed to show (or plead) that the CON laws have any effect on his practice of his professional career as a PT.

As shown in the motions and memoranda filed in support of the CON laws and the Moratorium on HHA, this Court has ample evidence before it that both laws remain valid based on the various rationales described. The State's interests are well documented and only one valid state interest is necessary for each law to survive this challenge. A legislator could easily have believed that the CON laws would contain costs to the government, improve access, continuity of care, availability of services, acceptability of services, as well as improve consumer health benefits by maintaining a reasonable level of HHA providers. Most of these are also supported by the Moratorium on HHA. For the time being, Mississippi's Legislature, its Board of

Health, its State Health Officer and the MSDH all agree that the Moratorium on new HHA providers is still warranted—there is no need for more than currently operate. Receiving and processing new applications for an industry that has *no need for providers*, frankly, makes no sense. If, however that assessment changes, the laws in existence assure that adjustments may be made by the Legislature. But that should only happen if the Plaintiff's public policy arguments finally win the day with our citizen representatives. Unless and until that day, prudence, coupled with existing caselaw, mandates this Court defer to legislative prerogative and uphold the laws as valid.

DATE: March 22, 2024

Respectfully Submitted,

Dr. Daniel P. Edney, in his official capacity as the Mississippi State Health Officer

BY: LYNN FITCH, ATTORNEY GENERAL FOR THE STATE OF MISSISSIPPI

BY: /s/ *Stephen Schelver*
Special Assistant Attorney General

STEPHEN F. SCHELVER, MSB # 101889
GERALD KUCIA, MSB # 8716
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-3522
Facsimile: (601) 359-2003
Stephen.Schelver@ago.ms.gov
Gerald.Kucia@ago.ms.gov

## CERTIFICATE OF SERVICE

I, Stephen Schelver, Special Assistant Attorney General for the State of Mississippi, do hereby certify that on this date I electronically filed the foregoing with the Clerk of this Court using the ECF system thereby serving a copy to all counsel of record.

This the 22nd day of March 2024.

/s/ Stephen Schelver<br>Stephen Schelver