IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CHARLES SLAUGHTER**                                                                                    **PLAINTIFF**

vs.                                                                                    Civil Action No. 3:20-cv-789-CWR-ASH

**DR. DANIEL P. EDNEY, in his Official
Capacity as the Mississippi State Health
Officer**                                                                                                      **DEFENDANT**

**MISSISSIPPI ASSOCIATION FOR
HOME CARE**                                                                          **INTERVENOR DEFENDANT**

**MISSISSIPPI ASSOCIATION FOR HOME CARE, INC.'S
REBUTTAL TO PLAINTIFF'S RESPONSE TO MOTION TO EXCLUDE
PLAINTIFF'S EXPERT DR. THOMAS STRATMANN**

Mississippi Association for Home Care ("MAHC") rebuts Plaintiff's response to MAHC's Motion to Exclude Thomas Stratmann as follows:

### I. Stratmann should be excluded because his opinions are not relevant.

Stratmann should be excluded because all of his opinions are entirely founded on what he claims is *post hoc* evidence that Mississippi's home health CON law, including the moratorium, are not rational.

First, it should be noted that Slaughter does not dispute the simple fact that all of Stratmann's opinions regarding home health CON laws are founded on *post hoc* academic studies purporting to relate to costs or quality based on data generated after Mississippi adopted its home health CON laws and after the moratorium was enacted.[1] *See* Stratmann Report, [86-2] at pp. 20-

---

[1] Slaughter's response does not dispute the fact that none of the studies on which Stratmann based his opinions addresses Mississippi's other home health CON program goals of improving access to care, acceptability of care and continuity of care. These rational bases remain unscathed by Stratmann's report and Slaughter's challenge.

26. Regarding costs, the earliest study was published in 1987 based upon Centers for Medicare and Medicaid Services ("CMS") data from 1982.[2] Regarding quality, the earliest study was published in 2014 based upon CMS data generated over a six year period from 2001 through 2006.[3]

Slaughter seeks to justify his use of *post hoc* evidence by relying on three cases. First he cites *United States v. Carolene Prods. Co.*, 304 U.S. 144, 153 (1938), which he notes was also cited in this Court's Order [32], for the proposition that "the Court may delve into evidence of irrationality." [97] at p. 7. Next, he cites *St. Joseph Abbey v. Castille*, 712 F.3d 215, 221 (5th Cir. 2013) for the proposition that ". . . plaintiffs may nonetheless negate a seemingly plausible basis for the law by adducing evidence of irrationality." *Id.* Finally, he cites *Lucid Group USA, Inc.*, 2023 WL 5688153, at *3, which in turn cited *Harris Cty. V. CarMax Auto Superstores Inc.*, 177 F.3d 306, 323 (5th Cir. 1999), for the proposition that "[w]hen a plaintiff provides a court with undisputed **context** that betrays the otherwise rational basis the state has offered, the state can no

---

[2] *See* Kass (1987) Economies of Scale in the Provision of Home Health Services. [86-10].

[3] *See* Jung and Polsky (2014), *Competition and Quality in Home Health Care Markets*. [86-12]. Slaughter's response did not mention this study because he could not dispute MAHC's observation that this study actually runs counter to Stratmann's opinions because it concluded that

> **Competition** *[i.e., in a non-CON state] has a* **negative effect** *on discharges without hospitalization that is strongest in the most competitive markets. This finding* is different from prior research on *hospital* markets and *suggests that* **market-specific environments should be considered** in developing polices to promote competition.

*Id*. at p. 1 (emphasis added). Stated differently, states that have a home health COM law, i.e. states that control competition, have a lower rate of rehospitalization after discharge from home health treatment. This study attempted to evaluate "three quality measures: functional improvement, the number of home health visits, and discharges without hospitalization." *Id*. Regarding the first two measures, this study found that "in the most competitive markets, functional outcomes and the number of visits slightly drop." *Id*.

This study is also significant because of its following conclusion:

> Our finding is different from the prior literature in hospital markets, and a negative relationship of intense competition to quality is counterintuitive. This is likely to be due to the unique feature in home health care–service delivery in patients' homes. Thus, market entry does not require large capital investments, and some agencies may easily enter any profitable market and then simply leave the market if they are unable to attract consumers under competition. These low-cost entrants are likely to lack technical capacity to compete over and invest in quality (Bishop *et al*., 1999).

longer expect the court's deference." *Id.* (emphasis added). Slaughter's reliance on these cases is misplaced because no one questions whether this Court can consider *evidence*. However, none of these cases permitted the use of *post hoc* evidence, much less *post hoc* evidence that the plaintiff alleges shows that a law has proven to be ineffective in meeting the offered rational goals.

In *Carolene* the Supreme Court upheld a federal law banning the interstate sale of certain milk products. In doing so, the Court made very clear that judicial inquiry must be limited to (i) relevant factual circumstances available to the legislative body at the time of enactment and (ii) those facts that are subject to judicial notice, both of which must be further restricted to the issue whether such facts could be reasonably assumed to support the statute:

> Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such ***facts may properly be made the subject of judicial inquiry . . . . But by their very nature such inquiries*** *. . . **must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it***. . . . and ***it is evident from all the considerations presented to Congress, and those of which we may take judicial notice***, that the question is at least debatable whether commerce in filled milk should be left unregulated, or in some measure restricted, or wholly prohibited. As that decision was for Congress, neither the finding of a court arrived at by weighing the evidence, nor the verdict of a jury can be substituted for it.

304 U.S. at 153-154 (emphasis added). Stratmann's entire report offers opinions that CON laws do not achieve their goals. He should be excluded because *Carolene* expressly prohibits any inquiry other than "***the issue whether any state of facts either known or which could reasonably be assumed affords support for***" Mississippi's home health CON law and moratorium at the time the law was enacted.

In *St. Joseph Abbey* the Fifth Circuit considered evidence that a Louisiana statute prohibiting sales of caskets by anyone other than a funeral home lacked a rational basis. That evidence was "the setting and history of the challenged rule." 712 F.3d at 223. The evidence of this setting and history was provided by St. Joseph Abbey in the form of proof that Louisiana does not regulate such matters as (i) the use of caskets, (ii) the design of caskets, (iii) the construction of caskets, (iv) whether a casket is sealed, (v) the purchase of caskets from out of state suppliers,

3

(vi) caskets constructed for personal use and (vii) quality of caskets. This proof negated the rationale offered by the state that the law protects consumers from purchasing unsuitable caskets.

*Lucid Group* is still a pending action. The Order that Slaughter cited simply denied a motion to dismiss a complaint challenging the constitutionality of a Texas statute prohibiting auto manufacturers from establishing manufacturer-owned new car sales facilities in the state. The court denied the motion at the pleading stage because the complaint included "*context*" which included allegations regarding other existing Texas statutes and matters subject to judicial notice. Again, none of the authorities cited by Slaughter permitted as "*context*" the use of *post hoc* evidence, much less *post hoc* evidence regarding whether the statute has been effective in meeting its goals.

## II.     Stratmann lacks expertise in home health care and home health CON laws.

Slaughter touts Stratmann's expertise as an economist. MAHC does not question Stratmann's alleged expertise as an economist. However, Slaughter did not respond to MAHC's argument that Stratmann has absolutely no expertise in either home health CON laws, or even home health care generally for that matter. Of Stratmann's "some 70" published papers Plaintiff references in his response, almost all of the papers have nothing at all to do with health care in general, much less CON laws, and only three of those papers regard CON laws – and even these three relate only to hospital and medical equipment CON laws, not home health CON laws. [86-2] at 36-41. While Stratmann's report touts that he has written nine peer-reviewed papers relating to CON laws, as noted in the preceding sentence only three have been published and none of these nine papers address home health CON laws.

If cost containment was the only goal of Mississippi's home health CON law and moratorium, then one might think it would be a subject matter for which an economist could have input. But this case is also about Mississippi's goals to improve the quality, accessibility,

acceptability and continuity of home health services. Stratmann has absolutely no background whatsoever in home health care.

MAHC's memorandum explained that Stratmann lacks fundamental knowledge of home health. When confronted in his deposition with key CMS data[4] proving the efficacy of Mississippi's CON program for home health agencies regarding quality as compared with every non-CON state in the nation, Stratmann laughed and scoffed at the CMS data, claiming that the data is not relevant to the primary services provided by home health agencies. [87] at pp. 20-21. Slaughter's response to MAHC's motion to exclude Stratmann did not even mention Stratmann's testimony much less attempt to rehabilitate his testimony. This conclusively demonstrates that Stratmann lacks fundamental knowledge of, and experience with, the services provided by home health agencies. How can Stratmann be permitted to opine about the quality of home health services provided under Mississippi CON laws given that he has absolutely no knowledge of the key purposes of services provided by home health agencies?  The key purposes include seeking to improve the patient's ability to do such things as ambulating, bathing, getting in and out of bed, breathing, taking medicine, and other related data collected in the CMS home health quality reporting.[5] Stratmann laughed and scoffed at all of this data as being irrelevant because he thought these goals were unrelated to the services provided by home health agencies. Again, regardless whether Stratmann's total lack of knowledge of the purposes of home health services means he is unqualified to offer his opinions regarding quality or means his opinions are unreliable, the result is the same – Stratmann should be excluded.

---

[4] This data is discussed in MAHC's memorandum, [87] at pp. 19-21, and below.
[5] *See* [96-3], [96-4] and [93-6].

### III. Stratmann misapplied "basic economic theory."

Slaughter emphasizes that Stratmann's report is based upon "basic economic theory" – this theory is the "basic laws of supply and demand." *See* [86-2], Stratmann report at pp. 2, 3, 7, 8, 15 and 30.  However, this whole theory behind Stratmann's report is contradicted by basic economics textbook teaching that the basic laws of supply and demand are founded on five tenets and that none of these five tenets reflects what happens in the healthcare market. *See* [93-9], Chapter 12 of N. Gregory Mankiw, *Principles of Economics*, Cengage Learning, 10th Edition (2023) at pp. 228-229.  Instead, healthcare is perhaps the most important good or service that "departs radically from th[e] benchmark" laws of supply and demand. *Id*. Regardless of whether Stratmann's misapplication of "basic economic theory" means he is unqualified to offer his opinions or means his opinions are unreliable, the result is the same – Stratmann should be excluded.

### IV. The Ohsfeldt study.

Regarding home health quality under CON law programs, Stratmann relied heavily on Ohsfeldt and Li (2018), *State Entry Regulation and Home Health Agency Quality Ratings* (the "Ohsfeldt study"), [86-19], adopting its conclusion that "HHAs in states with CON were less likely to have High quality ratings." [86-2] at p. 25. It is very important to understand that the quality ratings the study is talking about are the quarterly ratings published by CMS for home health agencies nationwide. These ratings are based on responses from patients to questionnaires requesting ratings for a number of categories specific to home health services they received.  CMS also publishes composite ratings state by state for each category of the questionnaire responses. Beginning in 2015, CMS expanded its ratings to include a Star Rating System whereby each state is given a rating from one to five (with five being the best) on each category together with an overall star rating. By heavily relying on the Ohsfeldt study, Stratmann tacitly admits the importance of the CMS state by state Star Rating System for quality of home health services across

the nation. Regardless of whether the Ohsfeldt study conclusion has any validity for some states with a home health CON law, it plainly has absolutely nothing to do with Mississippi because there is no dispute that home health quality in Mississippi consistently ranks highest or among the highest compared to all states and consistently higher than all non-CON states in particular. *See* [93-6].

Slaughter's response admits "the fact that CMS ranks Mississippi well using that same underlying data." [97] at 12. Of course, Mississippi ranks best, not merely "well," compared to all other states. Then Slaughter attempts to draw a non-existent distinction arguing that "[t]he uncontrolled CMS data says nothing at all about CON laws." *Id*. It is unclear what Slaughter means by "uncontrolled data" because the "data" is in fact the actual CMS quality ratings. Slaughter is saying don't believe your lying eyes. The whole point of the Ohsfeldt study was to make predictions in 2018 about whether states with a home health CON requirement will have a higher or lower quality rating as compared with other states. But we don't need any study to *predict* what Mississippi's quality rating will be because in 2024 we already know its quality rating is consistently highest in the nation.

The whole point of MAHC's argument against Stratmann regarding the Ohsfeldt study is that he based his opinion regarding quality on the Ohsfeldt study *prediction* regarding what kind of quality rating a CON-state might receive from CMS, a mere prediction that was based on its review of CMS's home health quality ratings from 2010 to 2013, instead of simply taking the time to look at CMS's actual star ratings for home health quality in Mississippi which are available for every year since January 2015 at https://homehealthcahps.org/General-Information/Archived-Publicly-Reported-Data, https://data.cms.gov/provider-data/search?fulltext=Home%20Health%20Care%20-%20State%20by%20State%20Data, https://data.cms.gov/provider-data/archived-data/home-health-services#2017-annual-files, and

https://public4.pagefreezer.com/browse/Data.CMS.gov%20Provider%20Data/02-11-2022T14:37/https://data.cms.gov/provider-data/archived-data/home-health-services. The point is that Stratmann does not need a prediction when he has the actual Mississippi quality star ratings readily available.

> V. **Lack of original study is not the issue – Stratmann failed to test his theories.**

Slaughter misstates MAHC's argument in telling the Court that MAHC is complaining that Stratmann "did not conduct an original study using 'Mississippi-specific facts and data.'" [97] at 11. Slaughter's response argues that Stratmann "offered expert opinions on the effect of Mississippi's CON law and moratorium *based on the available data*." [97] at 3 (emphasis added). What data? Slaughter's response failed to reference any data at all other than his admission that Mississippi is ranked "well" in the CMS Star Rating System. Likewise, Stratmann stated in his report that "the available data indicates that Mississippi's home health CON law and moratorium have undermined their purported goals . . . ." Again, what data? The truth is that Stratmann ignored the readily available Mississippi data that plainly shows that Mississippi's home health CON program and the moratorium have resulted in Mississippi consistently having the highest, or being tied with other CON-states for the highest, home health quality ratings in the nation.

Expert opinions are unreliable when the expert fails to address data that disproves the opinions. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593, 113 S. Ct. 2786, 2796, 125 L. Ed. 2d 469 (1993)("Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (***and has been) tested***. 'Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry.'"); *see also*, Moore v. Ashland Chem. Inc., 151 F.3d 269, 275 (5th Cir. 1998)(" a five-factor, non-exclusive, flexible test for district courts to consider when assessing whether the

methodology is scientifically valid or reliable . . . . include: (1) whether the expert's theory can be or has been tested"). Here, Stratmann's opinions regarding quality can be tested very easily, but he failed to do so and thus failed to realize that Mississippi ranks highest in the nation regarding the quality of home health services.

MAHC is not arguing that Stratmann should have conducted an original study. Instead, Stratmann failed to consider the readily available CMS Star Rating System data which disproves his opinion that the quality of home health services in Mississippi is outperformed by non-CON states. As a result, his opinions regarding quality are not reliable.

### VI. This Court has yet to make any findings.

Throughout his response, Slaughter argues that in its Order [32] this Court has already made substantive findings in favor of the merits of his challenge to Mississippi's home health care CON laws. [97] at pp. 1, 4, 5, 8 and 11. Nothing in the Order [32] were substantive findings of this Court regarding the truth of the averments in Slaughter's complaint. Instead, this Court merely stated its interpretation of what Slaughter was alleging in his Complaint, which of course the Court was required to accept as true for the sole purpose of deciding MAHC's motion to dismiss. MAHC has already submitted to the Court separate memoranda supporting its motion for summary judgment, its motion to exclude Thomas Stratmann and its response to Slaughter's motion for summary judgment, all of which show the Court that many of the averments in Slaughter's complaint are not true in fact. For example, Slaughter's response repeats the claim in his complaint that the demand for home health services dramatically increased during the COVID-19 pandemic. *Compare* [1] at ¶2 *with* [97] at p. 4. MAHC has provided the Court the Mississippi home health agency report published by the Department of Health showing that the demand actually decreased. See [94] at p.20 and [94-7] at pp. ii, 40, 65 and 74.

### VII. The Rahman and Ettner studies are mountains, not mole hills.

9

Slaughter says MAHC tried to "mak[e] a mountain out of a molehill" by pointing out to the Court that the Rahman study on which Stratmann relied heavily concluded the exact opposite of that stated in Stratmann's report. [97] at p. 10. Stratmann used the Rahman study as a basis for his opinion that home health costs increase more rapidly in CON states than non-CON states. The fact that the opposite is true clearly negates Stratmann's opinion. This is not a molehill.

Slaughter says Stratmann's error regarding the Ettner study is "equally trifling." [97] at p. 10. Stratmann's error is a mountain, not a trifling molehill for two reasons. First, the Ettner study found that total home health spending was more in CON states than non-CON states, but there was a "significant association" with lower per-patient costs in CON states. Thus, a clear conclusion can be drawn that there is a significant increase in access to home health care in CON states. This conclusion is mandated by the simple fact lower per-patient costs but higher total costs clearly means the CON states have increased their patient population more than in non-CON states. While Stratmann's report nowhere addressed Mississippi's goal of increasing access to care, he inadvertently shows the Court that Mississippi's home health CON program is working to increase access to care.

Second, the fact that there is a "significant association" between CON states and lower per-patient costs while at the same time providing greater overall revenues per HHA clearly shows that economies of scale are in fact at play in CON states.

### VIII.   Slaughter also got it wrong.

Slaughter's complaint averred that he cannot provide physical therapy in the home. [1] at ¶¶ 1 & 3. Slaughter was wrong. Slaughter's response to MAHC's motion now admits that he "can still perform physical therapy in the home outside of a home health agency." [97] at p. 11. Slaughter says MAHC is "quibbling" in pointing out this fact to the Court because "[t]o begin with, Stratmann never said otherwise." *Id.* This is also wrong. In fact, Stratmann stated "[t]he most significant increase in the services subgroup is in physical therapy . . . . since 1981, Mississippi's moratorium

on the issuance of CONs for home health agencies *has made it illegal for potentially interested providers* to assist in meeting this increased demand." [86-2] at p.27 (emphasis added). Note that "providers" are the individual physical therapists, who can choose to act on their own or become employed by an HHA. Slaughter now admits that it is not illegal for physical therapists to act individually to provide physical therapy in the home. Slaughter attempts to downplay this revelation by making the totally unsupported averment that "a home health agency is the only economically viable way to provide physical therapy in the home." ]97] at p. 12. There is no evidence in the record in this action to support this new, unsworn averment. In fact, the record shows the opposite. That is, MAHC has shown the Court at least one physical therapist group in the Mississippi Delta whose business is to provide physical therapy in the home since 2003. [86-18].

### IX. The ongoing rational debate.

The Rahman study observed that its "findings contribute to the *longstanding debate among health policy researchers* about the intended and unintended consequences of CON laws." [86-14] at p. 2. Slaughter now acknowledges the ongoing debate but argues that the debate is not rational. [97] at p. 12. It is difficult to believe that the authors of a published peer-reviewed journal article would seek to contribute to a debate that they believed was irrational. Contrary to what Slaughter says, the Rahman study is not alone in demonstrating the ongoing rational debate. For instance, MAHC has shown above that other studies on which Stratmann relied actually undermine his opinions. Slaughter complains that MAHC chose not to cite studies supporting CON laws. [97] at p. 13. First, it should be noted again that *post hoc* studies based on *post hoc* data are not relevant to the determination whether there was a rational basis for the enactment of Mississippi's home health CON law, including the moratorium. In addition, MAHC did not need to cite studies because Stratmann cited four of them, a sufficient number (i.e., Jung and Polsky, Ohsfeldt, Ettner and Rahman, all discussed above), for MAHC.

## CONCLUSION

For all the reasons set forth above and set forth in MAHC's memorandum [87], MAHC respectfully requests an order excluding the opinions of Thomas Stratmann, Ph.D.

This the 22nd day of March, 2024.

          MISSISSIPPI ASSOCIATION FOR HOME CARE

          By: */s/ Paul N. Davis*
              PAUL N. DAVIS (MB #8638)
              THOMAS L. KIRKLAND, JR. (MB #4181)
              CAROLINE B. SMITH (MB #105501)

              ITS ATTORNEYS

OF COUNSEL:

BUTLER SNOW LLP
1020 Highland Colony Parkway
Post Office Box 6010
Ridgeland, Mississippi 39158-6010
(P) (601) 948-5711
(F) (601) 985-4500
(E) paul.davis@butlersnow.com
(E) tom.kirkland@butlersnow.com
(E) caroline.smith@butlersnow.com

## CERTIFICATE OF SERVICE

      I, Paul N. Davis, do hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

      This the 22nd day of March, 2024.

*/s/ Paul N. Davis*
Paul N. Davis

86612353.v1