# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

CHARLES SLAUGHTER, *Plaintiff,*

v.   No. 3:20-CV-789-CWR-ASH
ORAL ARGUMENT REQUESTED

DR. DANIEL P. EDNEY,
IN HIS OFFICIAL CAPACITY AS THE
MISSISSIPPI STATE HEALTH OFFICER, ET AL.   *Defendants.*

## PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

## ARGUMENT

In MAHC's view, the State may require new home health agencies to demonstrate that they are "needed," based on hypothetical justifications that overwhelming evidence shows clearly proves are implausible. Moreover, the State can ban new agencies for decades without even allowing them to offer proof that they are "needed," so long as the government already knows – based on a rudimentary mathematical formula – that they aren't. The State's failure to maintain the data that same formula depends on is of no moment, so long as one of the State's witnesses has "never heard anyone say" more agencies are needed. Nor does it matter that the State's own witnesses refute its asserted justifications for the laws. All of this, the MAHC says, is "rational."

## ARGUMENT

### I.  PLAINTIFF'S MORATORIUM CLAIM IS NOT MOOT.

MAHC claims that Plaintiff's challenge to the moratorium is moot, because "*he says*" that he cannot prove a need under State Health Plan's methodology, and thus "*Slaughter acknowledges*" that he would not qualify for a CON even if the moratorium were struck down.

MAHC's Resp. at 13–14. Despite attributing these admissions to Plaintiff, MAHC provides no citation to them. Which makes sense, because Plaintiff has never said that. Quite the opposite: he has testified to his intent to apply for a CON if the moratorium is struck down. Slaughter Depo. (Doc. 89-3) at 47:12. (Q: If you were to prevail on the moratorium claim in your lawsuit, would you go forward with preparing an application for a Certificate of Need? A: I would.). MAHC cannot moot Plaintiff's claim simply be inventing admissions he never made.

Nor is there any other evidence that Plaintiff's claim is moot. The Department of Health has not even collected the data its "need" methodology relies on for years. *See* Pl's. MSJ (Doc. 89). The best MAHC can muster is to point out that the Department's representative has "never heard anyone say we need more home health agencies." MAHC's Resp. at 18. But that is meaningless. If government witnesses could moot constitutional challenges based solely on what they claim *not* to have heard through the grapevine, no plaintiff would ever succeed.

Moreover, even if MAHC were correct that Slaughter could not qualify for a CON under the State's *current* "need" methodology, that would still not make his claim moot. The methodology has not been updated since 1985. *See* Pl's. MSJ at 18. The Health Department's representative testified unequivocally that if the moratorium were lifted, the Department would reevaluate the methodology and consider changes to it. Lampton Depo. (Doc. 89-2) at 46:8–13. ("Q: And so if the moratorium were lifted, would the Board of Health look at the actual methodology and update it if they needed to? [] A: Yes, and we should look at that even if they don't lift it."). "[A] case is not necessarily moot because it's uncertain whether the court's relief will have any practical impact on the plaintiff. 'Courts often adjudicate disputes where the practical impact of any decision is not assured.'" *Dierlam v. Trump*, 977 F.3d 471, 477 (5th Cir. 2020) (quoting *Chafin v. Chafin*, 568 U.S. 165 (2013).

**II.  PLAINTIFF DOES NOT HAVE TO PROVE THE EXISTENCE OF AN UNMET "NEED."**

MAHC suggests – indirectly at least – that Plaintiff is required to prove there is a "need" for his services to prevail on his claims. MAHC's MSJ at 16-17. That is wrong. Whether Plaintiff's services are "needed" is completely irrelevant to his challenge to the CON law. The entire point of his challenge is that requiring home health agencies to prove their services are "needed" is irrational and he should *not* be required to do so. As for his challenge to the moratorium, evidence that the Department's "need" methodology could *not* be satisfied would be relevant to MAHC's mootness argument, but as just discussed, there is no such evidence.

Further, all of this ignores that the State's "need" methodology – which calculates future "need" based solely on how many patients were served in the past, regardless of whether sufficient services were available to begin with – is irrational. The only actual evidence about the real-world need for home health services in the Jackson-Metro area comes from Plaintiff's testimony and indicates there *is* such a need. Slaughter Depo. (Doc. 89-3) at 121:21–122:1 (Q: "[Y]ou are personally aware of patients who need that treatment in home health and were not receiving it; is that right? A: I am definitely personally aware of that.").

**III.  COVID-19 INCREASED THE DEMAND FOR AND IMPORTANCE OF HOME HEALTH CARE.**

MAHC argues that there was no increased demand for home health services during the COVID-19 pandemic, but its own argument proves the opposite. First, MAHC admits that between 2015 and 2020 – the only recent years in which the Health Department published reports on the use of home health services by Mississippi patients – the number of home health patients *increased* by roughly 5,000 patients. MAHC Resp. at 20. MAHC claims that this represents only a "small increase." *Id*. Setting aside whether MAHC's view is correct, MAHC undercuts its own argument. It points to testimony from the Department's representative indicating that there has been a retraction in demand over the past *decade*, mainly brought about by changes in Medicare policies.

3

*Id.* at 20-21. But, given that background trend, it is all the more remarkable that there was an *increase* in demand *at all* in the five-year period from 2015 to 2020. After all, if patient counts had simply remaining level during that period it would have bucked the trend.

Just as importantly, while MAHC seizes on testimony from the Department's representative about the background trends in the use of home health services, it completely ignores his testimony on the very subject issue: the impact of COVID on the need for home health services. Unsurprisingly, his testimony on that subject likewise undermines MAHC's argument. *See* Lampton Depo. (Doc. 89-2) at 104:6–21 (there was an "increased need for home health" during COVID-19 since Mississippi physicians "utilized home health more frequently.").

In the end, MAHC's attempt to cast doubt on the increased *use* of home health services is a red herring. Plaintiff's entire point is that there was an increase in *demand*. That much is clear. *See e.g.* Slaughter Depo. (Doc. 89-3) at 111:2–112:2 ("Q: Have you had any other phone calls from patients who were interested in home health services from you? A: Right. Especially during the COVID time, that seemed to be more people wanting you to come to their home."). Whether existing providers in an artificially limited market during a dangerous pandemic were able or willing to *meet* that increased demand is an entirely separate question. *See e.g.* Mid-Delta Letter Requesting Emergency Waiver (Doc. 89-28) at MSDH 000470 (reporting that home health agencies did not want to accept patients discharged from hospitals during COVID.)

Moreover, there is *zero* genuine dispute that home health services played a vitally important role during the pandemic. *See e.g.* Knight Depo. (Doc. 89-8) at 54:6–9 ("Q: Did MAHC believe that the importance of home healthcare was increased in any way by the COVID-19 pandemic? A: I would say yes."). There is likewise no dispute that this spurred Plaintiff to dedicate his considerable skill and expertise to the cause, but the challenged laws prevented him from doing

4

so. The retention of those laws throughout the pandemic – and even afterwards – betrays their supposed rationality.

IV. **INCREASING RURAL ACCESS REMAINS AN IRRATIONAL BASIS FOR THE MORATORIUM.**

MAHC asserts that the moratorium is rationally related to the goal of increasing access to care in rural areas, arguing is it "plausible to believe" that increasing the number of patients (and resulting profits) for existing agencies, will "encourage them" to provide service in rural areas. MAHC's Resp. at 25. Of course, the plausibility of this speculation is contradicted by the record. *See* Pls. MSJ at 89. Moreover, setting aside the irrationality of this approach, it is already an explicit function of the CON law, which requires applications to be evaluated based on the effect that the aspiring provider would have on its competitors. Pl.'s MSJ (Doc. 89) at 14.

MAHC criticizes Plaintiff for arguing that the moratorium must have some "unique basis" without "citing any authority." MAHC's Resp. at 25. But Plaintiff has repeatedly cited that authority. See e.g. *Lucid Group USA, Inc.*, 2023 WL 5688153 at *5 (The existence of other applicable laws "undermine[s]" the asserted relationship between these [same] legislative goals and the law at issue.").

In fact, it is MAHC who lacks authority for *its* proposition that the moratorium can be justified solely as an effort to accomplish – in a roundabout way – what another law already aims to accomplish directly. While such a "belt and suspenders" approach may be permissible in some contexts, no court has held that states may completely *ban* entrance to trade on that basis alone. In fact, courts – including the Fifth Circuit – have explicitly rejected that approach. *See e.g. St. Joseph Abbey v. Castille*, 712 F.3d 215, 226 (5th Cir. 2013); *Casket Royale, Inc. v. Mississippi*, 124 F.Supp.2d 434, 440 (S.D.Miss.,2000) ("the consumer of ordinary goods is given recourse by the

5

consumer protection laws of Mississippi[.] Accordingly, the Court finds that the 'legal accountability' under the regulation is not rationally related to consumer protection[.]").

## V. COST CONTAINMENT REMAINS AN IRRATIONAL BASIS FOR THE CON LAW.

MAHC's efforts to further support the justifications it asserts for the CON law do not change their irrationality. First, MAHC addresses const containment. Its sole support is testimony from its retained expert, Mr. Sullivan, which serves only to further undermine his credibility. MAHC Resp. at 29. When repeatedly confronted with peer-reviewed, academic studies explicitly rejecting his claims, Mr. Sullivan testified that they did not "affect his analysis." *Id*. Why not? Because of "personal experiences" as a consultant which he did not elaborate on, combined with the fact that he has previously "looked at" the issue and reached findings which he has not published and did not cite in his expert report. *Id*. at 29–30. Needless to say, these ill-defined and unfalsifiable "experiences" and "findings" are hardly a rational basis upon which to reject actual peer reviewed studies and published FTC findings. Pls.' MSJ at 22–23.

## VI. ACCESS TO CARE REMAINS AN IRRATIONAL BASIS FOR THE CON LAW.

As for access to care, MAHC argues that Plaintiff's evidence that Mississippi is "ranked toward the bottom" for home health agencies per capita is a red herring, because that does not necessarily mean less access for patients. The Fourth Circuit disagrees. *See Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W. Va.*, 985 F.2d 164, 167 (4th Cir. 1993) ("Restricting market entry … necessarily limits the available service.").

Moreover, limiting consumer choices is impermissible when it ultimately causes harm to those consumers. *Casket Royale, Inc.*, 124 F.Supp.2d 434, 440 (S.D. Miss. 2000) (Fact that "consumers in Mississippi [were] offered fewer choices" ultimately harmed consumers through "higher prices in a far less competitive environment."). Limiting patients' choices among providers

causes a unique harm to home health patients, since they are homebound and do not have the option to travel to other providers for better or more innovative care.

MAHC argues that this same aspect of home health justifies *limiting* consumer choices. MAHC Resp. at 32. According to MAHC, because home health providers must travel to their patients, they – unlike other providers – need to have "sufficient patient census" in order to be able to afford to do so. *Id*. But according to the Department's representative, providers in "all aspects of health care," from "hospitals" to clinics" and "rehab facilities … frequently discuss[]" their need to "maintain a census."). Lampton Depo. (89-2) at 167:21–168:19. Home health providers are far from alone in saying this.

MAHC also says the letters between Mid-Delta Home Health and the Health Department regarding patient access problems during the COVID-19 pandemic are inadmissible. MAHC Resp. at 33. At a minimum, however, the letters are admissible as evidence that the CON law and moratorium, as written and enforced, prevent an adequate response to such reports, regardless of their truth or falsity, both in times of normalcy and during a pandemic. The State was unable to produce records of any investigation into Mid-Delta's report, despite multiple written requests for such documents. Pls.' MSJ at 25–26. That topic was included in two separate 30(b)(6) notices, and yet neither witness was aware of any such investigation. *Id.* Despite this, the Department's denial of Mid-Delta's request to provide care in counties outside its CON authorization stated that doing so was not necessary to cope with the pandemic. *Id.* This is relevant evidence that, under the CON law and moratorium, reports of patients losing access to home health services are not investigated and/or corrected even during a pandemic, much less in the normal course of events. For a law that purports to serve the interest of patient access to care, that evidence is relevant to its rationality.

### VII. QUALITY OF CARE REMAINS AN IRRATIONAL BASIS FOR THE LAW.

As for quality, MAHC relies solely on uncontrolled CMS data which is incapable of saying anything about the effect of that CON laws. There are, in fact, studies which have done exactly that using the same type of Medicare data. Pls.' MSJ at 27. Reliance on uncontrolled data is irrational when controlled studies are available using the same type of data. But those studies show CON laws *decrease* quality, so MAHC irrationally ignores them.

### CONCLUSION

The Plaintiff respectfully requests the Court to grant summary judgment in his favor.

RESPECTFULLY SUBMITTED, this the 22nd day of March, 2024.

| | |
|---|---|
| /s/ *Aaron R. Rice* <br> Aaron R. Rice <br> MS Bar No. 103892 <br> MISSISSIPPI JUSTICE INSTITUTE <br> 520 George St. <br> Jackson, MS 39202 <br> Tel: (601) 969-1300 <br> aaron.rice@msjustice.org | A. Seth Robbins <br> MS Bar No. 103096 <br> WATSON JONES PLLC <br> 2829 Lakeland Drive, <br> Suite 1502 <br> Flowood, Mississippi 39232 <br> Tel: 601.939.8900 <br> srobbins@wjpllc.com    *Attorneys for Plaintiff* |

### CERTIFICATE OF SERVICE

I, Aaron R. Rice, counsel for Plaintiff, hereby certify that the foregoing document has been filed using the Court's ECF filing system and thereby served on all counsel of record who have entered their appearance in this action to date.

This the 22nd day of March, 2024.

/s/ *Aaron R. Rice* <br>
Aaron R. Rice