IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**CHARLES SLAUGHTER,**

*Plaintiff,*

*v.*

**DR. DANIEL P. EDNEY,**
**IN HIS OFFICIAL CAPACITY AS**
**THE MISSISSIPPI STATE HEALTH**
**OFFICER, ET AL.**

*Defendants.*

CAUSE NO. 3:20-CV-789-CWR-ASH

## ORDER

Before the Court is the Intervenor Defendant Mississippi Association for Home Care's *Motion to Exclude Plaintiff's Expert Dr. Thomas Stratmann*. Docket No. 86. Upon review, MAHC's motion will be denied.

## I.      Facts and Procedural History

Charles Slaughter is a licensed physical therapist who owns a physical therapy clinic in Jackson, Mississippi. He brings this constitutional challenge to Mississippi's Certificate of Need (CON) program.

Defendant Daniel P. Edney is the head officer of the Mississippi State Department of Health (Health Department), as appointed by the Mississippi State Board of Health (The Board). The Board and Health Department implement rules and regulations related

to public health, and review and recommend legislation regarding the same. They also administer the CON program.

Intervenor-Defendant Mississippi Association for Home Care (MAHC) is a non-profit whose members are licensed home health agencies that serve Mississippians. MAHC intervened claiming that absent its intervention, their long-established economic interests as CON holders, as well as care to indigent patients, would be impaired.

This case was initiated in the wake of the COVID-19 pandemic. Slaughter hoped to expand his business and offer in-home physical therapy to homebound patients during the pandemic. He says he was blocked from doing so. A set of Mississippi laws requires health care facilities to apply and receive a state-issued CON before opening, expanding, relocating, changing ownership, or even acquiring major medical equipment. Even if he were able to successfully apply and meet the requirements for approval of a CON, Mississippi has had a moratorium on issuing CONs to new home health care businesses for the past 42 years. In 1982, the predecessor to the Health Department determined that no new home health care agencies were needed and issued an administrative moratorium on their licensure. Docket No. 7-1, *1982-87 Health Plan*, at 282. During the subsequent legislative session, the administrative moratorium was codified into state statute. It was then expanded in 1986. This moratorium, or a version of it, has remained in place for over 40 years. The only way to enter the market is if a current operator is willing to sell their CON.

The Board of Health annually reviews laws pertaining to public health and can choose to recommend the moratoria be lifted. One moratorium related to adolescent

psychiatric beds was lifted in March 2021. No such recommendation as to at-home health facilities has been made. Hence, this constitutional challenge.

Slaughter alleges that the CON regime violates the equal protection and substantive due process clauses of the United States and Mississippi Constitutions.[1] Specifically, he claims that the regime harms Mississippians, protects monopolies, and worsens the very goals it claims to advance. For support, he relies on over 40 years' worth of research claiming that CON laws stifle innovation in the health care industry and merely protect established companies from competition.

One person who has studied and contributed to the body of research on CON laws is Dr. Thomas Stratmann, PhD. Dr. Stratmann is an economist and professor in Economics and Law at George Mason University. Docket No. 88-1. He has also co-authored policy briefs on CON laws, testified about CON laws before two state legislatures and served as an expert in five other lawsuits. *Id.* at 1. Slaughter retained Dr. Stratmann as an expert witness and utilizes Dr. Stratmann's opinions to support his allegation that the CON laws and moratoria do not lower consumer costs, increase access to care, or increase the quality of care. Docket No. 97 at 3.

Meanwhile, Defendants cite to the State Health Plan and claim the CON regime is designed to "prevent unnecessary duplication of health resources; provide cost containment; improve the health of Mississippi residents; and increase the accessibility,

---

[1] Slaughter's challenge also extends to the moratoria placed on issuing CONs.

acceptability, continuity and quality of health services." Defendants review the CON program annually and have recommended it continue.

MAHC's present motion moves to exclude Dr. Stratmann as Slaughter's expert witness. Docket No. 86. Plaintiff relies on Dr. Stratmann's expert report as an exhibit to his Motion for Summary Judgment. Docket No. 88-1. Before consideration of the Summary Judgment Motions, the Court will decide whether to consider Dr. Stratmann's report.

## II. Legal Standard

The admissibility of expert testimony is governed by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702. *See Guy v. Crown Equip. Corp.,* 394 F. 3d 320, 325 (5th Cir. 2004).

Rule 702 was amended in 2023; the new Amendment took effect December 1, 2023. It now states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.[2]

The new rule does not change the existing law.  *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 284 (4th Cir. 2021) (explaining that the advisory committee's notes to the new rule echo and are consistent with the existing law). The purpose of Rule 702 is to guide the District Court's gatekeeping function. *See Guy*, 394 F.3d at 325. Before allowing a witness to testify as an expert, the Court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir. 1999) (quoting Fed. R. Evid. 702).

The Court's gatekeeping function also involves ensuring that "the expert uses reliable methods to reach his opinions," and that those opinions are "relevant to the facts of the case." *Guy,* 394 F.3d at 325. "Reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid. Relevance depends upon whether that reasoning or methodology properly can be applied to the facts in issue." *Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 352 (5th Cir. 2007) (quotation marks, citations, and brackets omitted); *see United States v. Fields,* 483 F.3d 313, 342 (5th Cir. 2007).

---

[2] Prior to the 2023 Amendment, Rule 702 read: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702 (2011)(amended 2023).

In *Daubert,* the Supreme Court described several non-exclusive factors that trial judges should consider in gauging reliability, including (1) whether the proposed technique or theory can be or has been tested, (2) whether it has been subjected to peer review and publication, (3) whether its error rate is acceptable, (4) whether the theory is generally accepted in the scientific community, and (5) whether there are standards controlling the technique. *See Guy,* 394 F.3d at 325; *Knight,* 482 F.3d at 351. The Fifth Circuit later instructed that "the reliability analysis must remain flexible: not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy,* 394 F.3d at 325 (citation omitted); *see Hathaway v. Bazany,* 507 F.3d 312, 318 (5th Cir.2007). The party offering the expert bears the burden of establishing expert reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

The *Daubert* analysis applies to the process by which an expert reaches their conclusions, not to the merits of the conclusions themselves. *Guy,* 394 F.3d at 325. "Proponents do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable." Fed. R. Evid. 702 advisory committee's note to 2023 amendment (cleaned up).

> Some challenges to expert testimony will raise matters of weight rather than admissibility . . . . For example, if the Court finds it more likely than not that an expert has a sufficient basis to support an opinion, the fact that the expert has not read every single study that exists will raise a question of weight and not admissibility . . . . [O]nce the Court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence.

6

*Id.*

The merits of the expert's conclusions remain subject to attack at trial under traditional principles of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert,* 509 U.S. at 596.

## III.   Discussion

MAHC takes numerous exceptions to Dr. Stratmann's report. It argues that he is not a health care expert but rather an economist who has only worked in academia and presents "one-sided advocacy for free markets." Docket No. 87 at 1, 2. Additionally, MAHC argues Dr. Stratmann's report is not helpful in determining if a rational basis existed at the time the CON laws were created because he bases his opinions on information after the enactment of the Mississippi home health CON laws. *Id.* at 2. MAHC further argues that Dr. Stratmann admitted the CON laws were "well-intentioned forty-years ago" and this is dispositive that believes there was a rational basis for the creation of the CON laws. *Id.*

MAHC also challenges the materials Dr. Stratmann used to create his report. MAHC argues that while Dr. Stratmann's report focuses on articles related to home health care costs, the report often ignores significant markers of success in home health care such as improvements in patients ADL's. *Id.* MAHC also submits that a cost based analysis is not helpful nor reliable to the issue at hand.

MAHC takes particular issue to the fact that Dr. Stratmann focused primarily on national information instead of Mississippi specific data from the Centers for Medicare

and Medicaid Services ("CMS"). *Id*. at 3. MAHC says that during a deposition Dr. Stratmann "laughed and scoffed" at the CMS data saying it was not relevant to the services provided by the home health agencies. *Id*. It says this shows that he lacks the fundamental knowledge of and experience with the services provided by home health agencies. *Id*.

Lastly, MAHC argues that "ongoing legitimate debate" among experts on home health care and the efficacy of home health care CON laws should warrant excluding Dr. Stratmann. *Id*.

Slaughter relies heavily on this Court's previous order at Docket No. 32 which accepted the facts alleged as true, as it must on a motion to dismiss, and looked at the wide body of research on CON laws. *See* Docket No. 97 at 1. It says the only question relevant under *Daubert* is whether Dr. Stratmann's methods are reliable, and the Court already determined reliability in denying the motion to dismiss. *Id*.

The Court finds that Dr. Stratmann is qualified due to his "knowledge, skill, experience, training or education." While an economist, he focuses on CON laws and has both researched and written extensively on the topic. *See* Docket No. 88-1. The Court also notes that he has been qualified in other courts. *Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 176 (5th Cir. 1990). The Court believes that Dr. Stratmann's specialized knowledge will help it, the trier of fact, to understand the evidence and determine a fact in issue. Having determined such, the Court disagrees with MAHC's contention that Dr. Stratmann's opinions "are not helpful in determining any material issues in this case." Docket No. 87 at 6.

The Court also disagrees with MAHC's argument that Dr. Stratmann's opinions are irrelevant to the rational-basis test at the heart of the dispute surrounding Mississippi's CON laws. Instead, the Court agrees with Plaintiff's argument that "plaintiffs may nonetheless negate a seemingly plausible basis for the law by adducing evidence of irrationality." *St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013); *see* Docket. No. 97 at 7. The Court may find that no rational reason exists for the CON laws if the plaintiff can show that the CON laws were irrational. Dr. Stratmann's report bring evidence of irrationality into the picture.

At this stage, the Court is primarily concerned with MAHC's contentions that "all of Stratmann's opinions … are not based on sufficient facts and data" and that he "failed to consider or address the relevant Mississippi-specific facts and data in forming his opinions regarding improvements of health, quality, accessibility, acceptability and continuity of care." Docket No. 87 at 17.

The Court is reminded of its gatekeeping function and must weed out unreliable and irrelevant expert testimony, *see Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007), but otherwise it shall let the fact-finder benefit from "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 596 (1993).

Defendants will have the opportunity to vigorously cross examine Dr. Stratmann on the facts and methods he relied on in forming his conclusions. Cross examination specific to the lack of CMS and Mississippi data in his report will be helpful to the Court, however, at this point the Court does not believe these claims alone are reason to exclude

Dr. Stratmann. Dr. Stratmann admittedly does research CON laws across the country, and this Court believes the national context and background on CON laws more likely than not will be beneficial to it during the bench trial.

As to the other contentions in MAHC's motion, the Court reserves ruling on them presently and will allow the parties to develop the arguments at trial. Dr. Stratmann's expert testimony shall be admitted at trial. MAHC and the remaining defendants, of course, will be able to offer their own expert witnesses to counter any testimony by Dr. Stratmann. Defendants may appropriately challenge portions of Dr. Stratmann's testimony during the trial.

## IV.    Conclusion

MAHC's motion to exclude Dr. Stratmann's expert report Docket No. 86 is denied.

**SO ORDERED**, this the 11th day of September, 2024.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE